**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Anna M. Joyce, OSB #013112**
AnnaJoyce@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Tel: (503) 295-3085
Fax: (503) 323-9105

> Special Assistant Attorneys General for Defendants
> Additional Counsel of Record Listed on Signature Page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S. by his next friend Paul Aubry; RUTH T. by her next friend Michelle Bartov; BERNARD C. by his next friend Ksen Murry; NAOMI B. by her next friend Kathleen Megill Strek; and NORMAN N. by his next friend Tracy Gregg, individually and on behalf of all others similarly situated,<br><br>                                             Plaintiffs,<br><br>        v.<br><br>KATE BROWN, Governor of Oregon in her official capacity; FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; JANA MCLELLAN, Interim Director, Child Welfare in her official capacity; and OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>                                             Defendants. | No. 6:19-cv-00556-AA<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO MAKE MORE DEFINITE AND CERTAIN** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

ARGUMENT .......................................................................................................... 1

I.      The Court should abstain from exercising jurisdiction under *O'Shea v.
        Littleton.* ...................................................................................................... 1

        A.      Most of plaintiffs' *Younger* argument is inapplicable to *O'Shea.* ........................ 2

        B.      The complaint's requested relief steps directly on the work of Oregon
                juvenile courts. ..................................................................................... 4

II.     The Court should dismiss plaintiffs' substantive due process claim (First Claim
        for Relief). ................................................................................................... 9

III.    The Court should dismiss plaintiffs' familial association claim (First Claim for
        Relief). ....................................................................................................... 12

IV.     Alternatively, the Court should order the complaint be made more definite and
        certain. ....................................................................................................... 14

V.      There is no private right of action to enforce plaintiffs' requested relief under
        the CWA (Second Claim for Relief). .......................................................................... 14

VI.     The complaint does not plausibly allege violation of the disability statutes
        (Third and Fourth Claims for Relief). ....................................................................... 16

        A.      The complaint fails to allege disability discrimination in violation of
                the disability statutes. .......................................................................... 16

                1.      The disability statutes prohibit discrimination on the basis of
                        disability; they do not require adequate treatment for a
                        disability. ............................................................................ 16

                2.      Because the complaint fails to plead discrimination because of
                        disability, there is no right to any reasonable modifications. ................... 17

                3.      The complaint also does not allege failure to provide
                        meaningful access to existing services. ....................................... 17

                4.      The authority that plaintiffs cite is inapposite. ............................ 19

        B.      Plaintiffs' integration mandate theory similarly fails because plaintiffs
                challenge the level of services provided by the foster care system, not
                their segregation from non-disabled foster care children. ..................... 20

CONCLUSION .......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Choate,*
    469 U.S. 287 (1985)..................................................................................17, 18

*Barricelli v. City of New York,*
    No. 15 CV 5273-LTS-HBP, 2016 WL 4750178 (S.D.N.Y. Sept. 12, 2016)......15

*B.H. v. Johnson,*
    715 F. Supp., 1387 (N.D.Ill. 1989) ....................................................................12

*Brian A. ex rel. Brooks v. Sundquist,*
    149 F. Supp. 2d 941 (M.D. Tenn. 2000)............................................................13

*Bryant v. Madigan,*
    84 F.3d 246 (7th Cir. 1996) ...............................................................................17

*Charlie H. v. Whitman,*
    83 F. Supp. 2d 476 (D.N.J. 2000) ...........................................................11, 12, 20

*Clark K. v. Guinn,*
    No. 2:06-CV-1068-RCJ-RJJ, 2007 WL 1435428 (D. Nev. May 14, 2007) ........11

*Connor B. ex rel. Vigurs v. Patrick,*
    771 F. Supp. 2d 142 (D. Mass. 2011) ..................................................................5

*Courthouse News Serv. v. Planet,*
    750 F.3d 776 (9th Cir. 2014) ...........................................................................1, 2

*DeShaney v. Winnebago Cnty. Dep't of Social Services,*
    489 U.S. 189 (1989)........................................................................................9, 11

*Disability Rights New York v. New York,*
    916 F.3d 129 (2d Cir. 2019)..................................................................................3

*Eric L. By and Through Schierberl v. Bird,*
    848 F.Supp 303 (D.N.H. 1994) ..........................................................................19

*E.T. v. Cantil-Sakauye,*
    682 F.3d 1121 (9th Cir. 2012) ..........................................................................8, 9

*Family Civil Liberties Union v. State,*
    386 F. Supp. 3d 411 (D.N.J. 2019) ......................................................................3

*Garcia v. Cnty. Of San Diego,*
    No. 15-CV-189JLS(NLS), 2018 WL 3019931 (S.D. Cal. June 18, 2018),
    *recon. den.*, 2018 WL 6334286 (S.D. Cal. Dec. 5, 2018),
    *rev. pen.*, Jan. 7, 2019 .......................................................................................11

*Gomez v. Vernon,*
    255 F.3d 1118 (9th Cir. 2001) .............................................................................4

*Henry A. v. Willden*,
   678 F.3d 991 (9th Cir. 2012) ....................................................................14, 15

*Keates v. Koile*,
   883 F.3d 1228 (2018)..........................................................................................12

*Kenny A. v. Perdue*,
   No. CIVA 102-CV-1686-MHS, 2004 WL 5503780 (N.D. Ga. Dec. 13, 2004)..............5, 13

*Kentucky v. Graham*,
   473 U.S. 159 (1985)...............................................................................................9

*Kiman v. New Hampshire Dep't of Corr.*,
   451 F.3d 274 (1st Cir. 2006) ................................................................................17

*Lipscomb v. Simmons*,
   962 F. 2d 1374 (9th Cir. 1992) ...............................................................................9

*Marisol A.by Forbes v. Giuliani*,
   929 F. Supp. 662 (S.D.N.Y. 1996)........................................................................12

*M.D. ex rel Stukenberg v. Abbott*,
   907 F.3d 237 (5th Cir. 2018) ....................................................................9, 10, 11

*Middlesex County Ethics Committee v. Garden State Bar Association,*
   457 U.S. 423 (1982)................................................................................................3

*M.K. ex rel. Mrs. K. v. Sergi*,
   554 F. Supp. 2d 175 (D. Conn. 2008) ..................................................................21

*M.R. v. Dreyfus*,
   663 F.3d 1100 (9th Cir. 2011),
   *opinion amended and superseded on denial of reh'g,*
   697 F.3d 706 (9th Cir. 2012) ...............................................................................20

*Olmstead v. L.C. ex rel. Zimring*,
   527 U.S. 581, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999)...................................20

*Olson v. Allen*,
   No. 3:18-CV-001208-SB, 2019 WL 1232834 (D. Or. Mar. 15, 2019) ...........17, 20

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)........................................................................................*passim*

*Rizzo v. Goode*,
   423 U.S. 362 (1976)................................................................................................4

*Sameer v. Right Moves 4 U*,
   2018 WL 1875536 (E.D. Cal. Apr. 19, 2018).......................................................14

*Simmons v. Navajo Cty., Ariz.*,
   609 F.3d 1011 (9th Cir. 2010) ..............................................................................21

*Sprint Commc'ns, Inc. v. Jacobs*,
  571 U.S. 69 (2013)..................................................................................2, 3

*Tinsley v. McKay*,
  156 F. Supp. 3d 1024 (D. Ariz. 2015) ...................................................6, 7

*Townsend v. Quasim*,
  328 F.3d 511 (9th Cir. 2003) ..................................................................21

*United States v. Univ. Hosp., State Univ. of New York at Stony Brook*,
  729 F.2d 144 (2d Cir. 1984).....................................................................17

*Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*,
  114 F.3d 976 (9th Cir. 1997) ...................................................................17

*Wright v. Giuliani*,
  230 F.3d 543 (2d Cir. 2000)................................................................18, 20

*Younger v. Harris*,
  401 U.S. 37 (1997)...............................................................1, 2, 3, 4, 11

## Statutes and Other Authorities

28 C.F.R. § 35.130 ........................................................................................20

42 U.S.C. § 671 ......................................................................................14, 15

42 U.S.C. § 12134 .......................................................................................19

ORS 419B.337 .............................................................................................6

ORS 419B.346 .............................................................................................8

ORS 419B.349 ......................................................................................6, 7, 8

ORS 419B.352 .........................................................................................7, 8

ORS 419B.440-.443.....................................................................................7

ORS 419B.449 ........................................................................................7, 8

ORS 419B.476 ..............................................................................6, 7, 8, 15

ORS 419B.498 .............................................................................................6

U.S. Dep't of Justice, ADA Title II Technical Assistance Manual, at II-3.3000 ...............18, 19

## INTRODUCTION

Under long-established Supreme Court precedent, federal courts are compelled to abstain from interfering in state court proceedings based on principles of federalism and comity. Plaintiffs ask this Court to disregard those principles and appoint an out-of-state monitor to review decisions squarely within the purview of state juvenile courts.  Pursuant to *O'Shea v. Littleton*, this Court should abstain from interfering with Oregon's juvenile courts.

Plaintiffs' arguments to the contrary are without merit.  Plaintiffs argue at length against *Younger* abstention, yet the State has not asked the Court to abstain pursuant to *Younger*, a separate and distinct doctrine from *O'Shea*.  Plaintiffs contend that federal courts in other states have declined to abstain but fail to note the significant and dispositive differences between the child welfare systems in those states and the system in Oregon.  And plaintiffs wholly fail to address the extraordinary implications that their requested relief would have on Oregon's juvenile court system.  *O'Shea* compels abstention to the extent that the requested relief would require this Court to sit in constant day-to day supervision of Oregon's juvenile court judges.

Even if the Court does not abstain, it should dismiss the complaint for failing to state a claim.  The first claim for relief, based on alleged violations of First, Ninth, and Fourteenth Amendments fails because those amendments do not provide the pleaded protections.  The Second Claim for Relief fails because there is no private right of action to dictate the contents of a case plan under the Adoption Assistance and Child Welfare Act ("CWA").  And the Third and Fourth Claims for Relief fail because they are based on a fundamental misconception of the meaning of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.  For all these reasons, this Court should dismiss the complaint.

## ARGUMENT

## I.    The Court should abstain from exercising jurisdiction under *O'Shea v. Littleton*.

The abstention doctrine set forth in *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974), "*compels* abstention where the plaintiff seeks an 'ongoing federal audit' of the state judiciary, whether in criminal proceedings or in other respects." *Courthouse News Serv. v. Planet*, 750

F.3d 776, 790 (9th Cir. 2014) (quoting *O'Shea*, 414 U.S. at 499) (emphasis added).  The complaint here seeks just that: a federal court order turning over supervision of Oregon's juvenile court system to out-of-state advocates and consultants.  Accordingly, this Court should abstain from exercising jurisdiction under *O'Shea*.

Rather than responding to the State's argument regarding *O'Shea*, plaintiffs' opposition addresses a different abstention doctrine, set forth in *Younger v. Harris,* 401 U.S. 37 (1997). (*See* Pls.' Resp. to Def.'s Mot. to Dismiss ("Resp.") (Dkt. 35) at 5-14.)  But the State did not ask this Court to abstain under *Younger*, an abstention doctrine devoted to preventing the federal court from intervening in certain types of *ongoing* state proceedings.  (*See* Defs' Mot. to Dismiss or, In the Alternative, to Make More Definite or Certain ("Mot. to Dismiss") (Dkt. 31) at 8-15.) *O'Shea*, unlike *Younger*, focuses solely on the impact of the requested federal court relief on *future* proceedings in state court.  Plaintiffs' brief fails to meaningfully address either the relief sought or the nature of proceedings in Oregon juvenile courts.

### A.    Most of plaintiffs' *Younger* argument is inapplicable to *O'Shea*.

This Court need not evaluate an abstention doctrine that the State does not assert. Plaintiffs contend that their focus on *Younger* abstention is a justified response to the State's *O'Shea* argument because "much of the case law and principles Defendants cite to are specific to the . . . narrow *Younger* doctrine and its progeny, of which *O'Shea* is one."  (Resp. at 7.) However, the doctrines are critically different—which is why there are two of them—and the Supreme Court's limitations on *Younger* simply do not apply to *O'Shea*.

The first and most critical distinction is that the Supreme Court's decision in *Sprint* that limited *Younger* abstention to certain types of ongoing state cases did not similarly limit *O'Shea*. (*See, e.g.*, Resp. at 7) (asserting that the cases relied upon by defendants "are no longer good law because they were decided before *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013) and thus engage in analysis explicitly forbidden by the Supreme Court in *Sprint*").  The Supreme Court's decision in *Sprint* does not mention *O'Shea* even glancingly, let alone "explicitly." *See generally Sprint,* 571 U.S. 69.  As the Second Circuit recently recognized, "[w]hile the Supreme

Court in *Sprint* made clear that *Younger's* scope should be limited to the three specified categories, the Court did not suggest that abstention under *O'Shea* should be circumscribed. Indeed, courts have continued to apply *O'Shea* even after *Sprint*." *Disability Rights New York v. New York*, 916 F.3d 129, 135, n.3 (2d Cir. 2019) (citing cases).[1]  *O'Shea* and its progeny remain good law and plaintiffs' arguments to the contrary must be rejected.

Second, the *Middlesex* factors do not apply to *O'Shea*. (*See* Resp. at 8, 9, 12, 14) (citing *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423 (1982)). Like *Sprint*, *Middlesex* does not address (or even mention) *O'Shea*. *See generally* 457 U.S. 423. Indeed, the first *Middlesex* factor requires an *ongoing* state proceeding. *Id.* at 432.  But the difference between *O'Shea* and *Younger* is that *O'Shea* does not require an ongoing proceeding at all. *See O'Shea*, 414 U.S. at 500 (addressing "unwarranted anticipatory interference" such as an "injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials").

Similarly, the "*NOPSI* exceptions"—identifying the type of *ongoing* proceedings appropriate for *Younger* abstention—are inapplicable to *O'Shea* abstention. (*See* Resp. at 8-14) ("Defendants must show both (1) that Plaintiffs' claims implicate one of the three "exceptional circumstances" identified in *NOPSI*; and (2) that the *Middlesex* factors additionally warrant abstention.") (citing *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989)) (*Id.* at 9). Again, "ongoing proceedings" are not relevant to the *O'Shea* analysis.  That is why, when evaluating whether a case is appropriate for *O'Shea* abstention, a court need not determine whether the case falls into a *NOPSI* category at all.  *See Disability Rights New York*, 916 F.3d at 135 ("[W]e do not decide whether this case fits within the third category [of proceedings identified in *Sprint/NOPSI*], for we conclude that it falls squarely within *O'Shea's* abstention framework.").

---

[1] *See also Family Civil Liberties Union v. State,* No. 18-2597(KM) (JBC), 2019 WL 2296593 at *14 (D.N.J. May 29, 2019) (declining to abstain under *Younger* because the family court proceedings did not fall into one of the *Sprint* categories, but finding *O'Shea* barred the relief plaintiffs sought).

**Page 3 -    REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO MAKE MORE DEFINITE AND CERTAIN**

Another example of why it is neither logical nor useful to harness *Younger* case law for the *O'Shea* analysis is plaintiffs' dogged focus on the principle that abstention is inappropriate for cases evaluating executive actions.  (Resp. at 9-11, 13, 15-16.)[2]  Unlike *Younger*, there is no rule or case law limiting *O'Shea*'s applicability in cases reviewing executive action.  Indeed, the first Supreme Court case applying *O'Shea* beyond the criminal context applied it to a local *executive* action and explicitly recognized the propriety of applying *O'Shea* abstention in a case reviewing state agency action.  *Rizzo v. Goode*, 423 U.S. 362, 380 (1976).

In requiring federal court abstention from reviewing actions of the district attorney in and outside of the courtroom, the Court recognized that "[*O'Shea*] principles likewise have applicability where injunctive relief is sought, not against the judicial branch of the state government, but against those in charge of *an executive branch of an agency of state or local governments* such as petitioners here."  *Id.* (emphasis added).  Far from weighing *against* this type of abstention, the Court recognized that a government agency must be granted the "widest latitude in the dispatch of its own internal affairs.'"  *Rizzo*, 423 U.S. at 378–79 (citations omitted); *see also Gomez v. Vernon*, 255 F.3d 1118, 1128 (9th Cir. 2001) ("When a state agency is involved, these considerations are, if anything, strengthened because of federalism concerns.") (citing *O'Shea*, 414 U.S. at 499).  Here too is an area where the distinction between the doctrines makes all the difference.  Rather than proceed through a lengthy and irrelevant analysis on an argument no one is making, this Court should evaluate the case to determine if *O'Shea* abstention is warranted.

### B.    The complaint's requested relief steps directly on the work of Oregon juvenile courts.

To determine whether to abstain under *O'Shea*, the Court need only evaluate the relief sought and determine whether granting it would entail oversight over the substance of individual juvenile court cases.  The focus is on whether granting the relief that plaintiffs seek "would

---

[2] *See, e.g.,* Resp. at 9 ("Defendants' *Younger* argument is fatally flawed because *Younger* abstention is unwarranted where the District Court is called upon to review "legislative or executive action'").

contemplate interruption of state proceedings to adjudicate assertions of noncompliance"
requiring a district court "to sit in constant day-to-day supervision" of state court judges.
*O'Shea*, 414 U.S. at 501.

Plaintiffs both misunderstand and fail to address the role of juvenile courts in Oregon's
foster care system, as demonstrated by their contention that "[p]laintiffs' Complaint does not
contain a single allegation, or request for relief, concerning the processes, operations or rulings
of Oregon's juvenile courts.  Rather, Plaintiffs' Complaint seeks systemic relief directed at
DHS's executive actions."  (Resp. at 10.)  Although plaintiffs use a broad brush to repeatedly
dismiss the requested relief as "systemic," rather than affecting "individual cases," this
characterization reflects a lack of understanding of the role of Oregon's juvenile courts.  (*See*
Resp. 9-12, 14-16.)  According to plaintiffs: "The Oregon juvenile court system functions largely
the same way that all juvenile courts function in this country: it reviews the executive actions of
DHS."  (Resp. at 6.)  Tellingly, plaintiffs' entire brief contains only two pages that even cite to
Oregon law, neither of which contain any analysis of the involvement of Oregon's juvenile
courts in Oregon's foster care system.  (Resp. at 6, 34.)  This issue is too important to be
resolved with so cursory an analysis.

First, plaintiffs are just wrong in their assertion that "[t]he Oregon juvenile court system
is thus indistinguishable from the juvenile court systems in Texas, Arizona, Massachusetts,
Mississippi, Oklahoma, and numerous other states in which virtually identical abstention
motions have been denied."  (Resp. at 6.)  Oregon law is not "indistinguishable" from these
states.  For example, in Massachusetts, the state agency has "virtually free rein" to make
placement, visitation and permanency decisions and the court may only offer "guidance" as to
placement decisions.  *See Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 155-56 (D.
Mass. 2011) (noting that a judge lacks general authority to enter a placement order based on "a
child's best interests").  Similarly, in Georgia, the juvenile court's authority is narrowly
circumscribed: for instance, orders about a child's placement "are merely exhortatory and not
binding on" the state agency.  *See Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 288 (2003).

**Page 5 -   REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, TO MAKE MORE DEFINITE AND CERTAIN**

In Oregon, by contrast, the juvenile court has ultimate and conclusive authority to determine that a particular placement is not in the child's best interest and to direct a different type of placement.  ORS 419B.349 ("if …the court determines that the placement or proposed placement is not in the best interest of the child" it may direct a different type of placement").  And it is the juvenile court that "determines" the permanency plan for a child, *see* ORS 419B.476 and ORS 419B.498(3), and makes orders regarding visitation, *see* ORS 419B.337(3).

Moreover, only one of the ten cases that plaintiffs identify as rejecting a "virtually identical abstention motion" even considered an abstention argument under *O'Shea* (the only abstention doctrine raised in the State's motion).  (*See* Resp. Opp. at 6, n. 1.)[3]  And that case (*Tinsley v. McKay*, 156 F. Supp. 3d 1024, 1037-38 (D. Ariz. 2015)) involved entirely different requested relief, which is the key question for *O'Shea* abstention.

Although plaintiffs repeatedly cite *Tinsley* as proof that the "the concern expressed in *O'Shea* does not apply here," (Resp. at 15), *Tinsley* actually counsels for the opposite conclusion.  Critically, the relief sought in *Tinsley* did not implicate case plans or placement decisions at all.  In that case, the plaintiffs sought to compel the state's agencies to implement changes relating to: (1) health care services; (2) practices to increase the array of possible placements; (3) practices to allow for family visitation for children whose permanency goal is reunification; (4) improved investigations into reports of abused children; and (5) caseworker visits with biological parents for children whose permanency goal is reunification.  *See Tinsley*, 156 F. Supp. 3d at 1035.  Because this relief addressed "the failures of child welfare agencies to comply with juvenile court orders" rather than "the placement of individual children," it did not affect decisions that are "within the sole purview and oversight of the juvenile courts."  *Id.*at 1037–38.

The requested relief at issue in this case is starkly different.  Notably, the *Tinsley* plaintiffs did not request (as plaintiffs do here) an injunction encompassing pages of detailed criteria controlling the juvenile court's determination of which placements are in the best interest

---

[3] *See also* Resp. at 10 (noting that "[n]umerous courts have rejected the misleading argument Defendants advance on this issue" but citing no cases that address *O'Shea* abstention).

of the child.  Had they done so, the relief would have done precisely what the *Tinsley* court prohibited: affect placement decisions, which fall directly within "the sole purview and oversight of the juvenile courts."  *Id.*

In any event, as detailed in the State's motion and summarized below, the requested relief does fall directly within the purview of the Oregon juvenile courts.  (Mot. to Dismiss at 2-4, 9-11.)

- Requested relief: All children must have "an adequate individualized written case plan for treatment, services, and supports," subject to federal monitor review. (Compl. ¶ 331a.iii.)

  - *But see* ORS 419B.349, ORS 419B.449 and ORS 419B.476 (juvenile court exercises complete authority over evaluating adequacy of case plans and placements)

- Requested relief: All children must have a "plan for reunification with the child's parents, for adoption, or for another permanent, family-like setting" subject to federal monitor review.  (Compl. ¶ 331.a.iii.)

  - *But see* ORS 419B.449 and ORS 419B.476 (juvenile court exercises complete authority to review and modify case plans and specific goals, including identifying the most appropriate permanency plan, for each child)

- Requested relief: "[A]n appropriate outside entity [will] conduct a needs assessment of the state's provision of foster care placement and services . . . to determine the full range and number of appropriate foster care placements and services for all children."  (Compl. ¶ 331.a.i.)

  - *But see* ORS 419B.440-443 and ORS 419B.449 (juvenile court must regularly review and approve a child's placements and permanency plans as well as order, review, and modify plans for treatment, services, and supports)

- Requested relief: Children with mental health disabilities must be placed in the most integrative setting possible, specifically family foster homes, when required by reasonable professional standards, subject to federal monitor review.  (Compl. ¶ 331.b.i.)

  - *But see* ORS 419B.349 and ORS 419B.352 (juvenile court exercises complete authority over types of placements; DHS must consult with the court to determine the appropriate placement for a child needing mental

health treatment and services, with the court having the final say in the
event of a disagreement)

- Requested relief: Children with disabilities must be housed near and receive
appropriate services, as approved by federal monitor. (Compl. ¶ 331.b.ii-iv.)

  - *But see* ORS 419B.346, ORS 419B.349, ORS 419B.352 and ORS
419B.449 (juvenile court directs placements, may order mental health
treatment and services it deems appropriate and evaluate the
appropriateness of DHS's plan to provide the treatment and monitor
child's progress)

- Requested relief: LGBTQ youth must be placed in family settings with specific
types of families and specific services provided, as approved by federal monitor.
(Compl. ¶ 331.d.)

  - *But see* ORS 419B.349 (juvenile court exercises complete authority over
types of placements and may modify or direct a certain type of placement)

- Requested relief: Teenagers must be placed in family foster homes and receive
transition planning, as approved by federal monitor.  (Compl. ¶ 331.c.)

  - *But see* ORS 419B.349 and ORS 419B.476(3) (juvenile court exercises
complete authority over types of placements and oversees adequacy and
effectiveness of plan for transition to successful adulthood)

Additionally, the declaratory relief that any and all allegations (including those
addressing issues within the purview of the juvenile court) amount to constitutional violations
could be equally problematic. *See E.T. v. Cantil-Sakauye*, 682 F.3d 1121, 1124-25 (9th Cir.
2012) (recognizing that declaratory relief could lead to litigating future issues of
noncompliance).

Plaintiffs continue to offer no resolution to the conflict presented when the juvenile court,
pursuant to its authority under ORS 419B.346, ORS 419B.349, ORS 419B.352 and ORS
419B.449, orders one of the ADA subclass members (which allegedly includes half of all foster
children) and a ward of the juvenile court to be placed in a residential facility, but the federal
monitor determines that the child's placement conflicts with the injunction's requirement that
placement be in the "most integrative setting" possible.  (*See* Compl. ¶ 331.b.i.)  In that event,
the parties would need the federal court to resolve the issue of non-compliance with the

injunction.  This situation—which could arise with each of the bullet points above for each child in foster care—presents "the precise basis for future intervention condemned in *O'Shea*."  *E.T.*, 682 F.3d at 1125 (citation omitted).  There can be no legitimate dispute that much of the relief requested intrudes on the work of Oregon juvenile courts on behalf of its wards.

Plaintiffs neither tailor their abstention briefing to the argument that the State is making nor apply it to the specific work of the Oregon juvenile courts.  This Court should abstain from considering plaintiffs' request for a federal injunction that would result in constant day-to-day supervision of Oregon's juvenile courts.

## II.    The Court should dismiss plaintiffs' substantive due process claim (First Claim for Relief).

To state a claim for violation of substantive due process, a complaint must allege: (1) deprivation of a constitutional right; (2) that the state acted with the requisite level of culpability; and (3) causation.  *Kentucky v. Graham*, 473 U.S, 159, 166 (1985).  The State's motion to dismiss focuses exclusively on the first element.  As the Supreme Court explained over three decades ago, foster children have a constitutional right to have the State provide for foster children's basic human needs, including "food, clothing, shelter, medical care, and reasonable safety."  *Lipscomb v. Simmons*, 962 F. 2d 1374, 1379 (9th Cir. 1992) (quoting *DeShaney v. Winnebago Cnty. Dep't of Social Services*, 489 U.S. 189, 200 (1989)).  Although the State can—and does—provide for far more than basic human needs, as a constitutional matter, due process requires only "reasonable safety and minimally adequate care and treatment."  *Id.*  To the extent that the due process claim seeks to protect rights that do not fall within this ambit, they must be dismissed.

Plaintiffs' opposition disregards the limited nature of the Due Process Clause.  Plaintiffs rely heavily on *M.D. ex rel Stukenberg v. Abbott*, 907 F.3d 237 (5th Cir. 2018).  The *M.D.* case does not support plaintiffs' expansive and incorrect understanding of the boundaries of due process.  Rather, it reiterates the well-settled obligations that states owe foster children under the Due Process Clause, namely, the right to personal security and reasonably safe living conditions.

*Id*. at 250.  The court in *M.D.* went to great lengths to delineate the contours of substantive due process, observing that due process does not require "the State to guarantee the individual's betterment or unconditional stability"; rather, it "includes the very limited right to be free from severe psychological abuse and emotional trauma."  *Id*.  The *M.D.* court emphasized the "significant limits" on the Due Process Clause's protections:

> We stress, however, that there are significant limits on the scope of the right to be free from certain forms of psychological harm.  The Fourteenth Amendment does not entitle plaintiffs to receive optimal treatment and services, nor does it afford them the right to be free from any and all psychological harm at the hands of the State.  Many inherent features of the foster care system, such as the ambulatory nature of children's placements, have negative psychological consequences.  Such negative consequences are regrettable, but they are not the type of significant, abuse-related psychological damage the Constitution prohibits.

*Id*. at 251.  Only those "egregious intrusions[,]" such as "persistent threats of bodily harm or aggressive verbal bullying[,]" are constitutionally cognizable.  *Id*.  The court thus rejected the argument that substantive due process applies to claims of an inadequate foster home placement array and provision of the most "home-like" and "least-restrictive environment."  *Id*. at 268.

So, rather than supporting plaintiffs' arguments, *M.D.* does the exact opposite.  It reflects that the Due Process Clause narrowly circumscribes foster children's claims brought under the Fourteenth Amendment.  In fact, *M.D.* reflects precisely why many of the complaint's allegations here far exceed the bounds of substantive due process.  Due process does not require the State to provide: (1) care and services in the least restrictive environment or in the most integrated setting, *see* Compl. ¶ 200.b, ¶ 307.a.ii; (2) assistance to find permanent housing, *id*. ¶ 307.c.ii; (3) connection with an adult resource who will maintain a long-term relationship with the child after she/he/they age out of the system, *id*. ¶307.c.iii.; or (4) independent living services to prepare children to exit foster care successfully, *id*. ¶ 307.c.i.  The Court should thus dismiss each of those and other similar allegations.

Plaintiffs also rely heavily on *M.D.'s* discussion of the two *other* elements of a due process claim, deliberate indifference and causation.  But those arguments, like plaintiffs'

*Younger* arguments, take aim at a nonexistent target.  The State moved to dismiss only on the basis that the complaint failed to adequately plead protected liberty interests.  The State has not at this time moved against plaintiffs' claims of deliberate indifference or causation.  Plaintiffs' discussions, and *M.D.'s* resolution of those elements, are thus irrelevant for purposes of this motion.

Plaintiffs' remaining arguments are also unavailing.  Plaintiffs assert that *Clark K. v. Guinn*, No. 2:06-CV-1068-RCJ-RJJ, 2007 WL 1435428 (D. Nev. May 14, 2007), and *Charlie H. v. Whitman*, 83 F. Supp. 2d 476, 504-8 (D.N.J. 2000), relate to "Defendants' further argument that several of Plaintiffs' claims for relief draw from other sources than the Fourteenth Amendment[.]"  (Resp. at 21-22.)  Not so.  Both of those cases, relying on Supreme Court's decision in *DeShaney*, squarely addressed whether the Fourteenth Amendment—not "other sources"—extends to the right not to be retained in custody longer than necessary and to be placed in the least restrictive setting.  And both cases squarely rejected the argument that the Fourteenth Amendment was so expansive as to extend to those alleged rights.

Plaintiffs' reliance on *Garcia v. Cnty. Of San Diego*, No. 15-CV-189JLS(NLS), 2018 WL 3019931 (S.D. Cal. June 18, 2018), *recon. den.*, 2018 WL 6334286 (S.D. Cal. Dec. 5, 2018), *rev. pen.*, Jan. 7, 2019, likewise does not support their arguments.  There, the district court clarified on reconsideration that the facts of that case were "extreme" and that after the child was removed from her parents "without reasonable cause," the child was "deprived for a period of many months of the benefit of the medical treatment her mother (and her physician and herself) deemed advisable, *i.e.*, psychiatric outpatient treatment[.]"  *Garcia,* 2018 WL 6334286 * 5.  The court thus concluded that a genuine issue of material fact existed as to whether the state had unjustifiably interfered with the parents' right to make medical treatment decisions.  In other words, the question that the court had to resolve was not whether, in isolation, a foster child has a due process right to be placed in a particular facility or receive a specific therapy.  Rather, in the context of that case, the question was the extent to which a child and her parents have the right to

make critical medical decisions, including the kinds of therapies and programs that a child receives after being removed from her parents without reasonable cause.

In short, plaintiffs' attempts to defend the overbreadth of their due process claim fail. The Court should dismiss the due process claim to the extent that it exceeds the well-established, limited bounds of the rights protected by due process.

## III.    The Court should dismiss plaintiffs' familial association claim (First Claim for Relief).

The First, Ninth, and Fourteenth Amendment right to "familial association" is even more limited than the rights under the Due Process Clause.  The right to familial association is itself "entirely judge-made; it does not appear in the text of the Constitution itself."  *Keates v. Koile*, 883 F.3d 1228, 1235 (2018).  Thus, while "the Supreme Court has held the parent-child relationship to be constitutionally protected, courts nevertheless have been loathe to impose a constitutional obligation on the state to ensure a particular type of family life or to create such an obligation 'through the penumbral constitutional ... right to familial privacy.'"  *Marisol A.by Forbes v. Giuliani*, 929 F. Supp. 662, 676 (S.D.N.Y. 1996) (quoting *B.H. v. Johnson*, 715 F. Supp., 1387, 1397 (N.D.Ill. 1989)).

Several courts have thus dismissed claims asserting that the state provided insufficient services aimed at reunifying a family, absent facts establishing that a state denied all visitation. *See e.g., Marisol A*., 929 F. Supp. at 676-677 (dismissing claim challenging "defendants' general failure to provide services that function to preserve the family unit" where plaintiffs did not allege facts suggesting that they had been denied visitation rights); *see also Charlie H*., 83 F. Supp. 2d at 513-14 ("the so-called right to family integrity will not be extended to situations where a plaintiff ... alleges limited familial contact, as compared to no contact"); *B.H. v. Johnson*, 715 F. Supp. at 1396-98 (dismissing substantive due process claims alleging that the state failed to provide training necessary to reunite children with their families or to ensure sufficient parental and sibling visitation).

Plaintiffs allege a failure to engage in "meaningful permanency planning," depriving them of the opportunity to be "placed in a permanent home and maintain a family relationship[.]" (Resp. at 22.)  That falls far short of any violation of the right to familial association.

The cases on which plaintiffs rely on do not compel a different result.  In *Kenny A. v. Perdue*, the Northern District of Georgia ruled that the constitution includes within it "the right of children in foster care to have meaningful contact with their siblings and parents."  No. CIVA 102-CV-1686-MHS, 2004 WL 5503780, at *7 (N.D. Ga. Dec. 13, 2004).  Because Georgia did not provide sufficient parent-child visitation, did not ensure that siblings were placed together or given sufficient visitation when separated, and did not facilitate reunification of children with "their parents," the Court denied the state's motion for summary judgment.

In contrast, plaintiffs here assert entitlement to a very different familial association right.  Rather than asserting a denial of continuing contact and reunification with their *existing* family members, plaintiffs instead assert that the State is constitutionally required to "provide reasonable efforts to obtain a permanent home and family[.]"  (Compl. ¶ 302.)  *Kenny A.* does not stand for the broad proposition that the right to familial association requires the state to create a family, only that the state must provide adequate visitation and reunification opportunities for existing family members.

Similarly, in *Brian A. ex rel. Brooks v. Sundquist*, the court described the complaint as alleging that "systematic actions and inactions have violated [plaintiffs'] rights under the First and Ninth Amendments not to be deprived of family relationships absent compelling reasons."  149 F. Supp. 2d 941, 956 (M.D. Tenn. 2000).  The court, without elaboration, ruled that the allegations were sufficient without any description of what "actions and inactions" violated the right to familial association.  That conclusory holding does not stand for a broader proposition that the First, Ninth, and Fourteenth Amendments require the state to provide the kinds of services and efforts that plaintiffs here allege.

**IV.    Alternatively, the Court should order the complaint be made more definite and certain.**

In the alternative, the State asks this court to order plaintiffs to make their First Claim for Relief more definite and certain.  As noted in the State's original motion, the complaint is missing the critical connection between the plaintiffs' individual circumstances and the due process deprivation.  (Mot. to Dismiss at 19.)  Plaintiffs respond by arguing that the complaint sufficiently alleges facts in support of their claims.  (Resp. at 23, 24.)  Once more, plaintiffs are refuting arguments that the State has not made.  The State does not argue that the complaint fails to adequately set forth *facts*.  Rather, the State pointed to the absence of any express connection between the 60 pages of factual allegations and the substantive due process allegations, without which the State cannot fairly respond to the allegations.  *Sameer v. Right Moves 4 U*, 2018 WL 1875536, at *3 (E.D. Cal. Apr. 19, 2018) (granting the motion to dismiss because of the absence of a connection between the 300 paragraphs of factual allegations and the elements of the claims).  By way of example, the complaint talks at length about the harm arising from multiple placements.  (*E.g.*, Compl. ¶ 286-299.)  But plaintiffs do not specifically link that harm to a cognizable liberty interest.  This Court should therefore require the complaint to be made more definite and certain, even if it does not dismiss the complaint altogether.

**V.    There is no private right of action to enforce plaintiffs' requested relief under the CWA (Second Claim for Relief).**

The CWA requires that states "develop a case plan" for each foster child and create a "case review system" to review those plans.  42 U.S.C. § 671(a)(16).  The Ninth Circuit has determined that foster children have a private right of action to enforce those statutory provisions.  *Henry A. v. Willden*, 678 F.3d 991, 1006-08 (9th Cir. 2012).  But neither the statute nor the Ninth Circuit guarantee a federally enforceable case plan that "ensures safe and proper care" and "appropriate services," as plaintiffs assert they do.  (Resp. at 26; Compl. ¶¶ 309.a., d.)

Rather than respond to the majority of the State's argument that the CWA does not create a privately enforceable right of action to enforce the relief they seek, plaintiffs cite a single case that stands only for the proposition that states must *create* a case plan for each child.  (Resp. at

26-27) (citing *Henry A.*, 678 F.3d 1006-08)).  But *Henry A.* is silent as to the *implementation* of a plan at all, let alone "ensuring safe and proper care" or "appropriate services."  *Henry A.* recognized that the CWA "unambiguously requires the State to provide for the *development* of a case plan for each child" and found that individual plaintiffs could enforce the statute's requirement that the state provide for a case plan and review process for such plans.  *Id.* (emphasis added).  Because the statute is silent on the implementation or effectiveness of the case plan a state develops, however, under the logic of *Henry A.*, there is no right to federal court enforcement of those goals.

The Southern District of New York relied on *Henry A.* to reach the same conclusion. *Barricelli v. City of New York*, No. 15 CV 5273-LTS-HBP, 2016 WL 4750178, at *6 (S.D.N.Y. Sept. 12, 2016).  The court first relied on *Henry A.* as support for its conclusion that the plaintiffs possess a private right of action to enforce the *existence* of a case plan.  *See id.*  The court then addressed the plaintiffs' "different sort of written plan claim"—exactly the argument that plaintiffs present here—that "the written case plan provisions establish an individually enforceable right to implementation of a written plan that ensures safe and appropriate outcomes."  *Id.*  Referring back to the paragraph in which it reached the same conclusion as *Henry A.*, the court recognized that the statute "is phrased strictly in terms of the requirement of a plan."  *Id.*  Thus, because "nothing in the statutory language specifically requires implementation or achievement of all of the particulars of the plan much less successful achievement of outcomes . . . the plan principally serves notice and accountability functions in aid of reviews of goals, services and outcomes."  *Id.*

Contrary to plaintiffs' assertion that this results in only a "theoretical right" to a plan, both state and federal law provide a manner and place for a meaningful review of case plans, including an evaluation of their effectiveness: state juvenile courts.  *See* 42 U.S.C. § 671(a)(16); ORS 419B.476.  Far from "theoretical," the plans provide critical functions for the children that they serve, and those plans are reviewed, assessed, and modified in Oregon juvenile courts, as

the statute intended.  The fact that the detailed review occurs in the state court with the expertise of juvenile court judges does not render it theoretical.

**VI.    The complaint does not plausibly allege violation of the disability statutes (Third and Fourth Claims for Relief).**

    **A.    The complaint fails to allege disability discrimination in violation of the disability statutes.**

        **1.    The disability statutes prohibit discrimination on the basis of disability; they do not require adequate treatment for a disability.**

The complaint alleges that the State failed to adequately treat plaintiffs' disabilities. (Compl. ¶ 320, 327.)  It demands that Oregon provide every disabled foster child with a therapeutic foster home capable of treating that child's particular mental illness.  (*See* Compl. ¶331(b)(i) (demanding "family foster homes with supportive services" for all disabled children); (b)(ii) (demanding "an adequate array of community-based therapeutic services" for all disabled children); (b)(iii) (demanding that the state "develop an adequate array of community-based therapeutic foster homes" for all disabled children).)

Those allegations do not state a claim under the ADA or Rehabilitation Act (collectively, the "disability statutes").  That is because the disability statutes' protections are limited to "discrimination because of disability[.]"  *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010).  The disability statutes do not protect against "inadequate treatment for disability."  *Id*.  *Simmons* illustrates the distinction between discrimination because of disability and inadequate treatment for the same.  In *Simmons*, the estate of a deceased former prisoner alleged that depression caused the prisoner to attempt suicide, which in turn prevented him from participating in outdoor recreation.  The estate asserted that the prison violated the disability statutes by failing to provide "programs or activities to lessen [the prisoner's] depression[.]"  *Simmons*, 609 F.3d at 1022  (internal alterations omitted).  The Ninth Circuit disagreed and held that the theory was not actionable under the ADA because failing to lessen depression would amount to inadequate treatment for a disability, rather than discrimination, and thus was not covered under the ADA.  *See id.*

The Ninth Circuit's conclusion is consistent with the published opinions of every circuit court to have addressed the issue. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (affirming dismissal of prisoner's ADA claim alleging "incompetent treatment of his paraplegia"); *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 284 (1st Cir. 2006) (rejecting ADA claim brought by prisoner alleging failure to adequately diagnose and treat ALS); *United States v. Univ. Hosp., State Univ. of New York at Stony Brook*, 729 F.2d 144, 157 (2d Cir. 1984) (rejecting Rehabilitation Act claim brought by disabled infant alleging state hospital failed to adequately treat birth defects). In *Olson v. Allen*, this Court recently reaffirmed that a disabled individual in state custody cannot sue the state alleging disability discrimination based on a "failure to provide adequate mental health treatment." No. 3:18-CV-001208-SB, 2019 WL 1232834, at *5 (D. Or. Mar. 15, 2019).

### 2. Because the complaint fails to plead discrimination because of disability, there is no right to any reasonable modifications.

Plaintiffs do not grapple with their failure to plead anything more than inadequate treatment for disability. Instead, they observe that the disability statutes may require a state to make "reasonable modifications" to existing government programs. (*See* Resp. at 31-32.) But the complaint allegations do not entitle plaintiffs to any reasonable modification because the complaint does not allege discrimination in the first instance. *See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 & n. 1 (9th Cir. 1997) (holding that the duty to provide a reasonable modification "arises only when a policy discriminates on the basis of disability.") Because plaintiffs failed to allege actionable discrimination, they are not entitled to any reasonable modifications.

### 3. The complaint also does not allege failure to provide meaningful access to existing services.

To be sure, one form of disability discrimination is the failure to provide meaningful access to *existing* government services. *Alexander v. Choate*, 469 U.S. 287, 301 (1985) (holding that the disabled "must be provided with meaningful access to the benefit that the [state] offers"). But plaintiffs have not pleaded this form of discrimination; in fact, plaintiffs candidly admit that

their request for therapeutic foster homes for all disabled children goes "[b]eyond ensuring equal access to services" and instead seeks "unique services" for the disabled.  (Resp. at 31.)  The complaint's demand for "unique services" for the disabled is not actionable under the disability statutes.  *Wright v. Giuliani*, 230 F.3d 543, 548 (2d Cir. 2000) ("[T]he disabilities statutes do not require that substantively different services be provided to the disabled, no matter how great their need for the services may be."); *see also* U.S. Dep't of Justice, ADA Title II Technical Assistance Manual, at II-3.3000 (available at https://www.ada.gov/taman2.html (last accessed on Aug. 7, 2019) ("[T]he ADA generally does not require a State or local government entity to provide additional services for individuals with disabilities that are not provided for individuals without disabilities.").

Nor can plaintiffs redefine the service provided by the Oregon foster care system in order to assert entitlement to a broader service than actually offered.  Plaintiffs argue that this Court should "broadly construe the service" offered by the foster care system as "all needed medical and mental health care[,]" and that under that framing, plaintiffs are entitled to treatment in therapeutic foster homes as a type of "health care." (Resp. at 34.)  But the Supreme Court has cautioned that courts should not define existing government services by looking to "amorphous objective[s]" such as "adequate health care." *Alexander*, 469 U.S. at 303.  Instead, courts should look to "the particular package" of existing services that the state offers and assess whether a disabled plaintiff was denied access to those services.  *See id.* (rejecting disabled Medicaid recipients' demand for more days of in-patient care than allowed to Medicaid recipients generally).  Here, the "particular package" of services actually offered by the Oregon foster care system is the existing array of foster care placements.  Plaintiffs have meaningful access to that array of foster care placements.  Provision of the different "array of community-based placements and services" that plaintiffs seek, (*see* Compl. ¶38(b)), is not mandated by the disability statutes. *See, e.g.*, *Alexander*, 469 U.S. at 301.

**Page 18 - REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO MAKE MORE DEFINITE AND CERTAIN**

4.    **The authority that plaintiffs cite is inapposite.**

The authority that plaintiffs cite for the proposition that the disability statutes themselves require a state to provide adequate mental health treatment is not on point for several reasons. First, plaintiffs cite the section of DOJ's Technical Assistance Manual describing *permissible* programs for the disabled as if it described *required* programs. *See* U.S. DOJ, ADA Title II Technical Assistance Manual, at II-3.4000 ("[s]eparate programs are *permitted* where necessary to ensure equal opportunity." (emphasis added); DHHS Fact Sheet (describing program modifications a state "may include" in its efforts to accommodate disabled parents). (Resp. at 31-32.) Neither of these guidance documents require particular programs, but merely outline possibilities. Inconsistency with their suggestions does not establish a violation of the ADA.

Further, the "fact sheet" from the Department of Health and Human Services that plaintiffs cite is not on point. That fact sheet, like the DOJ guidance, describes the state's obligations when terminating a disabled parent's parental rights. This has no relevance to the state's obligations to disabled children in its custody. Further, the fact sheet is a two-page series of bulleted lists. One such list includes "respite care" as the type of accommodations a state "may include" in its attempts to accommodate disabled parents. Because this portion of the fact sheet is permissive and not written in complete sentences, the fact sheet never articulates under what circumstances (if any) "respite care" would ever be a required program modification. In any event, the Attorney General, not DHHS, is tasked with implementing the ADA. 42 U.S.C. 12134(a) ("[T]he Attorney General shall promulgate regulations in an accessible format that implement this part.").

The case law cited by plaintiffs is also distinguishable, outdated, and not persuasive. (*See* Resp. at 32.) In the District of New Hampshire case, the plaintiffs did not seek better medical treatment, but instead alleged that they had been "segregate[d]" from their non-disabled peers. *Eric L. By and Through Schierberl v. Bird,* 848 F.Supp 303, 313 (D.N.H. 1994) The Southern District of New York case predates the Second Circuit's development of case law distinguishing between "reasonable accommodations" and "additional or different substantive benefits."

**Page 19 - REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO MAKE MORE DEFINITE AND CERTAIN**

*Wright*, 230 F.3d at 548 (describing "recent" developments in the case law). Indeed, a different district court in that circuit has since applied the operative case law and rejected foster children's disability discrimination claims seeking therapeutic foster home placements. *Charlie H.*, 83 F. Supp. 2d at 501 (holding that such placements went to "the substance of services provided," and were therefore not actionable).

In sum, the complaint's claims under the disability statutes fail because they challenge the adequacy of the state's mental health treatment, which by their own admission is a "unique service[,]" not a reasonable modification necessary to access existing services.

**B.    Plaintiffs' integration mandate theory similarly fails because plaintiffs challenge the level of services provided by the foster care system, not their segregation from non-disabled foster care children.**

Plaintiffs' integration mandate theory also fails to state a claim. The "integration mandate" of the disability statutes requires that, if a state provides services to the disabled, it must do so "in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. 35.130(d). "[I]ntegrated" means enabling interactions with non-disabled individuals. 28 C.F.R. § 35.130, Part 35, App. B (most integrated setting appropriate refers to settings that enables individuals with disabilities to interact with nondisabled persons). The integration mandate only applies to services that the state "in fact provide[s]"; it does not require the state to provide a particular "level" of services. *Olmstead v. L.C. ex. rel. Zimring,* 527 U.S. 581, 603 n. 14 (1999). The integration mandate is concerned with "the *location* of services, not *whether* services will be provided" in the first place. *Townsend v. Quasim*, 328 F.3d 511, 517 (9th Cir. 2003). Thus, the integration mandate "does not require states to create new programs to help disabled persons." *Olson v. Allen*, 2019 WL 1232834 at *4 (citing *Olmstead*).

As the cases cited by plaintiffs demonstrate, the typical integration-mandate violation involves a state program that provides services to the disabled but only in a segregated, institutionalized setting. *See Olmstead*, 527 U.S. at 583 (state program that provided disabled individuals with psychiatric care in psychiatric hospitals instead of community-based placements); *M.R. v. Dreyfus*, 663 F.3d 1100, 1104 (9th Cir. 2011), *opinion amended and*

*superseded on denial of reh'g*, 697 F.3d 706 (9th Cir. 2012) (cuts to state program of in-home care to disabled specifically designed to be a substitute for care in "a hospital or a nursing facility or intermediate care facility"); *Townsend*, 328 F.3d at 514 (state program that provided long-term care to disabled individuals in nursing homes instead of community-based placements).

Here, the members of the ADA sub-class do not allege that the Oregon foster care system segregates disabled foster children from their non-disabled peers. Instead, they challenge the existing array of foster placements, which they contend consists of too few "family-like foster placement[s]." (Compl. ¶ 264.) When the "service" that the state provides is state custody itself, courts have held that a challenge to the restrictiveness of the custodial setting is a challenge to the *level* of services, not the *location* of services, and is therefore not an integration mandate violation. *See M.K. ex rel. Mrs. K. v. Sergi*, 554 F. Supp. 2d 175, 198 (D. Conn. 2008) (rejecting integration mandate claim based on disabled child's placement in residential foster care facilities); *see also Simmons*, 609 F.3d at 1021 (rejecting juvenile prisoner's ADA claim seeking transfer from two-room cell to a "more appropriate facility" because current cell "was the cell customarily assigned to juveniles.").

In their response, plaintiffs assert that their complaint challenges the housing of members of the ADA sub-class in "restrictive facilities [that] house children with disabilities exclusively." (Resp. at 29.) Plaintiffs do not support this assertion with citation to any portions of the complaint, and it cannot be squared with the actual complaint allegations. The complaint alleges that five out of six members of the ADA sub-class are housed in "residential facilities," "shelters," or similar placements, and does not allege that these facilities and shelters house the disabled exclusively. (Compl. ¶109 ("residential facility"); ¶ 142 ("shelter facility"); ¶178 ("homeless shelter"); *see also* ¶120 (foster home), ¶181 ("Home for Boys")). Only one member of the ADA sub-class (Unique) is housed in a "Residential *Treatment* Facility." (*Id.* ¶88 (emphasis added).)

Further, and contrary to the assertions in the response, the complaint challenges the *number* of foster homes generally, not the unlawful segregation of the disabled within the

**Page 21 - REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO MAKE MORE DEFINITE AND CERTAIN**

existing array of foster care placements. (*See* Compl. ¶ 262 ("[T]he Oregon Department of Human Services has not recruited and retained a sufficient number of foster homes[.]"); ¶ 269 (challenging "acute shortage of adequate foster home placements"); ¶ 298 ("The number of therapeutic family foster homes, with foster parents who have experience and training in dealing with emotional and behavioral needs, has diminished sharply.")). Plaintiffs' request for a greater number of foster homes is a challenge to the level of services provided by the foster care system, which is not cognizable under the disability statutes.

## CONCLUSION

For the reasons discussed above and in the State's motion to dismiss, this Court should abstain under *O'Shea*. Alternatively, this Court should dismiss the first claim to the extent that the complaint alleges rights not encompassed within the Due Process Clause, and the remaining claims for failure to state a claim.

DATED this 22nd day of August, 2019.

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON
By:    *s/ Anna M. Joyce*

David B. Markowitz, OSB #742046
DavidMarkowitz@MarkowitzHerbold.com
Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com
Anna M. Joyce, OSB #013112
AnnaJoyce@MarkowitzHerbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Lauren F. Blaesing, OSB #113305
LaurenBlaesing@MarkowitzHerbold.com
Telephone: (503) 295-3085

*Special Assistant Attorneys General for Defendants*

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us
Renee Stineman, OSB #994610
renee.stineman@doj.state.or.us
Sheila H. Potter, OSB #993485
sheila.potter@doj.state.or.us

*Of Attorneys for Defendants*

**Page 22 - REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, TO MAKE MORE DEFINITE AND CERTAIN**

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 7,722 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED this 22nd day of August, 2019.

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON

By:    *s/ Anna M. Joyce*

David B. Markowitz, OSB #742046
DavidMarkowitz@MarkowitzHerbold.com
Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com
Anna M. Joyce, OSB #013112
AnnaJoyce@MarkowitzHerbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Lauren F. Blaesing, OSB #113305
LaurenBlaesing@MarkowitzHerbold.com
Telephone: (503) 295-3085

*Special Assistant Attorneys General for Defendants*

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us
Renee Stineman, OSB #994610
renee.stineman@doj.state.or.us
Sheila H. Potter, OSB #993485
sheila.potter@doj.state.or.us

*Of Attorneys for Defendants*

896923