**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Anna M. Joyce, OSB #013112**
AnnaJoyce@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Tel:  (503) 295-3085
Fax:  (503) 323-9105

Special Assistant Attorneys General for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S. by his next friend Paul Aubry; RUTH T. by her next friend Michelle Bartov; BERNARD C. by his next friend Ksen Murry; NAOMI B. by her next friend Kathleen Megill Strek; and NORMAN N. by his next friend Tracy Gregg, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KATE BROWN, Governor of Oregon in her official capacity; FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; REBECCA JONES GASTON, Director, Child Welfare in her official capacity; and OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>Defendants. | No. 6:19-cv-00556-AA<br><br>**DECLARATION OF LACEY ANDRESEN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY AS CLASS ACTION** |

**Page 1 -   DECLARATION OF LACEY ANDRESEN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY AS CLASS ACTION**

I, Lacey Andresen, declare:

1. I am the Deputy Director of Child Welfare Practice & Program for the Oregon Department of Human Services ("DHS"). I make this declaration of my own personal knowledge. The following statements are true and correct and, if called upon, I could competently testify to the facts averred herein.

2. I have worked in child welfare for DHS for 16 years, where I started as a caseworker in 2004, and held that position for five years. I worked as a supervisor for another five years, supervising eight caseworkers. Since 2014, I worked in two program areas related to increasing permanency. I served as the consultant overseeing a grant project designed to expand recruitment and retention of foster parents through partnerships and permanency planning. Then, I was the Title IV-E Waiver Program Manager and designed and implemented a specific intervention aimed at enhancing timely permanency and wellbeing for children in foster care. Prior to my current position, I was the Child Permanency Program Manager, from August 2017 until February 2020. As the Permanency Program Manager, I oversaw policy, procedure, and training around three primary areas of practice in child welfare: reunification, planning for permanency, and providing post-permanency supports to adoptive families or when a child or youth is placed in guardianship through Child Welfare. In all of my positions at Child Welfare, I have been engaged in the process of planning for permanency that is directly related to the creation and implementation of case plans.

3. The Adoption and Foster Care Analysis and Reporting System ("AFCARS") collects case-level information from DHS regarding the children and families it serves. OR-Kids is a database used by DHS. Caseworkers enter information, including case plan information, into OR-Kids. That information is then transmitted to AFCARS for federal reporting purposes.

4. The federal government collects AFCARS data from Child Welfare twice a year. Using the AFCARS data, the federal government prepares reports aggregating child welfare data including the number of children in foster care with a "final" case plan. A case plan is "final" when OR-Kids reports that the plan contains the required information and the supervisor has approved it.

Page 2 -   DECLARATION OF LACEY ANDRESEN IN SUPPORT OF DEFENDANTS'
            OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY AS CLASS ACTION

5.  AFCARS undercounts the number of foster children who have a "final" case plan. There are two reasons for that undercounting.

6.  DHS began using OR-Kids around 2011. The expectation was that OR-Kids had a feature allowing caseworkers to enter child and family information that could be used to populate the required fields for the case plan and the reports that caseworkers are required to provide at jurisdiction and disposition hearings. That feature did not work as expected. For example, it created an unusable, lengthy, repetitive document that made it difficult for juvenile courts to use at jurisdiction and disposition hearings.

7.  Because of the challenges with OR-Kids, DHS and juvenile judges created a workgroup. That workgroup created what is referred to as a "Court Report." The Court Report includes all the case planning information required by federal and state statutes and for the juvenile courts to make legal findings. The Court Report is repetitive of the case plan and is not generated in OR-Kids but remains part of the foster child's case file. Consequently, that data is not reported to AFCARS even though a case plan exists for those children.

8.  The workgroup's solution has unintended consequences, one of which is that it results in the under-reporting of case plans for AFCARS purposes. DHS has been working on a solution that predates this lawsuit. DHS has developed an OR-Kids based solution ("Family Report") that is currently being tested in three counties. The Family Report contains all the information to satisfy federal and state requirements for a case plan, all the requirements of the juvenile court to determine jurisdiction and disposition, and exists in OR-Kids so that information can be reported to AFCARS.

9.  The second reason that AFCARS undercounts the number of case plans has to do with what counts as a "final" case plan for AFCARS purposes. The lack of an entry in AFCARS related to the existence of a case plan does not mean that a case plan does not exist for that child. In some cases, the case plan does exist, but is not "final" for AFCARS counting purposes. As described above, a case plan is final when OR-Kids reports that the plan contains the required information and the supervisor has approved it. So, for example, if a caseworker has completed every field in OR-Kids, such as the family composition, safety plan, and case plan goal, and the

child has been referred for services relating to the case plan goals, but the case plan is awaiting supervisor approval, then the case plan will not be reported as "final" for AFCARS purposes, even though the plan exists, is overseen by the juvenile court, and is being used to deliver services.

10. Additionally, case plans that are missing some information also do not count as "final" even if they are substantially complete and being used to deliver services to the child. For example, a case plan that includes every other element including the family composition, safety plan, and case plan goal might still not be considered "final" for AFCARS purposes if the Expected Outcomes for the parent(s) cannot be completed because there are pending criminal legal charges that the parent has not resolved, the juvenile court has not established jurisdiction over the child, or it has not determined the appropriate disposition.

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

Dated this 30th day of July, 2020.

*s/ Lacey Andresen*
Lacey Andresen

1024141

**Page 4 -   DECLARATION OF LACEY ANDRESEN IN SUPPORT OF DEFENDANTS'
              OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY AS CLASS ACTION**