**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Anna M. Joyce, OSB #013112**
AnnaJoyce@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Tel: (503) 295-3085
Fax: (503) 323-9105

Special Assistant Attorneys General for Defendants
(Additional Counsel of Record listed on signature page)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S. by his next friend Paul Aubry; RUTH T. by her next friend Michelle Bartov; BERNARD C. by his next friend Ksen Murry; NAOMI B. by her next friend Kathleen Megill Strek; and NORMAN N. by his next friend Tracy Gregg, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KATE BROWN, Governor of Oregon in her official capacity; FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; REBECCA JONES GASTON, Director, Child Welfare in her official capacity; and OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>Defendants. | No. 6:19-cv-00556-AA<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. WILSON, DR. STEIB, MS. RIDEOUT, DR. PUCKETT, AND DR. DAY** |

Page 1 -    **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. WILSON, DR. STEIB, MS. RIDEOUT, DR. PUCKETT, AND DR. DAY**

## INTRODUCTION

A district court must evaluate a plaintiff's experts under the *Daubert* standard at the class certification stage. Under that standard, expert opinion must be based on more than the qualifications of the expert: it must be based on reliable methodology underlying the opinion. Plaintiffs' experts' opinions contain serious methodological errors and plaintiffs' response to the State's Motion to Exclude fails to address those errors. Because plaintiffs cannot meet the *Daubert* burden for any of their five experts, the Court should exclude their testimony.

## ARGUMENT

**I.    The Court should exclude expert opinions that are based on flawed methodologies at the class certification stage.**

**A.    The Court may exclude expert opinions at the class certification stage.**

This Court must evaluate plaintiffs' experts under the standards set forth in *Daubert*. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018), *cert. dismissed*, 139 S.Ct 1651 (2019) (in "evaluating challenged expert testimony in support of class certification, a district court should evaluate admissibility under the standard set forth in *Daubert*") (citation omitted). Although a court should not rely "on formalistic evidentiary objections" at the class certification stage, *id.*, the court may exclude unreliable expert testimony. *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984 (9th Cir. 2020) (excluding unreliable expert report at class certification stage). "Scientific evidence is reliable if the principles and methodology used by an expert are grounded in the methods of science." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (quotation marks and citation omitted). The court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993).

Plaintiffs misunderstand these standards, arguing that the State may only challenge "the weight each expert opinion should receive[.]" (*See* Pls.' Opp'n to Defs.' Mot. to Exclude Expert Testimony ("Resp.") (Dkt. 160) at 5-6 (emphasis omitted).) But *Grodzitsky* unquestionably provides that this Court may—and should—exclude unreliable expert testimony. In *Grodzitsky*,

the plaintiff proffered an expert report in support of class certification that "provide[d] no industry standards," "relie[d] on no peer-reviewed literature," and cited no studies to substantiate his conclusion. 957 F.3d at 983 (alterations in original). The expert also "failed to identify a common solution" to the alleged problems and "utiliz[ed a] small sample size to prove a common defect[.]" *Id.* at 985. Based on those methodological deficiencies, the Ninth Circuit concluded that the "district court properly excluded [the plaintiff's] opinion under *Daubert*." *Id.* As discussed below, plaintiffs' expert reports have many of the exact same methodological flaws: they are not based on industry standards, peer-reviewed literature, or studies applicable to Oregon, and they rely on inappropriately small sample sizes. Under Ninth Circuit precedent, the Court may exclude those reports and decline to rely on them during the class certification stage.

> **B.     The *Daubert* standard applies to expert testimony about the social sciences, including in child welfare cases.**

Contrary to plaintiffs' arguments, the Ninth Circuit and plaintiffs' own cases demonstrate that *Daubert* applies to expert opinions about the social sciences. "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (citation omitted). The court's "gatekeeping" function is no different for child welfare cases than any other type of case. Indeed, in the cases cited by plaintiffs, district courts evaluated expert testimony in child welfare cases according to *Daubert*'s standards. *Kenny A. v. Perdue*, No. 102-CV-1686-MHS, 2004 WL 5503780, *12 (N.D. Ga. Dec. 13, 2004) (applying *Daubert*); *M.D. v. Perry*, 294 F.R.D. 7, 37 (S.D. Tex. 2013) (noting that the court excluded some testimony on *Daubert* grounds).

To avoid *Daubert*'s requirements for establishing the reliability of scientific evidence, plaintiffs suggest that their experts' opinions are "non-scientific" and based on "personal knowledge and experience." (Resp. at 3.) If that is the case, the court should afford those experts' opinions little, if any, weight. None of plaintiffs' experts have personal knowledge or

**Page 3 -    REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. WILSON, DR. STEIB, MS. RIDEOUT, DR. PUCKETT, AND DR. DAY**

experience with Oregon's child welfare system.  Dr. Day wrote her report "without the benefit of knowing any of the Oregon laws that govern foster care youth who are aging out[.]"  (Decl. of Lauren Blaesing in Support of Defs.' Motion to Exclude ("Blaesing Decl.") (Dkt. 115), Ex. 6 at 92:10-23.)  Dr. Steib and Ms. Rideout did not know even basic information about the Oregon child welfare system, like the number of children in care, the average caseload, or DHS's policies regarding trauma-informed case, and neither had worked in Oregon.  (*Id.*, Ex. 3 at 91:1-92:21, 127:21-25; *id.*, Ex. 4 at 69:8-71:18.)  Dr. Wilson based many of her conclusions on a study conducted in Los Angeles County.  (Defs.' Mot. to Exclude Expert Testimony ("Mot.") (Dkt. 114) at 3.)  Thus, even under the "non-scientific" standard that plaintiffs claim is appropriate, the Court should exclude plaintiffs' experts' opinions.

Moreover, despite plaintiffs' contention, plaintiffs' experts' opinions are not "non-scientific."  The basis of Dr. Wilson's opinion is the social science data gathered from her Los Angeles County study, which she inappropriately applied to Oregon.  (Blaesing Decl. Ex. 2 at 122:17-124:23.)  Dr. Steib's and Ms. Rideout's opinion is based on their flawed analysis of data contained in the case file.  (*Id.*, Ex. 4 at 163:15-19; *id.*, Ex. 3 at 86:11-17.)  Dr. Puckett's opinion is based on analysis of data in Oregon's Adoption and Foster Care Analysis and Reporting System ("AFCARS") file, although he did not personally analyze most of the underlying data.  (*Id.,* Ex. 5 at 151-25:152:16, 191:10-19.)  The basis of Dr. Day's opinion were the outcomes for aging-out youth in Oregon, not her knowledge or experience with Oregon's aging-out population.  (Blaesing Decl. Ex. 6 at 92:10-23.)  The Court should apply *Daubert*'s standards for evaluating scientific opinion to plaintiffs' experts' scientific opinions.

### C.    The qualifications of plaintiffs' experts, alone, is insufficient to establish admissibility.

Plaintiffs suggest that the qualifications of their experts alone justify reliance on their opinions.  But an expert's qualifications, alone, cannot establish the admissibility of her opinion: "Overemphasis on qualifications over testimonial reliability reflects a pre-*Daubert* sensibility." *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 801 (N.D. Ill.

2005), *amended*, No. 01 C 9389, 2005 WL 8178971 (N.D. Ill. Sept. 8, 2005) (citation omitted).

To satisfy *Daubert*, "an expert's conclusion must meet the trilogy of restrictions on expert

testimony: qualification, reliability, and fit." *McClellan v. I-Flow Corp.*, 710 F.Supp.2d 1092,

1099 (D. Or. 2010) (quotation marks and citations omitted).  An expert's experience in the field

does not overcome fundamental methodological errors.  *See, e.g., Ollier v. Sweetwater Union

High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014) ("It is well settled that bare qualifications

alone cannot establish the admissibility of expert testimony.  Rather, we have interpreted

Rule 702 to require that expert testimony be both relevant and reliable.") (internal quotations,

alterations, and citations omitted); *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir.

2002) ("These qualifications are relevant, but, standing alone, they neither explain nor establish

the reliability of Broderick's [expert testimony].  It is well settled that bare qualifications alone

cannot establish the admissibility of scientific expert testimony.") (internal citation omitted);

*Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464 (9th Cir. 2014) (holding that trial

court erred by admitting expert's testimony based on qualifications without "finding [testimony]

to be relevant and reliable under *Daubert*.").  Thus, plaintiffs' experts' qualifications alone do

not justify their admissibility.

**II.    The Court should exclude plaintiffs' experts' opinions because they are based on
flawed methodologies.**

   **A.    Dr. Wilson's report has no empirical basis.**

   Dr. Wilson admitted that she had no "empirical basis" to conclude that the Los Angeles

County data underlying her opinion was "representative of all other counties and all other

states."  (Blaesing Decl. Ex. 2 at 123:1-124:3-6.)  *Daubert* requires some empirical basis for an

expert's opinion.  *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1088

(10th Cir. 2000) ("It is axiomatic that an expert, no matter how good his credentials, is not

permitted to speculate.").  Because there is no connection between Dr. Wilson's study in Los

Angeles County and the demographics of Oregon, the Court should exclude Dr. Wilson's

opinion.

**Page 5 -    REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT
TESTIMONY OF DR. WILSON, DR. STEIB, MS. RIDEOUT, DR. PUCKETT,
AND DR. DAY**

In addition, Dr. Wilson's testimony contradicts her peer-reviewed study.  Dr. Wilson sought to answer how many children in Oregon's system identified as LGBTQIA+, calculating that Oregon's foster population included at least 592 such children.  She based that calculation entirely on a study she conducted of foster youth in Los Angeles County.  (Decl. of Marcia Lowry in Support of Pls.' Opp'n to Defs.' Mot. to Exclude Expert Testimony ("Lowry Decl.") (Dkt. 161), Ex. 1 at 7-8.)  But her study specifically prohibited generalizing the results to other jurisdictions.  (*Id.* at 8.)  Her expert opinion does just what she cautioned against in her peer-reviewed study, generalizing the results of one county to an entire state.  (*Id.*)  The Court should not credit an opinion that contradicts the conclusions of the study on which it is based.

Plaintiffs attempt to rehabilitate Dr. Wilson's opinion by pointing to two other studies mentioned in her report.  But neither of those studies examined the number of LGBTQIA+ children in Oregon.  (Resp. at 7 (recognizing that neither addressed Oregon).)  There is no evidence in the record that the results of those foreign studies can be generalized to Oregon.  In fact, the only available evidence—Dr. Wilson's Los Angeles County Study—establishes that the results are not transferable between jurisdictions.  Thus, Dr. Wilson's opinion fails to satisfy the reliability prong of the *Daubert* standard, and the Court should exclude her opinion.

### B.    Dr. Steib's and Ms. Rideout's opinions are based on flawed methodologies.

Dr. Steib's and Ms. Rideout's opinion is based almost entirely on the review of the case files of just the ten named plaintiffs.  Dr. Steib and Ms. Rideout did not review other essential standards like Oregon's Child Welfare Procedure Manual, and neither knew nor understood basic information about Oregon's child welfare system, like the number of children in care. (Blaesing Decl. Ex. 4 at 56:18-57:11, 69:8-71:18; *id.*, Ex. 3 at 91:1-92:21, 124:7-18, 127:21-25.) The case studies of the handpicked named plaintiffs lack a critical control: they do not constitute a representative sample of children in care.  Courts routinely exclude expert opinions that use non-representative cases to generalize about a broader population.  *See, e.g., In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 984 F.Supp.2d 1021, 1040 (C.D. Cal. 2013) (rejecting expert opinions based on named plaintiffs' cases because "[w]ithout a random sample for the

[expert's] Report, there is no reliable way to draw conclusions about the relationship between Plaintiffs' [cases] and [the putative class] as a whole.") (citation omitted); *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 485 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011) (excluding expert testimony based on survey where expert "did not know whether the survey sample was representative [and] did not do anything to evaluate whether the sample was representative").

Dr. Steib and Ms. Rideout also failed to apply any recognizable standard to their review of the case files. Neither applied federal or Oregon standards to reach their conclusions, but rather claimed that they relied on unarticulated standards based on their experience. (Blaesing Decl. Ex. 3 at 137:21-138:2, 139:8-11; *id.*, Ex. 4 at 172:25-173:24.) But an "expert's bald assurance of validity is not enough. Rather, the party presenting the expert must show . . . some objective, independent validation of the expert's methodology." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995). Because Dr. Steib and Ms. Rideout did not rely on objective standards, the Court should exclude their opinions.

### III.    Dr. Puckett failed to verify the data calculations supporting his opinion.

Plaintiffs wrongly claim that the State does not challenge the reliability of Dr. Puckett's methodology. To be clear, the State challenges Dr. Puckett's methodology on two bases, neither of which plaintiffs dispute. First, Dr. Puckett outsourced the calculations of AFCARS data to the plaintiffs' legal team. Plaintiffs admit that their paralegal performed those calculations. (Lowry Decl. Ex. 6 at 3 ("Quantitative analyses of . . . AFCARS data . . . were conducted by [plaintiffs' paralegal] with Dr. Puckett's review and constitute much of the source information on which this report is based.") Second, Dr. Puckett could not independently verify or explain the reliability of the calculations contained in the report that he supposedly "reviewed." (Mot. at 4-5; Lowry Decl. Ex. 7 at 153:2-5 ("If there's a 'How did you crunch this number?' that's probably a Jared [plaintiffs' paralegal] question.") The Court must exclude an opinion that is based on the work of plaintiffs' legal team. *See*, *e.g.*, *In re James Wilson Assocs.*, 965 F.2d 160, 172-73 (7th Cir. 1992) ("If, for example, the expert witness (call him A) bases his opinion in part on a fact (call it

X) that the party's lawyer told him, the lawyer cannot, in closing argument, tell the jury, 'see we proved X through our expert witness, A.'"); *see also Loeffel Steel Prods., Inc.*, 387 F.Supp.2d at 809 ("If the underlying assumptions cannot be proven by admissible, competent evidence, the very nature of which would appear to require expert testimony, [the expert's] analysis . . . would have no evidentiary support and would be irrelevant.") (citation omitted).

Plaintiffs make various semantic and peripheral arguments to contend that their paralegal did not perform the analysis on which Dr. Puckett relies. They claim that their paralegal did not perform any "calculations" of AFCARS data and only "organized" it. But Dr. Puckett's report shows otherwise, listing extensive calculations performed by plaintiffs' legal team. (Lowry Decl. Ex. 6 at 25-35 (showing calculations).)

The cases cited by plaintiffs also do not help their argument. In *Tomeo*, the expert's paralegal performed clerical duties by "proofread[ing] things and mak[ing] sure things were understandable." *Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *5 (N.D. Ill. Sept. 27, 2018) (quotation marks and citation omitted). But here, plaintiffs' paralegal performed substantive calculations underlying Dr. Puckett's report. (Lowry Decl. Ex. 6 at 3 ("Quantitative analyses of . . . AFCARS data . . . were conducted by [plaintiffs' paralegal] with Dr. Puckett's review and constitute much of the source information on which this report is based.") In *Brand*, a third party, not a member of the legal team, performed substantive work to assist the expert. *Brand v. Comcast Corp., Inc.*, 302 F.R.D. 201, 214 (N.D. Ill. 2014). There, the expert personally verified the relevant work. *Id.* at 215. Here, unlike *Brand*, Dr. Puckett could not independently verify the accuracy "of the data, calculations, and assumptions in [his] report," *id.*, instead referring questions regarding methodology to the plaintiffs' paralegal. (Lowry Decl., Ex. 7 at 152:8-153:8.) Therefore, neither *Tomeo* nor *Brand* support inclusion of Dr. Puckett's methodology.

## IV.    Dr. Day's opinion is not based on an assessment of Oregon's child welfare system.

Plaintiffs asked Dr. Day to "provide [her] opinion concerning Oregon's policies and practices for the provision of transition services to youth 14 and older in the legal custody of the

Oregon Department of Human Services." (Lowry Decl. Ex. 5 at 3.) But Dr. Day admitted to knowing little about Oregon's policies and practices. (Blaesing Decl. Ex. 6 at 79:2-5; 82:11-83:8, 92:10-23 (admitting that she "did not do a deep analytical assessment of Oregon's laws [or] . . . policy analysis . . . specifically . . . the State of Oregon as it relates to aging out.").) The Court should exclude Dr. Day's opinion because, by her own admission, it is not based on information relevant to Oregon's child welfare system.

Plaintiffs contend that Dr. Day's familiarity with Michigan's foster system is "sufficient." But Dr. Day's familiarity with another state's system does not qualify her to comment on Oregon's. And, as Dr. Day herself explained, plaintiffs did not give her enough time to do the type of inquiry that someone with her qualifications would need in order to produce a report that she was "proud of." (*Id*. at 60:12-20.) Thus, her methodology does not provide a reliable basis for any opinion regarding the sufficiency of "Oregon's policies and practices for the provision of transition services to youth 14 and older."

## CONCLUSION

For the foregoing reasons, the Court should exclude plaintiffs' experts' opinions.

DATED this 31st day of August, 2020.

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON


By:    *s/ Harry B. Wilson*
　　　David B. Markowitz, OSB #742046
　　　DavidMarkowitz@MarkowitzHerbold.com
　　　Laura Salerno Owens, OSB #076230
　　　LauraSalerno@MarkowitzHerbold.com
　　　Anna M. Joyce, OSB #013112
　　　AnnaJoyce@MarkowitzHerbold.com
　　　Harry B. Wilson, OSB #077214
　　　HarryWilson@MarkowitzHerbold.com
　　　Lauren F. Blaesing, OSB #113305
　　　LaurenBlaesing@MarkowitzHerbold.com
　　　Telephone: (503) 295-3085
　　　　　*Special Assistant Attorneys General for*
　　　　　*Defendants*

Vivek A. Kothari, OSB #182089
VivekKothari@MarkowitzHerbold.com
*Of Attorneys for Defendants*

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us
Sheila H. Potter, OSB #993485
sheila.potter@doj.state.or.us
*Of Attorneys for Defendants*

1035685

**Page 10 - REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT
TESTIMONY OF DR. WILSON, DR. STEIB, MS. RIDEOUT, DR. PUCKETT,
AND DR. DAY**