**GREGORY A. CHAIMOV,** OSB #822180
gregorychaimov@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 SW Fifth Avenue, Suite 2300
Portland, OR 97201
Tel: (503) 241-2300

**MARCIA ROBINSON LOWRY** (*pro hac vice*)
mlowry@abetterchildhood.org
**DAWN J. POST** (*pro hac vice*)
dpost@abetterchildhood.org
**ANASTASIA BENEDETTO** (*pro hac vice*)
abenedetto@abetterchildhood.org
**AARTI IYER** (*pro hac vice*)
aiyer@abetterchildhood.org
**A BETTER CHILDHOOD**
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456

**EMILY COOPER**, OSB #182254
ecooper@droregon.org
**THOMAS STENSON**, OSB #152894
tstenson@droregon.org
**DISABILITY RIGHTS OREGON**
511 SW 10th Avenue, Suite 200
Portland, OR 97205
Tel: (503) 243 2081

**PAUL C. SOUTHWICK,** OSB #09141
paul@paulsouthwick.com
**PAUL SOUTHWICK LAW LLC**
8420 N Ivanhoe St.
Portland, OR 97203
Tel: (503) 806 9517

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| WYATT B., *et al.*,<br><br>              Plaintiffs,<br><br>   v.<br><br>KATE BROWN, *et al.*,<br><br>              Defendants. | Case No. 6:19-cv-00556-AA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CERTIFY AS CLASS ACTION** |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................ 2

I.  NINTH CIRCUIT PRECEDENT SUPPORTS CLASS CERTIFICATION..................... 2

    A.  Defendants' Arguments Amount to an Improper Call for a "Mini-Trial" On this Case's Merits ................................................................................. 2

    B.  The Ninth Circuit Has Upheld Class Certification in Similar Child Welfare Actions ................................................................................................ 3

II.  PLAINTIFFS HAVE DEMONSTRATED COMPLIANCE  WITH RULE 23(A)'S REQUIREMENTS ............................................................................................. 7

    A.  Plaintiffs Have Met Rule 23(a)'s Commonality Requirement .............................. 7

        1.  Plaintiffs' Motion Affirmatively Demonstrates Common Questions of Law or Fact ................................................................................... 7

        2.  Defendants Improperly Conflate Plaintiffs' Commonality Showing with the Merits ................................................................................... 10

    B.  Plaintiffs Have Met Rule 23(a)'s Typicality Requirement ................................... 15

        1.  Plaintiffs' Motion Affirmatively Demonstrates that the Claims of Named Plaintiff Children Are Typical of the Claims of the Putative Class and Subclasses ................................................................................... 15

        2.  Defendants' Typicality Analysis Misconstrues the Meaning of "Typical" Within Rule 23 ................................................................................ 16

    a.  Defendants Mistakenly Argue "Typicality" Requires Plaintiffs to be Statistically Representative in Areas of Defendants' Choosing ......................................... 17

    b.  Defendants Mistakenly Argue "Typicality" Requires Plaintiffs to Endure Identical Experiences or Suffer Identical Harm........................................................ 18

    C.  Plaintiffs' Subclasses Also Meet Rule 23's Commonality and Typicality Requirements .................................................................................. 21

        1.  Plaintiffs' Motion Affirmatively Demonstrates that the ADA Subclass Meets the Commonality and Typicality Requirements .......................... 22

        2.  Plaintiffs' Motion Affirmatively Demonstrates that the SGM Subclass Meets the Commonality and Typicality Requirements .......................... 25

        3.  Plaintiffs' Motion Affirmatively Demonstrates that the Aging-Out Subclass Meets the Commonality and Typicality Requirements ............. 28

Page i – PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CERTIFY AS CLASS ACTION

4812-4116-4775v.1 0201450-000001                  DAVIS WRIGHT TREMAINE LLP
                                                  1300 S.W. Fifth Avenue · Suite 2400
                                                  Portland, Oregon  97201 · (503) 241-2300

D.    Plaintiffs Have Met Rule 23(a)'s Adequacy Requirement ................................... 29

    1.    Defendants May Not Challenge the Qualifications of Next Friends in an Opposition to Class Certification.............................................................. 30

    2.    Kathleen Strek, Ksen Murry, and Michelle McAllister Advocate for the Named Plaintiffs' Best Interests and have Sufficient Relationships with them to Serve as Next Friends ................................................................. 31

III.    CONCLUSION........................................................................................................... 31

4812-4116-4775v.1 0201450-000001          DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alcantar v. Hobart Serv.*,
    800 F.3d 1047 (9th Cir. 2015) ........................................................................13

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013).........................................................................................3

*Arc of Wash. State Inc. v. Braddock*,
    427 F.3d 615 (9th Cir. 2015) .........................................................................22

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ............................................................... *passim*

*B.K. v. Snyder*,
    922 F.3d 957 (9th Cir. 2019) ............................................................... *passim*

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994).............................................................................4, 9

*Bhatia v. Corrigan*,
    No. C 07-2054 CW, 2007 U.S. Dist. LEXIS 39620 (N.D. Cal. May 16, 2007).....................31

*D.G. v. Yarbrough*,
    278 F.R.D. 635 (N.D. Okla. 2011)..................................................................14

*DG v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010) ...............................................................4, 9, 14

*Farmer v. Brennan*,
    511 U.S. 825 (1994)........................................................................................13

*Giles v. St. Charles Health Sys., Inc.*,
    294 F.R.D. 585 (D. Or. 2013) (Aiken, J.).........................................................2

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................................15

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) .............................................................15, 25, 26

*Helling v. McKinney*,
    509 U.S. 25 (1993)..........................................................................................20

Page iii – PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CERTIFY AS CLASS ACTION

4812-4116-4775v.1 0201450-000001          DAVIS WRIGHT TREMAINE LLP
                                          1300 S.W. Fifth Avenue · Suite 2400
                                          Portland, Oregon  97201 · (503) 241-2300

*Henry A. v. Willden*,
  678 F.3d 991 (9th Cir. 2012) ...............................................................13

*Hoffman v. Blattner Energy, Inc.*,
  315 F.R.D. 324 (C.D. Cal. 2016) ...........................................................6

*J.N. v. Oregon Dep't of Educ.*,
  No. 6:19-CV-00096-AA, 2021 U.S. Dist. LEXIS 22363 (D. Or. Feb. 5, 2021)
  (Aiken, J.)..................................................................................8, 20, 21

*Jermyn v. Best Buy Stores, L.P.*,
  276 F.R.D. 167 (S.D.N.Y. 2011) ...........................................................12

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014) ...........................................................7, 11

*Lane v. Kitzhaber*,
  283 F.R.D. 587 (2012) .......................................................................22

*M.D. v. Abbott*,
  907 F.3d 237 (5th Cir. 2018) .............................................................4, 9

*M.D. v. Perry*,
  294 F.R.D. 7 (S.D. Tex. 2013)..............................................................25

*Marisol A. by Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)...............................................................4, 9

*Marisol A. v. Giuliani*,
  No. 95 CIV. 10533 (RJW), U.S. Dist. LEXIS 5760 (S.D.N.Y. Apr. 23, 1998) ......30

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .................................................... *passim*

*Penk v. Or. State Bd. Of Higher Educ.*,
  93 F.R.D. 45 (D. Or. 1981) ..................................................................18

*Rodriguez v. Hayes*,
  578 F.3d 1032 (9th Cir. 2009) ..............................................................18

*Sali v. Corona Reg'l Med. Ctr.*,
  909 F.3d 996 (9th Cir. 2018) ........................................................2, 6, 11

*Sam M. ex rel. Elliott v. Carcieri*,
  608 F.3d 77 (1st Cir. 2010)..................................................................30

*Simmons v. Navajo Cty.*,
  609 F.3d 1011 (9th Cir. 2010) ..............................................................22

4812-4116-4775v.1 0201450-000001          DAVIS WRIGHT TREMAINE LLP
                                   1300 S.W. Fifth Avenue · Suite 2400
                                   Portland, Oregon  97201 · (503) 241-2300

*Stockwell v. City & Cty. of S.F.*,
    749 F.3d 1107 (9th Cir. 2014) ...............................................................3, 6, 11, 14

*Tamas v. Dep't of Soc. & Health Servs.*,
    630 F.3d 833 (9th Cir. 2010) ...............................................................................13

*Tinsley v. Flanagan*,
    No. CV-15-00185-PHX-ROS, 2016 U.S. Dist. LEXIS 193289 (D. Ariz. May
    13, 2016) ........................................................................................................30, 31

*Villanueva v. Liberty Acquisitions Servicing, LLC*,
    319 F.R.D. 307 (D. Or. 2017) ...............................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................... *passim*

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ................................................................................25

**Rules**

Fed. R. Civ. P. 7(b) .................................................................................................30

Fed. R. Civ. P. 23 ........................................................................................... *passim*

## PRELIMINARY STATEMENT[1]

Plaintiffs' Motion for Class Certification ("Motion") (ECF 64) seeks certification of a class of all children for whom the Department of Human Services ("DHS") has or will have legal responsibility and who are or will be in the legal and physical custody of the DHS.  As detailed in that motion and supporting memorandum and evidence, Plaintiffs have met all four requirements of Federal Rule of Civil Procedure 23(a) and the requirements of Rule 23(b)(2).

Most of Defendants' response in opposition to Plaintiffs' motion for class certification does not argue against class certification at all.  Defendants' multi-page commentary on "the framework of Oregon's child welfare system" for instance, *see* ECF 118 at 12-14, is largely lifted from Defendants' motion to dismiss, *see* ECF 31 at 9-11.  Defendants' reports of "system-wide changes to Oregon's child welfare systems," *see* ECF 118 at 14-16, similarly rehashes the same supposed improvements Defendants pointed to in their motion to dismiss, *see* ECF 31 at 12-13. Defendants further cast aspersions on the Plaintiff Children's next friends and assert they "should not be allowed to serve in that role." *See* ECF 118 at 11, 57-59. But none of Defendants' digressions relate to Rule 23's class certification requirements, and none affect the class certification analysis.

Likewise, Defendants' insistence that Plaintiffs must demonstrate Defendants' policies and practices "cause harm to Oregon's foster children" or "that the State has been deliberately indifferent to those purported policies or practices," *see* ECF 118 at 10, in order to meet Rule 23's

---

[1] While pursuant to the Court's scheduling order issued on May 21, 2020, *see* ECF 105, Plaintiffs were to file their reply in further support of their motion for class certification on September 3, 2020, the parties encountered privilege disputes in connection with Plaintiffs' depositions of Defendants' experts Dr. Kevin Cahill and Ms. Julie Collins, resulting in significant delays. Plaintiffs' deposition of Dr. Cahill ultimately took place on March 5, 2021. Plaintiffs' deposition of Ms. Collins ultimately took place on March 19, 2021. The parties then entered into settlement negotiations on March 22, 2021, *see* ECF 197, and agreed to a 30-day stay for the duration of those discussions. On April 9, 2021, the Court indicated that settlement did not "appear possible at this time." *See* ECF 200. Plaintiffs file this reply in further support of their motion for class certification within 30 days of the conclusion of those settlement negotiations.

class certification requirements lacks any legal authority.  Defendants ultimately seek to substitute the issue currently before the Court—whether Plaintiffs' case is capable of resolution on a class-wide basis—with an untimely examination of the case's merits.  None of these arguments warrant a denial of class certification.  Courts in this jurisdiction confirm that attempts to convert the class certification determination into a "mini-trial" on the case's merits are improper.  Thus, Plaintiffs respectfully submit that the Motion should be granted.

## ARGUMENT

Certification of the proposed class is proper because Plaintiffs have satisfied each of Rule 23(a)'s requirements, including commonality and typicality, both factors for which the threshold requirement is "not high." *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590-91 (D. Or. 2013) (Aiken, J.) (internal quotations omitted).  Class certification is also appropriate where, as here, Plaintiffs have also satisfied requirements of Rule 23(b)(2) and Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class[es] as a whole."  Fed. R. Civ. P. 23(b)(2). Defendants' arguments to the contrary fail.

## I.   NINTH CIRCUIT PRECEDENT SUPPORTS CLASS CERTIFICATION

### A.  Defendants' Arguments Amount to an Improper Call for a "Mini-Trial" On this Case's Merits

As expressly acknowledged by the Ninth Circuit, class certification is a "tentative, preliminary, and limited stage" of litigation. *B.K. v. Snyder*, 922 F.3d 957, 974 (9th Cir. 2019) (internal quotations omitted). Defendants' arguments against class certification, however, overwhelmingly center on this case's merits. This attempt to convert class certification into a mini trial on the merits is plainly prohibited in the Ninth Circuit. *Id.* at 971 ("class certification is not a decision on the merits")*; Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018)

4812-4116-4775v.1 0201450-000001
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

("[W]e have never equated a district court's 'rigorous analysis' at the class certification stage with conducting a mini trial.").

The Court's class certification analysis "must be rigorous" and "may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (internal quotations omitted). But, as the Supreme Court has made clear, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466; *see also B.K.*, 922 F.3d at 973 ("[M]erits questions, while not irrelevant to the class certification inquiry, do not preclude certification as a matter of law unless proving the answer to a common question or crafting uniform injunctive relief will be impossible."); *Stockwell v. City & Cty. of S.F.*, 749 F.3d 1107, 1113–14 (9th Cir. 2014) (holding "that the district court erred in denying class certification because of its legal error of evaluating merits questions, rather than focusing on whether the questions presented, whether meritorious or not, were common to the members of the putative class"). "[C]lass certification is not a decision on the merits." *B.K.*, 922 F.3d at 971. And yet, Defendants focus almost exclusively on merits questions—such as whether Plaintiffs have demonstrated "the existence of common policies or practices to which the State has been deliberately indifferent," *see* ECF 118 at 22—that have no value or relevance to the class certification determination, and that lack any citation to legal authority at all. The Ninth Circuit rejects such an in-depth examination of the underlying merits.

### B. The Ninth Circuit Has Upheld Class Certification in Similar Child Welfare Actions

Defendants also seek to distance themselves from the only Ninth Circuit case that addresses class certification for putative classes of children in foster care. *See B.K.*, 922 F.3d 957. This is

4812-4116-4775v.1 0201450-000001                      DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

understandable because *B.K.*, which is controlling and directly on point, certified a general class consisting of "[a]ll children who are or will be in the legal custody of [Arizona's child welfare agency] due to a report or suspicion of abuse or neglect," who challenged statewide policies and practices that subjected them to a substantial risk of harm in violation of their constitutional rights. *Id.* at 965–72. This is precisely the type of general class Plaintiffs seek to certify here, and the Court should follow this binding precedent.

The distinctions Defendants attempt to draw between *B.K.* and this case are unavailing.[2] Defendants first contend, without any support, that Arizona's foster care system "faces unique challenges that do not reflect Oregon's experience, legal framework, or ongoing reforms." *See* ECF 118 at 20. Defendants are silent on how those supposed distinctions affect the class certification analysis. To be sure, many of the statewide practices challenged by Arizona foster children in *B.K.* are nearly identical to the statewide practices challenged by Oregon foster children here. *See B.K.,* 922 F.3d at 969 (listing the "statewide practices affecting the proposed General Class" including, *inter alia*, "overuse of congregate care for children with unmet mental needs" and "excessive caseworker caseloads"). Defendants also contend that "both factually and legally, *B.K.* is inapposite," and that it "provides little guidance concerning this case." *See* ECF 118 at 19-20. But that claim is belied by the numerous instances Defendants cite to *B.K.* approvingly *in their own brief. See* ECF 118 at 21, 22, 30, 32. It is also ultimately unpersuasive, especially considering that the Supreme Court case Defendants champion as more instructive, *Wal-Mart Stores, Inc. v.*

---

[2] Notably, Defendants make no attempt to distinguish the line of cases preceding *B.K.* in which courts from across the country granted class certification on behalf of plaintiff children in foster care alleging constitutional violations due to systemic and structural issues in their respective foster care systems. *See, e.g., Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 380 (2d Cir. 1997); *Baby Neal v. Casey*, 43 F.3d 48, 54 (3d Cir. 1994); *DG v. Devaughn*, 594 F.3d 1188, 1193 (10th Cir. 2010); *M.D. v. Abbott*, 907 F.3d 237, 271 (5th Cir. 2018). These cases further support class certification here.

*Dukes,* is in fact factually and legally inapposite on far more fronts. *See* ECF 118 at 19-20. Plaintiffs in *Wal-Mart* were 1.5 million adult female employees bringing sex-discrimination claims under Title VII against the nation's largest private employer for backpay and other damages—a very different factual and legal framework than here or in *B.K.*

In asserting apparent distinctions between *B.K.* and this case, Defendants mischaracterize *B.K.* by claiming that the Arizona defendants did not "'seriously dispute' whether, as a factual matter, Arizona's challenged policies and practices existed." ECF 118 at 20. But the *B.K.* defendants *did* dispute the existence of the challenged policies and practices, and indeed made many of the same arguments made by Defendants here. In their opening brief before the Ninth Circuit, the *B.K.* appellants claimed that there were "disputed allegations that Arizona's child welfare and Medicaid systems sometimes do not work as well as intended," and asserted that the District Court decision "describes only conditions, not formal or informal policy" nor any "approved or tacitly approved practice," arguing that "[t]he lack of an identifiable policy makes this case an ill fit for class certification." *See* Appellants' Joint Opening Br. 34, *B.K.*, 922 F.3d 957, No. 17-17501, ECF 24-1.[3] Not only did defendants in *B.K.*, like Defendants here, dispute the existence of the challenged policies and practices—making any such distinction on those grounds mistaken—but moreover, as indicated by the Ninth Circuit's decision in *B.K.*, the mere fact that Defendants dispute the existence of the challenged policies and practices does not bar class certification.

---

[3]  *See also id.* at 36 ("It is not DCS practice to place a child in congregate care, for example, unless it is the least restrictive available placement under the circumstances."); *id.* at 43 ("Many of the allegations repeated in the Court's Order are disputed. . . ."); *id.* at 22 ("Even if these disputed figures were true in 2013 and remained true at the time the district court certified the class in late 2017 (and they were not), it would mean the vast majority of children who are now class members did receive timely and adequate health assessments and examinations."); *id.* at 44 ("The district court's misplaced reliance on disputed allegations directly contravened *Wal-Mart*. . . .").

4812-4116-4775v.1 0201450-000001                    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

Even so, Plaintiffs have plainly provided sufficient evidence of the existence of the challenged policies and practices at issue in this case. *See Parsons v. Ryan*, 754 F.3d 657, 683 (9th Cir. 2014) (noting that expert reports, detailed allegations in the complaint, internal documents from the state defendants, and declarations from the named plaintiffs "constituted more than sufficient evidence at this stage in the litigation of the existence of the statewide ADC policies and practices that allegedly expose all members of the putative class to a substantial risk of harm"). At this stage, Plaintiffs need only affirmatively demonstrate the existence of common questions capable of class-wide resolution; they need not prove, as they would at trial with the benefit of a fully developed record, precisely how the challenged policies and practices violate Plaintiffs' constitutional rights. *See Stockwell*, 749 F.3d at 1112 ("[A] common contention need not be one that will be answered on the merits, in favor of the class.") (internal quotations omitted).

Furthermore, in alleging due process violations, Plaintiffs may challenge not merely written agency policies, but also *de facto* practices and unwritten policies of Defendants. *See, e.g., Parsons*, 754 F.3d 657 (generally rejecting Arizona's claim that "written policies are the only statewide policies and practices" and upholding the certification of a class of plaintiffs who were exposed to multiple policies and practices, not all of which were documented); *Hoffman v. Blattner Energy, Inc*., 315 F.R.D. 324, 337 (C.D. Cal. 2016) (company's "unofficial policy of impeding and discouraging legally mandated meal breaks" was viable basis for commonality). It is "the constitutionality of [such] statewide policies and practices," both written and unwritten, that are the "common question[s] of law or fact that can be litigated in one stroke." [4] *B.K.*, 922 F.3d at 969

---

[4] Even if there were some questions about the contours of the identified policies and practices, such questions would be questions of fact common to the proposed classes, and thus appropriate to consider on a class-wide basis. A motion for class certification is not a motion for summary judgment, particularly as "the evidence needed to prove a class's case often lies in a defendant's possession and may be obtained only through discovery." *Sali*, 909 F.3d at 1004.

4812-4116-4775v.1 0201450-000001                    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon 97201 · (503) 241-2300

(internal quotations omitted). Accordingly, following the Ninth Circuit precedent, in particular the holdings in *Parsons* and *B.K.*, the Court should certify the general class and all three subclasses to allow the children in Oregon's foster care system to challenge Oregon's policies and practices that expose them to a substantial risk of harm.

## II.    PLAINTIFFS HAVE DEMONSTRATED COMPLIANCE WITH RULE 23(A)'S REQUIREMENTS

### A.  Plaintiffs Have Met Rule 23(a)'s Commonality Requirement

#### 1.  Plaintiffs' Motion Affirmatively Demonstrates Common Questions of Law or Fact

Rule 23's "commonality" requirement is met where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court has noted, "even a single common question will do." *Wal-Mart*, 564 U.S. at 359 (internal quotations omitted). Plaintiffs' Motion to Certify the Class identifies eight common questions of law or fact applicable to the General Class, as well as several common questions of law or fact applicable to the ADA Subclass, SGM Subclass, and Aging-Out Subclass. *See* ECF 64 at 20, 42, 47, 64. Each of those common questions of law or fact ultimately challenges Defendants' failure to appropriately serve Oregon foster children as a whole—whether Defendants' systemic failures violate Oregon foster children's constitutional rights, for example—independent of individual differences between individual Oregon foster children. Because determining "yes" or "no" to those questions "will resolve an issue that is central to the validity of each one of the claims in one stroke," those questions are "capable of classwide resolution," thus meeting the commonality requirement. *Wal-Mart,* 564 U.S. at 350. "Whether any of these common questions are ultimately resolved in favor of either side is immaterial at this class certification stage, where [the court] determine[s] whether any answer that the questions could produce will drive resolution of the class' claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1166 n.5 (9th Cir. 2014).

4812-4116-4775v.1 0201450-000001
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

As detailed in Plaintiffs' Motion to Certify the Class, "in a civil-rights suit" such as this one, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (adding that "individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality"); *see also Parsons*, 754 F.3d at 675-76 (confirming that commonality requirement is met by claims of "a systemic constitutional violation," such as "policies and practices of statewide and systemic application [that] expose all [plaintiffs] to a substantial risk of serious harm"); *J.N. v. Oregon Dep't of Educ.*, No. 6:19-CV-00096-AA, 2021 U.S. Dist. LEXIS 22363, at *18 (D. Or. Feb. 5, 2021) (Aiken, J.) ("[C]lass certification is proper when class members seek to enjoin state defendants from violating their rights through statewide policies and practices of uniform application.").

Plaintiffs' Motion to Certify the Class identifies a number of such system-wide practices or policies affecting all Plaintiff Children comprising the General Class, exposing them to a substantial risk of serious harm in violation of the Constitution.  Those system-wide practices and policies include Defendants' failure to maintain an adequate array of safe and appropriate placements for Plaintiff Children, *see* ECF 64 at 31-35; Defendants' failure to conduct adequate case planning for Plaintiff Children, *see* ECF 64 at 36-38; and Defendants' failure to ensure caseworkers carry safe and appropriate caseloads, *see* ECF 64 at 39-42.  Plaintiffs' Motion to Certify the Class also identifies a number of system-wide practices or policies affecting all Plaintiff Children comprising the ADA Subclass, *see* ECF 64 at 42-47, the SGM Subclass, *see* ECF 64 at 47-51, and the Aging-Out Subclass, *see* ECF 64 at 52-55.

In the Ninth Circuit, "the constitutionality of statewide [child welfare] policies and practices" such as the failure to provide timely access to health care, the overuse of congregate

care for children with unmet mental health needs, and excessive caseworker caseloads, is "a common question of law or fact that can be litigated in one stroke", satisfying the commonality requirement. *B.K.*, 922 F.3d at 969 (internal quotations omitted). Courts across the country have certified comparable classes of foster care children on similar grounds. *See, e.g. Marisol*, 126 F.3d at 380; *Baby Neal*, 43 F.3d at 54; *DG*, 594 F.3d at 1192; *M.D.*, 907 F.3d at 271.

To be sure, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is…that there are *in fact*…common questions of law or fact." *Wal-Mart*, 564 U.S. at 350. Plaintiffs' Motion to Certify the Class affirmatively demonstrates system-wide policies and practices exposing Plaintiff Children to the risk of harm with the support of a substantial record, including:

- Four expert reports submitted by experienced child welfare experts, including an expert report opining on common DHS policy and practice failings based on a thorough review of the Named Plaintiffs' case files;

- A variety of public audits and reports, including findings issued by the federal government and the Oregon Secretary of State;

- Internal DHS documents;

- Excerpts from DHS policy manuals;

- Legislative testimony from state officials, including Governor Kate Brown;

- Deposition testimony from multiple DHS officials; and

- A declaration from the Executive Director of Youth, Rights & Justice, a legal advocacy group dedicated to the welfare of Oregon children and families.

*See* ECF 64 at 31-55; *see also Parsons*, 754 F.3d at 662 (noting "the substantial record compiled by the plaintiffs, which includes four expert reports, hundreds of internal ADC

documents, depositions of ADC staff, and inmate declarations."). Defendants' failure to maintain an adequate array of safe and appropriate placements for Plaintiff Children, for instance, is demonstrated with public reports and audits discussing the Oregon foster care system's inadequate placement array, *see* ECF 64 at 32-33, 35, a declaration from Amy Miller, the Executive Director of Youth, Rights & Justice, *see* ECF 64 at 33, findings from the case file review conducted by Plaintiffs' experts Sue Steib and Patricia Rideout, *see* ECF 64 at 33-34, internal DHS documents recognizing Defendants' inadequate placement array, *see* ECF 64 at 34, legislative testimony from Defendant Fariborz Pakseresht indicating Oregon's lack of capacity, *see* ECF 64 at 34, and findings from the AFCARS analysis performed by Plaintiffs' expert Dr. Alan Puckett, *see* ECF 64 at 34-35.

### 2. Defendants Improperly Conflate Plaintiffs' Commonality Showing with the Merits

Defendants' commonality analysis misconstrues Rule 23's requirement. While Defendants admit, for example, that "courts generally address commonality and typicality in sequential order—first determining whether a common policy or practice exists and then determining whether plaintiffs are typical of that policy or practice," Defendants curiously decide to "invert[] that analysis." *See* ECF 118 at 22. Their analysis of commonality, when they eventually address it, is once again submitted out of sequential order. *See* ECF 118 at 29. Many of the cases selectively cited by Defendants, moreover, are inapposite, as they are *not* decisions on class certification at all, but rather decisions on the merits, such as on summary judgment. *See infra* pp. 14, 23. Defendants essentially eschew the roadmap of Rule 23 for a series of detours paved with creative readings of inapplicable law, hoping to distract from the glaring fact that they do not—and cannot—dispute Plaintiffs' assertions in support of commonality.

As the Ninth Circuit has made clear, "a class certification decision is far from a conclusive judgment on the merits of the case." *Sali*, 909 F.3d at 1004 (internal quotations omitted). *See also B.K.*, 922 F.3d at 971. Accordingly, "[w]hether class members could actually prevail on the merits of their claims is not a proper inquiry in determining the preliminary question whether common questions exist." *Stockwell*, 749 F.3d at 1112 (internal quotations omitted); *see also Sali*, 909 F.3d at 1005 (holding that "the possibility that a plaintiff will be unable to prove his allegations" is not "a basis for declining to certify a class which apparently satisfies Rule 23") (internal quotations omitted); *Jimenez*, 765 F.3d at 1166 n.5. Because it is a "preliminary stage," the Ninth Circuit has "license[d] greater evidentiary freedom," and this Court "need only consider material sufficient to form a reasonable judgment on each [Rule 23(a)] requirement." *Sali*, 909 F.3d. at 1004-06 (internal quotations omitted*); see also Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 314 (D. Or. 2017) ("an extensive evidentiary showing by the plaintiff is not required."). Plaintiffs can meet their burden through detailed allegations supported by additional materials, such as expert reports and agency documents. *See B.K., 922 F.3d at 974.* Defendants' attempts to distort Rule 23's commonality analysis into a premature "mini-trial" on the merits of Plaintiffs' claims are improper for the following two reasons.

Defendants first erroneously declare that the Supreme Court's ruling in *Wal-Mart* makes it "necessary" for Plaintiffs to provide "'significant proof' that the policies or practices they challenge exist and have harmful impacts on a class-wide basis to which the State has been deliberately indifferent." *See* ECF 118 at 29. But the Supreme Court in *Wal-Mart* held no such thing. Defendants misappropriate the phrase "significant proof" from the Court's discussion on how to bridge the "conceptual gap" in race and sex discrimination class action claims. *See Wal-Mart*, 564 U.S. at 352-53. The "conceptual gap" in race discrimination class action claims,

4812-4116-4775v.1 0201450-000001
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

explained the Court, involves connecting "an employee who claimed that he was deliberately denied a promotion on account of race" to "all employees wrongfully denied promotions and…jobs." *Id.* at 352. The Court found that sex discrimination claims under Title VII presented the same "conceptual gap", requiring "significant proof that Wal-Mart operated under a general policy of discrimination." *Id.* at 353 (internal quotations omitted). "That is so because," stated the Court, "in resolving an individual's Title VII claim, the crux of the inquiry is the reason for a particular employment decision;" as such, establishing commonality required "some glue holding the alleged *reasons* for all those decisions together" to "produce a common answer to the crucial question *why was I disfavored*." *Id.* at 352 (internal quotations omitted) (emphasis in original).

Several courts, including the Ninth Circuit, have declined to adopt *Wal-Mart*'s heightened "significant proof" standard for class actions not particularly alleging Title VII employment discrimination. *See Parsons*, 754 F.3d at 684 n.29 (acknowledging "[c]ourts have taken different views of whether *Wal-Mart*'s significant proof standard applies to all class certification decisions or only to claims alleging systemic [employment] discrimination" and declining to affirmatively adopt the "significant proof" standard); *see also Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 172 (S.D.N.Y. 2011) (rejecting Defendant's attempt "to import these Title VII pleading requirements to Plaintiffs' [deceptive business practices] claims…[T]hese additional requirements are designed for and unique to the context of employment discrimination. They are necessary because the employer's motivation is crucial to establishing liability…In the deceptive business practice context, by contrast, the 'why' is less relevant, if it is relevant at all.").

This case, of course, is not a putative race or sex discrimination class action, which means there is no "conceptual gap" in need of bridging with "significant proof."  In any event, Plaintiffs have provided such "significant proof"; Plaintiffs' Motion is supported by a considerable record

including internal DHS documents, depositions of DHS officials, public audits, and four expert reports. As required, Plaintiffs have affirmatively demonstrated that there are in fact common questions of law and fact, in accordance Rule 23's "commonality" requirement.

In a second example of misdirection, Defendants then claim that "to demonstrate commonality on a substantive due process claim…plaintiffs must prove that state officials acted with such 'deliberate indifference' toward plaintiffs' constitutionally protected liberty interest so as to 'shock the conscience.'" ECF 118 at 29. While it is true Plaintiffs must ultimately prove the element of "deliberate indifference" to succeed on their claims, Defendants are wrong in declaring it is something Plaintiffs must prove *now*. Plaintiffs must prove "deliberate indifference" and ultimate liability *at trial*, after both parties have engaged in the necessary discovery—not now, at the class certification stage. Defendants appear to concede this point, given their cited authorities on this point are not decisions on class certification, but rather on summary judgment. *See Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 837 (9th Cir. 2010); *Farmer v. Brennan*, 511 U.S. 825, 831 (1994).[5]

A district court abuses its discretion by "evaluat[ing] the merits rather than focusing on whether the questions presented—meritorious or not—were common to the class." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015). "[A] party seeking class certification" need only "affirmatively demonstrate his compliance" with Rule 23. *Parsons*, 754 F.3d at 674 (internal quotations omitted). Appropriately, in neither *Parsons* nor *B.K.* does the Ninth Circuit demand proof of the "deliberate indifference" element at the class certification stage. *Parsons*, 754 F.3d at 688-89 (class certification justified by state defendants "*allegedly* establishing systemic policies

---

[5] Defendants similarly strip a case of procedural context by citing *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012), a child welfare decision at the motion-to-dismiss stage.

4812-4116-4775v.1 0201450-000001          DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

and practices" harming prisoners and "by *allegedly* doing so with deliberate indifference") (emphasis added); *B.K.*, 922 F.3d at 969 (irrelevant to class certification "whether any of these policies are ultimately found unconstitutional."). Nor is such examination of strength of evidence of deliberate indifference even mentioned in other child welfare class certification decisions. *See, e.g. D.G. v. Yarbrough*, 278 F.R.D. 635 (N.D. Okla. 2011); *DG*, 594 F.3d 1188; *M.D.,* 907 F.3d 237.

The matter presently before the Court is whether to certify Plaintiffs' putative classes, not whether Plaintiffs are entitled to judgment as a matter of law. It is improper for Defendants' opposition papers to merge the two in order to contrive some other, higher legal standard to argue against. Consequently, Defendants' discussion of "the deliberate indifference element," ECF 118 at 29-32, is irrelevant padding unsuited for class certification opposition papers—and, indeed, appears on its face more concerned with the merits of the case at trial than with the current relevant legal analysis.

Though Plaintiffs have submitted evidence of statewide deficiencies resulting in systemic violations even at this preliminary stage, "commonality does not require proof that the putative class will prevail on whatever common questions it identifies." *Stockwell*, 749 F.3d at 1112. Dispensing with both the "significant proof" and "deliberate indifference element" diversions, it becomes evident that Defendants ultimately do not actually dispute the existence of common questions of law and fact arising from policies and practices affecting all putative class members that expose all class members to a substantial risk of harm. *See Parsons*, 754 F.3d at 663 (granting class certification where "defendants did not address the individual policies and practices complained of by the plaintiffs nor present evidence meant to deny their existence"). Their opposition to commonality consequently fails.

4812-4116-4775v.1 0201450-000001                    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

### B. Plaintiffs Have Met Rule 23(a)'s Typicality Requirement

#### 1. Plaintiffs' Motion Affirmatively Demonstrates that the Claims of Named Plaintiff Children Are Typical of the Claims of the Putative Class and Subclasses

The typicality requirement of Rule 23 is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The Ninth Circuit has held repeatedly that the typicality standard is "permissive" and that claims "need not be substantially identical" to be typical of the class, but rather "reasonably coextensive." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Parsons*, 754 F.3d at 685; *B.K.*, 922 F.3d 957. The "test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons*, 754 F.3d at 685, citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The Ninth Circuit has specifically recognized the risk of harm caused by the practices and policies of child welfare agencies as "a cognizable constitutional injury under our precedent." *B.K.*, 922 F.3d at 970.

Plaintiffs' claims, as identified in Plaintiffs' Motion to Certify the Class, are predicated on a number of system-wide practices or policies affecting all Plaintiff Children comprising the General Class, exposing all Plaintiff Children to the same substantial risk of serious harm in violation of the Constitution and federal law. *See supra* pp. 9-10. The "injury" suffered by all Named Plaintiffs and all members of the putative class and subclasses, for the purposes of the typicality inquiry, is that substantial risk of harm—a legal injury unaffected by individualized factual dissimilarities.  Further, the Ninth Circuit has consistently found the typicality requirement satisfied where, as here, named plaintiffs asserted constitutional claims based on the risk of harm

4812-4116-4775v.1 0201450-000001       DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

caused by state practices and policies. *See Parsons*, 754 F.3d at 685; *B.K.,* 922 F.3d 957.

## 2. Defendants' Typicality Analysis Misconstrues the Meaning of "Typical" Within Rule 23

Defendants' definition of "typical" does not comport with Rule 23. In order to satisfy the typicality requirement of Rule 23, it is not the Named Plaintiffs as individuals who must be "typical" of the class—it is their claims and injuries. *See Parsons*, 754 F.3d at 685 ("Typicality refers to the nature of the claim or defense of the class representative, and not the specific facts from which it arose or the relief sought.") (internal quotations omitted). However, Defendants claim that typicality requires statistical representativeness. *See* ECF 118 at 24. They also claim that typicality requires all Plaintiffs have identical experiences. *See* ECF 118 at 23-24. And they claim that typicality requires all Plaintiffs suffer identical harm. *See* ECF 118 at 24. But Defendants offer no legal authority to support their claims and related novel interpretations of Rule 23's typicality requirement. Because Defendants equivocate "typical" under Rule 23 with more casual, colloquial definitions of the word not grounded in law, their argument amounts to identifying arbitrary ways in which the Named Plaintiff Children differ from each other and from other Oregon foster children. These dissimilarities, best construed as red herrings, are addressed below.[6]

---

[6] As discussed in short below, *see infra* Section B.2.a-b, and fully in Plaintiffs' Motion to Exclude Defendants' Expert Testimony Opposing Class Certification ("Plaintiffs' Motion to Exclude"), the two expert reports submitted in support of Defendants' opposition to class certification fail to address any of Rule 23's legal requirements, and instead consist of semantic red herrings derived from unreliable methodologies. Notably, Defendants paid their two experts each over $200,000 to generate these red herrings.

4812-4116-4775v.1 0201450-000001          DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

### a. Defendants Mistakenly Argue "Typicality" Requires Plaintiffs to be Statistically Representative in Areas of Defendants' Choosing

Defendants put forward an entirely novel legal argument which, if adopted by this court, would radically undermine existing class action law and Rule 23 and instead create a new, contrived standard conceived by Defendants' experts.  Defendants attempt to defeat typicality jurisprudence by equivocating "typicality" as a legal requirement under Rule 23 with "statistical" representativeness pursuant to their expert report written by an economist with no background in child welfare. *See* ECF 141-1 at 27 ("The named plaintiffs are not representative of all foster care child in Oregon in a statistical sense.").  As an initial matter, Dr. Kevin Cahill admitted his report "us[es] the word typical analogously to representative." *See* Cahill Dep. 80:15-16; Ex. 1 to Declaration of Dawn J. Post in Support of Plaintiffs' Reply in Support of Motion to Certify as Class Action ("Post Decl.").   Dr. Cahill's opinions lack relevance to Rule 23's typicality requirement—or any Rule 23 requirement, for that matter.  *See* Plaintiffs' Motion to Exclude at 5-9. His findings are also derived from bias-infected methodologies, rendering them unreliable.  *See* Plaintiffs' Motion to Exclude at 11-13. Dr. Cahill's opinions should be afforded no weight in determining whether Plaintiffs have met Rule 23's requirements.

Defendants go on to argue that typicality cannot be met here because there are "too few" Named Plaintiffs for statistical representativeness, because Named Plaintiffs were not chosen at "random" as required for statistical representativeness, and because Named Plaintiffs are not "geographically typical." *See* ECF 118 at 24.  But Plaintiffs challenge *statewide* policies and practices that Defendants are responsible for promulgating, implementing, and enforcing. Defendants cite no legal authority suggesting that in order to meet Rule 23's requirements, Named

4812-4116-4775v.1 0201450-000001                          DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

Plaintiffs must be "geographically typical" of the state, statistically representative, or randomly selected.

Defendants' uniform, statewide policies and practices apply to children in *every* county; for example, a child from Multnomah County is just as subject to those policies and practices as a child from Marion County. Defendants' insistence that the Named Plaintiff Children be "geographically typical" only serves to distance themselves from that fact. Likewise, Defendants' uniform, statewide policies and practices affect *all* children in Defendants' custody; a young child is just as subject to those policies and practices as an older child. None of these supposed, invented "differences" matter to Rule 23's typicality requirement. The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons*, 754 F.3d at 685 (internal quotations omitted). Defendants' attempts to distort Rule 23's typicality requirement therefore fail.

### b. Defendants Mistakenly Argue "Typicality" Requires Plaintiffs to Endure Identical Experiences or Suffer Identical Harm

Defendants also insist that class certification is inappropriate because children in Oregon's foster care system "have dramatically different needs [and] are receiving individually tailored care." *See* ECF 118 at 12. But such factual differences are also irrelevant to "typicality" under Rule 23, as the Ninth Circuit has repeatedly confirmed. *See Parsons*, 754 F.3d at 686 ("Rule 23(a)(3) requires only that their claims be 'typical' of the class, not that they be identically positioned to each other or to every class member.")*; see also Rodriguez v. Hayes*, 578 F.3d 1032, 1049-50 (9th Cir. 2009); *Armstrong*, 275 F.3d at 868-69; *Penk v. Or. State Bd. Of Higher Educ.*, 93 F.R.D. 45, 50 (D. Or. 1981). Plaintiff Children's underlying medical or mental health issues, family histories, or other factual variations do not defeat typicality because Plaintiffs' claims

4812-4116-4775v.1 0201450-000001
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

challenge *Defendants'* uniform policies and practices, to which all Plaintiff Children in Defendants' custody are subject.  For example, and as explained in Plaintiffs' Motion, Plaintiffs challenge Defendants' uniform caseworker policies and practices.  *See* ECF 64 at 39-42.  Plaintiffs demonstrated, with evidence from legislative testimony, state audits, and 30(b)(6) deposition testimony, that Defendants fail to recruit and retain an adequate number of caseworkers, *see* ECF 64 at 39-40, and fail to implement any caseload standards by statute, regulation, or policy.  *See* ECF 64 at 40. Plaintiffs also demonstrated that Defendants' caseworker policies and practices result in high caseloads and high turnover, increasing the risk to child safety.  *See* ECF 64 at 40-42. In the Ninth Circuit, "excessive caseworker caseloads" constitute a "statewide practice[]" warranting class certification. *See B.K.*, 922 F.3d at 983.

Again, Defendants' novel "typicality" argument based on the opinions of Defendants' expert Julie Collins should be afforded no weight in determining whether Plaintiffs have met Rule 23's requirements. Ms. Collins admitted that for the purposes of her expert report, "typicality" means "that you would expect to see other—lots of other children that would have similar issue or issues in the context of this review," *see* Collins Dep. 143:19-22; Ex. 2 to Declaration of Dawn J. Post in Support of Plaintiffs' Reply in Support of Motion to Certify as Class Action ("Post Decl."), but despite making legal conclusions, she "d[idn't] have" any understanding of the legal definition of "typical" in a class action context; *see also* Collins Dep. 144:15.  Despite her repeated (mis)use of the words "commonality" and "typicality", Ms. Collins fails to offer opinions relevant to any Rule 23 requirement.  *See* Plaintiffs' Motion to Exclude at 9-10. Ms. Collins' findings are also the product of an unknown methodology that Defendants refuse to permit discovery into, rendering those findings unreliable.  *See* Plaintiffs' Motion to Exclude at 13-14.

Finally, Defendants argue that class certification is inappropriate because Named Plaintiffs "have not suffered the injuries that they allege apply class-wide." *See* ECF 118 at 24. But Defendants misconstrue both the law and Plaintiffs' claims. The injury suffered by all Named Plaintiffs and all members of the putative class and subclasses is the *substantial risk of harm* from exposure to Defendants' deficient practices and policies. The Ninth Circuit has confirmed that differences in the particular kind of harm or the degree of harm suffered by class members do not defeat class certification, because "although a presently existing risk may ultimately result in different future harm for different [class members]—ranging from no harm at all to death—every [class member] suffers exactly the same constitutional injury when he is exposed to a single statewide [agency] policy or practice that creates a substantial risk of serious harm." *S ee Parsons*, 754 F.3d at 678; *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) "[A] remedy for unsafe conditions need not await a tragic event.").

Defendants' arguments amount to assertions that children in Defendants' custody and care either 1) indeed suffer, but to different degrees, or 2) have not yet suffered sufficient actual harm. *See e.g.* ECF 118 at 24 (arguing "[m]ost children in foster care do not experience more than 11 placements or require placement in an institutional setting" and that Named Plaintiffs "have not suffered the injuries that they allege apply class-wide"). Again, the Ninth Circuit has confirmed that there is a "difference between a claim that [a class member] has already suffered harm and a claim that he has been exposed to a substantial risk of serious harm." *See Parsons*, 754 F.3d at 677; *see also J.N.*, 2021 U.S. Dist. LEXIS 22363, at *39-40. Defendants improperly conflate the two, and thus fail to present a cognizable objection to class certification here.

For instance, Defendants claim that "Plaintiffs cannot be typical of a class of inadequate or inappropriate case planning." *See* ECF 118 at 25. But Plaintiffs do not seek to certify "a class of

4812-4116-4775v.1 0201450-000001                    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

inadequate or inappropriate case planning"—Plaintiffs seek to certify a class of *all* Oregon foster children, because all Oregon foster children are exposed to the substantial risk of harm caused by Defendants' inadequate or inappropriate case planning.  Plaintiffs' claims, therefore, are typical. *See e.g. J.N.*, 2021 U.S. Dist. LEXIS 22363, at *39-40 ("because plaintiff demonstrated that statewide policies and practices create common risk" of statutory violations, "they have shown that *all* class members, including the named plaintiffs, have standing to seek injunctive relief against the state based on a significant risk of future" violations, and thus "met their burden to show typicality").  Likewise, Rule 23 does not require Named Plaintiffs be "typical of a general policy or practice of an inadequate placement array;" it merely requires Named Plaintiffs' claims *regarding* placement array policies and practices be typical of the class.  Plaintiffs' Motion demonstrates that Defendants' placement array policies and practices expose all Plaintiff Children to the substantial risk of harm, making Named Plaintiff Children's claims typical.

Because Defendants' typicality analysis is not grounded in what is actually required by Rule 23's typicality requirement, their opposition to typicality fails.

### C.  Plaintiffs' Subclasses Also Meet Rule 23's Commonality and Typicality Requirements

Like their objections to the certification of a General Class, Defendants' objections to the certification of the Americans with Disabilities Act (ADA), Sexual and Gender Minorities (SGM), and Aging-Out Subclasses lack support from relevant legal authority and instead invent new legal standards in their place.  Plaintiffs' Motion demonstrates that the ADA, SGM, and Aging-Out Subclasses share common questions of law and fact capable of subclass-wide resolution, and that the claims asserted by those subclasses are typical.

1.  **Plaintiffs' Motion Affirmatively Demonstrates that the ADA Subclass
    Meets the Commonality and Typicality Requirements**

Plaintiffs have identified three common questions of fact and law raised by the ADA

Subclass applicable to all foster children with disabilities. *See* ECF 64 at 42. These three

questions— 1) whether Defendants deny members of the ADA Subclass access to "necessary and

appropriate services" to integrate them into their communities and ensure access to the least

restrictive environment; 2) whether Defendants have a practice of unnecessarily placing youth with

disabilities in institutional settings; and 3) whether Defendants have a practice of failing to build

and maintain a network of mental health and other providers to meet the needs of the ADA

Subclass—are all capable of resolution on a subclass-wide basis. As acknowledged by this Court

in *Lane v. Kitzhaber*, "in almost every case involving a challenge under Title II of the ADA and/or

Section 504 of the Rehabilitation Act to discriminatory governmental policies and practices, courts

have certified a class." *Lane*, 283 F.R.D. 587, 595 (2012) ("This is particularly true with respect

to cases alleging a violation of the integration mandate of the ADA.").

Defendants claim that in order to meet the commonality requirement, Plaintiffs must

present evidence "that the State has policies or practices that discriminate against disabled children

in foster care *because* of their disability." *See* ECF 118 at 52. Defendants' cited support for that

claim is *not* from a decision on class certification—the actual issue before this Court—but rather,

again, from a decision on summary judgment. *See Simmons v. Navajo Cty.*, 609 F.3d 1011, 1016

(9th Cir. 2010). Defendants similarly rely on a decision on summary judgment, rather than on

class certification, in contending the ADA Subclass cannot be certified because "plaintiffs do not

dispute defendants operate the *existing* array of homes with 'an even hand.'" *See* ECF 118 at 53

(citing *Arc of Wash. State Inc. v. Braddock*, 427 F.3d 615 (9th Cir. 2015)). Defendants yet again

improperly seek a "mini-trial" on the merits of this case by confusing the legal standard for class

certification with the legal standard for summary judgment. The Ninth Circuit is clear that "class certification is not a decision on the merits." *See B.K.*, 922 F.3d at 971. Defendants' arguments opposing certification of the ADA Subclass, as a result, are not arguments opposing the Subclass' certification at all; they are, instead, arguments opposing a nonexistent motion for summary judgment.

Plaintiffs have also demonstrated that the claims raised by the ADA Subclass are typical of those of the Subclass. As explained in Plaintiffs' Motion, though each child in the ADA Subclass may have unique physical and mental health needs, placement needs, safety needs, or even family histories and backgrounds, *all* children in the ADA Subclass are subject to Defendants' deficient policies and practices, and thus *all* children in the ADA Subclass are exposed to the substantial risk of harm. Each child in the ADA Subclass has legal claims arising from the same course of events—Defendants' uniform policies and practices—and each class member suffers the same legal injury from that same course of events—the substantial risk of harm and the failure to be integrated into their communities as required by the ADA. The ADA Subclass therefore satisfies the typicality requirement. *See Armstrong*, 275 F.3d at 868 (typicality satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability").

Defendants argue that the Named Plaintiffs in the ADA Subclass "are not typical of any such policy or practice" of "discriminating against foster children," *see* ECF 118 at 51, but do not base their objections to the Subclass' compliance with Rule 23's typicality requirement in any legal authority. That is because Defendants, again, confuse the relevant standard. Defendants insist, for example, that "the named subclass cannot be typical of a class of children with inadequate case plans," *see* ECF 118 at 51, or "a class of children denied necessary services and

4812-4116-4775v.1 0201450-000001    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

treatment." *See* ECF 118 at 52. But Plaintiffs do not seek to certify "a class of children with inadequate case plans," nor do they seek to certify "a class of children denied necessary services and treatment." *See* ECF 118 at 52. Instead, Plaintiffs seek to certify a subclass of children with disabilities protected by the ADA who are exposed to the same substantial risk of harm by Defendants' policies and practices. *See* ECF 64 at 11. Defendants argue against an imaginary proposed subclass rather than the one Plaintiffs actually seek.

Moreover, Defendants misunderstand the nature of the "injury" that must be typical to satisfy Rule 23. Citing *Parsons*, Defendants claim that typicality is not met because "no named plaintiff contends that she has an unassessed or undiagnosed disability" and plaintiffs "have not identified any services that plaintiffs needed yet were not provided," and therefore the children in the ADA Subclass "did not suffer from the allegedly unlawful practice they seek to enjoin." *See* ECF 118 at 51-52. But as *Parsons* itself explains, "typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *See Parsons*, 754 F.3d at 685 (internal quotations omitted). In *Parsons*, typicality was met because each member of the class:

> [D]eclare[d] that he or she is being exposed, like all other members of the class, to a substantial risk of serious harm by the challenged [state] policies and practices…The named plaintiffs thus allege 'the same or a similar injury' as the rest of the putative class; they allege that this injury is a result of a course of conduct that is not unique to any of them, and they allege that the injury follows from the course of conduct at the center of the class claims.

*See id.* Here, too, Plaintiffs allege that each member of the ADA Subclass is being exposed to a substantial risk of harm by Defendants' policies and practices. The "injury" for the purposes of the typicality inquiry is the legal injury of "the substantial risk of harm." Because the ADA Subclass meets the requirements of Rule 23, and Defendants have failed to present a cognizable argument otherwise, the ADA Subclass should be certified.

### 2.  Plaintiffs' Motion Affirmatively Demonstrates that the SGM Subclass Meets the Commonality and Typicality Requirements

The common question raised by all members of the SGM Subclass—whether Defendants deny members of the SGM Subclass necessary services and placements—is also capable of resolution on a subclass-wide basis.  *See* ECF 64 at 47.  As Plaintiffs' Motion illustrates, members of the SGM Subclass are exposed to a substantial risk of harm as a result of Defendants' deficient policies and practices, beginning with Defendants' policy against collecting quantitative data regarding the SGM Subclass, including whether a child identifies as SGM.  *See* ECF 64 at 48-49. Defendants do not dispute the existence of such a policy; to the contrary, they have affirmatively confirmed this policy.  *See* ECF 64 at 49.[7] The failure to act, in particular the failure to implement a data collection procedure, can constitute a policy or practice for the purposes of satisfying commonality.  *See M.D. v. Perry*, 294 F.R.D. 7, 27 (S.D. Tex. 2013); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).  The SGM Subclass meets the commonality requirement.

Plaintiffs have also demonstrated that the SGM Subclass meets the typicality requirement. Typicality properly focuses on "the nature of the claim" and not "the specific facts from which it arose." *Hanon*, 976 F.2d at 508.  All members of the SGM Subclass allege exposure to the substantial risk of harm as a result of uniform DHS policies and practices; because "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability," typicality is satisfied. *See Armstrong*, 275 F.3d at 868 (internal quotations omitted).

---

[7] Plaintiffs' 30(b)(6) deposition of Lacey Andresen, DHS' child permanency program manager, confirmed that Defendants have a policy against "tracking specifics to children's identification." *See* ECF 64 at 49.

4812-4116-4775v.1 0201450-000001                    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

Defendants' argument against certification of the SGM Subclass again warps the typicality analysis, lacks legal authority, and improperly fixates on this case's merits. Defendants contend that Named Plaintiff Bernard's case "cannot be typical of any harmful State policy or practice" because it "reflects exemplary casework." *See* ECF 118 at 11. Defendants cite to the fact Bernard "received hormone therapy" and "appropriate clothing" as evidence of this "exemplary casework." *See* ECF 118 at 11. Defendants likewise erroneously claim that the SGM Subclass does not meet the typicality requirement because Bernard "is not typical of a subclass class [sic] harmed by a policy of failure to track or provide services to LGBTQIA+ children," and because Bernard "has not been denied a single service related to his LGBTQIA+ status." *See* ECF 118 at 26.

But those are not actually arguments against Rule 23 typicality. Defendants challenge "the specific facts from which [the claim] arose" rather than "the nature of the claim" itself. *See Hanon*, 976 F.2d at 508 (internal quotations omitted). The observation that "DHS counted and tracked Bernard as an LGBTQIA+ foster child," *see* ECF 118 at 26, epitomizes Defendants' confusion on this matter. The SGM Subclass' underlying claims are constitutional in nature; the SGM Subclass alleges they are exposed to the substantial risk of harm as a result of Defendants' uniform policies and practices, including the failure to document and collect data related to the SGM Subclass. As demonstrated in Plaintiffs' Motion, Defendants have *no idea* how many children in the Oregon foster care system identify as a sexual and gender minority. As confirmed by Plaintiffs' 30(b)(6) depositions, Defendants' policy against "tracking specifics to children's identification" means there is "not a reportable data point" related to *any* issue affecting the SGM population. *See* ECF 64 at 49. DHS goes on to base reports "identifying capacity needs for children within the Oregon child welfare system" on the only available SGM-related data Oregon has, which estimates that only 2% of children in the Oregon foster care system identify as SGM. *See* ECF 64 at 49.

Defendants have also admitted in 30(b)(6) depositions that there is no reason to doubt estimates that in fact, approximately 22.8% of children in foster care identify as SGM.  *See* ECF 64 at 49.  This necessarily means that DHS underestimates and underinvests in resources, placements, and services for SGM youth.

Defendants' merits-focused arguments on the adequacy of Bernard's case-planning once again misses the point.  Bernard—like all members of the SGM Subclass—suffers constitutional harm as a result of Defendants' policies and practices.  Bernard's case record reveals Bernard was subject to over 21 placements as of the time of filing, and Plaintiffs' expert Dr. Wilson notes that SGM youth "experienc[e] disparities and negative outcomes, including higher rates of homelessness and being moved around more to different placements."  *See* ECF 64 at 50-51.  It is impossible to separate the poor outcomes experienced by Bernard—which all SGM children are at substantial risk of experiencing—from his sexual and gender identity, as Defendants attempt to do.  The SGM Subclass also does not seek to "litigate society's bigotry as a whole in a class action against the State," as Defendants suggest.  *See* ECF 118 at 32-33.  The SGM Subclass instead seeks to remedy Defendants' *own role* in perpetuating those disparities and negative outcomes.

Defendants inappropriately devote pages to the merits of the SGM Subclass' claims, claiming that in fact, "[t]he State has a policy and practice of providing support and services" to SGM children with citations to various provisions of the Child Welfare Procedure Manual and updates to DHS' intake nursing assessment.  *See* ECF 118 at 32-36.  Such arguments on the merits, again, are properly reserved for trial.  Plaintiffs have demonstrated, as they must at this early stage, that the SGM Subclass satisfies the requirements of Fed. R. Civ. P. 23, and that certification of the SGM Subclass is appropriate.

4812-4116-4775v.1 0201450-000001              DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

3.   **Plaintiffs' Motion Affirmatively Demonstrates that the Aging-Out Subclass Meets the Commonality and Typicality Requirements**

Plaintiffs have identified two common questions of law and fact raised by all members of the Aging-Out Subclass.  *See* ECF 64 at 52.  These questions—whether Defendants deny members of the Aging-Out Subclass necessary skills and resources to live independently, and whether Defendants offer adequate caseworker supports and resources to ensure members of the Aging-Out Subclass receive transition planning—are capable of resolution on a subclass-wide basis.  The Aging-Out Subclass therefore meets Rule 23's commonality requirement.  *See B.K.*, 922 F.3d at 969.

Plaintiffs have also demonstrated that all members of the Aging-Out Subclass are exposed to a substantial risk of harm as a result of Defendants' deficient policies and practices, satisfying Rule 23's typicality requirement.  *See Armstrong*, 275 F.3d at 868 ("each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability") (internal quotations omitted).

Defendants' objection to the certification of the Aging-Out Subclass improperly fixates on the merits of the Subclass' claims.  Defendants contend that "[t]he State provides a range of services for the aging-out population," and that as a result, "Plaintiffs' assertion that the State's policies and practices fail to provide necessary treatment and services to the aging-out population also fails."  *See* ECF 118 at 43. Defendants' supposed evidence "[t]o the contrary" consists only of citations to deposition transcripts from DHS officials and to Oregon statutes, and notably lacks any indication that those statements or statutes reflect DHS' actual practice.  *See* ECF 118 at 43-44.  However, more importantly, Defendants' argument does not amount to a cognizable objection to class certification.  Whether, in fact, Oregon "provides a range of services for the aging-out population" is a merits-based, discovery-dependent inquiry that must be conducted at trial—not

4812-4116-4775v.1 0201450-000001                    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

now, at the class certification stage. Plaintiffs need only demonstrate, as they have, that the Aging-Out Subclass meets the requirements of Rule 23.

Defendants also assert that "no substantial risk of harm results from the State's provision of services to children aging out"—and thus, presumably, class certification cannot be granted—because "Oregon is performing better than or at the national averages in many categories" identified in the National Youth Transition Database ("NYTD"). *See* ECF 118 at 45. Of course, this statement lacks support from any legal authority; neither *Parsons* nor *B.K.* suggests that a constitutional injury ceases to exist if other constitutional injuries exist elsewhere. Defendants cannot seriously contend that when 27% of 17-year-olds in DHS' care have experienced homelessness within their lifetime, *see* ECF 64 at 54, that children in the Aging-Out Subclass are exposed to "no substantial risk of harm." *See* ECF 118 at 45. Such discovery-intensive inquiries, in any event, are reserved for trial. Plaintiffs have adequately demonstrated that members of the Aging-Out Subclass are exposed to a substantial risk of harm as a result of Defendants' deficient policies and practices. Because the Aging-Out Subclass meets the requirements of Rule 23, and Defendants have failed to present a cognizable argument otherwise, the Aging-Out Subclass should be certified.

### D.  Plaintiffs Have Met Rule 23(a)'s Adequacy Requirement

Parties seeking to represent a class must show that the "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The putative class counsel must also show that they are adequate to represent the class. Fed. R. Civ. P. 23(g). Plaintiffs have demonstrated—and Defendants do not appear to actually dispute—compliance with Rule 23(a)'s adequacy requirement. *See* ECF 64 at 58-60.

1.  **Defendants May Not Challenge the Qualifications of Next Friends in an Opposition to Class Certification**

Defendants challenge the adequacy of several of Named Plaintiffs' next friends, *see* ECF 118 at 57-59, but do not connect their objections to the issue of class certification. Instead, Defendants assert in conclusory fashion that "[t]his Court must also consider whether the plaintiffs' next friend are adequate." *See* ECF 118 at 57.

The adequacy of the Named Plaintiff Children to represent the class and the qualifications of next friends to represent the Named Plaintiff Children are two entirely different inquiries. The former is governed by Rule 23; the latter, importantly, is not. Defendants offer no Federal Rule or legal authority to support this claim, and indeed ignore a variety of Federal Rules and legal precedent in order to make it. The qualifications of next friends are *not* controlled by, nor a part of, the Rule 23 inquiry. Whether the next friends adequately represent the Named Plaintiffs has nothing to do with class certification, and Defendants' objections may be appropriately dismissed.

As a question of civil procedure, Defendants' request that the Court "appoint a different next friend" to replace three next friends, *see* ECF 118 at 59, must be filed in a separate motion. *See* Fed. R. Civ. P. 7(b) (A "request for a court order must be made by motion."). That motion, which Defendants have not filed, must be grounded in Rule 17(c). Defendants' collateral attack on the next friends, raised only in an opposition to a class certification motion, is improper.

Courts have even severed cross-motions to disqualify the next friends from the class certification proceedings. *Marisol A. v. Giuliani*, No. 95 CIV. 10533 (RJW), U.S. Dist. LEXIS 5760, at *4 n.1, *26 (S.D.N.Y. Apr. 23, 1998). Indeed, two of Defendants' four cited legal authorities are considerations of the next friend's qualifications *separate* from class certification. *See Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 92 (1st Cir. 2010); *Tinsley v. Flanagan*, No. CV-15-00185-PHX-ROS, 2016 U.S. Dist. LEXIS 193289, at *7 (D. Ariz. May 13, 2016). One

4812-4116-4775v.1 0201450-000001
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

does not involve a class action at all.  *See Bhatia v. Corrigan*, No. C 07-2054 CW, 2007 U.S. Dist. LEXIS 39620, at *1 (N.D. Cal. May 16, 2007).  Because Defendants' collateral attack on the next friends circumvents the Federal Rules and legal precedent, it fails.

> **2.  Kathleen Strek, Ksen Murry, and Michelle McAllister Advocate for the Named Plaintiffs' Best Interests and have Sufficient Relationships with them to Serve as Next Friends**

The Court should not and need not reach the qualifications of the next friends improperly raised in an opposition to a Rule 23 motion.  Nevertheless, the challenged next friends have no conflicts with the class, will vigorously prosecute the case for the class, and meet the requirements for serving as next friends.  Generally, courts have been willing to let even minimally-related individuals, or even individuals who have no relationship at all, serve as next friends in foster care cases where the plaintiffs had few adult relationships and the defendants could not point to a more appropriate individual who is willing and able to serve as next friend.  *See, e.g., Tinsley*, 2016 U.S. Dist. LEXIS 193289, at *23.  Defendants do not propose any next friend more appropriate. The Court should decline to remove the current next friends.

### III.    CONCLUSION

For the reasons stated herein and in Plaintiffs' Motion and supporting evidence, Plaintiffs have established that certification is warranted for the following General and Sub Classes:

a. General Class: All children for whom the Department of Human Services ("DHS") has or will have legal responsibility and who are or will be in the legal and physical custody of the DHS.

b. ADA Subclass: All members in the General Class who have or will have physical, intellectual, cognitive, or mental health disabilities.

c. SGM Subclass: All members of the General Class who identify as sexual or gender minorities, including lesbian, gay, bisexual, queer, transgender, intersex, gender non-conforming and non-binary children.

4812-4116-4775v.1 0201450-000001        DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

d.  Aging Out Subclass: All members of the General Class who are or will be 14 years old and older, who are eligible for transition services and lack an appropriate reunification or other permanency plan.

Rule 23(a) is satisfied because the proposed class is sufficiently numerous so as to make joinder impracticable, there are common questions with common answers capable of class wide resolution, and the class representatives and Plaintiffs' counsel will fairly and adequately represent the class members' interests. Additionally, the claims are addressable by class wide injunctive and declaratory relief under Rule 23(b)(2) because Plaintiffs seek uniform relief from policies, procedures, and practices that apply generally to the class as a whole.  Certification of the proposed class under Rule 23 to resolve these claims is warranted.

DATED this 28th day of April, 2021

**DAVIS WRIGHT TREMAINE LLP**

By: s/ Gregory A. Chaimov
    Gregory A. Chaimov, OSB #822180
    gregorychaimov@dwt.com
    1300 SW Fifth Avenue, Ste. 2400
    Portland, OR 97201
    Tel: (503) 241-2300; Fax: (503) 778-5299

**A BETTER CHILDHOOD**
Marcia Robinson Lowry (*pro hac vice*)
mlowry@abetterchildhood.org
Dawn J. Post (*pro hac vice*)
dpost@abetterchildhood.org
Aarti Iyer (*pro hac vice*)
aiyer@abetterchildhood.org
Anastasia Benedetto (*pro hac vice*)
abenedetto@abetterchildhood.org
Erin Gallagher (*pro hac vice*)
egallagher@abetterchildhood.org
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456 Fax: (212) 692-0415

**DISABILITY RIGHTS OREGON**
Emily Cooper, OSB #182254
ecooper@droregon.org
Thomas Stenson, OSB #152894
tstenson@droregon.org
511 SW 10th Avenue, Suite 200
Portland, OR 97205
Tel: (503) 243-2081; Fax: (503) 243-1738

**PAUL SOUTHWICK LAW LLC**
Paul C. Southwick, OSB #09141
paul@paulsouthwick.com
8420 N Ivanhoe St.
Portland, OR 97203
Tel: (503) 806 9517

*Attorneys for Plaintiffs*

Page 33 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CERTIFY AS CLASS ACTION

4812-4116-4775v.1 0201450-000001             DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300