**GREGORY A. CHAIMOV,** OSB #822180
gregorychaimov@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 SW Fifth Avenue, Suite 2300
Portland, OR 97201
Tel: (503) 241-2300

**MARCIA ROBINSON LOWRY** (*pro hac vice*)
mlowry@abetterchildhood.org
**DAWN J. POST** (*pro hac vice*)
dpost@abetterchildhood.org
**ANASTASIA BENEDETTO** (*pro hac vice*)
abenedetto@abetterchildhood.org
**AARTI IYER** (*pro hac vice*)
aiyer@abetterchildhood.org
**A BETTER CHILDHOOD**
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456

**EMILY COOPER**, OSB #182254
ecooper@droregon.org
**THOMAS STENSON**, OSB #152894
tstenson@droregon.org
**DISABILITY RIGHTS OREGON**
511 SW 10th Avenue, Suite 200
Portland, OR 97205
Tel: (503) 243 2081

**PAUL C. SOUTHWICK,** OSB #09141
paul@paulsouthwick.com
**PAUL SOUTHWICK LAW LLC**
8420 N Ivanhoe St.
Portland, OR 97203
Tel: (503) 806 9517

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| WYATT B., *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>KATE BROWN, *et al.*,<br><br>　　　　　　Defendants. | Case No. 6:19-cv-00556-AA<br><br>**PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION**<br><br>**Oral Argument Requested** |

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7-1(a), counsel for Plaintiffs conferred with counsel for Defendants via telephone prior to filing this motion. Defendants' counsel indicated that Defendants oppose this motion and intend to file a response.

## MOTION

Plaintiffs move to exclude the expert opinion testimony of Defendants' expert witnesses, Dr. Kevin Cahill and Ms. Julie Collins, proffered in support of Defendants' opposition to Plaintiffs' motion for class certification. Plaintiffs contend these expert reports are not relevant or reliable as required by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and its progeny. The experts lack the qualifications to give the opinions offered. Additionally, their opinions amount to improper legal conclusions, not evidence to aid the Court's determination on class certification. Moreover, Defendants cannot demonstrate that the methodologies relied upon by these experts are reliable.

## PRELIMINARY STATEMENT

Defendants' opposition to Plaintiffs' motion for class certification relies on two expert reports, neither of which is admissible under Federal Rule of Evidence 702. Defendants' expert Dr. Kevin Cahill is a labor economist with no child welfare experience who nevertheless purports to offer expert opinions and conclusions on whether the Named Plaintiff Children are "typical" or have "common" needs in the class action context, despite also having no legal training. *See* ECF 142-1 (filed under seal) ("Cahill Report"). Defendants' second expert, Ms. Julie Collins, explicitly indicates that her expert report intends to offer "Commonality and Typicality Findings" for class certification, *see* ECF 144-1 (filed under seal) ("Collins Report"), but like Dr. Cahill, Ms. Collins lacks any training that would qualify her to render that opinion. Regardless, legal conclusions are

the purview of the Court, and Dr. Cahill and Ms. Collins' expert reports are improper vehicles for Defendants' legal arguments against class certification. Defendants' legal arguments must be contained in their legal brief opposing class certification—not presented through paid "experts."

Dr. Cahill and Ms. Collins' expert reports, moreover, lack relevance to the issue of class certification, as both experts testified to using casual, varied definitions of legal terms like "typical." As explained in full in Plaintiffs' reply brief in support of class certification filed in tandem with this motion, "typicality" and "commonality" under Federal Rule of Civil Procedure 23 are specific legal requirements; they may not simply be substituted with colloquial definitions. Whether the Named Plaintiff Children are "statistically representative," as Dr. Cahill opines, or have "similar issues," as Ms. Collins understands "typical" to mean, is irrelevant to the class certification determination and Defendants' experts' testimony must therefore be excluded.[1]

Defendants have also failed to demonstrate how Dr. Cahill is qualified to offer expert opinions and conclusions on Adoption and Foster Care Analysis and Reporting System ("AFCARS") data, or that the methodologies underlying either Dr. Cahill or Ms. Collins' expert reports are reliable. Compounding the problem, Defendants repeatedly blocked Plaintiffs from discovery on those methodologies. Dr. Cahill, for instance, admits to relying heavily on "in-person communications" with Defendants' employee Dr. Paul Bellatty for his expert conclusions on the AFCARS datasets, but Defendants have not permitted Plaintiffs to discover the actual content of those "in-person communications." *See* Cahill Rep. at 9 n.21, 10 n.22, 14 n.30, 15 n.32; Declaration of Dawn J. Post in Support of Plaintiffs' Motion to Exclude Defendants' Experts ("Post Decl."), Exs. 1, 2. Defendants have also blocked Plaintiffs from discovering any

---

[1] Dr. Cahill also provides random commentary on the language choices of Plaintiffs' experts that is plainly outside the scope of appropriate expert opinion testimony and thus has no relevance to the Court's class certification determination.

communications or documents between Ms. Collins and members of her team, rendering the "case file review" her expert report derives from methodologically mysterious. *See* Post Decl., Exs. 1, 2. Defendants have the burden of demonstrating the reliability of their experts' methodologies, and by curtailing routine expert discovery, have failed to meet that burden.

Accordingly, because expert testimony that lacks relevance or reliability is prohibited under Rule 702, the expert reports of Dr. Kevin Cahill and Ms. Julie Collins must both be excluded.

## ARGUMENT

### I.      Legal Standard of Review

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" may offer expert testimony if "the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" "the testimony is based upon sufficient facts or data;" "the testimony is the product of reliable principles and methods;" and "the expert has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Rule 702 "clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify," and accordingly, as the gatekeeper for expert testimony, this Court "must ensure that any and all [] testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (noting that the Court's gatekeeping obligation applies to all expert testimony). The burden is on the party offering the expert testimony to prove its admissibility. *See Daubert*, 509 U.S. at 592 n.10 (citing Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)).

Page 4 – PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION
4853-1003-2103v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

The requirement that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue," *see* Fed. R. Evid. 702, "goes primarily to relevance." *Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (internal citations and quotation marks omitted); *see also In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 743 (3d Cir. 1994) (an expert's testimony "will be excluded if it is not scientific knowledge *for purposes of the case*") (emphasis in original).

Moreover, "an expert witness cannot give an opinion as to her *legal conclusion*, *i.e.*, an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058, (9th Cir. 2008) (emphasis in original). "This is because opinion testimony that is couched as a legal conclusion or that merely tells the factfinder what result to reach is not helpful to the finder of fact." *Sancom, Inc. v. Qwest Communs. Corp.*, 683 F. Supp. 2d 1043, 1052 (D.S.D. 2010) (citing *Hogan v. American Tel. & Tel. Co.*, 812 F.2d 409, 411 (8th Cir. 1987); *Farmland Indus. v. Frazier-Parrott Commodities, Inc.*, 871 F.2d 1402, 1409 (8th Cir. 1989)); *see also Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1052 (9th Cir. 2012) (holding "matters of law are inappropriate subjects for expert testimony" and affirming the district court's exclusion of an expert report because the "expert opinion consists entirely of improper legal conclusions").

While the Supreme Court in *Daubert* identified several factors to assess whether an expert opinion is "reliable," 509 U.S. at 592–95, the list of factors "neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141. Instead, where appropriate, a proposed expert's expertise can be given significant weight in assessing admissibility. *See B.K. v. Faust*, No. 15-CV-00185, 2020 U.S. Dist. LEXIS 90245, at *9–10 (D. Ariz. May 21, 2020) (quoting *Kumho Tire*, 526 U.S. at 150; citing Fed. R. Evid. 702). Nonetheless, the expert must be an expert in the relevant field for their testimony to be admissible. *See* Fed. R. Evid. 702; *Jack v.*

Page 5 – PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION
4853-1003-2103v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

*Borg-Warner Morse TEC LLC*, No. 17-CV-0537, 2018 U.S. Dist. LEXIS 135424, at *53 (W.D. Wash. Aug. 10, 2018) ("[A]n expert must be qualified in the field they will testify about.") (citing *Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1103 (N.D. Cal. 2016)). And, expert testimony is properly excluded where the proponent of the expert testimony "offer[s] little explanation of the varying methods [the expert] used," and where the expert "provides no information concerning his methods" but rather "merely states the conclusions he reached using those methods." *Keegan v. Am. Honda Motor Co*, 284 F.R.D. 504, 517 (C.D. Cal. 2012); *see also General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (noting that a district court need not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

## II. Dr. Cahill and Ms. Collins' Expert Reports Lack Relevance and Contain Impermissible Legal Conclusions

Both expert reports submitted in support of Defendants' opposition to class certification are irrelevant to the Court's determination on class certification, as both predominantly—and improperly—focus on the ultimate *legal* issues of whether Plaintiffs meet Rule 23's typicality and commonality requirements. Neither Dr. Cahill nor Ms. Collins are attorneys, as both readily admit, and both are unfamiliar with class certification's legal standards. *See* Post Decl., Ex. 3 ("Cahill Dep.") 60:5–10, 78:27–79:5; Post Decl., Ex. 4 ("Collins Dep.") 113:4–5, 144:3–15, 145:6–16. Dr. Cahill and Ms. Collins' opinions on commonality and typicality must therefore be excluded on that basis. Furthermore, Dr. Cahill's random commentary on Plaintiffs' expert reports is plainly not proper expert testimony and should be excluded as irrelevant to the Court's class action analysis.

Page 6 – PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION
4853-1003-2103v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

### 1. Dr. Cahill's Expert Report Consists of Inappropriate and Erroneous Legal Conclusions on "Commonality" and "Typicality"

Dr. Cahill states that he was asked by Defendants' counsel to opine on "the extent to which foster care children's needs are common across the State" and "the extent to which the named plaintiffs are typical of Oregon's foster care children." Cahill Rep. at 7. Dr. Cahill ultimately concludes that "the needs of Oregon's foster care children are not common across the state." Cahill Rep. at 30. Dr. Cahill also concludes "the named plaintiffs are not typical of foster care children in Oregon generally," Cahill Rep. at 27, because "they are concentrated in specific geographies and in specific placement settings, and they have a much higher number of placements than the typical foster care child in Oregon."[2] Cahill Rep. at 9. But Dr. Cahill is not a lawyer and has no legal training. Accordingly, he is unqualified to provide expert legal conclusions on typicality and commonality. Because Dr. Cahill's expert report "contain[s] numerous legal conclusions," it may be properly excluded. *Nationwide Transp. Fin.*, 523 F.3d at 1058; *see id.* at 1059 (district court did not err in excluding expert testimony "instructing…on legal issues" where "legal conclusions not only invaded the province of the trial judge, but constituted erroneous statements of law"); *see also United States v. Brodie*, 858 F.2d 492, 496–97 (9th Cir. 1988) ("Experts 'interpret and analyze factual evidence. They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient . . .'") (quoting *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986)).

---

[2] In his deposition, Dr. Cahill stated that he focused on these three factors—geography, placement setting, and number of placements— simply because they "*seem* like they might be relevant to this analysis." *See* Cahill Dep. 85:15–86:2 (*emphasis added*).

Dr. Cahill's legal conclusions on commonality are further irrelevant to the class certification determination as they are based entirely on whether foster care children's needs are common across the state. In his report, Dr. Cahill concludes that "the needs of Oregon's foster care children are not common across the state," Cahill Rep. at 30, because "[they] exhibit widespread variation across the state with respect to the average time in foster care, the prevalence of reunification as a case plan, and the prevalence of family placements and pre-adoptive homes."[3] Cahill Rep. at 30. An expert opinion is not the appropriate venue for instructing on the ultimate legal issues, and Plaintiffs' reply brief in support of class certification, filed in tandem with this motion, explains in detail why this interpretation of "commonality" does not have any bearing on Rule 23's commonality requirement. *See* Plaintiffs' Reply in Support of Motion to Certify as Class Action ("Plaintiffs' Reply") at 8–16.

Dr. Cahill's legal conclusions on typicality are similarly irrelevant to the class certification determination as they are based solely on how the term "typical" is defined in the field of statistics. *See* Cahill Rep. at 27. At his deposition, Dr. Cahill added that he was using the word "typical" analogously to "representative." Cahill Dep. 79:6–80:16. *See also id.* 80:17–81:6, 82:3–16. As explained in more detail in Plaintiffs' reply brief in support of class certification, Dr. Cahill's interpretation of "typical" to mean "statistically representative" has no bearing on Rule 23's typicality requirement. *See* Plaintiffs' Reply at 18–19.

Accordingly, Dr. Cahill's opinions lack any relevance to Rule 23's commonality and typicality requirements and fail to "assist the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. Therefore, they must be excluded.

---

[3] Dr. Cahill, an economist with no significant child welfare knowledge, does not articulate his reason for selecting these factors.

### 2. Dr. Cahill's Report Consists of Irrelevant and Inappropriate Criticism of Plaintiffs' Experts

Dr. Cahill dedicates a significant portion of his report—approximately 15 pages—to attacking the reports of *Plaintiffs*' experts. But Dr. Cahill is an economist with no child welfare experience. Therefore, to the extent that his criticisms of Plaintiffs' experts Drs. Wilson, Day, and Puckett surpass the bounds of statistics and economics, they are utterly irrelevant to a Rule 23 determination of class certification because he lacks any relevant qualifications to attack their reports.[4] Indeed, many of Dr. Cahill's opinions have no relation whatsoever to statistics or economics, and instead veer into the territory of random musings. For example, Dr. Cahill takes issue with Plaintiffs' experts for drawing "strong cause-and-effect conclusions," Cahill Rep. at 18, 23, and declares Dr. Day's opinions hyperbolic. Cahill Rep. at 26. Dr. Cahill also opines that the reports of Drs. Wilson, Day, and Puckett all contain inappropriate advocacy, going so far as to "question the extent to which their role as an expert is one that is grounded in an objective review of the facts." Cahill Rep. at 26. This type of commentary is plainly inappropriate for an expert opinion. *See Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011) ("It is this premise that underlies the principle that expert witnesses are not allowed to sort out possible conflicting testimony or to argue the implications of those inconsistencies. That is the role of the lawyer, and it [is] for the [trier of fact] to draw its own conclusions from the testimony it hears . . . [the expert witness'] evaluation of claimed inconsistencies will not be helpful to the [trier of fact].").

Pointing out these perceived flaws is thus neither within the purview of Dr. Cahill's expertise, nor does it "assist the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. Accordingly, because these opinions lack any relevance to the Court's determination on class certification, they must be excluded.

### 3. Ms. Collins' Expert Report Consists of Inappropriate and Erroneous Legal Conclusions on "Commonality" and "Typicality"

Ms. Collins explicitly indicates that the purpose of her expert report was to "render an opinion about whether [the Named Plaintiffs] are typical of children in foster care (typicality) and whether these 10 cases demonstrate that systemwide deficiencies exist in Oregon's foster care system (commonality)." *See* Collins Rep. at 2. While Ms. Collins does possess child welfare experience, she is not a lawyer, and has no legal training. *See, e.g.*, Collins Dep. 84:8–9, 104:15–22, 113:4–5, 144:3–15. She is thus unqualified to offer any expert opinions on typicality and commonality as used in the class certification context, and her testimony as a result must be excluded. *See Nationwide Transp. Fin*, 523 F.3d at 1058 ("an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law") (emphasis in original); *see also Hooper*, 688 F.3d at 1052 (affirming district court's exclusion of expert report because the "expert opinion consists entirely of improper legal conclusions").

The headings in Ms. Collins' expert report make clear that she intends to offer "Commonality and Typicality Findings." *See* Collins Rep. at 4. Ms. Collins claims the Named Plaintiffs' cases are not "representative," and therefore do not meet the commonality requirement, and that typicality is not met because "[t]hese children are not typical of most children who enter foster care." Collins Rep. at 4. Ms. Collins' deposition testimony confirms that her expert report is "solely related to the issue of typicality and commonality." *See* Collins Dep. 80:3–9. She

---

[4] Notably, Defendants fail to proffer any evidence to suggest that Dr. Cahill has expertise to offer opinions on the language choice or purported "advocacy" of Plaintiffs' experts. Such "opinions" are plainly well outside of his purview as an economist. *See Jack*, 2018 U.S. Dist. LEXIS 135424, at *53 (noting that "an expert must be qualified in the field that they will testify about" and disqualifying an expert who had expertise in one field, but did not have any qualifications or experience in the field in which he was offered as an expert) (citing *Lucido*, 217 F. Supp. 3d at 1103). Frankly, it is hard to imagine what expert would have relevant qualifications to make such scattered commentary, or how such comments could be supported by any reliable methodology.

reiterated that fact 34 times during her deposition. *See, e.g.* Collins. Dep. 38:4–8 ("[T]he finding that we were specifically asked to address was related to typicality and commonality"); *id.* 38:19–21 ("[W]e focused all of what we were doing specific to typicality and commonality"); *id.* 78:17–22 ("We were just looking at the issue of typicality and commonality"). Because Ms. Collins' expert report "contain[s] numerous legal conclusions," it should be excluded. *See Nationwide Transp. Fin.*, 523 F.3d at 1058–59 (district court did not err in excluding expert testimony "instructing…on legal issues" where "legal conclusions not only invaded the province of the trial judge, but constituted erroneous statements of law"); *see also Brodie*, 858 F.2d at 496–97 ("Experts 'interpret and analyze factual evidence. They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient . . . .'") (quoting *Curtis*, 782 F.2d at 599).

Ms. Collins' interpretation of the word "typicality," moreover, has no relevance to the class certification determination. Ms. Collins testified that for the purposes of her expert report, "typicality" means "that you would expect to see other—lots of other children that would have similar issue or issues in the context of this review." *See* Collins Dep. 143:17–22. But again, as explained in Plaintiffs' reply brief (the more appropriate venue for such legal arguments), Rule 23's typicality requirement does not concern whether "lots of other children" have "similar issues"—it concerns the similarity of the Named Plaintiff Children's *legal claims*.[5] *See* Plaintiffs'

---

[5] Additionally, Ms. Collins' "expert conclusions" on commonality are not only improper legal conclusions, but also plainly erroneous, and thus irrelevant. As Ms. Collins testified, she could not recall CWLA ever being retained to be an expert witness on behalf of children in child welfare litigation. *See* Collins Dep. 93:13–20. She moreover testified that "ten cases is not sufficient" to determine commonality. *See* Collins Dep. 146:4–10. Ms. Collins testified that CWLA would have needed "700 [cases] if it was 7,000 children" in the foster care population to determine commonality. *See* Collins Dep. 146:15–18. Her testimony that there must be 700 Named Plaintiff Children in order to demonstrate commonality for class certification—in addition to being an improper legal conclusion—is one that does not comport with class action law.

Page 11 – PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION

Reply at 19–22.  Accordingly, as Ms. Collins' expert testimony does not "assist the trier of fact to understand the evidence or to determine a fact in issue," *see* Fed. R. Evid. 702, it must be excluded.

### III.     Dr. Cahill's and Ms. Collins' Opinions Are Unreliable

In addition to ensuring that any expert report is relevant, *Daubert's* gatekeeping function requires the Court to exclude unreliable expert opinions.  509 U.S. at 597.  The focus in this prong of the analysis is on the proposed expert's "principles and methodology, not on the conclusions that they generate." *Id.* at 595.  While Defendants' expert reports should be excluded as irrelevant, they should also be excluded because Defendants have not proven they are reliable.  Notably, Dr. Cahill is not qualified to testify about child welfare issues.  More concerning is that Defendants have blocked discovery into their experts' methodologies, and thus cannot demonstrate that either Dr. Cahill's or Ms. Collins' reports are reliable.

#### 1. Dr. Cahill is not Qualified to Testify on Child Welfare Issues and Uses an Unreliable Methodology

Defendants fail to establish that Dr. Cahill possesses the relevant expertise necessary to offer expert testimony about foster children in Oregon.  *See generally* Cahill Rep.  Dr. Cahill is a Senior Economist at ECONorthwest, and holds advanced degrees not in social work, but in economics and mathematics.  *See* Cahill Rep., App. A.  While Dr. Cahill has previously testified on "contract disputes" and "enrichment type claims and other profit and loss issues," *see* Cahill Dep. 4:5–17, he does not purport to be an expert in the field of child welfare, as he has limited-to-no experience in the field.  *See* Cahill Dep. 26:5–28:11, 30:25–31:18, 167:24–168:3.

Because Dr. Cahill has no direct experience working in child welfare, his report relies on information about AFCARS and federal reporting requirements provided to him by Dr. Paul Bellatty, who works for the Defendants as the Director of Office of Reporting, Research, Analytics and Implementation (ORRAI).  *See* Cahill Rep. at 9 n.21, 10 n.22, 14 n.30, 15 n.32; Cahill Dep.

70:8–12.  However, Dr. Bellatty testified that he had "very little" experience with AFCARS and federal reporting requirements, never received any training on it, and that AFCARS had never been used in any ORRAI research projects.  *See* Post Decl., Ex. 5 ("Bellatty Dep.") 239:25–244:18.  He thus was unable to directly provide the information relied upon by Dr. Cahill in his report.  Instead, Dr. Bellatty described himself as "the conduit" to finding information related to Dr. Cahill's questions, *see* Bellatty Dep. 246:23–247:5, as he testified, "[Dr. Cahill] knew I didn't have the answers and I would have to go to someone else who could get the answers . . . I[] [was] pretty clear about I'm not knowledgeable about AFCARS data."  Bellatty Dep. 282:18–25.

Although Dr. Cahill's report cited in-person and telephone conversations that he had with Dr. Bellatty as the basis for his opinions, Dr. Cahill testified he could not recall the specifics of these conversations, nor exactly why he was put into contact with Dr. Bellatty.[6]  *See* Cahill Rep. at 9 n.21, 10 n.22, 14 n.30, 15 n.32; Cahill Dep.70:21–71:2, 186:23–188:2.  When confronted with the fact that Dr. Bellatty is not familiar with AFCARS, Dr. Cahill repeatedly read Dr. Bellatty's job title directly from the expert report to justify his misplaced reliance.  *See* Cahill Dep. 98:25–101:19, 106:17–107:21, 108:19–25.  When asked what led Dr. Cahill to believe that Dr. Bellatty was reliable, Dr. Cahill stated: "presumably, he's in the position he's in because of the reliability of his own credentials," *see* Cahill Dep. 110:12–17, and also noted that Dr. Bellatty had once been a presenter at a workshop that Dr. Cahill attended.  *See* Cahill Dep. 110:12–23.

Neither Drs. Cahill nor Bellatty were able to definitively identify the ultimate source of the information that Dr. Cahill relied upon in support of his conclusions regarding AFCARS.  *See*

---

[6] Dr. Cahill testified that he may have documented his contact with Dr. Bellatty through notes, *see* Cahill Dep. 76:21–77:2, 155:3–156:6, however, no such documentation has been provided to Plaintiffs.  Significantly, Defendants also instructed Dr. Bellatty not to answer questions related to the information provided during the "[i]n-person communications" with Dr. Cahill referenced in Dr. Cahill's report.  Bellatty Dep. 257:16–258:17, 266:17–22.

Page 13 – PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION

Bellatty Dep. 249:7–252:4–15; Cahill Dep. 107:4–10.  As a result, no showing has been made by the Defendants to demonstrate reliability under *Daubert* against which the accuracy of the substantive information provided may be tested.  Dr. Cahill's lack of experience with child welfare (the crux of this case) combined with his misplaced reliance on a source who also has no familiarity with AFCARS renders his testimony unreliable.  *See Keegan*, 284 F.R.D. at 517–18 (excluding an expert report because there was "minimal explanation of [the expert's] methodology . . . to assure the court that it can safely rely on his opinions").  Dr. Cahill's conclusions should therefore be excluded.

### 2. Defendants Have Blocked Discovery into Ms. Collins' Methodology and Cannot Demonstrate Her Methodology is Reliable

While Ms. Collins, unlike Dr. Cahill, does possess child welfare experience, her expert report's conclusions derive from a "case review" of the Named Plaintiffs' files, the details of which Defendants have largely concealed from routine discovery.  Expert testimony is properly excluded where the proponent of the expert testimony "offer[s] little explanation of the varying methods [the expert] used," and where the expert "provides no information concerning his methods" but rather "merely states the conclusions he reached using those methods."  *Keegan*, 284 F.R.D. at 517.  Defendants bear the burden of demonstrating the reliability of Ms. Collins' expert testimony, and Defendants have failed to meet that burden.  *See Daubert*, 509 U.S. at 592 n.10.

For instance, Ms. Collins' expert report states that "the team developed a tool to review the case files to ensure consistency of the review process."  Collins Rep. at 4; *see* Collins Dep. 45:12–48:25, 121:21–122:9.  However, Defendants failed to produce the tool and refused to permit discovery into the methodology.  Post Decl., Exs. 1, 2; *see also* Collins Dep. 47:17–49:23.  Defendants additionally instructed Ms. Collins not to answer questions related to the instructions she provided other members of the team during the "case review."  *See* Collins Dep. 62:23–70:20,

126:9–127:17. Ms. Collins "provides no information concerning [her] methods," and accordingly her conclusions should be excluded due to her failure "to assure the court that it can safely rely on [her] opinions." *Keegan*, 284 F.R.D. at 517–18.

## CONCLUSION

For the reasons set forth above, the Court should preclude Defendants from offering expert opinions from Dr. Cahill and Ms. Collins in support of their opposition to Plaintiff's motion for class certification and exclude their expert reports.

DATED this 28th day of April, 2021

**DAVIS WRIGHT TREMAINE LLP**

By: *s/ Gregory A. Chaimov*
Gregory A. Chaimov, OSB #822180
gregorychaimov@dwt.com
1300 SW Fifth Avenue, Ste. 2400
Portland, OR 97201
Tel: (503) 241-2300; Fax: (503) 778-5299

**A BETTER CHILDHOOD**
Marcia Robinson Lowry (*pro hac vice*)
mlowry@abetterchildhood.org
Dawn J. Post (*pro hac vice*)
dpost@abetterchildhood.org
Aarti Iyer (*pro hac vice*)
aiyer@abetterchildhood.org
Anastasia Benedetto (*pro hac vice*)
abenedetto@abetterchildhood.org
Erin Gallagher (*pro hac vice*)
egallagher@abetterchildhood.org
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456 Fax: (212) 692-0415

**DISABILITY RIGHTS OREGON**
Emily Cooper, OSB #182254
ecooper@droregon.org
Thomas Stenson, OSB #152894
tstenson@droregon.org
511 SW 10th Avenue, Suite 200
Portland, OR 97205
Tel: (503) 243-2081; Fax: (503) 243-1738

**PAUL SOUTHWICK LAW LLC**
Paul C. Southwick, OSB #09141
paul@paulsouthwick.com
8420 N Ivanhoe St.
Portland, OR 97203
Tel: (503) 806 9517

*Attorneys for Plaintiffs*