**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Anna M. Joyce, OSB #013112**
AnnaJoyce@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Tel: (503) 295-3085
Fax: (503) 323-9105

Special Assistant Attorneys General for Defendants
Additional Counsel of Record Listed on Signature Page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S. by his next friend Paul Aubry; RUTH T. by her next friend Michelle Bartov; BERNARD C. by his next friend Ksen Murry; NAOMI B. by her next friend Kathleen Megill Strek; and NORMAN N. by his next friend Tracy Gregg, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KATE BROWN, Governor of Oregon in her official capacity; FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; REBECCA JONES GASTON, Director, Child Welfare in her official capacity; and OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>Defendants. | No. 6:19-cv-00556-AA<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION**<br><br>**REQUEST FOR ORAL ARGUMENT** |

**Page 1 -    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION**

# INTRODUCTION

The State's experts' opinions meet *Daubert*'s standard for admissibility. Each expert offered opinions that are relevant and reliable, and their opinions will help the Court evaluate facts contested at the class certification stage. The State's statistical expert, Dr. Cahill, opined that the named plaintiffs are not representative of all foster care children in Oregon and rebutted plaintiffs' experts' opinions. The State's child welfare expert, Ms. Collins, opined that the named plaintiffs represent some of the most challenging types of cases that a child welfare agency might encounter. Dr. Cahill's and Ms. Collins' expert opinions help demonstrate that plaintiffs' claims are not typical of or common to the proposed class. Accordingly, the State asks the Court to deny plaintiffs' motion to exclude its experts.

# LEGAL STANDARD

Federal Rule of Evidence 702 governs the admission of expert testimony. The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of evidence. *See, e.g., United States v. Astartita*, No. 3:17-CR-00226-JO, 2018 WL 3097012 at *2 (D. Or. June 20, 2018). "The rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee notes, 2000 amendments (reviewing case law applying *Daubert*).

"The inquiry envisioned by Rule 702 is, we emphasize, a flexible one." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993). Rule 702 permits an expert qualified by "knowledge, skill, experience, training or education" to testify when the expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Precision Seed Cleaners v. Country Mut. Ins. Co.*, No. 03:10-CV-01023-HZ, 2013 WL 943571, at *2 (D. Or. Mar. 11, 2013) (internal quotation omitted). As to the reliability inquiry, the court examines whether "it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (internal quotation omitted). As to the relevance inquiry, the court examines whether "it has a valid connection to the pertinent inquiry." *Id.*

Page 2 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
            DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS
            CERTIFICATION

Courts are required to screen "unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (internal citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596.

The court's gatekeeper role fades during a bench trial. *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018). When the court sits as the fact finder, "there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for [the Court]." *Mass Engineered Design, Inc. v. Planar Sys., Inc.*, No. 3:16-CV-1510-SI, 2018 WL 6059375, at *2 (D. Or. Nov. 19, 2018) (internal quotation and citations omitted). In a bench trial, "the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." *Id.*

## ARGUMENT

**I.    Dr. Cahill qualifies as a statistical expert whose opinions meet *Daubert*'s standard for reliability and relevance.**

Dr. Cahill offered three opinions. (Kevin Cahill Report ("Cahill Report"), attached to Decl. of Vivek Kothari ("Kothari Decl.") as Ex. 1.)[1] First, he opined that the named plaintiffs "are not representative of all foster care children in Oregon from a statistical sense." (*Id*. ¶¶ 79-85.) Second, Dr. Cahill opined that Oregon's foster care population varies "widely across the state with respect to time in care, reunification goals, and placement settings. (*Id.* ¶¶ 86-89.) Third, Dr. Cahill rebutted opinions offered by plaintiffs' experts. He concluded that plaintiffs' experts offered opinions without empirical support. (*Id*. ¶¶ 40, 60, 64, 73-78.) Dr. Cahill's opinions meet *Daubert*'s criteria. He qualifies as a statistical expert, his methodology is testable, and his opinions will help the Court understand how the named plaintiffs differ from the general foster care population.

---

[1] For the Court's convenience, defendants attach Dr. Cahill's expert report, that was previously filed as Dkt. 142, to the declaration of Vivek Kothari in support of this brief.

Page 3 -    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION

### A. Dr. Cahill qualifies as a statistical expert.

Dr. Cahill has extensive statistical experience. He is a Ph.D-trained economist with a focus in applied econometrics, a field that uses statistical analysis to test hypotheses. (Cahill Report, Kothari Decl. Ex. 1 ¶ 1; Kevin Cahill Dep. attached to Kothari Decl. as Ex. 2 at 15:2-10 ("Cahill Dep.").) He has published extensively, presented at conferences, and testified as an expert on topics that require statistical expertise. (Cahill Report, Kothari Decl. Ex. 1 ¶ 1, App. A.) He has presented specifically about "Refuting Bogus Statistics in Litigation: A Case Study." (*Id*. App. A.) A full list of his credentials can be found in his report and accompanying CV. (*Id*. ¶¶ 1-6, App. A.)

Dr. Cahill also previously applied his statistical expertise to child welfare topics. (Cahill Dep., Kothari Decl. Ex. 2 at 26-29.) Working with researchers at OHSU, he analyzed AFCARS, the same dataset he used here, to investigate how children moved between placement settings and the interactions between the foster care system and other social services. (*Id*.) Therefore, Dr. Cahill possesses "at least the minimal foundation of knowledge, skill, and experience required in order to give expert testimony[.]" *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal quote and citation omitted); *see B.K. by next friend Tinsley v. Faust*, No. CV-15-00185-PHX-ROS, 2020 WL 2616033, at *5 (D. Ariz. May 22, 2020) (finding that an economist with qualifications similar to Dr. Cahill's was "qualified to apply statistical methods to data" at the class certification stage of a child welfare case).

### B. Dr. Cahill used a reliable methodology to arrive at his opinions.

Dr. Cahill applied his expertise reliably to reach his opinions. He based his opinions on his statistical calculations and experience with statistical analysis. (*See generally*, Cahill Report, Kothari Decl. Ex. 1, *see also*, Cahill Dep., Kothari Decl. Ex. 2 at 207:11-13.)

Dr. Cahill's statistical calculations rest on a reliable methodology because they are testable. *See Daubert*, 509 U.S. at 593 (identifying testability as "a key question" regarding reliability). He analyzed AFCARS data to rebut Dr. Puckett's conclusions, opine that "the named plaintiffs are not representative of all foster care children in Oregon in a statistical sense,"

Page 4 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
            DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS
            CERTIFICATION

and opine that Oregon's foster population varies widely on several metrics. (Cahill Report, Kothari Decl. Ex. 1 ¶¶ 79-89.) Dr. Cahill's statistical methodology is literally an open book—he provided plaintiffs with a copy of the Stata statistical software program containing the code used to conduct his data analyses. (Stata program and code, attached to Kothari Decl. as Ex. 6.) That Stata program and code permits plaintiffs to replicate, evaluate, and test Dr. Cahill's methodology for themselves. (Cahill Report, Kothari Decl. Ex. 1 ¶ 41 n.24, n.25.) Plaintiffs have not identified any shortcomings. Therefore, his methodology rests on a reliable foundation. *See City of Pomona* 750 F.3d at 1046 (reversing district court in part because expert's methodology could be retested).

Dr. Cahill also properly based his opinions on his experience with statistical analysis. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) ("But no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). Dr. Cahill leaned on his experience researching AFCARS data to identify three characteristics relevant to the typicality analysis: geography, number of placements, and placement settings. (Cahill Dep., Kothari Decl. Ex. 2 at 85:12-86:1 (identifying these as important based on his experience as a researcher).) He used his statistical experience to determine that plaintiffs' expert reports lacked an empirical basis. (*See* Cahill Report, Kothari Decl. Ex. 1 ¶ 39 (Dr. Puckett's opinions contain "basic calculation errors"), ¶ 78 (Dr. Wilson's opinions advocate for DHS to change how LGBTQIA2S+ youth are served by the system without any supporting analyses), ¶¶ 24, 77 (Dr. Day urged that "DHS must take action" to ensure that all foster children have a caseworker, without empirical support).) These opinions rest well within his statistical expertise. *See Kumho Tire Co.* 526 U.S. at 156. Therefore, Dr. Cahill's opinions are based on reliable methodology.

> C. **Dr. Cahill will help the Court understand why the named plaintiffs are not representative of Oregon's foster population from a statistical perspective.**

Dr. Cahill will help the Court sift through the data contained in the AFCARS database to identify and contextualize evidence relevant to the class certification inquiry. For example,

Page 5 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
            DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS
            CERTIFICATION

Dr. Cahill's analysis illustrates that 62% of Oregon's foster population has two or fewer placements while almost every named plaintiff has experienced 5 or more placements.



(Cahill Report, Kothari Decl. Ex. 1, report Ex. 5.)  This information helps the Court understand how the named plaintiffs differ from Oregon's overall foster population.  Thus, Dr. Cahill's opinions will provide insight into relevant AFCARS data which shows that the named plaintiffs are not typical of Oregon's foster population.

### D. Plaintiffs do not identify any valid basis to exclude Dr. Cahill's testimony.

Plaintiffs challenge aspects of Dr. Cahill's expert testimony.  None survives scrutiny.

#### 1. Dr. Cahill offers opinions within his statistical expertise.

First, plaintiffs assert that Dr. Cahill needs child welfare experience to testify in this case. But Dr. Cahill does not need child welfare experience to offer opinions within his statistical expertise.  As other courts have recognized, a statistical expert does not require industry-specific expertise.  *See e.g.*, *B.K.*, 2020 WL 2616033, at *5 (finding that an economist with qualifications similar to Dr. Cahill's was "qualified to apply statistical methods to data" at the class certification stage of a child welfare case).  Here, he applied his statistical expertise to compare the named plaintiffs with other children in the State's care and to rebut the empirical bases of plaintiffs' expert reports.

**Page 6 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
              DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS
              CERTIFICATION**

What is more, Dr. Cahill has prior child welfare experience. He previously completed child welfare research for OHSU regarding "foster care transitions," "how . . . children have moved from different settings over time," "how many [children] ended up being adopted versus having home as the permanent placement," and "interactions between [the] foster care system and other social services." (Cahill Dep., Kothari Decl. Ex. 2 at 26:5-28:11.) Therefore, the Court should not exclude Dr. Cahill's opinion on this basis.

### 2. Dr. Cahill's observation that plaintiffs' experts' opinions lack an empirical basis is relevant.

Second, plaintiffs assert that Dr. Cahill's rebuttal of plaintiffs' experts is irrelevant. But an expert may comment on the methodology employed by another expert. *See Laflamme v. Safeway, Inc.*, No. 3:09-CV-00514, 2010 WL 3522378, at *3 (D. Nev. Sept. 2, 2010) ("Contradicting expert opinions, questioning methodology, and opining on methods and facts plaintiffs' experts did not consider are precisely the type of rebuttal testimony the court would expect."). Here, Dr. Cahill identified "methodological shortcomings" underlying plaintiffs' experts' conclusions from a statistical perspective. (Cahill Report, Kothari Decl. Ex. 1 ¶¶ 20, 38, 90.) For example, Dr. Cahill concluded that plaintiffs' experts' conclusions "are simply unsupported by the analyses presented in their reports[.]" (*Id.* ¶ 78.) In support of that conclusion, Dr. Cahill testified that plaintiffs' experts made "statements about magnitudes that are quantifiable and testable, and these are not quantified nor tested[.]" (Cahill Dep., Kothari Decl. Ex. 2 at 207:16-20.) His testimony helps the Court evaluate the methodology underlying plaintiffs' expert reports.

Dr. Cahill supported his opinion with evidence and relied on proper statistical methodologies (which have not been challenged by the plaintiffs). Therefore, *Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011), cited by plaintiffs, is inapposite. In that case, the expert's testimony was factually unsupported, the expert did not rely on any proper scientific or experience-based method, and the testimony would not be helpful to a jury. *Id.* None of those circumstances apply here. Simply put, Dr. Cahill's analysis of the plaintiffs' expert reports casts

Page 7 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
            DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS
            CERTIFICATION

doubt on the rigor underlying plaintiffs' experts' opinions. Therefore, Dr. Cahill's opinion is relevant to the weight the Court places on their testimony.

### 3. Dr. Bellatty identified the source of the information he provided to Dr. Cahill.

Third, plaintiffs assert that neither Dr. Cahill nor Dr. Bellatty could identify the source of information that Dr. Cahill relied on to analyze AFCARS data. But this claim ignores that Dr. Bellatty identified Ms. Judy Kuper as the source of the AFCARS information.

Three paragraphs of Dr. Cahill's report cited exclusively to communications with Dr. Bellatty, the Director of the Office of Reporting, Research, Analytics, and Implementation ("ORRAI") at ODHS. (Cahill Report, Kothari Decl. Ex. 1 ¶ 32 n.21, ¶ 50 n.30, ¶ 52 n.32.) Dr. Cahill explained that Dr. Bellatty provided him with information that he used in his report. (Cahill Dep., Kothari Decl. Ex. 2 at 74:8-75:4.) Dr. Cahill did not know that Dr. Bellatty obtained that information from other ORRAI staff. (*Id*. at 72:25-73:8.)

Dr. Bellatty is a fact witness for the State. Plaintiffs took Dr. Bellatty's deposition and he testified about his communications with Dr. Cahill.[2] Dr. Bellatty explained at deposition that he served as a "conduit" supplying information to Dr. Cahill from Ms. Kuper, an ORRAI employee. (Paul Bellatty Dep. attached to Kothari Decl. as Ex. 3 at 246:25-247:5, 252:4-7 ("Bellatty Dep.").) Dr. Bellatty clarified that Dr. Cahill called him "a couple times and asked about AFCARS data." (*Id.* at 247:6-12.) Dr. Cahill's questions were about "some definitional issues associated with creation of the database." (*Id.* at 247:24-248:2.) Even though Dr. Cahill "seemed to know an awful lot about AFCARS data in general," (*id.* at 261:19-24), Dr. Bellatty explained that "the AFCARS data is pretty complex . . . so it doesn't surprise me that [Dr. Cahill] contacts me to get with individuals who truly know how to interpret the data." (*Id.* at 248:23-249:6.)

---

[2] Dr. Cahill also testified extensively about his communications with Dr. Bellatty. (*See generally*, Cahill Dep., Kothari Decl. Ex. 2 at 70-77; 95-110, 155-59, 186-87.)

**Page 8 -   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION**

Dr. Bellatty asked Ms. Kuper for the answers to Dr. Cahill's questions.  (*Id*. at 251:15-252:7.)  Ms. Kuper works within the reporting team at ORRAI, is "thoroughly knowledgeable about AFCARS data," and has "been involved with this data for a long, long time." (*Id.* at 253:2-19.)  Dr. Bellatty did not need to independently verify the data because Ms. Kuper "knows AFCARS very well."  (*Id.* at 284:14-19.)  The factual record resolves plaintiffs' question about the source of Dr. Cahill's record.  Consequently, plaintiffs' challenge to his methodology fails.

### 4. Dr. Cahill offers opinions analyzing the facts, not legal conclusions.

Finally, plaintiffs assert that Dr. Cahill cannot offer opinions about typicality and commonality to satisfy class certification.  To the extent that plaintiffs object to Dr. Cahill's use of the words "typicality" or "commonality" to describe his conclusions, their challenge fails because an expert may couch factual analysis in terms that overlap with legal terms.  *See Est. of Shafer ex rel. Shafer v. City of Elgin, Or.*, No. 2:12-CV-00407-SU, 2014 WL 6633106, at *9 (D. Or. Nov. 21, 2014) ("[E]xperts may refer to terminology from applicable law in expressing their opinions.") (internal citation omitted).  Read in context, Dr. Cahill uses those words in either the colloquial sense or to contextualize his factual findings.

Analysis of Dr. Cahill's report establishes that he offers opinions analyzing factual issues, not legal conclusions:

1. Oregon's foster care children "vary widely across the state with respect to time in care, reunification goals, and placement settings."  (Cahill Report, Kothari Decl. Ex. 1 ¶¶ 86-89.);
2. Plaintiffs are not geographically representative of Oregon's foster population.  (*Id*. ¶¶ 82, 91.);
3. Named plaintiffs experienced more placements than most of Oregon's foster youth.  (*Id*. ¶ 83.); and
4. Named plaintiffs do not reflect Oregon's foster youth when it comes to placement settings.  (*Id*. ¶ 84.)

Each of these is a valid topic for expert testimony. *See United States v. Verduzco*, 373 F.3d 1022, 1034 (9th Cir. 2004) ("Opinion testimony on ultimate issues of fact is admissible[.]") (internal citation omitted).

Those factual opinions support the State's position that the proposed general class does not meet Rule 23's typicality or commonality requirement. For example, the State argued that the named plaintiffs' claims do not reflect the general class' claims. (State's Opp'n to Pls.' Mot. to Certify as Class Action (Dkt. 118) ("State's Opp'n") at 15.) Dr. Cahill's opinion that the named plaintiffs "are not geographically representative" and that the "needs of foster children are not common across the state" provides factual support for that legal argument. (Kothari Decl. Ex. 1 ¶¶ 82, 91-92.)[3] Because the plaintiffs themselves differ from the purported class, so do their legal claims. (State's Opp'n at 16 ("plaintiffs are not typical because they have not suffered the injuries that they allege apply class-wide.").)

Similarly, the State argued that plaintiffs have not proved that "the policies or practices they challenge exist and have harmful impacts on a class-wide basis[.]" (State's Opp'n at 21.) Again, Dr. Cahill supported that legal argument with his expert opinion. (*See e.g., id.* at 31.) He supported the State's argument that there is no current policy or practice of inappropriate or inadequate case planning by opining that the vast majority of foster children are able to reunify safely with their parents or caretakers, reflecting appropriate case planning goals. (*See* Cahill Report, Kothari Decl. Ex. 1 ¶ 58, n.34.) Therefore, in part because most foster children reunify with their families safely, the issue of case planning is not common to the class. (*See* State's Opp'n at 32.)

And, plaintiffs' counsel took the *opposite* position when arguing for inclusion of an expert opinion on identical issues in a recent West Virginia case on a motion to certify a class of children in foster care, stating: "The final reports that the [plaintiffs'] experts have produced directly address a central issue to any motion for class certification: whether the Named Plaintiffs

---

[3] Note that Dr. Cahill here uses the word "common" colloquially and in the context of typicality, not commonality.

**Page 10 - DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION**

exhibit commonality and typicality with all class members." *See Jonathan R., et al. v. Justice, et al.*, Case No. 3:19-cv-00710, Pls.' Memo. of Law in Opp'n to Defs.' Mot. to Exclude Pls.' Expert Testimony, Dkt. 171 at 7 (signed by lead counsel of record here, Marcia Lowry of A Better Childhood, Inc.). So even plaintiffs' counsel recognizes that experts can offer opinions relevant to typicality and commonality at the class certification stage.

In sum, Dr. Cahill's testimony is reliable, relevant, and plaintiffs fail to identify any valid basis on which to exclude it. The Court should admit Dr. Cahill's testimony. Any challenge to his testimony goes to weight, not the admissibility. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) ("Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.") (internal quotation and citation omitted).

## II. Ms. Collins qualifies as a child welfare expert whose opinions meet *Daubert*'s standard for reliability and relevance.

Ms. Collins' opinions also meet *Daubert*'s criteria. Ms. Collins qualifies as a child welfare expert, her opinions are based on reliable methods, and her testimony helps explain how the plaintiffs' experiences differ from children in foster care generally.

Ms. Collins offered two opinions: first, the named plaintiffs faced a constellation of challenges that made them unique, and second, she could not identify systemwide deficiencies by reviewing only ten case files. (Julie Collins Report ("Collins Report"), attached to Kothari Decl. as Ex. 4.)[4]

### A. Ms. Collins qualifies as a child welfare expert.

Over 38 years, Ms. Collins has dedicated her career to child welfare, starting as a caseworker, becoming a supervisor, and now serving as the VP of Practice Excellence at the Child Welfare League of America ("CWLA"), the pre-eminent child welfare organization devoted to the safety, permanence, and well-being of children, youth, and families. (Collins

---

[4] For the Court's convenience, defendants attach Ms. Collins' expert report, that was previously filed as Dkt. 144, to the declaration of Vivek Kothari in support of this brief.

**Page 11 - DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION**

Report, Kothari Decl. Ex. 4 at 2-3.) Over her career, she has developed expertise in child welfare, mental health and substance abuse treatment, and managed care. (*Id.*) At CWLA, she trains, consults with, and provides technical assistance to state agencies across the spectrum of child welfare issues including evidence-based programs and practices, prevention of child abuse and neglect, improving outcomes for children and families, working with LGBTQIA2S+ youth, working with diverse populations, and providing culturally-informed care. (*Id.* at App. B.) She has published extensively on child welfare topics and is writing chapters in a forthcoming book on topics at the heart of her testimony here: chronic neglect and intergenerational trauma and abuse. (*Id.* at App. B; Julie Collins Dep. attached to Kothari Decl. as Ex. 5 at 30:7-31:3 ("Collins Dep.").) Therefore, she qualifies as a child welfare expert. *See Hangarter*, 373 F.3d at 1016 (qualifying expert based on experience); *see also B.K.*, 2020 WL 2616033, at *5 (finding that child welfare expert who reviewed case files was qualified to opine on them).

### B.      Ms. Collins used the same case review methodology here as for non-litigation purposes.

Ms. Collins reliably applied her expertise. She derived the methodology that she used for this review from case file reviews she has conducted outside the litigation context. *See City of Pomona*, 750 F.3d at 1046 (reversing district court's exclusion of expert after finding that the methodology was recognized by the field). As she has done "hundreds" of times in the past (Collins Dep., Kothari Decl. Ex. 5 at 71:2-9), she led a team (the "CWLA Team") reviewing case files, synthesized relevant information from those files, applied her knowledge and experience to the relevant information, and articulated her findings. (Collins Report, Kothari Decl. Ex. 4 at 3; Collins Dep., Kothari Decl. Ex. 5 at 47:6-8, 125:2-10.)

She also described the tool the CWLA team used to review the case files. (*See, e.g.*, Collins Dep., Kothari Decl. Ex. 5 at 45-47, 122, 134-36.) She specified that the tool was one that CWLA uses as part of consulting in other states and "contextualized . . . for the purposes of Oregon." (*Id*. at 122:4-9.) The CWLA Team used the tool "to make sure that we were all looking at similar information as we reviewed." (*Id*. at 134:20-22.) That tool allowed the CWLA team to standardize its review of the case files to ensure that each reviewer was

**Page 12 - DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION**

analyzing the same types of information for each child. In addition to the tool, Ms. Collins explained that she or someone else verified any information provided by a CWLA Team member. (*Id*. at 136:11-25.)

Because CWLA relies on this methodology to consult with state agencies outside of litigation, it is reliable. *See In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 742 (3d Cir. 1994) (holding that reliability can be established by demonstrating non-judicial use of methodology).

### C. Ms. Collins' opinions will help the Court understand that the named plaintiffs present "some of the most challenging types of cases that a child welfare agency might have to deal with."

Ms. Collins' substantial child welfare experience will help provide factual context relevant to the Court's typicality inquiry—that the named plaintiffs present challenges and suffer from conditions that distinguish them from the general foster care population. (Collins Report, Kothari Decl. Ex. 4 at 4-6.) That context will help the Court determine whether the claims of these plaintiffs are similar to the claims of the class as a whole.

### D. Plaintiffs do not identify any valid basis to exclude Ms. Collins' testimony.

Plaintiffs challenge two aspects of Ms. Collins' testimony. Neither survives scrutiny.

#### 1. Ms. Collins offers opinions analyzing the facts, not legal conclusions.

As with Dr. Cahill, plaintiffs claim that Ms. Collins may not opine on typicality or commonality. For the reasons described above for the same challenge to Dr. Cahill's testimony, this challenge also fails. (*See* section I.D.4, *supra*.) Again, an analysis of her report shows that she offers only opinions analyzing facts:

1. The named plaintiffs experienced chronic neglect and intergenerational trauma and abuse. (Collins Report, Kothari Decl. Ex. 4 at 4.);

2. Most children in foster care do not experience chronic neglect and intergenerational trauma and abuse. (*Id*. at 5-6; *see also* Collins Dep. Ex. 10, *Intergenerational Patterns of Child Maltreatment: What the Evidence Shows*, attached to Kothari Decl. as Ex. 7.); and

**Page 13 - DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION**

      3. The named plaintiffs represent "some of the most challenging types of cases that a child welfare agency might have to deal with." (*Id*. at 4.)

Each of these is a valid topic for expert testimony. *See Verduzco*, 373 F.3d at 1034 ("Opinion testimony on ultimate issues of fact is admissible[.]"). Ms. Collins' testimony also provides factual support for the State's legal arguments. She opined that each named plaintiff had experienced chronic neglect and/or intergenerational trauma and abuse which differentiated each from the general foster population. (Collins Report, Kothari Decl. Ex. 4 at 4.) That opinion supports the State's argument that these plaintiffs are not typical—because their needs are different from the general class's needs, so are their legal claims. (State's Opp'n at 15-16.)

### 2. Ms. Collins sufficiently described her methodology.

The State has produced ample testimony and discovery regarding Ms. Collins' methodology. Contrary to plaintiffs' contentions, the State did not prevent Ms. Collins from testifying about her methodology. When plaintiffs' counsel posed non-privileged questions about her methodology, Ms. Collins answered appropriately. (*See* Collins Dep., Kothari Decl. Ex. 5 at 45:21-47:8, 121:21-125:23.) Conversely, when plaintiffs questioned Ms. Collins about privileged communications with her team,[5] the State instructed Ms. Collins not to answer, but emphasized twice that it was "not objecting to questions about methodology, about what the team did. We are objecting to questions that seek the substance of communications between the team." (Collins Dep., Kothari Decl. Ex. 5 at 70:16-20, *see also id.* at 66:20-23.)

Nor did the State prevent Ms. Collins from testifying about the tool her team used. At her deposition she explained that she had used the tool for consulting in other states (*id.* at 122:4-9), adapted it for Oregon (*id.*), and used it here to standardize the CWLA team's case file review. (*Id.* at 134:20-22.) In short, the tool helped the CWLA Team "to ensure consistency of the review process" when analyzing the named plaintiffs' case files. (Collins Report, Kothari Decl.

---

[5] As discussed in the parties' February 5, 2021 Joint Letter (Dkt. 204-2), Fed. R. Civ. P. 26(b)(4)(C)'s work product protection applies to internal communications between experts and their assistants, even when an attorney is not present. Accordingly, Ms. Collins' communications with her team are protected work product.

**Page 14 -** DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
              DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS
              CERTIFICATION

Ex 4 at 3.) Ultimately, Ms. Collins fully described her methodology in her report and at her deposition, so plaintiffs' challenge fails.

Furthermore, this challenge ignores that the State has produced over 100,000 pages of case files for the named plaintiffs, thousands of pages of expert discovery (including nearly 700 pages of internal notes by Ms. Collins and her team), Dr. Cahill's Stata program, and detailed expert privilege logs. (*See* Kothari Decl. ¶ 2.) Both experts and Dr. Bellatty also testified at deposition. The State has complied fully with the discovery rules and its production establishes the reliability of its experts' methodologies.

The Court should admit Ms. Collins' testimony. It is reliable, relevant, and plaintiffs fail to identify any valid basis on which to exclude it. Any challenge to her testimony goes to the weight, not the admissibility. *See Kennedy*, 161 F.3d at 1231.

### III. Although plaintiffs fail to advance valid challenges to the State's experts, the State's arguments to exclude plaintiffs' experts remain valid and compelling.

Here, plaintiffs do not offer any valid methodological challenge to the State's experts. By contrast, for the reasons described in the State's Mot. to Exclude Pls.' Experts ("State's Mot.") (Dkt. 114), the State offers valid methodological challenges to exclude plaintiffs' experts. The State's challenges attack fundamental flaws in plaintiffs' experts' methodologies: Dr. Wilson's testimony directly contradicts the peer-reviewed study on which it is based; Dr. Steib and Ms. Rideout rely entirely on unrepresentative case studies and do not use any accepted standards; Dr. Puckett permitted plaintiffs' legal team to perform the calculations underlying his testimony; and Dr. Day admits that her testimony could not survive peer review and that she did not have sufficient time to educate herself on the very topic on which she opines. (*See* State's Mot.) Therefore, only the State offers a valid basis on which to exclude plaintiffs' experts at the class certification stage.

///

///

**Page 15 - DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION**

## CONCLUSION

The State respectfully requests that the Court deny plaintiffs' motion.

DATED this 12th day of May, 2021.

>ELLEN ROSENBLUM
>ATTORNEY GENERAL
>FOR THE STATE OF OREGON
>
>By: *s/ Vivek A. Kothari*
>David B. Markowitz, OSB #742046
>DavidMarkowitz@MarkowitzHerbold.com
>Laura Salerno Owens, OSB #076230
>LauraSalerno@MarkowitzHerbold.com
>Anna M. Joyce, OSB #013112
>AnnaJoyce@MarkowitzHerbold.com
>Harry B. Wilson, OSB #077214
>HarryWilson@MarkowitzHerbold.com
>Lauren F. Blaesing, OSB #113305
>LaurenBlaesing@MarkowitzHerbold.com
>Telephone: (503) 295-3085
>  *Special Assistant Attorneys General for Defendants*
>
>Vivek A. Kothari, OSB #182089
>VivekKothari@MarkowitzHerbold.com
>  *Of Attorneys for Defendants*
>
>Carla A. Scott, OSB #054725
>carla.a.scott@doj.state.or.us
>Sheila H. Potter, OSB #993485
>sheila.potter@doj.state.or.us
>  *Of Attorneys for Defendants*

1141430

**Page 16 -  DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION**