**GREGORY A. CHAIMOV,** OSB #822180
gregorychaimov@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 SW Fifth Avenue, Suite 2300
Portland, OR 97201
Tel: (503) 241-2300

**MARCIA ROBINSON LOWRY** (*pro hac vice*)
mlowry@abetterchildhood.org
**DAWN J. POST** (*pro hac vice*)
dpost@abetterchildhood.org
**ANASTASIA BENEDETTO** (*pro hac vice*)
abenedetto@abetterchildhood.org
**AARTI IYER** (*pro hac vice*)
aiyer@abetterchildhood.org
**A BETTER CHILDHOOD**
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456

**EMILY COOPER**, OSB #182254
ecooper@droregon.org
**THOMAS STENSON**, OSB #152894
tstenson@droregon.org
**DISABILITY RIGHTS OREGON**
511 SW 10th Avenue, Suite 200
Portland, OR 97205
Tel: (503) 243 2081

**PAUL C. SOUTHWICK,** OSB #09141
paul@paulsouthwick.com
**PAUL SOUTHWICK LAW LLC**
8420 N Ivanhoe St.
Portland, OR 97203
Tel: (503) 806 9517

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| WYATT B., *et al.,*<br><br>                    Plaintiffs,<br><br>    v.<br><br>KATE BROWN, *et al.,*<br><br>                    Defendants. | Case No. 6:19-cv-00556-AA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY OPPOSING CLASS CERTIFICATION** |

## INTRODUCTION

As Defendants acknowledge in their own motion to exclude expert testimony, *see* ECF 114 at 6, this Court's role as a "gatekeeper" to ensure an expert's testimony is reliable and relevant applies at the class certification stage. Defendants cannot now assert that the Court's "gatekeeper role fades" merely because it is the reliability and relevance of *their* experts' testimony at issue. *See* ECF 205 at 3. This Court can, and must, exclude expert testimony that does not meet the requirements of Federal Rule of Evidence 702. To be admissible, an expert's testimony must "help the trier of fact to understand the evidence or to determine a fact in issue," *see* Fed. R. Evid. 702, not merely offer "an opinion on an ultimate issue of law," *see Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058, (9th Cir. 2008). Moreover, an expert's testimony must be "the product of reliable principles and methods," which the expert has applied "reliably to the facts of the case," *see* Fed. R. Evid. 702; expert testimony is properly excluded where the proponent of the expert testimony "offer[s] little explanation of the varying methods [the expert] used," *see Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 517 (C.D. Cal. 2012). Defendants have the burden of demonstrating the admissibility of their proffered expert testimony, but their opposition to Plaintiffs' Motion to Exclude fails to rebut Plaintiffs' three main contentions: 1) Dr. Kevin Cahill lacks any qualifications to opine on child welfare topics or comment on Plaintiffs' child welfare experts' findings, 2) both experts' testimony lacks relevance to the Court's determination on class certification, and instead consists of impermissible legal conclusions, and 3) both experts' testimony lacks reliability as Defendants have blocked discovery into the experts' methodology. Because Defendants have failed to demonstrate the relevancy and reliability of the expert testimony offered in their opposition to Plaintiffs' motion for class certification, the expert testimony must be excluded.

Page 1 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

# ARGUMENT

## I.    Dr. Kevin's Cahill Testimony Must Be Excluded as Irrelevant and Unreliable

### A.    As a Labor Economist with No Child Welfare Experience, Dr. Cahill is Unqualified to Opine on the Needs and Characteristics of Foster Care Children

Plaintiffs do not dispute Dr. Cahill's experience as a statistician. But, as pointed out in Plaintiffs' Motion to Exclude, Dr. Cahill is a labor economist with no child welfare expertise, who—as he explicitly indicates in his expert report—was nevertheless asked by Defendants' counsel to opine on "the extent to which foster care children's needs are common across the State." *See* ECF 141-1 at 7. Defendants do not claim Dr. Cahill as a child welfare expert, yet offer no explanation as to how he, as a labor economist, is at all qualified to assess "foster care children's needs," or conclude—as Dr. Cahill apparently does—that "the needs of Oregon's foster care children are not common across the state." *See id.* at 30. Dr. Cahill himself testified that he focused on geography, placement setting, and number of placements as they relate to foster care children in his expert report simply because they "*seem* like they might be relevant to this analysis." *See* Cahill Dep. 85:15-86:2 (emphasis added). Nowhere in Dr. Cahill's deposition did he indicate, as Defendants now suggest, that he "leaned on his experience researching AFCARS data" to identify those characteristics. *See* ECF 205 at 5. Expert testimony that rests on the unsupported guesses of an unqualified expert does not qualify as expert testimony at all. *See In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) (expert opinion cannot be based "on 'subjective speculation'; the expert must have 'good grounds' for his or her belief"); *see also Davis v. Duran*, 277 F.R.D. 362, 372 (N.D. Ill. 2011) (noting, where expert "repeatedly retreated behind the unhelpful and protective formulaic response that he was 'relying on the totality of his training,

education, and experience,'" that such a response "would make all expert testimony essentially impervious to challenge").

Defendants now assert that Dr. Cahill "has prior child welfare experience," *see* ECF 205 at 7, but cite a project "with researchers at [Oregon Health and Science University]" that is conspicuously absent from Dr. Cahill's 15-page curriculum vitae. *See* ECF 206-1, Appendix A. During his deposition—the first time Dr. Cahill mentioned the existence of such a project—Dr. Cahill indicated the research "was never submitted to an academic journal" and likely not even published under his name, confirming that "I included in my CV any qualifications." Cahill Dep. 30:3-24. That neither Dr. Cahill nor Defendants included this supposed experience with child welfare in Dr. Cahill's expert report suggests that experience is insufficient to establish his expertise. Because Dr. Cahill is not "qualified as an expert by knowledge, skill, experience, training, or education," *see* Fed. R. Evid. 702, to opine on the needs or characteristics of foster children, his expert testimony must be excluded.

### B.    Dr. Cahill's Criticism on Plaintiffs' Experts are Not Expert Opinions, But Inappropriate, Irrelevant, and Excludable Commentary

A significant portion of Dr. Cahill's expert report is dedicated to disparaging *Plaintiffs'* child welfare experts. But Dr. Cahill is not a child welfare expert and lacks any expertise to challenge their expert conclusions. Defendants claim that Dr. Cahill's commentary "rebutted" Plaintiffs' experts' opinions, *see* ECF 205 at 2, but nowhere in Dr. Cahill's expert report does he purport to have conducted a statistical analysis grounded in his statistical expertise "rebutting" those expert opinions. Instead, Dr. Cahill offers such "expert" opinions as the fact that "Los Angeles County [is] a different location with a different foster care system and population," and thus "one cannot automatically assume…that findings based on Los Angeles County apply to Oregon." *See* ECF 206-1 at 19, 22. This is not an "expert" rebuttal of Plaintiffs' expert's opinion

based on Dr. Cahill's statistical knowledge; it is plainly an expert acting as a spokesperson for Defendants' own objections. *See Davis*, 277 F.R.D. at 370 ("expert witnesses are not allowed to sort out possible conflicting testimony or to argue the implication of those inconsistencies. That is the role of the lawyer…"); *see also Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 382 (7th Cir. 1986) (noting "the old problem of expert witnesses who are often the mere paid advocates or partisans of those who employ and pay them, as much so as the attorneys who conduct the suit") (internal quotations omitted); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 538 (S.D.N.Y. 2004) (denouncing "the engagement of 'expert' witnesses whose intended role is more to argue the client's cause from the witness stand than to bring to the fact-finder specialized knowledge or expertise that would be helpful in resolving the issues of fact presented by the lawsuit").[1]

Dr. Cahill's incidental musings on Plaintiffs' child welfare experts' conclusions is not expert testimony, and Defendants' repeated insistence that those musings are in fact based in his "statistical experience," *see* ECF 205 at 5, "merely substitutes the *ipse dixit* of counsel for the *ipse dixit* of the experts." *See Davis*, 277 F.R.D. at 370. Nothing in Dr. Cahill's background as a labor economist qualifies him to opine on "advocacy as a theme across plaintiffs' experts' reports," *see* ECF 206-1 at 26-27, for instance, or to comment on whether any of the expert conclusions reached by Plaintiffs' child welfare experts "border on hyperbole," *see* ECF 206-1 at 26. "Opinion given

---

[1] Defendants now also apparently allege—for the first time—that Dr. Cahill is a rebuttal expert. *See* ECF 205 at 7 (citing *Laflamme v. Safeway, Inc.*, 3:09-cv-00514-ECR-VPC, 2010 U.S. Dist. LEXIS 98815 at *3 (D. Nev. Sept. 2, 2010)). That argument is unavailing: Dr. Cahill's supposed "rebuttal testimony" fails to comply with the most basic dictates of Rule 26. *See* Rule 26(a)(2)(D) (requiring disclosures "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party"); *Laflamme*, 3:09-cv-00514-ECR-VPC, 2010 U.S. Dist. LEXIS at *7 (defendants "not…permitted to designate rebuttal expert witnesses to introduce new testimony or opinions").

through the mouth of an expert does not necessarily make it *expert* opinion." *See In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871, 887 (E.D. Ark. 2008) (emphasis in original). Dr. Cahill's testimony on Plaintiffs' experts' reports "simply summarize[s] a document…with a tilt favoring a litigant," and therefore, "does not amount to expert testimony." *See id.*

C.     **Dr. Cahill's Expert Testimony Consists of Improper and Inadmissible Legal Conclusions**

Dr. Cahill's statistical opinions—to the extent that Defendants insist that is all they are—are irrelevant to class certification. Defendants cannot demonstrate otherwise, only repeating in conclusory fashion that his expert testimony "identif[ies] and contextualize[s] evidence relevant to the class certification inquiry," *see* ECF 205 at 5. Defendants clearly struggle to articulate *how* the evidence he "identifies and contextualizes" is relevant to class certification, vaguely asserting that "his opinions will help the Court understand how the named plaintiffs differ from the general foster care population." *See* ECF 205 at 3; *see also* ECF 205 at 6 ("This information helps the Court understand how the named plaintiffs differ from Oregon's overall foster population."). That is because Defendants cannot admit that Dr. Cahill's opinions are only relevant to class certification as legal conclusions, not as mere statistical findings—and because expert testimony consisting of legal conclusions is improper and inadmissible. *See Nationwide Transp.*, 523 F.3d at 1058; *see also Davis*, 277 F.R.D. at 371.

Dr. Cahill's expert report concludes "the named plaintiffs are not typical of foster care children in Oregon," *see id.* at 27, and that "the needs of Oregon's foster care children are not common across the state," *see id.* at 30. In their opposition to Plaintiffs' motion for class certification, Defendants cite those conclusions at face value, asserting, for example, that Dr. Cahill's report indicates that "the number of plaintiffs is also 'too few' to establish typicality." *See* ECF 118 at 24. However, as explained in Plaintiffs' motion to exclude, expert testimony

"instructing…on legal issues" is inadmissible. *See Nationwide Transp. Fin.*, 523 F.3d at 1059; *see also Sparton Corp. v. United States*, 77 Fed. Cl. 1, 9 (2007) ("Expert testimony is an improper mechanism for offering legal arguments to the Court.").

Defendants now concede that when Dr. Cahill "uses those words"—that is, "typicality" or "commonality"—he means them in "the colloquial sense." *See* ECF 205 at 9. But if—as Defendants now claim—Dr. Cahill's expert report opines on "the extent to which the named plaintiffs are typical of Oregon's foster care children" and "the extent to which foster care children's needs are common across the State," *see* ECF 206-1 at 7, merely in the "colloquial sense," then it lacks relevance to the class certification inquiry. There is a reason why Defendants' counsel specifically asked Dr. Cahill to opine on whether the Named Plaintiffs are "typical" or had "common" needs: because those words are the only link between Dr. Cahill's arbitrary statistical findings on how the Named Plaintiffs "differ" from the Oregon foster care population and the actual issue before the Court—class certification.[2]

---

[2] Twice, Defendants incorrectly claim that the testimony of "an economist with qualifications similar to Dr. Cahill's" was admitted "at the class certification stage" of *B.K. v. Faust. See* ECF 205 at 4 (claiming economist was "'qualified to apply statistical methods to data' at the class certification stage of a child welfare case"), 6 (again claiming economist was qualified "at the class certification stage of a child welfare case"). The district court in *B.K.*, however, considered the economist's testimony there not at the class certification stage, but at the merits phase—the court had already certified "[a] General Class and two subclasses (the Medicaid Subclass and the Non-Kinship Subclass)" and "[t]he Ninth Circuit affirmed the certification" of the same. *See B.K. v. Faust*, No. CV-15-00185-PHX-ROS, 2020 U.S. Dist. LEXIS 90245, at *3 (D. Ariz. May 21, 2020). "After five years," the court found that "this matter is ripe for resolution," and admitted the testimony of an economist proffered by plaintiffs who "reviewed, analyzed, and synthesized databases of medical and investigations data…to establish that Arizona children in foster care are at substantial risk of harm resulting from the failure to receive necessary medical services and at substantial risk of not receiving services required by the Medicaid Act." *Id.* at *3, *14. Defendants' error in declaring an economist like Dr. Cahill was qualified to provide expert testimony at *class certification* is a telling one—Defendants' burden at this juncture is not to demonstrate the relevance of Dr. Cahill's testimony on the *merits* of this case, but on the Rule 23 inquiry. Defendants have failed to meet that burden. Notably, this is far from the first time Defendants have confused class certification with a determination on the merits. *See* ECF 201 at 7-9, 16-20, 28-29, 33-35.

"Courts routinely exclude expert testimony that employs terminology with legal import."

*United States ex rel. S. Site & Underground, Inc. v. McCarthy Improvement Co.*, No. 3:14-cv-919-J-PDB, 2017 U.S. Dist. LEXIS 13762, at *43 (M.D. Fla. Feb. 1, 2017). Defendants admit that Dr. Cahill's expert report makes use of the "colloquial" definitions of "typical" and "common." Where "the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular…exclusion is appropriate." *Torres v. Cty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985).

### D. Defendants' Obstruction of Discovery Into Dr. Cahill's Methodology Renders His Testimony Unreliable

Defendants put forth the virtues of the "[v]igorous cross-examination" of expert testimony, *see* ECF 205 at 3, but make such cross-examination near-impossible by withholding valuable and relevant discovery and instructing witnesses not to answer the most routine of questions. Dr. Cahill testified that at least three employees of EcoNorthwest "worked under [his] direction in the production of [his] report," *see* Cahill Dep. 68:18-20, but to this day, Defendants have refused to produce *any* documents or communications between Dr. Cahill and those team members. Defendants also blocked discovery into Dr. Cahill's communications with Dr. Paul Bellatty, an employee of Defendant DHS. Because Dr. Cahill lacks child welfare experience, he relied on information about AFCARS and federal reporting requirements provided to him during "[i]n-person and telephone communications" with Dr. Bellatty. *See* ECF 206-1 at 10 n.21, 11 n.22, 15 n.30, 16 n.32. Defendants do not appear to dispute that, as he testified during his deposition, Dr. Bellatty has "very, very little" experience with AFCARS data sets. Bellatty Dep. 240:9. He does not personally work with AFCARS data, has not received any training on AFCARS data, and knows "very little" about the federal reporting requirements. Bellatty Dep. 241:2-15. Defendants' counsel effectively prohibited all discovery into Dr. Bellatty's in-person communications with Dr.

4836-1777-3802v.1 0201450-000001    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

Cahill, shrouding those conversations in mystery unnecessarily and improperly. Bellatty Dep. 257:22-258:17. Moreover, despite Dr. Bellatty's representation that Dr. Cahill "knew I didn't have the answers" because "I'm pretty clear about I'm not knowledgeable about AFCARS data," Bellatty Dep. 283:20-25, Dr. Cahill concerningly testified that he relied on Dr. Bellatty as a source simply because of his position at Oregon DHS. Cahill Dep. 100:6-16. "The trial court's gatekeeping function requires more than simply taking the expert's word for it." *See* Fed. R. Evid. 702 Advisory Comm. Notes, 2000 Amendments. Defendants here "present…only the expert's qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough." *See Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1319 (9th Cir. 1995). Defendants bear the burden of demonstrating the reliability of Dr. Cahill's expert testimony, and Defendants have failed to meet that burden. *See Daubert v. Merrell Pharms., Inc.*, 509 U.S. 579, 592 n.10.

## II.    Ms. Julie Collins' Testimony Must Be Excluded as Irrelevant and Unreliable

### A.    Ms. Collins' Expert Testimony Consists of Improper and Inadmissible Legal Conclusions

As with Dr. Cahill's expert testimony, Ms. Collins' expert testimony is only relevant to the class certification determination insofar as it contains legal conclusions on "commonality" and "typicality." Ms. Collins' expert report makes clear that she does not opine on chronic neglect and intergenerational trauma as mere child welfare concerns, but rather because she was asked by Defendants' counsel to "render an opinion about whether [the Named Plaintiffs] are typical of children in foster care (typicality)." *See* ECF 144-1 at 2. Defendants do not even attempt to explain why Ms. Collins' expert report contains the heading "Commonality and Typicality Findings" if it does not purport to contain legal conclusions on "commonality" and "typicality." As pointed out in Plaintiffs' motion to exclude, Ms. Collins testified that her expert report relates "to the issue of typicality and commonality" a total of 34 times during her deposition. *See* ECF 203 at 10-11.

4836-1777-3802v.1 0201450-000001            DAVIS WRIGHT TREMAINE LLP
                                1300 S.W. Fifth Avenue · Suite 2400
                                Portland, Oregon 97201 · (503) 241-2300

Defendants once again struggle to articulate the relevance of Ms. Collins' expert testimony to class certification, vaguely suggesting that her findings "that the named plaintiffs present challenges and suffer from conditions that distinguish them from the general foster care population…will help the Court determine whether the claims of these plaintiffs are similar to the claims of the class as a whole." *See* ECF 205 at 13. Defendants do not elaborate *how* her findings will help determine "typicality" under Rule 23—and they cannot, lest they admit that Ms. Collins' findings are only relevant to the "typicality" analysis if her "typicality" findings are taken as legal conclusions. Because Ms. Collins' expert report "contain[s] numerous legal conclusions," it must be excluded. *See Nationwide Transp. Fin.*, 523 F.3d at 1058-59.

## B.    Defendants' Obstruction of Discovery Into Ms. Collins' Methodology Renders Her Testimony Unreliable

Defendants recite the description contained in Ms. Collins' expert report of an amorphous "tool" used by "the CWLA team…to review the case files," *see* ECF 205 at 12, but neither Ms. Collins' expert report nor Defendants' response to Plaintiffs' motion to exclude answers basic questions such as: What does the tool look like? How does it work? How was the tool reliably applied in this instance? In their opposition to Plaintiffs' motion to exclude, Defendants contend that the "tool was one that CWLA uses as part of consulting in other states," *see* ECF 205 at 12, but Ms. Collins' own expert report indicates that the "tool" was in fact "developed" by "[t]he team." *See* ECF 144-1 at 3. Because Defendants have neither permitted discovery into the "tool," nor produced it, the truth is anyone's guess. A guess cannot support expert opinion.

Not only did Defendants refuse to produce the "tool" responsible for Ms. Collins' findings, but Defendants moreover refuse—to this day—to produce any documents or communications at all between Ms. Collins and the CWLA team. Defendants also improperly instructed Ms. Collins not to answer simple questions related to the instructions she provided other members of the team

during the so-called "case review." *See* Collins Dep. 62:23-70:20. Defendants' response that such questions do not relate to methodology rings hollow. Again, it is difficult to subject expert testimony to "vigorous cross-examination" when the methodology underlying that expert testimony is largely concealed and cloaked in ambiguities. Because Defendants "offer little explanation" of Ms. Collins' methodology, and Ms. Collins herself "provides no information concerning h[er] methods" but rather "merely states the conclusions [s]he reached using those methods," *see Keegan*, 284 F.R.D. at 517, Ms. Collins' testimony must be excluded. Defendants bear the burden of demonstrating the reliability of Ms. Collins' expert testimony, and Defendants have failed to meet that burden. *See Daubert*, 509 U.S. at 592 n.10.

DATED this 19th day of May, 2021

**DAVIS WRIGHT TREMAINE LLP**

By: *s/ Gregory A. Chaimov*
Gregory A. Chaimov, OSB #822180
gregorychaimov@dwt.com
1300 SW Fifth Avenue, Ste. 2400
Portland, OR 97201
Tel: (503) 241-2300
Fax: (503) 778-5299

**A BETTER CHILDHOOD**
Marcia Robinson Lowry (*pro hac vice*)
mlowry@abetterchildhood.org
Dawn J. Post (*pro hac vice*)
dpost@abetterchildhood.org
Aarti Iyer (*pro hac vice*)
aiyer@abetterchildhood.org
Anastasia Benedetto (*pro hac vice*)
abenedetto@abetterchildhood.org
Erin Gallagher (*pro hac vice*)
egallagher@abetterchildhood.org
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456
Fax: (212) 692-0415

Page 10 – PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CERTIFY AS CLASS ACTION

4836-1777-3802v.1 0201450-000001                    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2400
Portland, Oregon  97201 · (503) 241-2300

**DISABILITY RIGHTS OREGON**
Emily Cooper, OSB #182254
ecooper@droregon.org
Thomas Stenson, OSB #152894
tstenson@droregon.org
511 SW 10th Avenue, Suite 200
Portland, OR 97205
Tel: (503) 243-2081
Fax: (503) 243-1738

**PAUL SOUTHWICK LAW LLC**
Paul C. Southwick, OSB #09141
paul@paulsouthwick.com
8420 N Ivanhoe St.
Portland, OR 97203
Tel: (503) 806 9517

*Attorneys for Plaintiffs*