**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Anna M. Joyce, OSB #013112**
AnnaJoyce@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Tel:  (503) 295-3085
Fax:  (503) 323-9105

Special Assistant Attorneys General for Defendants
Additional Counsel of Record Listed on Signature Page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S. by his next friend Paul Aubry; RUTH T. by her next friend Michelle Bartov; BERNARD C. by his next friend Ksen Murry; NAOMI B. by her next friend Kathleen Megill Strek; and NORMAN N. by his next friend Tracy Gregg, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiffs,<br><br>     v.<br><br>KATE BROWN, Governor of Oregon in her official capacity; FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; REBECCA JONES GASTON, Director, Child Welfare in her official capacity; and OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>                                    Defendants. | No. 6:19-cv-00556-AA<br><br>**DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**<br><br>**(Oral Argument Requested)** |

**Page 1 -   DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

**CERTIFICATE OF COMPLIANCE**

In compliance with Local Rule 7-1, the parties made a good faith effort through a telephone conference to resolve the dispute that is the subject of this motion and have been unable to do so.

**MOTION**

Defendants the Oregon Department of Human Services ("ODHS"), Fariborz Pakseresht, in his official capacity as Director of ODHS, Rebecca Jones Gaston in her official capacity as Director of Child Welfare at ODHS, and Governor Kate Brown in her official capacity (collectively, "the State") request that the Court certify the Court's September 27, 2021, Opinion and Order (Dkt. 215) for interlocutory appeal under 28 U.S.C. § 1292(b), and stay discovery and other proceedings in this case pending disposition of that appeal.

**INTRODUCTION**

Plaintiffs are ten current or former children in Oregon's foster care system who seek to represent a class made up of all Oregon foster children. Plaintiffs seek injunctive relief requiring the State to take several actions, including requiring the State to (1) contract with an outside entity to complete a needs assessment of the State's foster care system and develop a corrective plan; (2) ensure that all children who enter foster care placement receive a thorough evaluation of the child's needs within 30 days and an individualized written case plan within 60 days; (3) ensure that all children receive the services they need; (4) hire, train, and retain more caseworkers; and (5) limit caseloads of Oregon caseworkers to 15 children for each worker. (*See* Class Action Complaint ("Compl.") (Dkt. 1) at 70-71.)

Plaintiffs also request that the Court appoint a monitor to oversee the State's compliance with plaintiffs' requested injunctive relief. (*Id*. at 73.) Plaintiffs request that the court-appointed monitor have access to all State documents and information concerning its foster care system and request that the monitor conduct reviews of those documents. (*Id*.) Plaintiffs also request that the State pay for the court-appointed monitor. (*Id*.)

The State moved to dismiss all of plaintiffs' claims for relief on abstention grounds. The State asserted that plaintiffs' requested relief would require the type of intrusion upon state government that *O'Shea v. Littleton*, 414 U.S. 488 (1974), and *Younger v. Harris*, 401 U.S. 37 (1971), prohibit. Specifically, the State argued that bedrock principles of federalism and comity mandate that this Court abstain from ongoing oversight of juvenile court proceedings. (Defs.' Mot. to Dismiss or, In the Alternative, to Make More Definite and Certain ("Mot. to Dismiss") (Dkt. 31) at 1.) This Court disagreed. In the Court's order, the Court explained that, although the relief plaintiffs seek is "expansive," and asks the Court to "intrude upon the functions of a state government," abstention was not appropriate in this case. (Opinion and Order (Dkt. 215) at 14.) As explained below, the State asks that the Court certify its Opinion and Order for interlocutory appeal under § 1292(b); the certification criteria are readily satisfied in this case.

## LEGAL STANDARD

The Interlocutory Appeals Act, 28 U.S.C. § 1292(b), authorizes district courts to certify an order for interlocutory appeal if (1) the "order involves a controlling question of law"; (2) there is "substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."

## ARGUMENT

As set forth below, the certification criteria under § 1292(b) are satisfied here. The Court's order involves a controlling question of law because a Ninth Circuit decision on the issue would materially affect the outcome of the case. Additionally, there is substantial ground for difference of opinion as to application of the abstention doctrine because the doctrine involves weighing bedrock principles of our legal system—federalism and comity, and the duty of a federal court to exercise its jurisdiction—against each other. Additionally, the abstention question involves novel circumstances that have not been addressed by the Ninth Circuit and controlling case law is unclear. Finally, interlocutory appeal would undoubtedly advance termination of the litigation—a decision in favor of the State will end the litigation. Thus, all the

requirements of § 1292(b) are met, and this Court should certify its Opinion and Order for interlocutory appeal.

**I.      The Court's order involves a controlling question of law.**

The question at issue here—whether the principles of comity and federalism require abstention in this case—qualifies as a controlling question of law under § 1292(b). A question of law is controlling if an answer "could materially affect the outcome of litigation in the district court." *Arizona v. Ideal Basic Indus. (In re Cement Antitrust Litig.)*, 673 F.2d 1020, 1026 (9th Cir. 1981).

Courts routinely certify questions implicating doctrines such as standing, mootness, and abstention. *See e.g.*, *Kirkbride v. Cont'l Cas. Co.*, 696 F. Supp. 496, 499 (N.D. Cal. 1988) (noting that doctrines such as standing, ripeness, abstention, and the political question doctrine are similar in that they involve prudential considerations where a court may decline to hear a case); *Kirkbride v. Cont'l Cas. Co.*, 707 F. Supp. 429, 431 (N.D. Cal. 1989) (certifying court's previous order under § 1292(b)), *appeal accepted and order rev'd*, 933 F.2d 729, 733-34 (9th Cir. 1991); *Deutsche Bank Nat. Trust Co. v. FDIC*, 744 F.3d 1124, 1134 (9th Cir. 2014) (the district court certified a question involving prudential mootness for appeal under § 1292(b) and the Ninth Circuit accepted the appeal); *Pirani v. Slack Techs, Inc.*, 13 F.4th 940 (9th Cir. 2021) (accepting certified appeal under § 1292(b) of a district court's order denying the defendant's motion to dismiss for lack of standing). Such cases involve controlling questions of law under § 1292(b) because they affect the federal court's jurisdiction over the case. If the court does not have jurisdiction, the litigation ends.

Here, as in *Kirkbride*, *Deutsche Bank National Trust Co.*, and *Pirani*, the question whether this Court should abstain from hearing the case based on the principles outlined in *O'Shea* and *Younger* is a controlling question of law for purposes of § 1292(b). An answer to the question would materially affect the outcome of the case because a decision in the State's favor will end the litigation. Thus, this case squarely satisfies the first requirement of § 1292(b).

**Page 4 -    DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY
             APPEAL**

**II.      There is substantial ground for difference of opinion as to whether abstention is appropriate in this case.**

There is substantial ground for difference of opinion as to whether the Court should abstain from hearing this case. Substantial ground for difference of opinion exists in cases involving issues on which "fair-minded jurists might reach contradictory conclusions." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Additionally, "courts must examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Thus, a party may show that a substantial ground for difference of opinion exists by identifying conflicting or contradictory opinions. *Id.* at 634 (internal citation omitted). Courts will also find that a substantial ground for difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point," or if "novel and difficult questions of first impression are presented." *Id.* at 633.

As explained below, substantial ground for difference of opinion exists in this case. Fair minded jurists might disagree on whether abstention is appropriate in this case because the abstention question at issue requires the weighing of competing and important principles of constitutional law. Moreover, controlling law is unclear. The Ninth Circuit has applied the doctrine of *O'Shea* abstention in an inconsistent manner and it has never weighed in on whether *O'Shea* abstention is required under the circumstances here. Thus, the second requirement of § 1292(b) is met.

**A.      Substantial ground for difference of opinion exists because the abstention question at issue requires the weighing of competing and important principles of constitutional law.**

Abstention questions inherently give rise to substantial ground for difference of opinion. Because abstention involves weighing principles of federalism and comity against the duty of federal courts to exercise their jurisdiction, jurists often disagree as to whether abstention is appropriate. *See Kirkbride*, 707 F. Supp. at 433 (so stating). In *Kirkbride*, the Northern District of California entered an order abstaining from hearing a putative class action. *Kirkbride*, 696 F. Supp. at 497. The court explained that there was a "continual conflict between judges who would use the federal courts to the farthest extent their jurisdiction permits and those who would

advocate a more restrained approach in keeping with values of comity and federalism." *Id.* at 498. The court determined that abstention was appropriate because resolution of the matter involved "substantial state interest." *Id.* at 499. The court also determined that certification of the order under § 1292(b) was appropriate because "[a]t stake here is whether important federalism concerns outweigh a federal agency's statutory grant to litigate in a federal forum." *Kirkbride*, 707 F. Supp. at 433. "Given that jurists may differ on this issue," the court explained, certification under § 1292(b) was proper. *Id.*

Here too, jurists may disagree as to whether federal courts should abstain under these circumstances. As the Court acknowledged in its order, the relief plaintiffs seek is "expansive" and "there is always cause for caution whenever a federal court is asked to intrude upon the functions of a state government." (Opinion and Order at 14.) The process of weighing bedrock principles of our legal system against each other—federalism and comity on one hand, and the duty of a federal court to exercise its jurisdiction on the other—inherently gives rise to substantial ground for difference of opinion. Moreover, as explained below, the question in this case is even more difficult because controlling case law is unclear and there is no Ninth Circuit case directly on point.

> **B.    Controlling law is unclear in this case because Ninth Circuit decisions have not consistently applied *O'Shea*.**

Controlling law is unclear in this case because the Ninth Circuit has not consistently applied the principles set forth in *O'Shea*. In *Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014), the Ninth Circuit appeared to set forth a bright-line rule for applying the abstention principles set forth in *O'Shea*. However, one year later, the Ninth Circuit decided *Miles v. Wesley*, 801 F.3d 1060 (9th Cir. 2015), without mentioning the rule set forth in *Courthouse News Service*. Instead, the court in *Miles* seemed to reject the idea that there should be any bright-line rule, noting that the question involves "heavily fact-dependent" analysis of the "principles of federalism, comity, and institutional competence." *Id.* at 1063 (internal quotation and citation omitted).

Page 6 -    DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY
            APPEAL

In *Courthouse News Service,* Courthouse News Service ("CNS") challenged a California state court's policy that the state court would not release new complaints for public viewing until they were fully processed, which could take days or weeks. *Id.* at 779. In addressing whether *O'Shea* abstention was proper, the court examined two prior Ninth Circuit decisions—*L.A. County Bar Ass'n v. Eu*, 979 F.2d 697 (9th Cir. 1992), and *E.T. v. Cantil-Sakauye*, 682 F.3d 1121 (9th Cir. 2011) (per curiam)—that had analyzed *O'Shea* abstention. *Id.* at 790. In *L.A. County Bar Ass'n*, the Ninth Circuit had held that abstention was improper where the relief sought would require the California State Legislature to authorize new judgeships, which the Governor would have a legal duty to fill. *Id.* (discussing *L.A. Cty. Bar Ass'n*). By contrast, in *E.T.*, the Ninth Circuit had upheld a district court's decision to abstain from hearing a putative class action made up of children in California's foster care system where the plaintiffs sought an injunction limiting the number of cases each child's court-appointed attorney could take on at once. *Id.* (discussing *E.T.*).

The court in *Courthouse News Service* reconciled those prior decisions with a bright-line rule. The court held that "*O'Shea* abstention is inappropriate where the requested relief may be achieved without an ongoing intrusion into the state's administration of justice, but is appropriate where the relief sought would require the federal court to monitor the substance of individual cases on an ongoing basis to administer its judgment." *Id.* at 790. Applying that rule, the court determined that abstention was improper because the relief sought was a "bright-line finding" that would require the Ventura County Superior Court to make complaints available on the day that they were filed. *Id.* at 791. Because compliance with the federal court's ruling could easily be achieved, there was little risk of an "ongoing federal audit" or a "major continuing intrusion of the equitable power of the federal courts into the daily conduct of state . . . proceedings." *Id.* at 792 (internal quotation omitted). Finally, although the court acknowledged that its ruling would invite additional litigation in the future, the court determined that factor was not significant in the abstention analysis.[1]  *Id.*

---

[1] Further showing that there is substantial ground for difference in opinion in cases involving the abstention principles at issue here, the Seventh Circuit, in an almost identical case,

**Page 7 -   DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

The court in *Miles* did not mention the bright-line rule set out in *Courthouse News Service*. Instead, it noted that "whether *O'Shea* abstention applies is heavily fact-dependent," and that "when 'principles of federalism, comity, and institutional competence' are implicated, a federal court 'should be very reluctant to grant relief that would entail heavy federal interference in such sensitive state activities as administration of the judicial system.'" *Id.* at 1063 (quoting *L.A. Cty. Bar. Ass'n*, 929 F.2d at 703). Furthermore, not only did the court in *Miles* not mention the bright-line rule set out in *Courthouse News Service*, it rejected other aspects of the opinion. The court in *Miles* explained that, in *E.T.*, the plaintiffs had sought only a declaratory judgment, but even such a limited decree would "inevitably set up the precise basis for *future intervention* condemned in *O'Shea*." *Id.* at 1064 (internal quotation omitted). The reasoning in *Miles*, therefore, directly contradicts the reasoning in *Courthouse News Service*, which had explicitly rejected the proposition that the potential for future litigation is a significant factor that a court should consider under *O'Shea*. Finally, not only did the courts' reasoning in *Courthouse News Service* and *Miles* appear to be inconsistent, the courts reached different results despite involving similar facts. Although both cases involved a challenge to administration policies of California's state courts, in *Courthouse News Service*, the court held that abstention was inappropriate, and in *Miles*, the court held that abstention was required.

---

disagreed with the Ninth Circuit's reasoning in *Courthouse News Service*. *See Courthouse News Serv. v. Brown*, 908 F.3d 1063 (7th Cir. 2018). The Seventh Circuit explained:

> "[W]e respectfully disagree with our colleagues in the Ninth Circuit. If the state court clerk refuses or fails to comply with the federal court's injunction or complies only partially, the federal court's involvement would certainly continue as it oversees the implementation of its order. Further, we have no doubt CNS would attempt to use a different decision in this case to force the hand of other state courts that do not provide immediate press access to court filings. This would likely lead to subsequent litigation in federal courts. We want to avoid a situation in which the federal courts are dictating in the first instance how state court clerks manage their filing procedures and the timing of press access. We also want to avoid the problems that federal oversight and intrusion of this sort might cause."

*Id.* at 1074-75.

**Page 8 -   DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

Here, the controlling case law is unclear. The inconsistencies in the approaches taken by the Ninth Circuit show that there is substantial ground for difference of opinion concerning the abstention principles applicable in this case. Although this Court applied the bright-line rule set forth in *Courthouse News Service*, there is ground for disagreement as to whether that is the correct approach. If the *Miles* approach is correct, abstention may be proper in this case due to the expansive relief sought and the questions raised concerning the institutional competence of Oregon juvenile courts. This Court should certify its order under § 1292(b) so that the Ninth Circuit can weigh in on the question.

### C. This case presents a novel question concerning application of the principles of federalism and comity on which fair-minded jurists might disagree.

This case also presents a novel question concerning the application of the principles of federalism and comity. When analyzing whether there is substantial ground for difference of opinion under § 1292(b), courts have considered whether there is case law answering the question presented under similar factual circumstances to the case at hand. *See Pirani*, 13 F.4th at 950 (noting that, although the Ninth Circuit had previously interpreted the relevant statutory text, none of those previous cases had addressed what the relevant statutory text meant in the particular context presented in the case before it). Thus, a question may be a "novel" question for purposes of certification under § 1292(b) even where there is case law addressing the applicable legal standards in other contexts.

Although the Ninth Circuit has addressed *O'Shea* and *Younger* abstention generally, the Ninth Circuit has not yet addressed *O'Shea* and *Younger* abstention in the context presented here. The State argued in its motion to dismiss that the Ninth Circuit's decision in *E.T.* involved similar facts to this case. (*See generally* Mot. to Dismiss at 19-22.) However, this Court distinguished *E.T.* on the ground that plaintiffs here do not challenge the functions or the caseloads of Oregon state courts or court-appointed attorneys; instead, they challenge "systemic deficiencies in DHS." (Opinion and Order at 11 (citing *E.T.*, 682 F.3d at 1124).) The novel question presented in this case is whether that distinction should matter.

Page 9 -   DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL

Not only is the question a novel one, there is substantial ground for difference of opinion as to its answer. The Court in *O'Shea* reasoned that by seeking relief against a judicial officer, a plaintiff could "indirectly accomplish the kind of interference that *Younger v. Harris* . . . and related cases sought to prevent." *O'Shea*, 414 U.S. at 500. Although the plaintiff in *O'Shea* sought an injunction controlling the functions of a state judicial officer, this case is similar to *O'Shea* in that Oregon juvenile courts are tasked with overseeing the work that ODHS caseworkers carry out. Here, plaintiffs seek to replace the role of Oregon juvenile courts in overseeing those efforts with a federal court-appointed monitor. (Compl. at 73.)

Moreover, *O'Shea* is an outgrowth of the *Younger* abstention doctrine. Here, many of the facts that create differences between this case and *O'Shea* are the same facts that create similarities between this case and *Younger*. For example, in *Younger*, the plaintiff sought injunctive relief against the California District Attorney, not a judicial officer. *See Younger*, 401 U.S. at 39. Here, plaintiffs seek relief against state executive branch officials and not judicial officers. Additionally, abstention was appropriate in *Younger* because the plaintiff could challenge the constitutionality of the state statute in his criminal trial, and the state's ability to prosecute crimes was an important state function. *Id.* at 42-43. Here, each foster child can raise issues concerning that child's case plan, as well as the implementation of that plan, during underlying juvenile court proceedings. *See Moore v. Sims*, 442 U.S. 415, 425-26 (1979) ("Certainly, abstention is appropriate unless state law clearly bars the interposition of the constitutional claims."). Finally, this case is similar to *Younger* in one other aspect—the management of a state foster care system is an important, and sensitive, state interest.[2]

---

[2] In a similar case from the Southern District of Indiana, filed by the same plaintiffs' counsel shortly after this case, the defendants argued, like the State did in this case, that the court should abstain from hearing a putative class action filed against Indiana's Governor, Indiana's Director of Child Services, and Indiana's Department of Child Services. *See Ashley W. v. Holcomb*, No. 3:19-cv-00129-RLY-MPB (S.D. Ind. Sept. 29, 2021) (Dkt. 180). Although the court denied the defendants' motion to dismiss in that case, the court certified its order under § 1292(b). *Id.* The Indiana court noted that courts are split on the abstention question under these circumstances, comparing *31 Foster Children v. Bush*, 329 F.3d 1255, 1282 (11th Cir. 2003), which held that abstention was appropriate, with *Tinsley v. McKay*, 156 F. Supp. 3d 1024 (D. Ariz. 2015), which concluded that abstention was inappropriate. *Id.* (Slip. Op. at 7). The Court

**Page 10 - DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

For all the above reasons, substantial ground for difference of opinion exists in this case. The second requirement of § 1292(b) is met.

**III.   An immediate appeal from the Court's order would materially advance the ultimate termination of the litigation.**

An immediate appeal from the Court's order would materially advance the ultimate termination of the litigation. This case is a putative class action that has been ongoing for over two years. The parties have twice participated in mediation, but the case has not settled. Moreover, plaintiffs seek ongoing relief in the form of a federal court-appointed monitor with no specified end date. Section 1292(b) is intended for "extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation," such as "antitrust and similarly protracted cases." *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966). This case is one of those protracted and expensive cases. If the Court certifies its Opinion and Order for interlocutory appeal, a decision from the Ninth Circuit on the abstention question could terminate the litigation in its entirety, sparing judicial and party resources. Thus, the third requirement of § 1292(b) is readily met here.

///
///
///
///
///
///

---

should reach the same result in this case and certify its order under § 1292(b). For the Court's convenience, the court's decision certifying its order in *Ashley W.* is attached.

**Page 11 -  DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

## CONCLUSION

For all the above reasons, the State requests that the Court certify the Court's September 27, 2021, Opinion and Order (Dkt. 215) for interlocutory appeal under 28 U.S.C. § 1292(b). Moreover, the State requests that the Court stay discovery and other proceedings in this case pending disposition on appeal. Doing so would prevent unnecessary litigation if the State were to prevail on appeal.

DATED this 27th day of October, 2021.

        ELLEN ROSENBLUM
        ATTORNEY GENERAL
        FOR THE STATE OF OREGON

By: *s/ Lauren F. Blaesing*
    David B. Markowitz, OSB #742046
    DavidMarkowitz@MarkowitzHerbold.com
    Laura Salerno Owens, OSB #076230
    LauraSalerno@MarkowitzHerbold.com
    Anna M. Joyce, OSB #013112
    AnnaJoyce@MarkowitzHerbold.com
    Harry B. Wilson, OSB #077214
    HarryWilson@MarkowitzHerbold.com
    Lauren F. Blaesing, OSB #113305
    LaurenBlaesing@MarkowitzHerbold.com
    Telephone: (503) 295-3085
        *Special Assistant Attorneys General for Defendants*

    Vivek A. Kothari, OSB #182089
    VivekKothari@MarkowitzHerbold.com
        *Of Attorneys for Defendants*

    Carla A. Scott, OSB #054725
    carla.a.scott@doj.state.or.us
    Sheila H. Potter, OSB #993485
    sheila.potter@doj.state.or.us
        *Of Attorneys for Defendants*

1202177