**EMILY COOPER**, OSB 182254
ecooper@droregon.org
**THOMAS STENSON**, OSB 152894
tstenson@droregon.org
**DISABILITY RIGHTS OREGON**
511 SW 10th Avenue, Suite 200
Portland, OR 97205
Tel: (503) 243 2081

*Attorneys for Plaintiffs* [Full list in signature block]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| WYATT B., *et al.*,<br><br>                  Plaintiffs,<br><br>   v.<br><br>TINA KOTEK, *et al.*,<br><br>                  Defendants. | Case No. 6:19-cv-00556-AA<br><br>**PLAINTIFFS' MOTION TO QUASH DEFENDANTS' THIRD PARTY SUBPOENA DUCES TECUM TO SENATOR SARA GELSER BLOUIN**<br><br>**Oral Argument Requested** |

## CERTIFICATION PER LOCAL RULE 7-1

Plaintiffs sought to confer with Defendants in a phone call on the morning of April 25. Defendants objected to the motion.

## PLAINTIFFS' MOTION TO QUASH DEFENDANTS' THIRD PARTY SUBPOENA DUCES TECUM TO SENATOR GELSER BLOUIN

Plaintiffs move pursuant to Civil Rule 16, 26, 34, and 45 to quash a subpoena duces tecum issued on April 25, 2024 to Oregon state Senator Sara Gelser Blouin.[1] Declaration of Thomas

---

[1] The motion to quash is used as a shorthand term here for a motion seeking all forms of orders voiding, striking, or prohibiting the enforcement of the subpoena, including an order under Rule 45, a protective order under Rule 26(c) or a remedial order for violating a scheduling order under Rule 16(f).

Stenson, Exh. A. Senator Gelser Blouin was recently announced as a witness for Plaintiffs in the trial scheduled for May 13, 2024. ECF 385. Despite the close of fact discovery in this matter in October 2023, ECF 303, Defendants nevertheless demanded that Senator Gelser Blouin deliver documents and communications to their attorneys' offices by May 10, 2024.

Not only is this subpoena late by more than six months, the substance of the subpoena is plainly intended to intimidate or punish the witness for coming forward. The subpoena demands all of Senator Gelser Blouin's communications with the Plaintiffs, with the next friends, with the attorneys for Plaintiffs, and with anyone who works with those attorneys. The subpoena goes on to demand all of her communications with attorneys in other litigation, all her communications with the Oregonian, and all her communications with Oregon Public Broadcasting.[2]

Two of the requested sources of documents most clearly demonstrate the improper purpose of Defendants. First, Defendants demand all "Communications between you and the Honorable Ann Aiken made or exchanged within the Responsive Time Period regarding this Action or any other pending action in the U.S. District Court for the District of Oregon, Eugene Division." Second, Defendants demand all communications between the Senator and celebrity Paris Hilton relating to child welfare matters generally.

The substance of the requests varies somewhat—in some cases, simply demanding all communications or documents, but in others, the request focuses on a particular lawsuit or lawsuits. However, each request covers a designated time period beginning January 1, 2015, through the present.

## I. Defendants' Subpoena Duces Tecum Is Plainly Untimely

Defendants may not circumvent the discovery deadlines set by this Court by issuing belated subpoenas duces tecum. FED. R. CIV. P. 16. The overwhelming weight of case law in this

---

[2] Plaintiffs note at this point that they do not represent the Senator, nor any of the interested parties who may also wish to protect their communications with the Senator. Plaintiffs' motion to quash is grounded on their need to protect the trial process from needless abuse and prejudice in their own case. Other affected individuals may well wish to weigh in on this matter.

circuit indicates that a subpoena duces tecum may not be used to evade the discovery deadlines of the court. *Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 561 (S.D. Cal. 1999) ("Case law establishes that subpoenas under Rule 45 are discovery, and must be utilized within the time period permitted for discovery in a case."); *Inland Empire Foods, Inc. v. Zateca Foods, LLC*, No. EDCV 00-00203-RT(EX), 2010 WL 11519370, at *2 (C.D. Cal. Apr. 27, 2010) (subpoena may not be used to "circumvent the requirements of a court-mandated discovery deadline" with limited exceptions for non-discovery purposes); *nSight, Inc. v. PeopleSoft, Inc*., No. 3:04CV3836MMC(MEJ), 2006 WL 988807, at *3 (N.D. Cal. Apr. 13, 2006) ("Courts have emphasized that a party's further investigation and trial preparation after a discovery cut-off may not invoke the authority of the court to issue a Rule 45 subpoena."); *Davis v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, No. 3:12-CV-0808-SI, 2015 WL 3823826, at *1 (D. Or. June 18, 2015). A Rule 45 subpoena is not a proper means to discover impeachment evidence against a witness after discovery has closed. *Supply v. City of Visalia*, No. 1:15-CV-0672 AWI EPG, 2017 WL 4652698, at *2 (E.D. Cal. Oct. 17, 2017) (party's interest in impeaching witness did not allow subpoena duces tecum outside time for discovery); *Rice v. United States*, 164 F.R.D. 556, 557 (N.D. Okla. 1995). Defendants had four years in which to investigate Senator Gelser Blouin's communications—which Defendants inquired about as early as October 2019 at multiple depositions[3]—through timely filed discovery requests. They chose not to do so. A subpoena duces tecum outside of the Court's deadlines may not issue without permission from the court. *Davis*, 2015 WL 3823826 , at *1 (after discovery closes, Rule 16 motion is required for subpoena); *see also* FED. R. CIV. P. 45(a)(2); LR 16-3 (outlining requirements to change deadlines); LR 16-5(d) (pretrial orders of Court "control subsequent course of action"). Since

---

[3] *See* Declaration of Thomas Stenson, ¶5. Senator Gelser Blouin has never made a secret to Defendants that she receives frequent contacts from people unhappy with DHS's services, but routinely communicates her concerns to DHS staff. Id. ¶7. She, in fact, received the 2021 Carl Levin Award for Effective Oversight at Wayne State Law School, a national award for "bipartisan, fact based oversight" for her "extensive and meaningful work on the Oregon foster care program." *Id.* Exh. D. Defendants have long known that Senator Gelser Blouin might have documents and communications relevant to foster care.

fact discovery closed last October, Defendants must file a Rule 16 motion to amend discovery deadlines before issuing a subpoena duces tecum.

## II. The Subpoena's Timing and Substance Demonstrates a Facial Purpose to Embarrass, Frustrate, and Harass the Witness, Not a Legitimate Attempt to Garner Usable Evidence

Senator Gelser Blouin's announced intention to testify came less than a week before the subpoena duces tecum. ECF 385 (Apr. 19, 2024). The Court might well wonder why, three weeks before a major trial on such profound and challenging questions as whether Oregon keeps foster children safe, Defendants and their counsel wish to inquire about the Senator's communications with a celebrity, or why they suddenly wish to investigate whether this Court has engaged in improper *ex parte* communication with the Senator about litigation before the Court.

The broad scope of the subpoena—including communications plainly sought for sensational purposes—indicates an improper intent to harass, to intimidate, and to embarrass the witness into not testifying, rather than a genuine attempt to discover information germane to the case. *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (overbroad subpoena duces tecum demonstrated intent to "exert pressure on the witnesses not to testify"). The plain purpose and effect of this subpoena would be "to harass, cause unnecessary delay, [and] to needlessly increase the cost of litigation." FED. R. CIV. P. 11(b); *see also* FED. R. CIV. P. 26(d)(1). Defendants cannot seriously believe that the Senator's communication with journalists or celebrities will shed real light on the legal questions before the Court.

In addition to demanding nine years' worth of documents from one witness, Defendants also demand Senator Gelser Blouin's communications with the other trial witnesses. The idea that Defendants will suddenly be closely scrutinizing the witnesses' communications with elected officials on the sensitive topics at issue in this case may deter other witnesses from testifying as well. Included on the witness list are children still in the foster care system. Those children are entitled to reach out to elected officials to seek assistance about maltreatment in care

or about sensitive issues regarding DHS, and to do so without retaliation or fear of embarrassment. The plain purpose of the subpoena is to intimidate witnesses, not to discover relevant facts for trial.

The subpoena also seeks the Senator's communications with Plaintiffs' counsel. To the extent such communications concern the Senator's anticipated testimony in this case, they are work product and protected from discovery by this untimely and improper subpoena. *See* FED. R. CIV. P. 26(b)(3); *see also McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, 333 F.R.D. 638, 646 (D. Or. 2019) (emails between counsel and witness, including draft declarations, prepared in connection with lawsuit "presumptively fall within the category of work product[]").

Finally, the gratuitous and baseless request for the Senator's communications with this Court demonstrate an improper motive: 1) to insinuate that this Court has engaged in prohibited *ex parte* communications with the Senator about litigation before it; and 2) to employ the Court's own process to outrage the Court and to manufacture a basis for recusal. Plaintiffs are certain the Court is too wise to take Defendants' bait. Had Defendants had any bona fide questions about whether the Court had communicated with the Senator or any other witness about this matter, Defendants could have asked the Court directly at any point, including in a status conference held just yesterday. Instead of having the courage to ask the Court at the hearing, Defendants engendered an elaborate process to force a state senator to deny the innuendo in their subpoena. The improper motive to smear the Court or to manufacture a basis for recusal is transparent.

### III.    The Combined Overbreadth of the Subpoena and the Short Time for Response Would Prejudice Plaintiffs and Their Trial Preparation

The sweeping nature of the subpoena, requiring the Senator to search nine years worth of correspondence and documents for any sign of contact with hundreds of people, combined with a short time for performance, require that it be quashed. A subpoena must "allow a reasonable time to comply." FED. R. CIV. P. 45(d)(3)(A)(i). The subpoena seeks communications with 10 named plaintiffs in this matter, 7 next friends, 19 other fact witnesses, 2 individual plaintiffs in other litigation, all employees and all individuals "working with" A Better Childhood, Disability

Rights Oregon, Davis Wright Tremaine, Rizzo Bosworth Eraut PC, Paul Southwick, Youth Rights Justice, Oregon Law Center, CASA for Children, Oregon Public Broadcasting, and the Oregonian. Conservatively, hundreds and likely more than a thousand individuals work or worked at one point since 2015 for those organizations. Defendants imposed a sudden demand on a state senator to identify hundreds of names and review nine years worth of documents in three weeks to search for any materials related to those names, all while the witness is preparing for trial and attending to her own duties. This sudden burden dramatically impairs the Plaintiffs' capacity to conduct the trial.

### IV.     Conclusion

Plaintiffs are busy preparing a complex case for a four-week trial, a trial featuring dozens of witnesses and hundreds of documents. Defendants' subpoena injects frivolous legal issues into these difficult preparations. The subpoena diverts Plaintiffs from their bona fide attempts to try this case. While Defendants have the apparently unlimited resources of the state at their disposal, Plaintiffs may not divert their attention from the serious business of trial preparation. Increasing the cost and delay of litigation may suit Defendants, but Plaintiffs desire to focus on the triable issues in this case. Defendants may wish to focus on Paris Hilton, but Plaintiffs wish to focus on Oregon's children.

The Court should quash the subpoena in its entirety.

Dated the 25th day of April 2024.

**DISABILITY RIGHTS OREGON**

By: *s/ Thomas Stenson*

Emily Cooper, OSB #182254
ecooper@droregon.org
Thomas Stenson, OSB #152894
tstenson@droregon.org
511 SW 10th Avenue, Suite 200
Portland OR 97205
Tel: (503) 243 2081
Fax: (503) 243 1738

**DAVIS WRIGHT TREMAINE**
P. Andrew McStay, Jr. OSB #033997
andymcstay@dwt.com
William D. Miner, OSB #043636
billminer@dwt.com
560 SW Tenth Avenue, Suite 700
Portland, OR 97205
Tel: (503) 241-2300


**A BETTER CHILDHOOD**
Marcia Robinson Lowry (*pro hac vice*) mlowry@abetterchildhood.org
Anastasia Benedetto (*pro hac vice*) abenedetto@abetterchildhood.org
Lindsay Gus (*pro hac vice*) lgus@abetterchildhood.org
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456
Fax: (212) 692-0415

**RIZZO BOSWORTH ERAUT PC**
Steven Rizzo, OSB 840853
srizzo@rizzopc.com
Mary D. Skjelset, OSB 075840
mskjelset@rizzopc.com
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630


Attorneys for Plaintiffs