**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
**Vivek A. Kothari, OSB #182089**
VivekKothari@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for Defendants*
*Additional Counsel of Record Listed on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S. by his next friend Paul Aubry; RUTH T. by her next friend Michelle Bartov; BERNARD C. by his next friend Ksen Murry; NAOMI B. by her next friend Kathleen Megill Strek; and NORMAN N. by his next friend Tracy Gregg, individually and on behalf of all others similarly situated, | Case No. 6:19-cv-00556-AA<br><br>**DEFENDANTS' MOTIONS *IN LIMINE***<br><br>**Oral Argument Requested** |
| Plaintiffs, | |
| v. | |
| TINA KOTEK, Governor of Oregon in her official capacity; FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; APRILLE FLINT-GERNER, Director, Child Welfare in her official capacity; and OREGON DEPARTMENT OF HUMAN SERVICES, | |
| Defendants. | |

Page 1 –    DEFENDANTS' MOTIONS *IN LIMINE*

# TABLE OF CONTENTS

**Page**

LR 7-1 CERTIFICATION ...................................................................................................1

MOTIONS ..........................................................................................................................1

BACKGROUND ................................................................................................................1

PLAINTIFFS' CLAIMS ....................................................................................................2

LEGAL STANDARDS ......................................................................................................2

ARGUMENT .....................................................................................................................3

I.      This Court should exclude evidence related to claims that have already been dismissed from the case or are unrelated to any of the "common questions" the Court certified as appropriate for class-wide resolution. .................3

      A.    The Court should exclude evidence regarding the array of placement options and the availability of less-restrictive options. ..............4

      B.    The Court should exclude evidence of the length of time spent in foster care. .................................................................................................5

      C.    The Court should exclude evidence of placement stability. .......................6

      D.    The Court should exclude evidence regarding the aging-out subclass. .....................................................................................................6

II.     This Court should exclude evidence related to ODHS's failure to protect children while they are at home with their parents. ...........................................7

III.    This Court should exclude evidence related to issues not alleged in the Complaint.................................................................................................................8

      A.    The Court should exclude evidence of harms that occur while a child is in the physical custody of a parent (*e.g.* on a trial home visit or in-home placement). ........................................................................9

      B.    The Court should exclude evidence of allegations that ODHS is "hiding" evidence of maltreatment in care. ..............................................10

      C.    The Court should exclude evidence of alleged misuse of child-specific resource home certification. ..........................................................13

IV.    This Court should exclude evidence of other lawsuits or settlements involving ODHS Child Welfare..................................................................................14

V.     This Court should exclude evidence related to temporary lodging. .....................16

VI.    This Court should exclude evidence of unnamed class members' experiences in foster care that was not provided to defendants in discovery...............................................................................................................19

|  | A. | Defendants requested the identities of unnamed class members multiple times in discovery; each time, plaintiffs refused to produce it. | 19 |
| --- | --- | --- | --- |
|  | B. | Rule 37 prevents plaintiffs from withholding responsive information in discovery and then present it at trial. | 21 |
|  | C. | The Court should not permit testimony about and from the unnamed class members. | 22 |
| VII. |  | This Court should exclude evidence of the cost of the state's defense of this case. | 25 |
| VIII. |  | This Court should exclude Senator Gelser Blouin's testimony in its entirety. | 25 |
|  | A. | Background | 26 |
|  | B. | This Court should exclude Senator Gelser Blouin's testimony. | 27 |
|  | 1. | Plaintiffs did not properly disclose or qualify Senator Gelser Blouin's proposed testimony under FRE 702 and FRCP 26(a). | 27 |
|  | 2. | Senator Gelser Blouin is not a percipient witness, and FRE 701 bars lay opinions testimony based on hearsay or specialized knowledge. | 28 |
|  | 3. | Senator Gelser Blouin's witness statement is too vague to satisfy the notice requirements for experts or lay witnesses. | 30 |
|  | 4. | The legislature speaks with one voice though legislation, and a single legislator's post-hoc testimony regarding enacted legislation is inadmissible. | 30 |
|  | 5. | Senator Gelser Blouin cannot provide a legal opinion regarding the constitutionality of state statutes or ODHS policies. | 32 |
|  | 6. | At absolute most, the Court should permit Senator Gelser Blouin to provide non-cumulative testimony describing her conversations with defendants. | 32 |
| CONCLUSION |  |  | 34 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams Lab'ys, Inc. v. Jacobs Eng'g Co.*,
761 F.2d 1218 (7th Cir. 1985) ................................................ 25

*Alltrade, Inc. v. Uniweld Prod., Inc.*,
946 F.2d 622 (9th Cir. 1991) ................................................ 16

*Am. Const. Party v. Munro*,
650 F.2d 184 (9th Cir. 1981) ................................................ 31

*Arredondo v. Delano Farms Co.*,
No. 1:09-CV-01247 MJS, 2014 WL 5106401 (E.D. Cal. Oct. 10, 2014) .............................. 24

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................... 11, 14

*Bennett v. Yoshina*,
98 F. Supp. 2d 1139 (D. Haw. 2000) ........................................ 31

*Bond v. Shriners Hospitals for Children*,
2024 WL 1007864 (D. Or. Feb. 2, 2024), *adopted* 2024WL 1091563, at \*2 (D. Or. Mar. 12, 2024) ............................................................. 23

*Cook Inlet Native Ass'n v. Bowen*,
810 F.2d 1471 (9th Cir. 1987) ............................................. 31

*Dep't of Hum. Servs. v. J.M.*,
266 Or. App. 453, 338 P.3d 191 (2014) ..................................... 12

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
489 US 189 (1989) ..................................................... 7, 8

*Draper v. Airco, Inc.*,
580 F.2d 91 (3d Cir. 1978) ............................................... 25

*Exch. Comm'n v. Ambassador Advisors, LLC*,
576 F. Supp. 3d 250 (E.D. Pa. 2021) ...................................... 28

*Fresh Int'l Corp. v. Agric. Lab. Rels. Bd.*,
805 F.2d 1353 (9th Cir. 1986) ............................................ 12

*Futurewei Techs., Inc. v. Acacia Rsch. Corp.*,
737 F.3d 704 (Fed. Cir. 2013) ............................................ 16

*Giddings v. Vision House Prod., Inc.*,
    584 F. Supp. 2d 1222 (D. Ariz. 2008) ............................................................................. 11, 14

*Green v. Baca*,
    226 F.R.D 624 (C.D. Cal. 2005) ...................................................................................... 15, 16

*H.C. ex rel. Gordon v. Koppel*,
    203 F.3d 610 (9th Cir. 2000) ................................................................................................ 12

*Hangarter v. Provident Life & Acc. Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) ................................................................................................ 32

*Harrigan ex rel. Harrigan v. Marion Cnty.*,
    No. 6:11-CV-06174-SI, 2013 WL 5274407 (D. Or. Sept. 18, 2013) ...................................... 30

*Hickman v. Taylor*,
    329 U.S. 495 (1947) ............................................................................................................. 21

*Hirsh v. Justices of Sup.Ct. of Cal.*,
    67 F.3d 708 (9th Cir.1995) (per curiam ............................................................................. 12

*Hoffman v. Constr. Protective Servs., Inc.*,
    541 F.3d 1175 (9th Cir. 2008) ................................................................................. 22, 23, 24

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    281 F.R.D. 1 (D.D.C. 2011) ......................................................................................... 23, 26

*Ingenco Holdings, LLC v. Ace Am. Ins. Co.*,
    921 F.3d 803 (9th Cir. 2019) ............................................................................................... 22

*J.M. et al v. Major et al.*,
    District of Oregon Case: 6:18-cv-00739-AN ....................................................................... 13

*Lee v. City of Los Angeles*,
    908 F.3d 1175 (9th Cir. 2018) ............................................................................................. 33

*Liberty Ins. Corp. v. Brodeur*,
    41 F.4th 1185 (9th Cir. 2022) .............................................................................................. 22

*Lipscomb By & Through DeFehr v. Simmons*,
    962 F.2d 1374 (9th Cir 1992) ................................................................................................ 8

*Lyons v. Peters*,
    No. 3:17-CV-00730-SI, 2019 WL 3291529 (D. Or. July 22, 2019) ....................................... 15

*M.D. by Stukenberg v. Abbott*,
    907 F.3d 237 (5th Cir. 2018) ................................................................................................. 6

*Mayweathers v. Terhune,*
  136 F. Supp. 2d 1152 (E.D. Cal. 2001) ................................................................ 5, 7

*Merchant v. Corizon Health, Inc.,*
  993 F.3d 733 (9th Cir. 2021) ...................................................................... 21

*Merritt v. Countrywide Fin. Corp.,*
  No. 09-cv-01179-BLF, 2015 WL 5542992 (N.D. Cal. Sept. 17, 2015) .................... 15

*Mi Familia Vota v. Hobbs,*
  No. CV-21-01423-PHX-DWL, 2023 WL 4595824 (D. Ariz. July 18, 2023) ........................ 33

*Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.,*
  874 F.3d 604 (9th Cir. 2017) ...................................................................... 13

*Miles v. Wesley,*
  801 F.3d 1060 (9th Cir. 2015) ...................................................................... 12

*Mt. Graham Red Squirrel v. Madigan,*
  954 F.2d 1441 (9th Cir. 1992) ...................................................................... 31

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,*
  523 F.3d 1051 (9th Cir. 2008) ...................................................................... 32

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC,*
  31 F.4th 651 (9th Cir. 2022) ...................................................................... 4

*Oliver v. Ralphs Grocery Co.,*
  654 F.3d 903 (9th Cir. 2011) ...................................................................... 10, 11

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
  678 F.2d 93 (9th Cir. 1982) ...................................................................... 17

*Peterson v. Alaska Commc'ns Sys. Grp., Inc.,*
  No. 3:12-CV-00090-TMB, 2020 WL 13228683 (D. Alaska Mar. 12, 2020) ........................ 24

*Puente Arizona v. Arpaio,*
  314 F.R.D. 664 (D. Ariz. 2016) ...................................................................... 33

*Robinson Mech. Contractors Inc. v. PTC Group Holdings Corp.,*
  No. 1:15-cv-77 SNLJ, 2017 WL 3838627 (E.D. Mo. Sept. 1, 2017) ...................... 28

*Shannon v. Bayview Loan Servicing. LLC,*
  No. 3:16-CV-1016-MO, 2018 WL 1902680 (D. Or. Apr. 20, 2018) ...................... 18

*State ex rel. Juv. Dep't of Josephine Cnty. v. G.A.K.,*
  225 Or. App. 477, 201 P.3d 930 (2009) ...................................................................... 12

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002)...................................................................................... 10

*telSPACE, LLC v. Coast to Coast Cellular, Inc.*,
   No. 2:13–cv–01477 RSM, 2014 WL 4364851 (W.D. Wash. Sept. 3, 2014).......................... 21

*United States v. Bailey*,
   696 F.3d 794 (9th Cir. 2012) .......................................................................... 15

*United States v. Chang*,
   207 F.3d 1169 (9th Cir. 2000) ........................................................................ 28

*United States v. Cook*,
   557 F.2d 1149 (5th Cir. 1977) ........................................................................ 15

*United States v. Heller*,
   551 F.3d 1108 (9th Cir. 2009) .......................................................................... 2

*United States v. Lloyd*,
   807 F.3d 1128 (9th Cir. 2015) ........................................................................ 29

*Younger v. Harris*,
   401 U.S. 37 (1971).................................................................................. 11, 12

**Statutes**

ORS 419B.881 ............................................................................................ 12

**Rules**

Fed. R. Ev. 401 ..................................................................................... 15, 25

Fed. R. Ev. 408 ..................................................................................... 15, 16

Fed. R. Ev. 701 ............................................................................. 27, 28, 29, 32

Fed. R. Ev. 702 ............................................................................. 27, 28, 29

Fed. R. Ev. 801(d)(2) ............................................................................... 32

Fed. R. Ev.  802 ...................................................................................... 15

Fed. R. Ev. 1002 ..................................................................................... 32

Fed. R. Civ. P. 23(c)(1)(B) ............................................................... 4, 5, 11, 14

Fed. R. Civ. P. 26(a)(2)(C) .......................................................................... 27, 30

Fed. R. Civ. P. 26(b)(1)............................................................... 21, 22, 27, 28

Fed. R. Civ. P. 33(b)(3) ............................................................................................. 22

Fed. R. Civ. P. 8 .............................................................................................. 9, 10, 11

Fed. R. Civ. P. 8(a)(2) ................................................................................ 10, 11, 14

## LR 7-1 CERTIFICATION

Counsel made a good faith effort through telephone conferences to resolve the issues raised in these motions and has been unable to do so.

## MOTIONS

Defendants Governor Tina Kotek, Fariborz Pakseresht, Aprille Flint-Gerner, and the Oregon Department of Human Services ("ODHS") ask that the Court issue an Order, *in limine*, excluding the evidence identified below:

I.     The Court should exclude evidence related to claims that have already been dismissed from the case.

II.    The Court should exclude evidence related to the alleged failure of defendants to protect children from their own parents.

III.   The Court should exclude evidence related to issues not alleged in the Complaint.

IV.    The Court should exclude evidence related to other lawsuits or settlements involving ODHS Child Welfare.

V.     The Court should exclude evidence related to temporary lodging.

VI.    The Court should exclude evidence of individual children's experiences in foster care that was not provided to defendants in discovery.

VII.   The Court should exclude evidence of the cost of the state's defense of this case.

VIII.  The Court should exclude Senator Gelser Blouin's testimony.

## BACKGROUND

Defendants' trial memorandum provides a statement of the facts and law relevant to this lawsuit.

## PLAINTIFFS' CLAIMS

The Court will decide three claims at trial: plaintiffs' Substantive Due Process Claim, plaintiffs' Adoption Assistance and Child Welfare Act ("AACWA") Claim, and plaintiffs' ADA and Rehabilitation Act Claims.

## LEGAL STANDARDS

A motion *in limine* is a procedural mechanism to limit in advance testimony or evidence in a particular area. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Although motions *in limine* that are intended to protect a jury from overly prejudicial or confusing evidence are inapplicable in bench trials, the Ninth Circuit has recognized that for "logistical or other reasons," pretrial motions *in limine* "may be appropriate" in some bench trials. *Id.* at 1112.

Here, plaintiffs' trial brief, witness list, and exhibit list set forth hours of proposed evidence and testimony on matters that are outside of the pleadings, inconsistent with this Court's prior orders, or both. Plaintiffs' trial submissions identify substantial quantities of evidence on claims that this Court has already dismissed. Consequently, they serve no evidentiary purpose on the claims trial. They also intend to introduce evidence related to issues not alleged in the Complaint, that are not the valid basis of any claim, that are related to other lawsuits or settlements involving ODHS, that are related to the experiences of children in foster care that were not provided to defendants in discovery, and that is related to the cost of litigation.

To save the Court's time and to aid in the efficiency of trial, defendants ask the Court to grant defendants' motions *in limine* on each of these topics.

**ARGUMENT**

**I.     This Court should exclude evidence related to claims that have already been dismissed from the case or are unrelated to any of the "common questions" the Court certified as appropriate for class-wide resolution.**

As this Court knows, it has already ruled that many of the rights plaintiffs assert are not protected under the Substantive Due Process Clause.  This Court recognized that "[t]he weight of authority clearly demonstrates that the rights secured by the Fourteenth Amendment, though significant, are strictly limited in scope."  (Dkt. 215 at 19.)  After extensive analysis in its Opinion and Order on defendants' motion to dismiss, this Court dismissed plaintiffs' claims to the extent they asserted the rights:

(1) to an array of placement options,

(2) to be placed in a community based or least-restrictive setting,

(3) to a short length of time in foster care,

(4) to placement stability, and

(5) the rights asserted by the aging-out subclass to independent living services.

(Dkt. 215 at 18-21.)  Specifically, this Court held:

> "Certainly, placing a child in-region, in a placement ideal for his service level and personal needs, or with his siblings when appropriate would be good practice.  Plaintiffs have failed to demonstrate, however, that failing to do so in most or all circumstances puts children at risk of harm serious enough to amount to a deprivation of their substantive due process rights.  There is no responsibility to maximize foster children's personal psychological development, and children have no right to a stable environment or a right not to be moved from home to home, despite the significant literature which indicates a traumatic effect of such moves on young children.  [Even though] out-of-region placements and suboptimal placements can have negative effects on a child's psychological health, those negative effects are not constitutionally cognizable harms.  Unlike severely overburdened caseworkers or inadequate investigations and placement licensing, inadequate placement array does not unacceptably increase the risk

that a child will be exposed to serious physical or psychological harm."

(Dkt. 215 at 18 (internal quotation omitted).)  Thus, they do not form the basis of any of plaintiffs' claims.  (*Id.* at 20.)

Moreover, as discussed in defendants' trial memorandum, this Court further narrowed the issues that must be decided at trial when it certified particular questions as capable of class-wide resolution.  (Dkt. 372 at 11-18.)  Under the Federal Rules of Civil Procedure, a Court's class certification order typically should define the scope of issues that must be decided at trial.  *See* FRCP 23(c)(1)(B) ("An order that certifies a class action must define the class and the class claims, issues, or defenses . . . .").  Much of plaintiffs' evidence also does not relate to the class-wide claims that were certified by this Court, and it should be excluded on that basis.

Additionally, as discussed in Defendants' trial memorandum, this Court's class certification order did not specifically address how each "common question" relates to the elements of plaintiffs' remaining claims for relief.  (Dkt. 372 at 11); *see also Olean Wholesale Grocery Cooperative*, *Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (explaining that a "common question [must] relate[] to a central issue in the plaintiffs' claim").  As discussed below, where there are inconsistencies between the Court's class certification order and the Court's order on defendants' motion to dismiss, the law of the case applies, the Court's ruling on defendants' motion to dismiss governs, and evidence that relates to claims that have been dismissed should be excluded.

### A.  The Court should exclude evidence regarding the array of placement options and the availability of less-restrictive options.

Plaintiffs apparently intend to ignore this Court's prior rulings and to offer evidence on each of these already-excluded topics.  Regarding an array of placement options, plaintiffs assert that they will present evidence that the "number of certified resource homes available for

children in Oregon has declined," along with the number of "child-specific providers, general providers, and behavior rehabilitation services providers." (Dkt. 375 at 20.) Similarly, plaintiffs have stated their intent to present evidence that foster children are being placed in congregate care facilities that are "more restrictive than necessary to meet the child's needs." (*Id.*)

These two issues fall directly within the first two categories of claims that this Court dismissed. (Dkt. 215 at 20 ("Plaintiffs' first claim must be dismissed to the extent that it seeks to vindicate a substantive due process right to be housed in the least restrictive setting, or a right to an array of community-based placements.").) Here, the law of the case applies to bar evidence on this issue even though this Court certified as a common question whether defendants "have failed to provide an adequate array of appropriate placements." (*See* Dkt. 372 at 28.) *See also Mayweathers v. Terhune,* 136 F. Supp. 2d 1152, 1153-54 (E.D. Cal. 2001). Given plaintiffs' insistence on presenting evidence at trial on claims this Court has already dismissed, the Court should grant this motion *in limine* to reinforce that no such evidence will be allowed.

**B.    The Court should exclude evidence of the length of time spent in foster care.**

Further, plaintiffs have stated their intent to present evidence that the length of time spent in foster care is "inexcusably high." (Dkt. 375 at 39.) But this Court has already dismissed any claim based on the length of time a child spends in foster care. (Dkt. 215 at 20 ("Plaintiffs' substantive due process claim must therefore be dismissed insofar as it asserts a claim based on a right to a "duration of foster care reasonably related to the purpose of government custody," . . . or "the right not to be maintained in custody longer than is necessary to accomplish the purpose to be served by taking a child into government custody.") Additionally, the evidence does not relate to any question certified for class-wide resolution in this case. This Court's class certification order defines the scope of issues that must be decided at trial. *See* FRCP 23(c)(1)(B) ("An order that certifies a class action must define the class and the class claims,

issues, or defenses . . . .").  The Court should thus exclude plaintiffs' evidence on this issue as well.

### C.    The Court should exclude evidence of placement stability.

Plaintiffs have also stated their intent to present evidence that ODHS's practices "expose children to the risk of placement instability," and that children in ODHS's care "experience placement changes with excessive frequency."  (Dkt. 375 at 21.)  They intend to present witness testimony on this issue along with statistics regarding how Oregon's placement moves compare with other states and a national average.  (*Id.*)

This Court has already expressly dismissed any claims regarding placement stability. (Dkt. 215 at 18 ("children have no right to a stable environment or a right not to be moved from home to home, despite the significant literature which indicates a traumatic effect of such moves on young children" (*quoting M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 268 (5th Cir. 2018)).) Additionally, the evidence does not relate to any question certified for class-wide resolution in this case.  Evidence on this issue must also be excluded.

### D.    The Court should exclude evidence regarding the aging-out subclass.

Plaintiffs extensively discuss their plans to present evidence regarding the aging-out subclass.  (Dkt. 375 at 32-34.)  They intend to present evidence that will "show that despite this population's elevated risk of aging out of care and experiencing poor life outcomes, transition-aged youth are chronically underserved by ODHS."  (*Id.* at 32.)  The evidence plaintiffs intend to present on this issue includes a raft of documents regarding the employment and educational outcomes of aged-out foster children, as well as the testimony of Dr. Angelique Day.  (*Id.* at 33-34.)

This Court has dismissed all claims by the aging-out subclass.  (Dkt. 215 at 21 ("The provision of services for aging-out children, like those described in the Complaint, would be a

worthy goal for legislative action.  But, unfortunately, they fall beyond the constitutional

guarantees of the Fourteenth Amendment and must be dismissed.").)  Although this Court

certified an aging-out subclass, the substantive due process rights asserted by the aging-out

subclass have been dismissed, and there are no grounds justifying departure from the law of the

case.  (*See* Dkt. 372 at 28.)  *See also Mayweathers*, 136 F. Supp. 2d at 1153-54.

      The Court must exclude evidence regarding any and all of the claims this Court has

already dismissed from the case.  Plaintiffs should not be allowed to circumvent and ignore this

Court's previous rulings on these issues.

## II.    This Court should exclude evidence related to ODHS's failure to protect children while they are at home with their parents.

      Much of what plaintiffs discuss in their trial brief involves situations for which there is no

substantive due process right and which violates Supreme Court precedent.  Specifically,

plaintiffs will ask this Court to find that ODHS has violated the Substantive Due Process Clause

for (1) failing to remove children from their parents' homes when they are in danger there, (2)

returning children to homes that are allegedly unsafe, and (3) failing to prevent abuse that

occurred while children were at home with their parents.  (Dkt. 365-1 at 20; *see also* Dkt. 372. at

64.)  Plaintiffs have not alleged any such claims in their Complaint.  In addition, that evidence is

not relevant to plaintiffs' claims for relief in this case.

      The evidence is not relevant because, in *DeShaney v. Winnebago Cnty. Dep't of Soc.

Servs.*, 489 US 189 (1989), the Supreme Court held that the plaintiff child could not bring a

cause of action against the state defendants for failure to protect the plaintiff from his own

parents.  489 U.S. at 202.  The Court explained that the purpose of the Substantive Due Process

Clause is "to protect people from the State, not to ensure that the State protected them from each

other.  The Framers were content to leave the extent of governmental obligation in the latter area

to the democratic processes." *Id.* at 196. Accordingly, there is no "affirmative right to governmental aid," and "[if] the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." *Id.* at 196-97. In reaching its holding, the Court emphasized that a child's parent is not a state actor:

> "While the State may have been aware of the dangers that [the child] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of [the child] does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect [the child]."

*DeShaney,* 489 U.S. at 201. Thus, plaintiffs have no viable claim that defendants violated the Substantive Due Process Clause for harms that occur during trial home visits. *See also, Lipscomb By & Through DeFehr v. Simmons*, 962 F.2d 1374, 1379 (9th Cir 1992) (*DeShaney* stands for the proposition "that the government has an affirmative obligation to facilitate the exercise of constitutional rights by those in its custody only when the circumstances of the custodial relationship directly prevent individual exercise of those rights").

Accordingly, the Court should exclude any evidence regarding allegations that ODHS returned children to their homes before it was safe to do so, or that ODHS failed to protect children while they were in their homes with their parents (for example, while on trial home visits). *DeShaney* forecloses any such claims as a matter of law.

### III.    This Court should exclude evidence related to issues not alleged in the Complaint.

Plaintiffs' offer multiple witnesses and dozens of proposed exhibits focused exclusively on issues that are not alleged in the Complaint or in scope of the Court's class certification

ruling.  These include at least three issues that are not alleged in their Complaint: (1) harms that

occur when a child is in their parents' physical custody, (2) allegations that ODHS is "hiding"

evidence of maltreatment in care, and (3) misuse of child-specific certification.

Plaintiffs have had five years to conduct discovery into these areas and amend their

Complaint accordingly.  They have not done so.  Instead, they have announced their intent to

present a case at trial that is different from the one that they have pled and on which the parties

have conducted extensive discovery and motion practice.  Because plaintiffs have failed to give

defendants adequate notice of these claims as required by Fed. R. Civ. P. 8, the Court should

exclude evidence regarding each of these issues.

### A.   The Court should exclude evidence of harms that occur while a child is in the physical custody of a parent (*e.g.* on a trial home visit or in-home placement).

As discussed above, plaintiffs have no substantive due process claim for harms that occur

while a child in ODHS's legal custody is not in their physical custody (for example, during trial

home visits or in-home placements).  In addition, that evidence should be excluded because

plaintiffs' Complaint contains no such allegation.  Nevertheless, plaintiffs have represented that

their experts, Sue Steib and Patricia Rideout, will testify that ODHS violated the Substantive Due

Process Clause for failing to remove children from their parents' homes, for returning children to

their homes when those homes were unsafe, and for failing to prevent abuse that occurred while

children were at home with their parents.  (Dkt. 365-1 at 20; *see also* Dkt. 372 at 64.)  Thus, they

intend to present extensive evidence of harms that occur when a child is in their parents' physical

custody.  Defendants explained in Section II, and at length in their trial memorandum, that

*DeShaney* means there is no affirmative right to state protection from abuse while a child is at

home with their parents.  (Dkt. 372 at 46-48.)

Moreover, plaintiffs' Complaint does not allege any fact or claim related to harms that occur during trial home visits. Paragraphs 251 through 254 refer to maltreatment of foster children, but nowhere does the Complaint refer to harm that occurs during trial home visits, so no such claim should be allowed now. Fed. R. Civ. P. 8(a)(2) requires that plaintiffs "give the defendant[s] fair notice of what the plaintiff[s'] claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citation and quotation marks omitted); *Oliver v. Ralphs Grocery Co.,* 654 F.3d 903, 908–09 (9th Cir. 2011) ("The issue . . . is whether the defendant had fair notice as required by Rule 8. In general, only disclosures [of factual allegations] in a properly pleaded complaint can provide such notice; a disclosure made during discovery . . . would rarely be an adequate substitute."). This Court should not permit plaintiffs to substantively amend their Complaint through trial evidence, especially after the appropriateness of class certification has already been fully briefed and this Court has identified the common questions that are at issue at trial. Allowing plaintiffs to offer extensive evidence on theories they failed to raise in their Complaint or at class certification allows plaintiffs to circumvent this Court's rulings and the Federal Rules. Plaintiffs had ample opportunity to comply with Rule 8 and cannot change the scope of their claims now.

Even if plaintiffs had amended their Complaint to add such a claim, it would have been legally deficient and subject to dismissal. *DeShaney* means there is no affirmative right to state protection from abuse while a child is at home with their parents. This Court should not hear argument or receive into evidence material that is immaterial to any claim in the pleadings.

### B.    The Court should exclude evidence of allegations that ODHS is "hiding" evidence of maltreatment in care.

This Court should also exclude evidence related to plaintiffs' entirely new allegation concerning the scope of discovery in state juvenile court proceedings. (*See* Pls.' Trial Br.

(Dkt. 375), Pls.' Exhibit List and Amended Exhibit List (Dkt. 374, 403), and the witness statements of Tracy Frazier (Dkt. 385 at 13), Lindsay Soto (*Id.* at 37), Tahra Sinks (*Id.* at 35), and the Hon. Daniel J. Wren (*Id.* at 40).)  Plaintiffs' trial brief and exhibit list reflect intent to offer evidence on this issue, which would be inconsistent not just with Rule 8 and the Court's class certification ruling pursuant to Rule 23, but also more than 50 years of Supreme Court precedent in *Younger v. Harris,* 401 U.S. 37 (1971).

Plaintiffs did not allege in their Complaint that ODHS wrongfully withholds evidence from juvenile dependency attorneys in state court proceedings, or that such allegations relate to a triable claim in this case.  It is far too late to raise a new claim or a new theory of relief now, just weeks before trial.  Again, Fed. R. Civ. P. 8(a)(2) requires that plaintiffs "give the defendant[s] fair notice of what the plaintiff[s'] claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This Court should not consider new allegations that plaintiffs have failed to raise in their Complaint or any amended complaint.  *Ralphs Grocery,* 654 F.3d at 908–09; *Giddings v. Vision House Prod., Inc*., 584 F. Supp. 2d 1222, 1226 (D. Ariz. 2008) ("Plaintiff is precluded from asserting her new moral rights theory of infringement at this late stage of litigation, over six months after the deadline for discovery has passed.").  Similarly, the issue was not raised in plaintiffs' class certification briefing and was not a question certified for class-wide resolution in this case.  This Court's class certification order defines the scope of issues that must be decided at trial.  *See* FRCP 23(c)(1)(B) ("An order that certifies a class action must define the class and the class claims, issues, or defenses . . . .").  Accordingly, permitting plaintiffs to raise the issue now violates Fed. R. Civ. P. 23(c)(1)(B).

Even if plaintiffs had properly raised such a claim or theory, it would be barred by *Younger* abstention.  The Supreme Court has "repeatedly recognized a 'longstanding public

policy against federal court interference with state court proceedings' based on principles of federalism and comity." *Miles v. Wesley*, 801 F.3d 1060, 1063 (9th Cir. 2015) (*quoting Younger v. Harris,* 401 U.S. 37, 43 (1971)). *Younger* applies with special force to areas "in which the state courts have a special expertise and experience." *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000). And abstention is mandatory when *Younger* applies. *Fresh Int'l Corp. v. Agric. Lab. Rels. Bd*., 805 F.2d 1353, 1356 (9th Cir. 1986) ("When a case falls within the proscription of *Younger*, a district court must dismiss the federal action.").[1]

A claim or theory of a claim that juvenile dependency attorneys are receiving insufficient discovery in state juvenile dependency proceedings governed by state juvenile courts falls squarely within *Younger*. It is the state juvenile courts that have the authority to "supervise discovery to the extent necessary to ensure that it proceeds properly and expeditiously." ORS 419B.881(2)(b); *see also* ORS 419B.881 (defining scope of discovery in state juvenile proceedings; empowering state courts; establishing rights to object to discovery).

It is also the state juvenile courts that have the authority to impose sanctions for a breach of duty to disclose in dependency proceedings. ORS 419B.881(11); *State ex rel. Juv. Dep't of Josephine Cnty. v. G.A.K.*, 225 Or. App. 477, 486, 201 P.3d 930, 935 (2009) (finding that "it is properly within the discretion of the juvenile court to determine the sanction, if any, to be imposed for breach of the duty to disclose"). A ruling in this Court requiring ODHS to provide

---

[1] Juvenile dependency attorneys who have complaints about the adequacy of discovery in state juvenile court proceedings can raise those complaints with the state court. That court has authority to issue sanctions for discovery violations, ORS 419B.881(11), and can consider federal constitutional issues. *Dep't of Hum. Servs. v. J.M.*, 266 Or. App. 453, 457, 338 P.3d 191, 194 (2014) (addressing due process issues). Consequently, juvenile dependency attorneys have an adequate state court forum to litigate federal claims. *See Hirsh v. Justices of Sup.Ct. of Cal.*, 67 F.3d 708, 712 (9th Cir.1995) (per curiam).

certain documents in state court proceedings would contravene the authority of state judges.

Under *Younger,* federal courts may not intrude on state court authority.

Consistent with these concepts, this Court has stated that it "will not allow the rulings or the authority of the dependency courts to be evaded by permitting dependency counsel, who are not before this Court, to use discovery in this case to gain access to information that they would not otherwise be entitled to receive." (Dkt. 379 at 3.) This Court continued that if "dependency counsel needs or desires access to that information, they must seek it through the ordinary state court processes." (*Id.*) This Court's recent refusal to modify the protective order in this case is entirely consistent with abstention under the *Younger* doctrine.

Finally, the adequacy of state court discovery cannot be adjudicated in this case because there is no constitutional right to pretrial discovery: "not even constitutional due process . . . requires full pretrial discovery." *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 618 (9th Cir. 2017) (citation omitted).

For all of these reasons, the Court should exclude any evidence of allegations that ODHS is allegedly "hiding" evidence of maltreatment in care.

### C.    The Court should exclude evidence of alleged misuse of child-specific resource home certification.

Plaintiffs have announced their intention to present evidence related to child-specific resource home certification, which was an issue plaintiffs' counsel litigated (and settled) in a tort case on behalf of four individual plaintiffs (who are not class members) in *J.M. et al v. Major et al.*, District of Oregon Case: 6:18-cv-00739-AN. Plaintiffs have listed almost one hundred exhibits from the *J.M.* case.

Specifically, the four plaintiffs in *J.M.* alleged that ODHS improperly applied the procedure for emergency or child-specific certification of a resource (foster) family. In this case,

plaintiffs intend to present evidence that allegedly shows that ODHS has "doubled down on this dangerous usage of child-specific certification" and that temporary certificates "may be issued even when an applicant is not known to the child or the child's family."  (Dkt. 375 at 16–17.)

Plaintiffs do not allege any such practice in their Complaint or identify it in response to any discovery request requesting that plaintiffs' specify actual policies or procedures that violate plaintiffs' constitutional rights.  Moreover, there is no allegation in the Complaint, nor is there any evidence, that the named plaintiffs in this case suffered harm at the hands of resource (foster) parents who were improperly certified as kinship placements.  Plaintiffs have not complied with the requirement in Fed. R. Civ. P. 8(a)(2) that plaintiffs "give the defendant[s] fair notice of what the plaintiff[s'] claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.  This Court should not consider new allegations that plaintiffs have failed to raise in their Complaint or any amended complaint.  *Giddings*, 584 F. Supp. 2d at 1226.

Similarly, the question of whether defendants have a supposed policy or practice of misusing child-specific certification was not raised in plaintiffs' class certification briefing and was not a question certified for class-wide resolution in this case.  This Court's class certification order defines the scope of issues that must be decided at trial.  *See* FRCP 23(c)(1)(B) ("An order that certifies a class action must define the class and the class claims, issues, or defenses . . . .").  Accordingly, permitting plaintiffs to raise the issue now violates Fed. R. Civ. P. 23(c)(1)(B).

## IV.    This Court should exclude evidence of other lawsuits or settlements involving ODHS Child Welfare.

Plaintiffs seek to introduce evidence of settlements or other lawsuits that former foster children have filed against ODHS.  (*See* Pls.' Ex. 323; Dkt. 375 at 16-17.)  Neither settlements in other cases nor the other lawsuits are admissible as evidence, and the Court should exclude this

category of evidence in its entirety for several reasons.  Federal Rules of Evidence 401, 802, and 408 prohibit the introduction of this evidence.

First, the evidence is not relevant under FRE 401.  Indeed, it is impermissible to infer from the fact that another lawsuit was filed or settled that the underlying conduct occurred.  *See, e.g.*, *United States v. Bailey*, 696 F.3d 794, 800 (9th Cir. 2012) (where a "defendant neither admitted nor denied the fraud alleged . . . offering the documents themselves would cause the [factfinder] 'to infer that prior wrongful acts had been committed, an inference impermissible'" (quoting *United States v. Cook*, 557 F.2d 1149 (5th Cir. 1977)); *see also Merritt v. Countrywide Fin. Corp.*, No. 09-cv-01179-BLF, 2015 WL 5542992, at *13 (N.D. Cal. Sept. 17, 2015) (striking paragraphs in the complaint that "discuss other lawsuits and investigations involving the [defendants] . . . that have no apparent pertinence to the claims in this case, other than to caste them in a bad light").

Second, to the extent plaintiffs offer the underlying complaints to prove that the facts alleged in their Complaint are true, this Court should exclude the other complaints as inadmissible hearsay under FRE 802.  As the Ninth Circuit has explained, other complaints are "merely an accusation of conduct and not, of course, proof that the conduct in those other complaints occurred."  *Bailey*, 696 F.3d at 801 (cleaned up); *see also Lyons v. Peters*, No. 3:17-CV-00730-SI, 2019 WL 3291529, at *3 (D. Or. July 22, 2019) (excluding an exhibit that was a compilation of individuals and their complaints about the food service at ODOC where "[p]laintiffs appear to rely on the document to prove the truth of the allegations and statements contained therein").

Third, FRE 408 prohibits the admission of settlement agreements to prove liability. *Green v. Baca*, 226 F.R.D 624, 640-41 (C.D. Cal. 2005) ("It is clear that any attempt by

plaintiffs to introduce evidence of settlement negotiations regarding his claim to prove liability would be prohibited by Rule 408 . . . .  The same prohibition extends to evidence of completed settlements in other cases . . . .").  In *Green*, a plaintiff sued the Los Angeles County Sheriff and sought to admit evidence of other settlements between the Los Angeles Sheriff's Department and other parties, including a $27 million class action settlement, to prove the existence of a policy and practice of over-detention.  226 F.R.D. at 640.  The Court rejected plaintiffs' argument, noting that the existence of a policy or practice was an essential element of the plaintiffs' claim, and "Rule 408 clearly prohibits the introduction of evidence of settlement negotiations to prove liability."  *Id*. at 641.  Here too, evidence of any settled lawsuits—and the amount of the settlement—should be excluded from evidence.

## V.    This Court should exclude evidence related to temporary lodging.

As explained above, this Court has already dismissed plaintiffs' claims to the extent that they seek to vindicate a right to an adequate placement array or to placement in a family-like setting, so evidence related to temporary lodging should be excluded as irrelevant on that basis.

There is an independent basis for excluding evidence related to temporary lodging: ODHS is already subject to an ongoing settlement agreement, overseen by another Judge from this District.  This Court should reject plaintiffs' attempt to circumvent that settlement agreement and exclude evidence related to temporary lodging.

A court generally should decline to hear a claim where it might result in conflicting decisions and where declining to hear the claim would promote judicial efficiency.  *See Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013) (describing principle of first-to-file rule).  Under the first-to-file rule, courts should decline to hear issues that are (1) currently pending before another court where another action was filed first, (2) involving the same or similar parties, and (3) involving a similar issue.  *Alltrade, Inc. v. Uniweld Prod.*,

*Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).  The rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration."  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982).

Here, all three *Alltrade* factors are met.  First, there is another ongoing dispute involving ODHS's use of temporary lodging in *CASA for Children Inc. v. Oregon.*, 3:16-cv-01895-YY, and that case was filed first on October 5, 2016.  (Decl. of Vivek Kothari in Supp. of Defs' Mot. *in Limine* ("Kothari Decl.") Ex. 1.)  This case, by contrast, was filed on April 19, 2019.  (Dkt. 1.) Second, the *CASA for Children Inc.* (or "*A.R.* lawsuit") involves the same or similar parties: ODHS and Fariborz Pakseresht are defendants in the *A.R.* lawsuit, and they are also defendants in this case.  (Kothari Decl. Ex. 6.) The current plaintiff in the *A.R.* lawsuit is Casa for Children, Inc., a non-profit organization that advocates for children in foster care through Court Appointed Special Advocates ("CASAs").  (Kothari Decl. Ex. 1 ¶ 8.)  Plaintiffs plan to present testimony from CASAs about the use of temporary lodging in this case.  (Dkt. 375 At 10.)

The *A.R.* lawsuit was also filed as a putative class action made up of "current and prospective Oregon foster children."  (Kothari Decl. Ex 1 ¶ 4.)  Finally, the issue in both cases is similar:  the plaintiffs in the *A.R.* lawsuit, like the plaintiffs here, allege that ODHS lacks placement capacity and challenge the use of temporary placements.  (*Compare* Kothari Decl. Ex. 1 ¶ 3 ("the state's failure to find appropriate foster homes has placed children in its care in crisis"); *with* Pls.' Trial Br. (Dkt. 375) at 10 ("The Court will hear from three different child advocates (CASAs) . . . They will testify to the lack of placements and supports ...  for the general lack of appropriate community placements .... They will testify to maltreatment of youth in temporary lodging.")  The claims in both proceedings allege that the lack of adequate

placements and the use of temporary lodging violates children in foster care's substantive due process rights and the Americans with Disabilities Act.  (Kothari Decl. Ex. 1.)

Because all three factors are met, this Court should exercise its discretion and decline to hear evidence about temporary lodging.  ODHS is already subject to the legal obligations of the *A.R.* lawsuit settlement agreement, and those obligations, among other things, limit the number of children that may be in temporary lodging.  (Kothari Decl. Ex. 2.)  United States District Court Judge Michael McShane, another judge in this District, is currently providing ongoing oversight over the *A.R.* lawsuit settlement in accordance with the dispute resolution process set out in that agreement.  (*Id.*)

Judge McShane ordered ODHS to hire an independent expert to evaluate ODHS's efforts to comply with the requirements in the settlement agreement and make recommendations as to what additional efforts ODHS should undertake to end temporary lodging.  (Kothari Decl. Ex. 6.)  Here, plaintiffs also seek a court order prohibiting the use of temporary placements and seek the appointment of a special master to oversee defendants' compliance with that order.  (Dkt. 375 at 42.)  This Court should decline to hear evidence relating to that claim, because doing so could result in two different special masters issuing competing recommendations.  That scenario would not only waste resources and require ODHS to comply with different and potentially conflicting requirements, it would also not make children any better off than they would be having just one special master—the special master already appointed in the *A.R.* lawsuit—providing oversight of defendants.

This Court should decline to hear evidence about temporary lodging in this case because doing so will "alleviate the burden placed on federal courts by duplicative litigation and [will] prevent the embarrassment of conflicting judgments."  *Shannon v. Bayview Loan Servicing. LLC*,

No. 3:16-CV-1016-MO, 2018 WL 1902680, at *2 (D. Or. Apr. 20, 2018) (internal quotation omitted).

**VI.    This Court should exclude evidence of unnamed class members' experiences in foster care that was not provided to defendants in discovery.**

This Court should not permit plaintiffs to put on testimony from and about class members whose identities plaintiffs have refused to produce for years in response to discovery requests. Defendants issued interrogatories for plaintiffs to identify class members other than the named plaintiffs that had allegedly experienced defendants' unconstitutional policies or practices.  For years, plaintiffs have refused to do so.  (*See* Kothari Decl. Ex. 4 at 3-4, 9 and Dkt. 385.)  Even after pledging to disclose their identities when they submitted witness statements, plaintiffs failed to do so.[2]  (*Compare* Joint Letter to Judge Aiken re discovery dispute (Jan. 31, 2024) with Pls.' Witness Statements (Dkt. 385) (shielding identity of fact witnesses).)

The law does not permit plaintiffs to shield the identities of these class members in discovery and present their testimony at trial to prove their claims.  The Court should not permit the presentation of this evidence.

**A.    Defendants requested the identities of unnamed class members multiple times in discovery; each time, plaintiffs refused to produce it.**

The Complaint describes the experiences of various unnamed class members.  (*See* Compl. ¶¶ 9, 15.)  Those paragraphs refer to these class members only in the abstract.  For example, paragraph 9 alleges that ODHS places "older children . . . in inappropriate institutions, ships them out of state . . . , or largely abandons them."  Paragraph 15 alleges that children "often languish in over-taxed and improperly utilized temporary placements."  The Complaint does not

---

[2] Plaintiffs provided the names of the children to defendants on the day of filing, well past the time for identifying witnesses. The Court should still grant this motion for the reasons described here.

further identify which children experience these or the other alleged harms as described in paragraphs 9 and 15.

To prepare their defense and understand which unnamed class members plaintiffs are referring to, defendants served Interrogatories No. 2 and 4 on August 30, 2019.  (*See* Kothari Decl. Ex. 3.)  Interrogatory No. 2 asks plaintiffs to identify "each and every child referred to in paragraph 9 of the Complaint."  (*Id*. at 4.)  Interrogatory No. 4 asks plaintiffs to identify "each and every child and the putative class or sub-class to which they allegedly belong referred to in paragraph 15 of the Complaint (including all paragraph sub-parts)."  (*Id*. at 5.)

Plaintiffs refused to identify those unnamed class members.  They initially objected that the interrogatories were premature because they had "not yet completed discovery or investigation."  (Kothari Decl. Ex. 4.)  Defendants clarified that these interrogatories were limited to include only children "of whom plaintiffs are aware that fall within the descriptions of paragraphs 9 and 15."  (Kothari Decl. Ex. 5.)  Plaintiffs still did not identify any children in response to Interrogatories No. 2 and 4.  (*See* Kothari Decl. Ex 4 at 3-4, 9.)

Years later, following significant discovery, defendants requested that plaintiffs update their interrogatory response.  (*See* Joint Letter to Judge Aiken re discovery dispute (Jan. 31, 2024).)  Plaintiffs again refused but pledged not to "ambush [D]efendants at trial" because "plaintiffs will disclose all of their fact witnesses when the parties submit their lay and expert witness statements[.]"  (*Id.*; *see also* Tr. of 02/22/2024 at 23:11-20, Dkt. 337.)

Plaintiffs' witness statements did not disclose all of their fact witnesses.  For example, plaintiffs intend to present two witnesses, K.H. and S.S., who are former foster children whose names plaintiffs have never disclosed to defendants.  (Dkt. 385 at 18, 32.)  Neither witness is a minor—one is in college; the other has aged out of care.  Plaintiffs also included witness

statements from service providers and third parties whose anticipated testimony will relate to the experiences of other, as-yet-unnamed foster children.  (*See e.g.*, Dkt. 385 at 7-12 (identifying that plaintiffs will elicit testimony from Dr. Roxanne Edwinson, a licensed psychologist, about the experiences of a child identified only as Child X).)  Plaintiffs only disclosed these class members today on the day of filing this motion, after the deadline to disclose witnesses and less than three weeks from trial.

> **B.    Rule 37 prevents plaintiffs from withholding responsive information in discovery and then present it at trial.**

The point of discovery is to avoid surprise at trial.  *telSPACE, LLC v. Coast to Coast Cellular, Inc.*, No. 2:13–cv–01477 RSM, 2014 WL 4364851, at *2 (W.D. Wash. Sept. 3, 2014) (finding that the scope of discovery "is liberally construed to allow the wide-ranging discovery necessary to avoid surprise at trial and help the parties evaluate and resolve their disputes."). The various instruments of discovery within the scope defined in FRCP 26(b)(1) serve to "narrow and clarify the basic issues between the parties," and "ascertain[] the facts, or information as to the existence or whereabouts of facts, relative to those issues."  *Hickman v. Taylor*, 329 U.S. 495, 501 (1947) ("[C]ivil trials in the federal courts no longer need be carried on in the dark.  The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.").

Rule 37(c)(1) is an "automatic" sanction that prohibits the use of undisclosed evidence. *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (citation omitted).  A district court may exclude undisclosed evidence unless the non-disclosing party demonstrates that the non-disclosure was substantially justified or harmless.  The Ninth Circuit considers four primary factors to determine whether a non-disclosure is justified and/or harmless: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of

that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or

willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185,

1192 (9th Cir. 2022).  When discovery is mandatory under Rule 26(a), a plaintiff's failure to

disclose is not substantially justified.  *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175,

1179-80 (9th Cir. 2008); Fed. R. Civ. P. 33(b)(3) (requiring that interrogatories *must* be

answered separately and fully) (emphasis added).

    **C.**    **The Court should not permit testimony about and from the unnamed class members.**

In plaintiffs' own words, they seek to ambush defendants.  ( Tr. of 02/22/2024 at 23:11-

20, Dkt. 337).  Plaintiffs propose to present at trial the very information they have denied

defendants in their pre-trial submissions and years of discovery.

For years, defendants have requested this information from plaintiffs, issuing

Interrogatories No. 2 and 4 to adequately prepare for trial.  For years, plaintiffs have refused to

produce information responsive to those Interrogatories.  As recently as a few months ago,

plaintiffs pledged that they would "disclose all of their fact witnesses when the parties submit

their lay and expert witness statements."  (Joint Letter to Judge Aiken re discovery dispute

(Jan. 31, 2024).)  Not so.  Plaintiffs' witness statements reflect a plan to present testimony from

and about class members who have not been identified.  Defendants cannot prepare for trial

under these circumstances.

Rule 37 requires that testimony from and about class members on plaintiffs' witness list

that was improperly withheld should be excluded from trial.  It prevents a party from evading

discovery obligations and then using at trial the information it previously failed to disclose unless

the failure was substantially justified or harmless.  *See Hoffman* , 541 F.3d  at 1179 (affirming

district court's ruling excluding evidence); *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d

803, 808–22 (9th Cir. 2019) (same; citing to "eleventh-hour disclosures" as the basis for

exclusion); *Bond v. Shriners Hospitals for Children*, No. 3:20-cv-01943-SB, 2024 WL 1007864,

at *9 (D. Or. Feb. 2, 2024), *adopted* 2024 WL 1091563, at *2 (D. Or. Mar. 12, 2024) (Mosman,

J.) (declining to impose exclusion as a sanction *only* on the basis of the disclosing party's

representation that "the documents in question are not to be relied upon for any purpose in this

case").

Plaintiffs' non-disclosure was not justified. An examination of all four Rule 37 factors

demonstrate that the non-disclosure harmed defendants: First, defendants have been prejudiced

because they have not been able to conduct any discovery into the experiences of the unnamed

class members, review their case files, or prepare to cross-examine them. *See In re Rail Freight

Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 1, 4 (D.D.C. 2011) (holding that if plaintiffs were

going to contend that specific, individual children were harmed by defendants' conduct "they

must say who those persons were[.]"). Second, defendants cannot cure this deficiency. The time

for fact discovery is over. In any event, defendants do not have time to conduct meaningful

discovery into these children's experiences while in care. Third, allowing defendants the time to

prepare would profoundly disrupt trial. *See Hoffman*, 541 F.3d at 1180 (holding that a delayed

disclosure that "would have most likely required the court to create a new briefing schedule and

perhaps re-open discovery . . . supports a finding that the failure to disclose was not harmless.").

Fourth and finally, plaintiffs' failure is willful. Plaintiffs have twice refused to disclose their

identities in response to specific interrogatories. They continued to shield the identities of these

witnesses in their witness statements.

*Hoffman* is instructive. There, the district court excluded—and the Ninth Circuit

upheld—evidence of class action plaintiffs' damages because they had failed to disclose them

when required.  *Id.*  The Ninth Circuit held that the district court did not need to find bad faith or willfulness in order to exclude the evidence because "the portion of Rule 37 relied on by the district court has been described as a self-executing, automatic sanction to provide a strong inducement for disclosure of material.  The implementation of the sanction is appropriate even when a litigant's entire cause of action . . . [will be] precluded."  *Id.* (internal citations omitted) (cleaned up).

The Court should not permit this trial by ambush.  Defendants have requested this information for years and plaintiffs have resisted, even after falsely representing to the Court that they would provide this information in their witness statements.  Rule 37 requires that testimony from and about class members that was improperly withheld be excluded from trial.

In the alternative, if the Court does not exclude this evidence, it should allow defendants to depose these witnesses and the children they are testifying about, supplement their exhibit list, and put on rebuttal witness testimony.

As a general rule, "discovery from absent class members may be permitted when reasonably necessary, not conducted for an improper purpose, and not unduly burdensome in the context of the case and its issues."  *Arredondo v. Delano Farms Co.*, No. 1:09-CV-01247 MJS, 2014 WL 5106401, at *5 (E.D. Cal. Oct. 10, 2014); *see Peterson v. Alaska Commc'ns Sys. Grp., Inc.,* No. 3:12-CV-00090-TMB, 2020 WL 13228683, at *5-7 (D. Alaska Mar. 12, 2020) (analyzing and adopting the *Arredondo* factors for whether to permit discovery from absent class members).

In this case, discovery of unnamed or absent class members is necessary because defendants have no other way to prepare for the testimony offered from and about these as-yet-unnamed children.  Defendants request such information to prepare for trial, not to harass

unnamed class members.  Lastly, it is not unduly burdensome to require that plaintiffs reveal the identity of unnamed class members who they have already determined will be the subject of trial testimony.  Defendants fulfill all three of the *Arrendondo* factors.

**VII.    This Court should exclude evidence of the cost of the state's defense of this case.**

Defendants' attorney fees are not relevant to any claim or defense in the case so plaintiffs should not be permitted to reference it at trial, yet plaintiffs open their trial brief with allegations regarding the cost of defending this case.  If the wealth and size of an entity are not at issue, counsel for a party must refrain from referencing such size and wealth or risk unfavorable appellate reception.  *Adams Lab'ys, Inc. v. Jacobs Eng'g Co.,* 761 F.2d 1218, 1226 (7th Cir. 1985).

FRE 401 only allows evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action."  Plaintiffs have asserted three claims:  one under the Substantive Due Process Clause, one under ADA, and one under AACWA.  The cost of litigation does not make any claim or defense more or less probable.  Therefore such evidence is not admissible.  *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978) (explaining that the outcome of a case should not be based "on a prejudice against bigness or wealth.").  Plaintiffs reference the cost of defending this case on the very first page of their trial brief to no relevant or legitimate end.  (Dkt. 375 at 7.)  The Court should preclude any discussion or evidence of the cost of litigation.

**VIII.   This Court should exclude Senator Gelser Blouin's testimony in its entirety.**

This Court should exclude the testimony of Senator Gelser Blouin in its entirety. Alternatively, the Court should only permit Senator Gelser Blouin to testify at trial regarding relevant statements by defendants that do not otherwise appear in the official legislative record.

A.     **Background**

Less than one week ago, long after the deadline to disclose expert testimony and rebuttal expert testimony, plaintiffs disclosed to defendants that Oregon state Senator Gelser Blouin intends to testify at trial regarding her opinions about child welfare issues generally, and her disagreements with the 2023 Moss/Public Knowledge Report in particular. Plaintiffs provided defendants with a two-page disclosure from Senator Gelser Blouin interspersed amongst their other expert reports. (Dkt. 385-5.) That disclosure explains that Senator Gelser Blouin has "interact[ed]" with various "individuals involved in the Child Welfare system," reviewed undisclosed documents pertaining to Child Welfare, and heard legislative testimony regarding other people's "lived experience" with Child Welfare. (*Id.* at 1.) Based on that review of evidence, Senator Gelser Blouin will opine regarding Moss/Public Knowledge Report's conclusions and defendants' conduct in several specialized areas of child welfare practice. Senator Gelser Blouin intends to testify regarding the following topics:

- resource parent reimbursement rates,
- foster care recruitment and foster home capacity,
- congregate care,
- temporary lodging and temporary prevention services,
- behavioral rehabilitation and mental health services,
- the CANS tool,
- institutional placement,
- non-family foster care services,
- the Family First Preservation Services Act
- the interplay between ODHS and ODDS in relation to children with disabilities,
- Independent Living Programs,
- Kin and Kith,
- Child-specific foster care certifications,
- Dynamic Life,
- Reporting on maltreatment, and
- third-party abuse investigations.

Dkt. 385-5 at 2.  Plaintiffs' disclosure does not describe what Senator Gelser Blouin intends to say about any of these topics; it just provides a list of sixteen general "topics" that Senator Gelser Blouin will testify about.

> **B.      This Court should exclude Senator Gelser Blouin's testimony.**

Senator Gelser Blouin's tardily-disclosed, scantily-described opinion testimony is improper for at least five reasons.  First, Senator Gelser Blouin intends to provide expert opinions despite not being qualified or disclosed as an expert under FRE 702.  Second, Senator Gelser Blouin is not a percipient fact witness to any relevant events and lay witnesses cannot provide opinion testimony regarding aggregated hearsay under FRE 701.  Third, Senator Gelser Blouin's witness statement is too vague to satisfy the disclosure requirements for either an expert witness or a fact witness.  Fourth, under binding precedent, the post-hoc testimony of a single legislator is entitled to "no weight" in court.  Fifth, to the extent that Senator Gelser Blouin intends to testify about the proper interpretation of specific state statutes or whether those statutes meet federal constitutional requirements, that testimony is an improper legal opinion.

> **1.      Plaintiffs did not properly disclose or qualify Senator Gelser Blouin's proposed testimony under FRE 702 and FRCP 26(a).**

This Court should exclude Senator Gelser Blouin's testimony because she is not an expert in the field of child welfare and plaintiffs have not sought to designate her as one. Plaintiffs did not disclose Senator Gelser Blouin's expert testimony at the time designated for expert reports, as required by FRCP 26(a)(2)(D).  Even if Senator Gelser is a non-retained expert within the meaning of FRCP 26(a)(2)(C) and did not need to file a *report*, Rule 26 still required her to serve defendants with an expert *disclosure* under FRCP 26(a)(2)(D) on the deadline for filing expert reports.  Plaintiffs' disclosures regarding Senator Gelser Blouin came long after the

deadline to disclose expert testimony and defendants have not received an expert file from her or had the opportunity to depose her regarding her opinion testimony.

Nor does Senator Gelser Blouin meet the requirements of FRE 702 to be designated an expert in the field of child welfare. Although Senator Gelser Blouin no doubt has a great interest in child welfare as an elected official and a representative of her constituents, she has no formal training in the field and her disclosure does not describe any relevant, non-legislative experience. Thus, she is not a witness with "specialized knowledge" in child welfare. FRE 702; *see also United States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000) (affirming exclusion of expert testimony where expert did not "testify as to any training or experience, practical or otherwise" in the relevant field). Further, her opinions regarding policy issues would not be helpful to the Court. *See, e.g.*, *Sec. & Exch. Comm'n v. Ambassador Advisors*, LLC, 576 F. Supp. 3d 250, 260 (E.D. Pa. 2021) ("These public policy opinions simply have no bearing on the issues involved in this case."); *Robinson Mech. Contractors Inc. v. PTC Group Holdings Corp.*, No. 1:15-cv-77 SNLJ, 2017 WL 3838627, at *2 (E.D. Mo. Sept. 1, 2017), amended and superseded on other grounds by 2017 WL 3970602 (E.D. Mo. Sept. 8, 2017) ("'Public policy' opinions do not assist the trier of fact."). Accordingly, Senator Gelser Blouin is not a proper expert under FRCP 26(a)(2)(D) or FRE 702.

> **2.     Senator Gelser Blouin is not a percipient witness, and FRE 701 bars lay opinions testimony based on hearsay or specialized knowledge.**

Nor is Senator Gelser Blouin's proposed testimony appropriate lay opinion testimony. A lay witness may not testify in the form of an opinion unless the opinion is (1) "rationally based on the witness's perception;" (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue;" and (3) "not based on scientific technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(a)-(c). A lay witness, unlike an

expert, cannot rely on hearsay when providing opinion testimony. Instead, as the rule states, the testimony must be rationally based on the *witness's* perception. *See, e.g., United States v. Lloyd*, 807 F.3d 1128, 1154 (9th Cir. 2015) (vacating for new trial where district court improperly admitted lay opinion testimony based on "hearsay statements made by unidentified individuals").

Senator Blouin's testimony is impermissible because it is based on an aggregation of hearsay. Senator Blouin is not a percipient fact witness in this case. Instead, she has formed opinions about the child welfare system based on hearsay statements of other people and hearsay documents. As plaintiffs explain, Senator Blouin has spoken with "ODHS staff, attorneys, judges, kids, resource families, biological families, adults who were in care, CASAs, community partners, and congregate care providers." (Dkt. 385-5 at 1.) Senator Blouin has also reviewed "thousands upon thousands of pages of public records." (*Id.*) Similarly, Senator Blouin has heard legislative testimony "from those with lived experience." (*Id.*) The federal rules do not permit a non-expert to provide opinions regarding hearsay and therefore Senator Blouin's testimony is inadmissible under FRE 701.

Regardless, a lay person cannot opine "based on scientific technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Reviewing Child Welfare's performance and measuring its progress are specialized areas requiring specialized knowledge under Rule 702. Here, the parties exchanged several expert reports from experts in the field of child welfare as part of their expert disclosures. In similar federal constitutional cases, the field of child welfare has been the subject of competing expert testimony, not lay opinion testimony. *See* Dkt. 160 at 8 (compiling cases). Accordingly, Senator Blouin's testimony is improper under Rule 701.

### 3.    Senator Gelser Blouin's witness statement is too vague to satisfy the notice requirements for experts or lay witnesses.

Senator Blouin's disclosure is also too vague to satisfy the requirements for an expert disclosure or lay witness statement. FRCP 26(a)(2)(C) states that a non-retained expert need not provide an expert report but must provide an expert disclosure that discloses the "subject matter" of the expert's testimony and "the facts and opinions to which the witness is expected to testify." FRCP 26(a)(2)(C). This Court also expressed preference for witness statements with "details." (Tr. of 03/28/2024 at 30:16-24, Dkt. 368.) Here, Senator Gelser Blouin's witness statement does not satisfy these requirements. Senator Gelser Blouin's witness statement describes general "topics" that Senator Gelser Blouin will provide testimony "pertaining to," without describing *anything* that Senator Gelser Blouin intends to say. In other words, Senator Gelser Blouin has provided the "subject matter" of her testimony, but not the "facts and opinions to which [she] is expected to testify." Accordingly, the testimony is improper under FRCP 26(a)(2)(C).

Because Senator Gelser Blouin's disclosure provides no notice about what Senator Gelser Blouin intends to say at trial, it is not a proper witness statement for even a lay fact witness. *Harrigan ex rel. Harrigan v. Marion Cnty.*, No. 6:11-CV-06174-SI, 2013 WL 5274407, at *11 (D. Or. Sept. 18, 2013) (holding that insufficiently "detailed and substantive" witness statements did not comply with pre-trial order).

### 4.    The legislature speaks with one voice though legislation, and a single legislator's post-hoc testimony regarding enacted legislation is inadmissible.

Regardless, a single legislator is not permitted to testify about legislation or the legislative process. Contemporaneous statements made on-the-record during the legislative process are legislative history and can be indicative of legislative intent. But a single legislator's after-the-fact testimony about legislation and the legislative process "is entitled to no weight and

cannot be relied on as indicative of legislative motivation or intent." *Am. Const. Party v. Munro*, 650 F.2d 184, 188 (9th Cir. 1981); *see also Cook Inlet Native Ass'n v. Bowen*, 810 F.2d 1471, 1475 (9th Cir. 1987) ("[S]tatements of a former legislator after a bill's passage are entitled to no weight."); *Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1457 (9th Cir. 1992) ("We are normally hesitant to attach much weight to comments made after the passage of legislation. In view of the contradictory nature of these cited statements, we give them no weight at all.")  As one district court has explained:

> "If every legislator could be said to speak on behalf of the state
> with regard to every piece of legislation, there could be no cogent
> state voice.  It is the collective legislature, as it votes on each piece
> of legislation, that decides the collective voice of the state.
> Legislators inevitably have contradictory opinions and viewpoints
> on different bills.  They speak for the state through the bills they
> act on, and it is only through the bills that they pass that they can
> be said to speak for the state.  When a bill passes, individual
> legislators who explain their votes must be seen as speaking only
> for themselves."

*Bennett v. Yoshina*, 98 F. Supp. 2d 1139, 1154 (D. Haw. 2000), aff'd, 259 F.3d 1097 (9th Cir. 2001).  Consistent with this view, the Ninth Circuit has repeatedly refused to consider testimony from individual legislators outside the formal legislative process.  *See Am. Const. Party* 650 F.2d at 188 (giving "no weight" to affidavit submitted by single legislator); *Cook Inlet* 810 F.2d at 1475 (same).

Here, Senator Gelser Blouin intends to testify about various "legislative funding bills" and other legislation pertaining to Child Welfare.  Under binding precedent, Senator Gelser Blouin's post-hoc testimony regarding legislation and the legislative process is inadmissible and entitled to "no weight."

5.      **Senator Gelser Blouin cannot provide a legal opinion regarding the constitutionality of state statutes or ODHS policies.**

Relatedly, it is well established that a witness cannot provide testimony regarding legal opinions. Neither a lay witness, nor an expert witness can provide such testimony because it is not helpful under Rule 701 or Rule 702. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008) ("Whether we consider Carney's testimony as expert or lay opinion testimony, the district court did not abuse its discretion in excluding Carney's legal conclusions."); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law") (citations and quotation marks omitted). Here, Senator Gelser Blouin cannot opine on whether state statutes or Child Welfare policies comply with other legal requirements (*e.g.*, the federal constitution). The legality of state law and state policy is a legal issue for this Court to decide.

6.      **At absolute most, the Court should permit Senator Gelser Blouin to provide non-cumulative testimony describing her conversations with defendants.**

To be sure, Senator Gelser Blouin also intends to testify about "her experience dealing with ODHS in Legislative hearings, sessions, and related contexts." To the extent Senator Gelser Blouin has relevant, non-cumulative testimony about statements made by a party opponent, that testimony may be admissible under FRE 801(d)(2). But the Oregon legislature maintains an official record of its proceedings (*e.g.* testimony, exhibits, committee reports) and that record is the best evidence of its contents. *See* FRE 1002 (stating that a "writing, recording, or photograph is required in order to prove its content").) At absolute most, the Court should permit Senator Gelser to testify about her unpublished conversations with defendants, and even

then, only after plaintiffs file a witness statement that identifies the contents of Senator Gelser

Blouin's proposed testimony.

Defendants do not understand Senator Gelser Blouin to be seeking to testify about

internal legislative briefings or other communications provided to multiple legislators or the

legislature as a whole.  Legislators have legislative privilege for their communications regarding

the legislative process.  *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018) ("[T]he

exercise of legislative discretion should not be inhibited by judicial interference.  We therefore

hold that state and local legislators may invoke legislative privilege.")  The legislative privilege

extends to "third parties about legislation or legislative strategy," such as communications with

executive branch officials.  *Puente Arizona v. Arpaio*, 314 F.R.D. 664, 670 (D. Ariz. 2016); *see

also Mi Familia Vota v. Hobbs*, No. CV-21-01423-PHX-DWL, 2023 WL 4595824, at *3 (D.

Ariz. July 18, 2023) (holding that legislative privilege extends to communications with third

parties).   Here, legislators and the legislature have a privilege in their communications with

ODHS officials about legislative action.  Although Senator Gelser Blouin may waive her

privilege; she lacks standing to waive privilege on behalf of other legislators.  Accordingly, she

can only testify regarding those conversations she had with ODHS directly and not with other

legislators.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

For all of the above reasons, the Court should grant each of ODHS's motions *in limine*.

DATED: April 25, 2024

        ELLEN ROSENBLUM
        ATTORNEY GENERAL
        FOR THE STATE OF OREGON

        *s/ Vivek A. Kothari*
        David B. Markowitz, OSB #742046
        DavidMarkowitz@MarkowitzHerbold.com
        Laura Salerno Owens, OSB #076230
        LauraSalerno@MarkowitzHerbold.com
        Harry B. Wilson, OSB #077214
        HarryWilson@MarkowitzHerbold.com
        Lauren F. Blaesing, OSB #113305
        LaurenBlaesing@MarkowitzHerbold.com
        Vivek A. Kothari, OSB #182089
        VivekKothari@MarkowitzHerbold.com
        *Special Assistant Attorneys General for Defendants*

        Adele J. Ridenour, OSB #061556
        AdeleRidenour@MarkowitzHerbold.com
        *Of Attorneys for Defendants*

        Carla A. Scott, OSB #054725
        carla.a.scott@doj.state.or.us
        Sheila H. Potter, OSB #993485
        sheila.potter@doj.state.or.us
        *Of Attorneys for Defendants*

2130072.11