**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
**Vivek A. Kothari, OSB #182089**
VivekKothari@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for Defendants*
*Additional Counsel of Record Listed on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S. by his next friend Paul Aubry; RUTH T. by her next friend Michelle Bartov; BERNARD C. by his next friend Ksen Murry; NAOMI B. by her next friend Kathleen Megill Strek; and NORMAN N. by his next friend Tracy Gregg, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>   v.<br><br>TINA KOTEK, Governor of Oregon in her official capacity; FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; APRILLE FLINT-GERNER, Director, Child Welfare in her official capacity; and OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>                    Defendants. | Case No. 6:19-cv-00556-AA<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO DEFENDANTS' WITNESS STATEMENTS** |

Page 1 –   DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO
            DEFENDANTS' WITNESS STATEMENTS

## RESPONSES TO PLAINTIFFS' OBJECTIONS

Defendants respond to plaintiffs' witness statement objections (Dkt. 424) as follows:

In response to plaintiffs' General Objections, defendants do not disagree that plaintiffs may object to testimony presented at trial contemporaneously as defendants present witness testimony. Defendants also do not disagree that plaintiffs may supplement their trial exhibits, and the deadline for the parties to do so is Monday, April 29, 2024.

Defendants disagree that plaintiffs may move to strike witness testimony based on prior statements a witness made during his or her deposition. Prior inconsistent statements may be used to impeach a witness. FRE 801(d)(1)(A). Prior inconsistent statements do not provide grounds to strike a witness's testimony, which is the proper remedy for irrelevant or prejudicial testimony. FRE 401, 403. Plaintiffs' general objection regarding prior inconsistent testimony should be rejected.

| LACEY ANDRESEN | | |
|---|---|---|
| **Defendants' Statement** | **Objections** | **Defendants' Response** |
| 20 – intends to testify about what the court-appointed special master in the "AR" case said | Hearsay | **FRE 803(8):** the special master's report is a public record that sets out "factual findings from a legally authorized investigation," and it records matters observed while under a legal duty to report them |
| 24-25 – intends to testify about how plaintiffs' desired relief of imposing a rigid set of metrics, along with a court-appointed monitor, will stymie "the real progress" Child Welfare has made | Speculation, lack of personal knowledge, expert opinion as to effects of relief | Ms. Andresen has extensive personal knowledge regarding the operations of Child Welfare, including experience with the agency's operations over time. Her personal experience and knowledge developing long range agency policy and implementing strategy are more than sufficient bases to offer an opinion on how various policies or metrics will impact its operations |

| LISA BENDER |||
|---|---|---|
| **Defendants' Statement** | **Objections** | **Defendants' Response** |
| 52 – "court monitor is not necessary" | Expert opinion, legal conclusion | Ms. Bender has extensive knowledge of Child Welfare's operations and understand the role a monitor will play. She does not need to be certified as an expert to offer an opinion about a dramatic change to the agency's operations. |

| RACHEL CURRANS-HENRY |||
|---|---|---|
| **Defendants' Statement** | **Objections** | **Defendants' Response** |
| 58-61 – repeatedly attempts to testify about what Governor Kotek thinks | Personal knowledge, hearsay, speculation | Ms. Currans-Henry works directly with Governor Kotek and it is her job to know Governor Kotek's opinions on policy matters, and to convey those policy positions to others. The statements regarding Governor Kotek's policy positions are not offered for their truth but for their effect on Ms. Currans-Henry because her understanding of the Governor's policy positions informs decisions she makes in her role. |
| 63 – cannot testify to what Governor Kotek "will do" in the future | Speculation, lack of personal knowledge | Ms. Currans-Henry's job requires future planning and she has personal knowledge of the policy positions Governor Kotek has taken and intends to take in the future because her professional functions include serving as a Governor Kotek's delegate for implementing the Governor's policy positions. |

| APRILLE FLINT-GERNER |||
|---|---|---|
| **Defendants' Statement** | **Objections** | **Defendants' Response** |
| 72-74 – regarding effects on "Vision for Transformation" | Unnoticed expert testimony about the likely effects of Vision for Transformation, general testimony about implementation science | Ms. Flint-Gerner helped design and implement the Vision for Transformation. Understanding policies, metrics, and their impacts is a core part of her professional function. She does not need to be separately qualified as an expert to testify regarding the strategic planning and decisions that she engages in as part of her |

| | | |
|---|---|---|
| | | job. Ms. Flint-Gerner has also personally studied implementation science and can testify to how she uses it to inform the work she does as Director of Child Welfare. |
| 83 – testimony about what the division of Child Welfare "will continue" to do | Relevance, speculation, lack of personal knowledge | Ms. Flint-Gerner is the head of Child Welfare. She is in charge of making decisions about the future of Child Welfare and planning for future policy implementations. Testimony regarding the future direction of Child Welfare is relevant because the class definition is forward looking, and whether Child Welfare will continue to make improvements is relevant to whether defendants have demonstrated deliberate indifference to the risks posted to children in foster care. |
| 89-93 – impact of injunction, "rigid inflexible metrics," testimony about what has happened in other states, etc. | Relevance, expert opinion, speculation, lack of personal knowledge | See above. Further, the effects of an injunction are relevant to whether plaintiffs' proposed remedy would be effective to address the problems they allege exist. |

| DR. AJIT JETMALANI | | |
|---|---|---|
| **Defendants' Statement** | **Objections** | **Defendants' Response** |
| 123-124 – testimony regarding Child Welfare challenges brought on by years of decline in medical services and Legislature's failure to adequately fund and support the operations of Child Welfare | Lack of personal knowledge; speculation | Dr. Jetmalani has personal knowledge of the medical services that Child Welfare provides and the funding for those services. He also has personal knowledge of whether that funding is sufficient. |
| 128-129 – external barriers to the work of Child Welfare | Expert witness testimony | Dr. Jetmalani is closely familiar with the work of Child Welfare and how external factors impact that work. This testimony is within the realm of his personal experience and does not require expert testimony. |
| 129 – testimony relating to "deliberate indifference" | Expert witness testimony, ultimate question/legal conclusion | **FRE 704:** "An opinion is not objectionable just because it embraces an ultimate issue." |

| TAMI J. KANE-SULEIMAN |||
|---|---|---|
| **Defendants' Statement** | **Objections** | **Defendants' Response** |
| 143 – finds no direct correlation between child fatalities and overdue CPS assessments | Expert opinion | Ms. Kane-Suleiman has extensive personal knowledge of both ODHS's response to child fatalities and the CPS assessment process, and this opinion is within her personal knowledge and does not require an expert to opine on it. |

| FARIBORZ PAKSERESHT |||
|---|---|---|
| **Defendants' Statement** | **Objections** | **Defendants' Response** |
| 215-216 – continued expert opinion on remedial measures in litigation | Expert opinion | Mr. Pakseresht has extensive knowledge of how ODHS, Child Welfare, and state agencies more broadly operate. Understanding policy changes, making policy changes based on program requirements and objectives, and assessing impact of policy changes are parts of his professional function. He is more than qualified to testify to how plaintiffs' suggested remedies would impact Child Welfare. This opinion does not require expert testimony. |

| ANNA WILLIAMS |||
|---|---|---|
| **Defendants' Statement** | **Objections** | **Defendants' Response** |
| 259 – discussion of the effects of SB 710 | Lack of personal knowledge, speculation | Ms. Williams is the executive director of SOCAC, whose role is to hear from Child Welfare partners across the child-serving system and to use that input to inform the Governor and the Legislature on policies affecting Child Welfare. It is fully within the scope of her role for her to understand how the implementation of SB 710 has affected Child Welfare partners, and she has personal knowledge of those effects from her role on SOCAC. |
| 259-260 – impact of Oregon's Medicaid funding structure | Lack of personal knowledge, speculation | See previous answer. Ms. Williams's role on SOCAC requires her to understand how policies are implemented and how external forces, including Medicaid, affect Child Welfare. This opinion is well within the scope of her personal knowledge. |

Page 5 –    DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO DEFENDANTS' WITNESS STATEMENTS

| EXPERT WITNESSES | | |
|---|---|---|
| **Defendants' Expert** | **Objections** | **Defendants' Response** |
| Stacey Moss | Plaintiffs' Motion to Exclude (Dkt. 360) | *See* Defendants' Response Brief (Dkt. 406) |
| Uma Ahluwalia | Plaintiffs' Motion to Exclude (Dkt. 362) | *See* Defendants' Response Brief (Dkt. 404) |
| Jim Dimas | | |
| Dr. Bowen McBeath | To-Be-Filed Motion to Exclude | Defendants will file a response to plaintiffs' motion to exclude |
| Dr. Sarah Vinson | | |
| Cynthia Richter-Jackson | | |

DATED: April 29, 2024

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON


*s/ Laura Salerno Owens*
David B. Markowitz, OSB #742046
DavidMarkowitz@MarkowitzHerbold.com
Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Lauren F. Blaesing, OSB #113305
LaurenBlaesing@MarkowitzHerbold.com
Vivek A. Kothari, OSB #182089
VivekKothari@MarkowitzHerbold.com
*Special Assistant Attorneys General for Defendants*

Adele J. Ridenour, OSB #061556
AdeleRidenour@MarkowitzHerbold.com
*Of Attorneys for Defendants*

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us
Sheila H. Potter, OSB #993485
sheila.potter@doj.state.or.us
*Of Attorneys for Defendants*

2136412.4