**P. ANDREW McSTAY, JR.**, OSB 033997
andymcstay@dwt.com
**WILLIAM D. MINER**, OSB 043636
billminer@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
560 SW 10th Avenue, Suite 700
Portland, OR 97205
Telephone: (503) 241-2300

**MARCIA ROBINSON LOWRY** (*pro hac vice*)
mlowry@abetterchildhood.org
**ANASTASIA BENEDETTO** (*pro hac vice*)
abenedetto@abetterchildhood.org
**LINDSAY GUS** (*pro hac vice*)
lgus@abetterchildhood.org
**A BETTER CHILDHOOD**
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456

*Attorneys for Plaintiffs*
*Additional Counsel of Record Listed on*
*Signature Page*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| WYATT B., *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>TINA KOTEK, *et al.*,<br><br>　　　　　　Defendants. | Case No. 6:19-cv-00556-AA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE**<br><br>**Oral Argument Requested** |

　　　　The Court can and should simply disregard Defendants' motions in limine. A "ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the

Page 1 – PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE

4869-3048-1082v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

district court." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). Motions in limine have some utility to exclude prejudicial material from a jury trial, but very limited function in a bench trial. The Court can set any rules it likes to streamline the trial and focus the evidence on appropriate topics, but Defendants have no particular right to have any type of evidence preemptively excluded ahead of trial.

### I. Motions in Limine Have Limited Function and Are "Generally Superfluous" in Bench Trials

Defendants' lengthy motion, asking this Court to exclude a wide variety of ill-described evidence, provides little utility to the Court. "Because the judge rules on this evidentiary motion, in the case of a bench trial, a threshold ruling is generally superfluous." *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009). Little purpose is served by "asking the judge to rule in advance on prejudicial evidence so that the judge would not hear the evidence." *Id.* A Court may wish to streamline the trial process for "logistical and other reasons," however, making certain motions in limine useful at a bench trial. *Id.* Reading and replying in depth to a 40-page motion serves little purpose to lighten the Court's load. *Crane-Mcnab v. Cnty. of Merced*, No. CIV. 1:08-1218, 2011 WL 94424, at *1 (E.D. Cal. Jan. 11, 2011) (while a motion in limine might vindicate an interest in "saving time" at trial, that benefit is erased by additional time in motion practice and the lost benefit to the court in hearing evidence in the "context of the trial and weighing the probative value of the evidence against the admissibility concerns").

A motion in limine should not "be used to resolve factual disputes, weigh evidence, or as a substitute for a motion for summary judgment." *Lo v. United States*, No. 2:17-CV-01202-TL, 2022 WL 1014902, at *2 (W.D. Wash. Apr. 5, 2022). "Motions in limine that seek exclusion of broad and unspecific categories of evidence are generally disfavored." *Jackson v. Cnty. of San Bernardino*, 194 F. Supp. 3d 1004, 1008 (C.D. Cal. 2016). A court is "almost always better situated during the actual trial to assess the value and utility of evidence." *Id.* If, during the trial, the Court finds that certain evidence is irrelevant or duplicative, the Court's decision "can be

revisited at trial based on the facts and evidence as they are actually presented." *Lo*, 2022 WL 1014902, at *2.

Recognized appropriate uses of the motion in limine include: 1) the "gatekeeping" duty of the Court with respect to experts; 2) saving trial time and travel costs where a court would determine whether a witness testifies at all; 3) saving trial time by eliminating a "major issue" at trial; 4) allowing the Court to thoroughly review and research a complex evidentiary issue before trial; and 5) resolving highly sensitive issues before a jury hears them. *Mixed Chicks LLC v. Sally Beauty Supply LLC*, 879 F. Supp. 2d 1093, 1094 (C.D. Cal. 2012). Motions in limine are *not* properly used 1) to present all conceivable evidentiary objections; 2) to substitute for motions to compel or discovery sanctions; 3) to substitute for motions for summary judgment; 4) to reiterate or reinforce obvious trial points; 5) to "educate" a judge; 6) to control or cabin evidence that cannot be controlled or cabined; and 7) to resolve issues prematurely before being viewed in the context of trial. *Id.*

## II.    Plaintiffs Can Present Any Relevant, Admissible Evidence

Defendants motion is unclear on exactly what evidence it seeks to exclude. The Defendants improperly seek to exclude, not particular inadmissible evidence, but evidence in any way related to the "topics" the Defendants object to. ECF 422, at 2. "The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is *not admissible for any valid purpose*." *Anglin v. Pratti*, 643 F. Supp. 3d 1077, 1080 (E.D. Cal. 2022) (emphasis added). A motion in limine should be focused on particular evidence, not "broad and unspecific categories of evidence." *Jackson*, 194 F.Supp.3d at 1008. Defendants seek to exclude, for instance, all evidence that "does not relate to the class-wide claims." ECF 422, at 12. As a second example, evidence "relating to the aging out subclass" could be construed so broadly as to include any testimony about the age of any foster youth 14 years or older. ECF 422, at 6. An order precluding such an indeterminate swath of evidence would only result in constant question-

by-question, document-by-document disputes at trial between the parties as to whether and to what extent the document or question relates to a class-wide claim. Instead of simplifying the trial, granting such an order would engender even more objections and disputes in the trial. The best course of action is for the Court to manage the evidentiary presentation in the course of the trial. *Taneja v. Freitas*, No. 2:22-CV-00702-TL, 2023 WL 6541330, at *1 (W.D. Wash. Oct. 6, 2023). In a bench trial, the Court can hear and later exclude any inadmissible evidence that it has heard from the factual basis for its final judgment. *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994).

### A. Defendants Largely Fail to Allege, Much Less Prove, Inadmissibility of Evidence

Throughout Defendants' motion, Defendants seek to exclude broad categories of evidence based primarily on their construction of this Court's prior rulings and their construction of the relevant law, but rarely allege that the evidence is inadmissible. Defendants' motion on its face asks the Court to exclude all evidence that may discuss frequent placements, protracted stays in foster care, lack of placements, temporary lodging, youth aging out, evidence not alleged in the Complaint, evidence about children being harmed by parents, all evidence not disclosed to Defendants, the cost of defending the case, and any information about other settlements or lawsuits against DHS. Defendants argue the legal merits of the claims and defenses, but little argument supports the idea that such evidence is actually *inadmissible*. Defendants do not even mention admissibility until the 14th page of their brief.

Defendants fail to distinguish between evidence that is dispositive and evidence that is admissible. *See, e.g.*, ECF 422, at 15 (claiming that evidence of child abuse by parents is not relevant because of the *Deshaney* ruling on substantive due process). Evidence regarding lack of placements, for instance, may be admissible at trial and relevant to claims, without being

dispositive of a due process claim. "Courts are not required to consider each challenged policy or practice in vacuum and courts 'may properly consider how individual policies or practices interact with one another within the larger system.'" ECF 215, at 7 *citing M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 255 (5th Cir. 2018). Admissibility does not turn on the sufficiency of a piece of evidence to prove, conclusively and on its own, a violation of the law. Fed. R. Evid. 401 (relevance only requires that evidence has "any tendency to make a fact more or less probable" and in some way is "of consequence" to the action). Evidence that makes a legal claim even marginally more likely is relevant. Presumably, a failure to administer a proper background check to a foster parent does not, in and of itself, work a constitutional violation to the rights of a child in foster care. The failure to consider relevant criminal history of a foster parent, combined with evidence of actual abuse or neglect by that parent, would be relevant to a claim of due process violation. *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 838 (9th Cir. 2010) (discussing state's failure to consider foster parent's criminal history in foster care litigation). Evidence that a child moved to many different placements, was harmed by a parent, was housed in a hotel, or stayed in foster care for years may not prove a violation of the law on its own, but remain admissible. Those facts may be building blocks for a larger finding of violations of the law.

As an example of relevant, admissible evidence that relates to the topics Defendants seek to prohibit, Plaintiffs have alleged in their trial brief extensive evidence that DHS continued to use Dynamic Life as a contractor to serve children in temporary lodging, despite strong warnings from the state's abuse investigation unit that youth in Dynamic Life's custody were being restrained and abused. That evidence plainly relates to bona fide constitutional claims of deliberate indifference to harm to youth. ECF 215, at 9. Yet any inquiry would require discussion

of evidence one could plausibly say is "related to temporary lodging," or related to the array of placements in the community, duration of time in foster care custody, placement stability, and the least restrictive placement. ECF 422, at 11-12 & 22. The Court can decide, once it hears the evidence in the context of the trial, whether any of the evidence discussed is "admissible for a valid purpose" and exclude any testimony that is redundant or irrelevant. *Anglin*, 643 F. Supp. 3d at 1080.

Defendants' motion in limine would complicate the trial, rather than simplifying it. An order precluding any mention of how long a youth spent in foster care, how many placements they went to, whether they stayed in a hotel, whether there was extrinsic litigation related to the youth, whether the youth is in the aging out population, or whether a child was harmed by a parent would require all witnesses, including Defendants' witnesses, to navigate a constant stream of landmines in merely discussing the basic facts of children's experiences in foster care. Defendants provide no outline for the Court as to how such a broad order should be enforced to preclude any presentation of any evidence relating to these broad topics. Nor is the primary scope of the motion, with one exception discussed below, calculated to exclude the testimony of any particular witness or easily-identified piece of evidence.

### B. Defendants' Motions Simply Ignore Plaintiffs' ADA/504 and Child Welfare Act Claims

Defendants' claims for exclusion of whole "topics" from trial also track only the Court's rulings on *substantive due process*, not the whole scope of the case. While the Court did hold that substantive due process entitles a youth to a "least restrictive" setting, the Court also pointed out that Plaintiffs properly stated a right to the creation of a "least restrictive" setting through the Child Welfare Act. *Compare* ECF 215, at 9 ("right to substantive due process does not extend to placement in an optional or least-restrictive setting") *with id.* at 10 (quoting 42 U.S.C. 675

requiring states to have a procedure to ensure "each child has a case plan designed to achieve placement in a safe setting that is the least restrictive (most family like) and most appropriate setting"). Similarly, while the Court said that due process does not entitle youth to "the availability of an array of placement options," it also sustained against a motion to dismiss a challenge on ADA grounds to the "lack of community based placements" for youth with disabilities. ECF 215, at 9 & 11; *see also* ECF 282, at 27. Defendants quibble with the construction of substantive due process rights, but fail to allege that the topics they wish to challenge are not properly within *any* claim of Plaintiffs.

### C. Defendants Cannot Seek to Exclude Testimony on Topics They Have Conceded Are Relevant by Addressing Themselves

Defendants have already presented extensive evidence on some of the same topics they claim the Court should preclude. Having raised these issues, they cannot now claim they are irrelevant or inadmissible. *See, e.g.*, ECF 31, at 6 (stating that Oregon would "build[] capacity for both therapeutic and general foster care" and "develop[] adequate in home capacity for children of color and with intellectual and developmental" disabilities"). The centerpiece of Defendants' trial, a 300-page report by Public Knowledge, extensively discusses the exact topics Defendants seek to exclude. ECF 361, at 328-329 (discussing "placement stability" and "temporary lodging"); *id.* at 389 (discussing "resource home capacity"); *id.* at 298 (discussing steps DHS is taking to prevent abuse and neglect by parents). That same report frequently discusses factual and legal matters that have nothing to do with the complaint or the issue identified in the class certification. *Id.* at 291-94 (extensively discussing the implementation of the ORCAH hotline); *id.* at 327-28 (extensively discussing ICWA compliance, a federal law not a subject of a claim in the present complaint). Defendants spent more than $800,000 producing that report, whose topics they now claim to be irrelevant and inadmissible.

Similarly, Defendants seek to prevent Plaintiffs from offering evidence of the cost of this litigation, even while they offer extensive opinions on the costs of child welfare litigation and commissioned *two* different expert reports on this exact topic. ECF 363-1, at 10-12 (discussing costs of litigation); ECF 363-2, at 11 (complaining that child welfare litigation "redirects state appropriations that would otherwise be available to fund services and infrastructure to legal costs"); ECF 386, at 98 (Aprille Flint-Gerner would testify as to how expensive litigation in other states has been). While seeking to exclude evidence about temporary lodging, Defendants have noticed the testimony of Marty Beyer, the neutral/monitor in that matter, precisely so she can discuss the hoteling case. ECF 385, at 53. Although Defendants wish to exclude discussion of other lawsuits in Oregon relating to the Oregon Department of Human Services as irrelevant and inadmissible, they wish to admit copious evidence of other litigation in other jurisdictions about dissimilar foster care systems. ECF 386, at 98 (discussing Texas and Oklahoma litigation; ECF 363-1 (discussing out-of-state litigation throughout); ECF 363-2 (same).[1] To the extent Defendants position is that they should be allowed to produce evidence to which Plaintiffs should be prohibited from responding, Plaintiffs believe such a proceeding would be fundamentally unfair.

---

[1] In one of the few points at which Defendants actually address admissibility or cite a rule of evidence, they are unable to point to any evidence Plaintiffs intend to produce that evidence or rely on it for that purpose. "*[T]o the extent* plaintiffs offer the underlying complaints to prove that the facts alleged in their Complaint are true," the Court should deny them as hearsay. ECF 422, at 23 (emphasis added). Defendants fail to allege that the Plaintiffs have sought to admit those complaints for that purpose. Neither have Plaintiffs claimed that the Court should conclude liability from the sheer fact of settlement. ECF 422, at 22. Defendants' surmise about the paucity of Plaintiffs' evidence is inappropriate. The Court will see at trial what Plaintiffs' evidence establishes.

### D.  Defendants' Motion is an Untimely, Inappropriate Dispositive Motion

Considering the focus of the motion in debating the merits of Plaintiffs claims, rather than squarely addressing admissibility, the motion in limine is essentially an untimely and inappropriate motion for summary judgment. ECF 327 (setting dispositive motions for March 25, 2024); *Elliott v. Versa CIC, L.P.*, 349 F. Supp. 3d 1000, 1002 (S.D. Cal. 2018) (denying Defendants "dispositive motion they have disguised as a motion in limine to effectively bar Plaintiffs from raising any cause of action at trial") (cleaned up). Defendants' extensive discussion of merits of their claims and the law governing the claims, but the virtual absence of discussion of admissibility or the rules of evidence, demonstrate that Defendants are actually seeking through improper and untimely means an order to adjudicating their substantive legal claims. A motion in limine should exclude inadmissible evidence, not seek adjudication of the claims.

### E.  The Court Should Hear from Foster Children at Trial

As part of their omnibus motion, Defendants alleged prejudice from testimony from foster youth in the class. ECF 422, at 30. Defendants previously raised the issue of their interrogatories seeking of the identity all youth in the class who had had their rights violated by the defendants. Plaintiffs properly responded at the time that the request was unduly burdensome, and the Court declined to compel productions of those names. *Mixed Chicks LLC*, 879 F. Supp. 2d at 1094 (one of the disfavored purposes for motions in limine is challenging discovery orders or motions to compel). The Court's order on this point still applies. Defendants fail to explain how having the names of thousands of foster children in discovery would have helped them particularly prepare for the testimony of two specific children. Plaintiffs informed Defendants in conferral prior to the filing of Defendants' motion that they would identify the

witnesses identified by initials in the witness list by email, which Plaintiffs have done. Plaintiffs are at a loss to understand why Defendants would file a motion on grounds that were addressed in conferral and previously ruled on by the Court. Since Defendants control virtually all relevant documents pertaining to these two youth, Defendants can readily prepare for those youth witnesses.[2]

### III.    Senator Gelser Blouin Should Be Permitted to Testify

Defendants' final motion in limine to prevent Senator Gelser Blouin's testimony at least identifies a specific witness that Defendants would like to exclude, rather than broad topics. Plaintiffs do not seek to admit her as an expert witness. Senator Gelser Blouin will testify to the facts that she has observed. At no point does Senator Gelser Blouin's statement indicate that she will provide her opinions, nor do Defendants direct the Court to any element of the witness statement indicating the Senator will offer an opinion, lay or expert.

Her statement says, in part that:

> Sen. Gelser Blouin has requested, read and carefully analyzed thousands upon thousands of pages of public records related to Give Us This Day, out of state placements and the use of unlicensed temporary lodging providers. She has visited (physically and virtually) courts in multiple counties to observe hearings at every step of the juvenile process. She has also reviewed large numbers of records that are otherwise inaccessible because involved kids and adults have provided releases of information

ECF 385-5. The summary describes a witness who has read public records of the Oregon Department of Human Services. Those records are both non-hearsay (as the statement of a party-

---

[2] Defendants also cite the sanctions provisions of Rule 37(c)(1), ECF 422, at 29 (describing Rule 37(c)(1)'s "automatic" sanctions) but fail to explain how Rule 37(c)(1) would apply here, since sanctions under that provision arise only for a failure to make *initial disclosures* under Rule 26(a), or a failure to supplement those initial disclosures under Rule 26(e). Defendants do not claim Plaintiffs failed to make initial disclosures, or to supplement them. Their complaint is that Plaintiffs failed to respond adequately to their interrogatories. Defendants had a responsibility to file a motion to compel under Rule 37(a) to address that issue. They asked the court by letter to require Plaintiffs to respond more fully, which the Court rejected. Defendants never filed a motion to compel, so they have waived any right to such a sanction.

opponent) and within a hearsay exception (public records). Senator Gelser Blouin's testimony about the facts that she has observed visiting courthouses and reading records are pertinent fact evidence. Her testimony was timely disclosed, along with all the other fact witnesses.

That Senator Gelser Blouin wishes to address the factual assertions raised in the Public Knowledge report does not make her an expert, nor does it make her testimony into an opinion. The Public Knowledge report is rife with factual assertions divorced from an underlying opinion, to which the Senator can reply as a fact witness. The Public Knowledge report at many points serves as "little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation." *United States v. Vera*, 770 F.3d 1232, 1237 (9th Cir. 2014). Senator Gelser Blouin can properly discuss "references made in the PK Report to the Oregon Legislature regarding ODHS and her experience dealing with ODHS in Legislative hearings, sessions, and related contexts," without offering an expert opinion. ECF 385-5. In the event that the Senator deviates from her role as a fact witness, the Court can re-direct her appropriately and disregard any improper expert opinions expressed. Defendants' lengthy characterization of the Senator's proposed testimony fails to identify a single opinion, much less an expert opinion, that she would express.

Defendants collaterally complain that Senator Gelser Blouin's statement is insufficiently detailed. ECF 422, at 38. Defendants have waived this complaint, because they have never asked Plaintiffs to supplement or provide increased detail to her witness testimony. Instead, they have improperly challenged her witness statement before the Court as their act of first resort. To the extent it wishes, the Court can read her witness statement and, if it finds detail lacking, ask Plaintiffs to amend it. Plaintiffs will endeavor to add detail as the Court directs. Defendants instead seek the strong medicine of completely precluding a witness from testifying without asking once for the statement to be amended. In light of Defendants' evident hostility to the Senator, ECF 414, Plaintiffs suspect this omission not to be an oversight.

Defendants also produce case law on the irrelevant topic of legislative intent. True, the "remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative

history" of a particular bill. *Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979). But even brief perusal of the Senator's proposed testimony would reveal that she does not seek to opine on the legislative intent behind any particular bill. Defendants do not identify any such bill. Instead, court have "frequently considered testimony by legislators and staff members regarding legislative acts and statements." *Cano v. Davis*, 193 F. Supp. 2d 1177, 1182 (C.D. Cal. 2002); *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 458 (2006) (district court's reliance on "testimony from state legislators" about redistricting process was part of "ample evidence" supporting findings). The Senator has frequently held open hearings on DHS-related topics and regularly leads inquiries into a variety of social service-related topics, not as part of the consideration of a specific legislative bill. A series of hearings in April 2019, led by the Senator, helped lead to the end of out-of-state placement of youth. A reasonable reading of her proposed testimony would lead a reasonable reader to understand that Senator Gelser Blouin would testify about her general oversight of DHS as a legislator, not about legislative intent behind a specific bill.[3]

Finally, Defendants claim that Senator Gelser Blouin cannot testify about a variety of contacts with DHS because of legislative privilege. ECF 422, at 41. Senator Gelser Blouin, however, is voluntarily appearing, so the legislative privilege against "compulsory testimony" is irrelevant. *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018); *accord La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 233 (5th Cir. 2023) (privilege does not "protect against disclosure in general" but prevents any "deterrent to the uninhibited discharge of legislative duty," which would be vitiated by exposing "legislators negotiate protective orders or suffer contempt proceedings"). A legislator, "him or herself alone," may make a "knowing and voluntary waiver" of the legislative privilege. *A.H.D.C. v. City of Fresno*, No. CV-F-97-5498 OWW SMS, 2002 WL 34575401, at *10 (E.D. Cal. Oct. 17, 2002), *aff'd sub nom. Affordable*

---

[3] Defendants also separately complain that Senator Gelser Blouin may not opine on the constitutionality of state statutes or DHS policies, but point to no part of her proposed testimony indicating such is likely to occur. ECF 422, at 40. If Defendants are unable to identify a factual predicate for their motion, Plaintiffs are unlikely to do so.

*Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182 (9th Cir. 2006); *In re Toma*, No. 23-70179, 2023 WL 8167206, at *1 (9th Cir. Nov. 24, 2023) (memorandum) (district court did not err by finding legislators waived legislative privilege by intervening). Since the "legislative privilege" is a privilege not to testify involuntarily, Defendants' claim that other legislators can veto Senator Gelser Blouin's testimony regarding any events that they were also present for is nonsensical and supported by no case law. Defendants, further, have no standing to assert the interests of other state legislators, nor have they produced evidence that any state legislators object to Senator Gelser Blouin's testimony. Defendants lack standing to assert the privilege. *United States v. Blackman*, 72 F.3d 1418, 1426 (9th Cir. 1995) (privilege is "personal and applies only to the compulsion of the person holding the privilege"). Legislative privilege is a shield for Senator Gelser Blouin against improper compelled testimony, not a cage for Defendants to put over a willing witness. Defendants' motion should be denied on this ground as well.

Dated the 29th day of April 2024.

**DAVIS WRIGHT TREMAINE LLP**

By: *s/ P. Andrew McStay, Jr.*
P. Andrew McStay, Jr. OSB 033997
andymcstay@dwt.com
William D. Miner, OSB 043636
billminer@dwt.com
560 SW 10th Avenue, Suite 700
Portland, OR 97205
Tel: (503) 241-2300

**A BETTER CHILDHOOD**
Marcia Robinson Lowry (*pro hac vice*)
mlowry@abetterchildhood.org
Anastasia Benedetto (*pro hac vice*)
abenedetto@abetterchildhood.org
Lindsay Gus (*pro hac vice*)
lgus@abetterchildhood.org
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456


**DISABILITY RIGHTS OREGON**
Emily Cooper, OSB 182254
ecooper@droregon.org
Thomas Stenson, OSB 152894
tstenson@droregon.org

511 SW 10th Avenue, Suite 200
Portland OR 97205
Tel: (503) 243-2081

**RIZZO BOSWORTH ERAUT PC**
Steven Rizzo, OSB 840853
srizzo@rizzopc.com
Mary D. Skjelset, OSB 075840
mskjelset@rizzopc.com
1300 SW 6th Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819

Attorneys for Plaintiffs


Attorneys for Plaintiffs