**P. ANDREW McSTAY, JR.**, OSB 033997
andymcstay@dwt.com
**WILLIAM D. MINER**, OSB 043636
billminer@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
560 SW 10th Avenue, Suite 700
Portland, OR 97205
Telephone: (503) 241-2300

**MARCIA ROBINSON LOWRY** (*pro hac vice*)
mlowry@abetterchildhood.org
**ANASTASIA BENEDETTO** (*pro hac vice*)
abenedetto@abetterchildhood.org
**LINDSAY GUS** (*pro hac vice*)
lgus@abetterchildhood.org
**A BETTER CHILDHOOD**
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456

*Attorneys for Plaintiffs*
*Additional Counsel of Record Listed on*
*Signature Page*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| WYATT B., *et al.*,<br><br>   Plaintiffs,<br><br>  v.<br><br>TINA KOTEK, *et al.*,<br><br>   Defendants. | Case No. 6:19-cv-00556<br><br>**PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT** |

Page 1 - PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT

4865-3510-8796v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main ᐧ (503) 778-5299 fax

Following further conferral of the parties, Plaintiffs submit the following Supplemental Witness Statement for State Senator Sara Gelser Blouin.

**8. Name and Title:** State Senator Sara Gelser Blouin, Chair of Senate Human Services Committee.

**a. Time Estimate:** 2.5 hours

**b. Brief Description of Testimony:** Senator Gelser Blouin will testify regarding her experience with the Child Welfare system in Oregon and interactions with persons with lived experience. She will also testify regarding positions taken by ODHS before the Legislature and statements made in the 2023 Public Knowledge LLC Report (the PK Report) that pertain to ODHS and the Legislature.

Senator Gelser Blouin will testify on topics pertaining to budget issues and proposals, resource parent reimbursement, behavioral rehabilitation and mental health services, institutional placement and non-family foster care, employment-related day care, kin and kith and child specific certification practices, independent living SB 155 and related legislation and statutes, abuse investigations, resource home capacity, the Foster Children's Bill of Rights, congregate care, and temporary lodging and temporary lodging prevention.

Oregon State Senator Gelser Blouin has a Bachelor of Arts degree from Earlham College and Master of Arts in Interdisciplinary Studies from Oregon State University. She has been the Chair of the Senate Human Services Committee since 2015.

In connection with her legislative duties, Senator Gelser Blouin interacts on a regular basis with individuals who are involved in the Child Welfare system, including ODHS staff, attorneys, judges, kids, resource families, biological families, adults who were in care, CASAs, community partners and congregate care providers.

Page 2 – PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT
4865-3510-8796v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

Senator Gelser Blouin has requested, read and carefully analyzed thousands upon thousands of pages of public records related to Give Us This Day, out of state placements and the use of unlicensed temporary lodging providers. She has visited (physically and virtually) courts in multiple counties to observe hearings at every step of the juvenile process. She has also reviewed large numbers of records that are otherwise inaccessible because involved kids and adults have provided releases of information.

She has visited congregate care programs across the state and maintains ongoing relationships with many of the kids and youth whom she has met over the years and makes an effort to engage youth in the policymaking process. Senator Gelser Blouin traveled to Iowa, Illinois, Idaho and Michigan to see kids placed out of state by Oregon DHS and the facilities in which they were placed. She has also met with kids and staff of several other programs.

Since 2019, every agenda of the Senate Human Services Committee has made time for "youth voice." This is a chance for current or former foster youth to offer oral or written testimony about anything they want to relate regarding their experience in the child welfare system, resulting in powerful testimony from those with lived experience.

Senator Gelser Blouin has recruited individuals with child welfare experiences, including former providers and current and former foster youth, to work in her office as paid interns and as regular employees.

**c. Supplemental Description of Testimony:**

Senator Gelser Blouin has reviewed the 2023 Public Knowledge LLC Report ("the PK Report").

She will testify about references made in the PK Report to the Oregon Legislature regarding ODHS and her experience dealing with ODHS in Legislative hearings, sessions, and related contexts.

Page 3 – PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT
4865-3510-8796v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

The topics of Senator Gelser Blouin's testimony will pertain to PK's references to Legislative budgeting measures involving ODHS, including fiscal appropriations, General Fund, and other financial support. The topics also relate to ODHS's resource parent reimbursement rates, foster care recruitment and foster home capacity, the agency's use of congregate care, temporary lodging and temporary prevention services, and self-selected settings, its provision of behavioral rehabilitation and mental health services, and the agency's use of the CANS tool. The testimony will also pertain to DHS's use of institutional placement and non-family foster care services and the implementation of the Family First Preservation Services Act (FFPSA), and the interplay between ODHS and ODDS in relation to children with disabilities.

Senator Gelser Blouin will also testify regarding Kin and Kith, and ODHS's use of child-specific certification as a means to place children in the homes of persons unknown to the child. Her testimony will also relate to Dynamic Life and ODHS's reporting on maltreatment, references made in the PK Report to SB 155 and third-party abuse investigations.

**Out-of-State Placements**

The senator will discuss the history of ODHS' use of out-of-state placements and PK's references to the agency's use of such placements. As noted in the 2023 PK Report, ODHS sent children with high needs out-of-state because the agency was unable to meet their unique treatment needs.

The Senator will testify that the agency resisted the reduction of out-of-state placements and did not work expeditiously to return children to Oregon. The ultimate elimination of this practice was not collaborative until the high profile death of a non-Oregon child in one of these facilities and even then was slow until the Senator provided information to ODHS from a whistleblower inside one of the facilities. The use of out-of-state placements is now regulated by statute.

Page 4 – PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT
4865-3510-8796v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

**Senate Bill 155**

In connection with references made in the 2023 PK Report to SB 155 (2019), the Senator will discuss the history of the bill and supply appropriate context.

In summary, the measure was not undertaken in response to the 2016 PK Review. The measure primarily pertained to compliance with federal requirements regarding the conduct of abuse investigations in public schools.

The measure addressed a gap in which cases closed by ODHS at screening were not investigated by LEA. The measure coincided with improved understanding of the obligation of ODHS to investigate all allegations that constitute a report of abuse and conclude that investigation with a disposition related to child abuse which is an administrative finding, whereas law enforcement (LEA) was responsible to investigate conduct that constitutes a crime.

The measure provided for additional positions for ODHS, and through rulemaking, ODHS ultimately assigned the Office of Training, Investigations and Safety (OTIS) to investigate public school-related abuse reports to protect certain employment rights and due process of involved persons. SB 155 did not pertain to an increase in abuse assessments and did not increase the types of abuse that must be reported to the hotline.  Though the Department indicated during hearings that these investigations would be assigned to OTIS, that assignment was not mandated by the legislation.

The Senator is unaware of legislation passed in January 2021 that placed limitations on cases closed by ODHS at screening.  The 2021 session did not begin working on bills until February.

**Abuse investigations in child caring agencies**

The Senator will discuss the history leading to legislative measures that pertain to abuse investigations, including SB 1515 (2016) and SB 243 (2017). The Senator will explain that to

Page 5 – PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT
4865-3510-8796v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

maximize child safety the above measures created a child in care definition that applies to child caring agencies, including ODHS certified foster homes, congregate care and proctor homes, and developmental disability residential facilities. The Senator will discuss her observations and her experiences with children and youth who have been placed in these types of agencies, including congregate care and Dynamic Life. She will explain how the measures expanded prohibitions on the types of abuse occurring in these types of placements, including involuntary seclusion, sexual abuse, use of restraints, willful infliction of pain on the child, etc., and the imposition of licensing and reporting requirements that provide greater transparency.

The Senator will discuss the position taken by ODHS, including most recently, the agency's role in HB 4086 study group. She will discuss her observations of the agency's advocacy to narrow the scope of abuse investigations by eliminating "third party" perpetrators and the consequences to child safety. Allegations of third party abuse are substantiated at a higher rate than abuse by any other category of individuals. The Senator will explain how substantiated abuse reports impact the "third party" perpetrator's ability to foster or apply for work in other child caring agencies.

### Resource parents: Reimbursement

The Senator will discuss references made in the PK Report about the history of ODHS's requested resource parent reimbursement rates. The Senator will discuss ODHS's 2023 proposed rate increase request in relation to United States Department of Agriculture (USDA) estimate of the cost to raise a child. During its presentation to the budget writing committee on February 13, 2023, ODHS briefly referenced increased resource parent rates. ODHS requested the Legislature for just over $17 million in general fund. Ultimately, the Legislature allocated $16,824,055 in general fund.

Page 6 – PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT
4865-3510-8796v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

Subsequently, the Senator received ODHS's original policy package for 2023. The agency's proposal recommended reimbursing resource parents at 100% of the USDA estimated cost to raise a child, or to increase the rate to at least 80% of that cost with a commitment to reach 100% in the 25-27 biennium. The estimated cost to reach 100% was $49,385,468 in general fund with some federal match in addition; 90% was $38,385,522 and 80% was $27,494,670.

The Senator met regularly with ODHS during the 2023 Legislative session, but the original version of the policy option package was not provided to the Legislature during the session. The Senator now understands that the $16,824,055 allocation amounted to roughly half of the USDA's estimate of the cost to raise a child in 2018. ODHS did not seek to further increase resource parent rates in the 2024 short session and the Senator has not observed the agency prioritize advocacy for increased rates for resource families.

**Resource Families: Recruitment Capacity**

Improving resource family recruitment, retention and support was not included on the agency's list of priorities for the 2023-25 biennium.

The Senator will discuss her review of ODHS' monthly Champion recruitment reports and her observations that the number of general resource homes continues to decrease, both in terms of total number of certified resource homes and the percentage of resource homes. The Senator has observed through ODHS official reports that branch offices regularly close more resource homes than they open in a month across all categories, and that the percentage of kids in care in non-family foster homes increased from 15.4% in April 2022 to 18.7% in January of 2024.

The Senator will discuss that the number of general resource homes continues to decrease, both in terms of total number of certified resource homes and the percentage of resource homes. Despite the apparent prioritization of recruitment to have adequate supply of appropriate family resource home placements, both recruitment and retention are inadequate. Based on her review of

Page 7 – PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT
4865-3510-8796v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

the monthly Champion recruitment reports and monthly reports to the Governor, the Senator will explain that she has observed that many branch offices regularly close more resource homes than they open in a month across all categories. The percentage of kids in care in non-family foster homes increased from 15.4% in April 2022 to 18.7% in January of 2024.

The Senator will discuss her communications and contacts with resource parents across the state, some of whom have served for years. These individuals have explained that they are leaving Child Welfare foster care in frustration. They complain, for example, of instances of retaliation, poor treatment, and lack of support, and even inability to receive return phone calls in a timely way.

**Temporary Lodging**

The Senator will discuss her observations and the experience of children who are placed in temporary lodging (also referenced as "hoteling") or who receive temporary lodging prevention services or reside in "self-selected environments."

The Senator will explain that ODHS has taken the position that children and youth in Temporary Lodging and Temporary Lodging Prevention (while they are receiving services from the contracted providers) are not entitled to the rights protected by Oregon's Foster Children's Bill of Rights and the Sibling Bill of Rights or the "abuse in care" definition established by the Legislature in 2016. She will testify that ODHS opposed legislation that would extend these and other important protections to these youth in early 2024.

The Senator will discuss her interactions with Special Master, Marty Beyer, and her review of the Final Report of the Special Master *CASA for Children, et al. v State of Oregon, et al.*, dated February 29, 2024. She will discuss ODHS' continued use of temporary lodging and the agency's request for general fund, recently including approximately $31 million for temporary lodging prevention services. The Senator will discuss the concerns raised regarding oversight of such

Page 8 – PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT
4865-3510-8796v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

placements, contract administration issues, and licensing issues, and the significant expenses in regard to staffing and related expenses, which can range up to $3,000 per day.

**Behavioral Rehabilitation and Mental Health Services**

The Senator will clarify and explain the role played the Oregon Health Authority (OHA) and ODHS in connection with the provision of these services to children in care.

OHA regulates Psychiatric Residential Treatment Facilities (PRTFs) and Outpatient Day Treatment Facilities (ODTF). ODHS Children's Care Licensing Unit is responsible for providing a Child Caring Agency License. ODHS operates a "Treatment Services" division that oversees Behavioral Rehabilitation Services (BRS). This division does not oversee PRTFs, and the providers generally do not directly provide mental health or treatment services.

Many BRS programs are not directly staffed with licensed providers and are not licensed by the OHA as treatment providers. Many are highly structured and restrictive behavioral modification programs. Access to psychiatry or therapy is generally sought in the community and is reimbursed outside the daily rate to the facility. This is also the case for many of the programs identified as "Qualified Residential Treatment Programs" (QTRP) under the Family First Prevention Services Act. The senator will also discuss concerns raised when children and youth are not appropriately assessed prior to being placed in these programs.

QRTP placement is supposed to ensure that youth are only placed in congregate care programs for a limited amount of time to receive treatment services that are tailored to their needs and cannot be provided in the community. The assessments are supposed to be completed by a Qualified Individual (QI) that is not employed by ODHS. These assessments are not being completed by medical providers known to the children and youth. Instead, they are done under a contract with Comagine which relies substantially on the CANS assessment.

Page 9 – PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT
4865-3510-8796v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

Based on the Senator's review of CANS materials and publications and her observation of the experience of specific children, CANS is not designed to assess treatment options for children and youth nor is it intended to be diagnostic. She will explain that in some cases, Comagine was making recommendations without ever meeting the child and simply by reviewing existing materials despite the requirement that the Qualified Individual assess the youth. The Senator will discuss her observations that QRTPs are seen, en bloc, as a "level of care" more associated with supervision level than individually tailored treatment, which prevents children from fully benefitting from the FFSPA congregate care reforms.

The Senator will discuss her interactions with Special Master, Marty Beyer, and review of the Final Report of the Special Master regarding the provision of behavioral rehabilitation and mental health services. The Senator will discuss that ODHS is not consistently facilitating timely delivery of such services to the youth, evidenced in part by the Final Report of the Special Master, which states that "*[t]he lack of trauma treatment for children in foster care in Oregon is unconscionable. Children in foster care wait four or more months to be seen by a therapist, and usually the therapist is a trainee unable to see them for more than a few months.*" The Senator will discuss ODHS' responsibility to provide trauma informed as well as trauma responsive care and her experience with children who do not receive such care and services.

### Institutional Placement/Non-Family Foster Care

The Senator understands that the Family First Prevention Services Act (2018) ("FFPSA") increased access to prevention services to reduce the number of kids that come into care and sought to decrease the use of institutional or congregate care placements for children in foster care. It set strict requirements in an effort to ensure that children were only in congregate care for a short period while an appropriate family foster home was located or for medically necessary treatment offered by a qualified, professionally staffed program. The Senator will discuss her experience in

Page 10 – PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT
4865-3510-8796v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

convening the first multi-branch FFSPA implementation group which led to legislation in 2019 that allowed Oregon to be one of the first states eligible to receive prevention funds.

Since the implementation of FFSPA, the total number of children in care has decreased. While it is true that the number of available residential beds has decreased, the percentage of kids in non-family foster care continues to increase, consistent with ODHS' position that these children are "difficult," "complex," or "unable to be served in a family home." The Senator will discuss her observations that ODHS makes more efforts towards developing institutional placements for children and youth than developing the needed supports to allow children to be successful in family resource homes. She will also discuss her observations regarding how this appears to disproportionately impact children with disabilities.

The Senator will discuss her interactions with the Special Master and explain how the Final Report elaborates on what is needed to create this outcome, as well as the importance of appropriate placement and placement stability.

The Senator will discuss her observations that ODHS regularly advocates for increased rates for congregate care providers and for ODHS staffing. ODHS continues to talk to the Legislature about the need to increase available congregate residential beds through increased rates, recruitment of new congregate care providers, and relaxed licensing, abuse and restraint standards. As discussed above, she will testify that she has observed through ODHS published Champion reports that the number of general resource homes continues to decrease, both in terms of total number of certified resource homes and the percentage of resource homes.

**Children with disabilities**

The Senator will discuss her observations that ODHS Child Welfare (CW) routinely points to the ODHS Developmental Disability Services division (ODDS) to suggest that that division should be responsible for children in care with disabilities in Child Welfare.

Page 11 – PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT
4865-3510-8796v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

The Senator will explain that ODDS only serves the children who experience intellectual or developmental disability and that ODDS has a different charge than CW when it comes to serving children. For example, Oregon eliminated institutions for all children and adults with ID/DD, and ODDS focuses on supporting children with ID/DD to successfully live at home with their families. In the rare cases that is not possible, they do have DD funded foster home and group home placements. 95% of kids receiving ID/DD services live at home with their families. Children and youth in care because of abuse and neglect are included in the 5% of kids with ID/DD who are placed out of home.

The Senator will explain that when a child goes into a voluntary residential placement through ODDS, parents retain custody and rights to their child. Unlike the Child Welfare System, the Department (ODHS/ODDS) does not have custody of children in out of home DD placements. This leads to a very different culture and set of skills necessary for resource parents than what is required in CW, regardless of whether a child has a disability. Also, based on her experience, the senator will explain that DD group and foster homes serve children with ID/DD which makes it difficult to keep siblings together if one child is identified for a DD placement. Children with ID/DD and their nondisabled siblings, as a result, may be separated more than nondisabled children and siblings because of their disabilities.

CW frequently points to children with ID/DD and physical disabilities or medical complexity as among the most difficult to appropriately place. Despite this, the Senator has observed in the Champion strategic plans that only 2 of 16 districts include ID/DD friendly placements in their recruitment and retention plans. Only 1 district has a plan that includes homes prepared to meet the needs of children with medical complexity or physical disabilities. This has an impact on the experience of children leading to 11.4% of kids with DD in child welfare being placed in a group home. 52% are placed in non-relative foster care.

Page 12 – PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT
4865-3510-8796v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

**Child Specific Certification**

The Senator has observed that ODHS is appropriately focused on increasing placement with relatives, kith and kin, and that the agency has made demonstrable progress in that area as well as with reducing the number of children traumatized by removal from their families of origin. However, there is also a substantial increase in the number of youths who are placed in "child specific" homes. These are individuals that fall outside the category of "relatives." The Senator will discuss concerns raised through her observation of experiences of constituent children that vetting of "child specific" resource providers is abbreviated and by nature, done on an emergent basis that can include a stranger to the child.

**Maltreatment in care**

The Senator will explain that each quarter, ODHS releases information about substantiated allegations of abuse in care. The circumstances and facts of these substantiated incidents raise questions about how much care is put into certifying individuals to serve vulnerable Oregon children as the substantiated allegations are often shocking. The reports do not break out how each family was certified but it would be useful to see if there is a meaningful difference in safety between general applicant resource homes and child specific resource homes. The Senator will explain that the federal target is under 9.1 and that in 2023, the Oregon rate for maltreatment in foster care was 16.4. Overall, the rate of abuse of children in care in Oregon is 80% higher than the national target rate.

DATED this 6th day of May, 2024

**DAVIS WRIGHT TREMAINE LLP**

By: *s/ P. Andrew McStay Jr.*
P. Andrew McStay Jr., OSB 033997
andymcstay@dwt.com
William D. Miner, OSB 043636
billminer@dwt.com

Page 13 – PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT
4865-3510-8796v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

560 SW 10th Avenue, Suite 700
Portland, OR 97201
Tel: (503) 241-2300

**A BETTER CHILDHOOD**

Marcia Robinson Lowry (*pro hac vice*)
mlowry@abetterchildhood.org
Anastasia Benedetto (*pro hac vice*)
abenedetto@abetterchildhood.org
Lindsay Gus (*pro hac vice)*
lgus@abetterchildhood.org
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456

**DISABILITY RIGHTS OREGON**

Emily Cooper, OSB 182254
ecooper@droregon.org
Thomas Stenson, OSB 152894
tstenson@droregon.org
511 SW 10th Avenue, Suite 200
Portland, OR 97205
Tel: (503) 243-2081

**RIZZO BOSWORTH ERAUT PC**

Steven Rizzo, OSB 840853
srizzo@rizzopc.com
Mary Skjelset, OSB 075840
mskjelset@rizzopc.com
1300 SW 6th Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819
*Attorneys for Plaintiffs*

Page 14 – PLAINTIFFS' SUPPLEMENTAL WITNESS STATEMENT
4865-3510-8796v.1 0201450-000001

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax