**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
**Vivek A. Kothari, OSB #182089**
VivekKothari@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for Defendants*
*Additional Counsel of Record Listed on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S. by his next friend Paul Aubry; RUTH T. by her next friend Michelle Bartov; BERNARD C. by his next friend Ksen Murry; NAOMI B. by her next friend Kathleen Megill Strek; and NORMAN N. by his next friend Tracy Gregg, individually and on behalf of all others similarly situated,<br><br>                           Plaintiffs,<br><br>    v.<br><br>TINA KOTEK, Governor of Oregon in her official capacity; FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; APRILLE FLINT-GERNER, Director, Child Welfare in her official capacity; and OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>                           Defendants. | Case No. 6:19-cv-00556-AA<br><br>**DEFENDANTS' MOTION TO DISQUALIFY JUDGE ANN L. AIKEN**<br><br>**EXPEDITED CONSIDERATION REQUESTED** |

## LR 7-1 CERTIFICATION

Counsel made a good faith effort to resolve the issues raised in this motion and has been unable to do so.

## INTRODUCTION

Defendants respectfully request that this Court disqualify Judge Aiken because she has prejudged this case. Judge Aiken has already decided that "Oregon has had significant problems in the child welfare system," defendants operate a "pipeline to prison," and defendants "know where the problems are" but are not "trying to do better work on behalf of this system." These statements go to the heart of the parties' dispute at trial. Defendants bring this motion reluctantly but are doing so because Judge Aiken's pre-trial statements show that she is not impartial. Defendants cannot receive a fair hearing in this bench trial.[1]

## MOTION

Pursuant to 28 U.S.C. §§ 144, 455(a), and 455(b)(1), defendants Governor Tina Kotek, Fariborz Pakseresht, Aprille Flint-Gerner, and the Oregon Department of Human Services ("ODHS") ask that the Court issue an Order disqualifying the Honorable Ann L. Aiken from this case. This motion is supported by the Declaration of Fariborz Pakseresht in Support of Defendants' Motion to Disqualify ("Pakseresht Decl.") and the Declaration of Lauren Blaesing in Support of Defendants' Motion to Disqualify ("Blaesing Decl.").

---

[1] Federal case law refers to "recusal" and "disqualification" interchangeably. For the avoidance of doubt, defendants seek both remedies here.

**BACKGROUND**

**I.    Plaintiffs allege that defendants are deliberately indifferent to "problems" in the Oregon foster care system that have been "exhaustively documented."**

This is a certified class action in which plaintiffs allege that ODHS Child Welfare ("Child Welfare") is a "constitutionally inadequate parent" to children in foster care. (Compl. ¶ 1.) Plaintiffs bring federal constitutional and statutory claims on behalf of all children in foster care and three sub-classes (children with disabilities, sexual and gender minorities, and children aged fourteen or older). (*Id.* ¶ 33.)[2] Plaintiffs allege that Child Welfare is "overburdened and underfunded" and that these "problems in the Oregon foster care system have been exhaustively documented for well over a decade." (*Id.* ¶¶ 2-3.) Plaintiffs assert that defendants have been deliberately indifferent to these structural issues within Child Welfare. (*Id.* ¶ 254.) As plaintiffs put it, "After more than a decade of reports, audits, and reviews exhaustively documenting these problems, DHS has failed to adequately redress the worsening conditions for foster children." (*Id.* ¶ 13.) Plaintiffs assert that the children in Oregon's foster care system have "poor outcomes related not only to homelessness, but to pregnancy, incarceration and death." (*Id.* ¶ 250.)

Defendants disagree with plaintiffs' allegations. As defendants intend to prove at trial, ODHS employees, including caseworkers for children in foster care, perform their jobs conscientiously. Children in out-of-home care are provided adequate food, shelter, clothing, and medical care; and children are not routinely placed in physical danger, as plaintiffs allege. (Defs.' Trial Mem. (Dkt. 372) at 2-3.) Oregon Child Welfare is not an indifferent agency; it is in fact a leader in child welfare policy and practice. (*Id.* at 5.) In the last eight years, the number of children in foster care has dropped dramatically; Child Welfare has increased its retention and

---

[2] The Court already dismissed the claims relating to the "aging-out sub-class" of children fourteen or older. (Order re Mot. to Dismiss (Dkt. 215) at 21, 30-31.)

Page 3 –    DEFENDANTS' MOTION TO DISQUALIFY JUDGE ANN L. AIKEN

recruitment of new caseworkers; the Oregon legislature has made significant investments in Child Welfare; and Child Welfare has implemented a number of national best-practice innovations (*e.g.*, a centralized child abuse reporting hotline, focus on family preservation, and a nationally recognized continuous quality improvement program). (*Id.* at 2, 4, 41-43.) Further, defendants intend to present evidence at trial demonstrating that children in Oregon's foster care system do not have worse outcomes than their counterparts in other states.

The Court has not yet reviewed this conflicting evidence. Trial has not started, and no witness has testified. Defendants did not file a motion for summary judgment, only a pleadings-based motion to dismiss. The Court certified this class action two years ago. At class certification, defendants presented evidence of their many efforts and successes, but the Court declined to address that evidence, ruling that defendants' evidence was "a premature challenge to the merits of Plaintiffs' claims." (Order re Pls.' Mot. to Certify (Dkt. 275) at 66.)[3] More recently, with the aid of a different judge in this district, the parties negotiated a settlement term sheet that set all material terms of a settlement agreement. (Pakseresht Decl. ¶ 6.) That sheet was eight single-spaced pages. (*Id.* ¶ 8.) Judge Aiken rejected that settlement structure out of hand shortly after receiving the term sheet, despite acknowledging that she had "barely looked at" the term sheet. (Tr. of 4/19/24 at 18:16-17, attached as Ex. 1 to Blaesing Decl.) Accordingly, the parties did not finalize a settlement agreement and Judge Aiken has not held a fairness hearing under Rule 23(e), which would have included a presentation of evidence. In sum, Judge Aiken has not yet had the opportunity to review defendants' evidence and resolve the merits of plaintiffs' theories and allegations. Instead, as described in greater detail below, Judge

---

[3] Plaintiffs filed their class certification motion in 2019 (Dkt. 64), and thus any evidence that the Court reviewed in conjunction with that motion is several years old now.

Aiken used her previously acquired knowledge and preconceptions to summarily reject the parties' negotiated settlement.

**II.    Judge Aiken's recent statements demonstrate that she agrees with the complaint allegations that there have been "significant problems" at Child Welfare "for a very long time," and defendants are not "trying to do better work on behalf of this system."**

Notwithstanding this procedural posture, in recent weeks, Judge Aiken has made many statements that indicate that she has predetermined opinions regarding plaintiffs' theories and allegations.

On April 12, 2024, in response to an inquiry about moving pre-trial filings to accommodate settlement negotiations, Judge Aiken denied the request and then remarked as follows:

> **And you know there are stories out there -- and, you know, I know them as well as you do -- that things have not been the way they should be.** And it's time for us to say we're going to resolve this, on behalf of the citizens of this State, to make sure that we all understand that this is one of our highest priorities 'cause, otherwise, **having done this work on the criminal side for about, you know, 40 -- 40 years, is we -- it's a pipeline to prison. And it's time to stop the flow with how we handle children.** So that's my answer.

(Blaesing Decl. Ex. 2, Tr. of 4/12/24 at 9:9-17.)

On April 19, 2024, Judge Aiken rejected the parties' negotiated settlement structure and remarked as follow:

> So the thing is that we can look at -- and without arbitrary or concrete goals, but we have to have the array of what's expected, what the forward motion's going to look like, and how that gets evaluated. **This system has needed revisions for a very long time. Anybody who has worked in it knows that.**
> . . . . .
> **The lawsuit was filed because there was a problem, and you're resolving a case because there's -- everyone's acknowledged there has been a problem.** That's just the -- that's just how this

Page 5 –    DEFENDANTS' MOTION TO DISQUALIFY JUDGE ANN L. AIKEN

> got started. Outline what the problem was. I mean, you gave a report to the Legislature, an $800,000 report to Legislature saying, "We're making progress." Go back and start -- where was that – where does that start, and what were people doing?
>
> **I have never, never in this case felt that anybody were trying to do better work on behalf of this system.** I've wished like the dickens that it would happen faster and people would get down to business and put that system in a place where it could serve the community and the kids of this state in foster care and in dependency cases better. So the fact that there has been progress made, that can be outlined in your settlement agreement; but you need to start with a baseline, where have you been and where are you going, so that there's a way to document. **And maybe that's hard for people to say, "Yeah, there was a big problem," but there was. Everybody knows that. Let's just not -- let's move forward."**

(Blaesing Decl. Ex. 1, Tr. of 4/19/24 at 21:2-6, 24:1-21.)

During an April 22, 2024 status conference, Judge Aiken again remarked on the parties' settlement efforts as follows:

> **Every single person at that table should be saying, Oregon has had significant problems in the child welfare system.** What we want to see as an outcome is we meet and exceed, if possible, the expectations of when a child is in the care of the State, what the system needs to look like and how that child is in a position where no more harm is done. So there -- there has to be -- and I'm not going to wait for some selected person down the road to make those decisions. **You all know where the problems are. Your experts know where the problems are. You're going to hire an independent person to move the -- and execute to the goals, not to study them yet again.**

(Blaesing Decl. Ex. 3, Tr. of 4/22/24 at 21:8-19.)

## LEGAL STANDARD

Two complementary federal statutes govern disqualification of a district court judge for bias and prejudice. First, 28 U.S.C. § 144 states:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against

Page 6 –    DEFENDANTS' MOTION TO DISQUALIFY JUDGE ANN L. AIKEN

>him or in favor of any adverse party, such judge shall proceed no
>further therein, but another judge shall be assigned to hear such
>proceeding.

28 U.S.C. § 144. Where the movant files a legally sufficient affidavit under Section 144, "the motion must be referred to another judge for a determination of its merits." *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980).

Second, 28 U.S.C. § 455 specifies additional grounds for disqualification. Section 455(a)'s catch-all provision requires recusal where the judge's "impartiality might reasonably be questioned." Section 455(b) then enumerates specific grounds for disqualification including "[w]here [the judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Section 455 "is self-enforcing on the part of the judge, . . . if the judge sitting on a case is aware of grounds for recusal under section 455, that judge has a duty to recuse himself or herself." *Sibla*, 624 F.2d at 867-68.

Where a movant files a motion under 28 U.S.C. 144, they "get two bites of the apple." *Sibla*, 624 F.2d at 868. A motion under Section 144 also triggers the judge's self-enforcing obligation under Sections 455(a), (b)(1) to review "all the circumstances" and determine if recusal is appropriate. *Id.* If, after considering all the circumstances, the judge declines to grant recusal pursuant to Sections 455(a) & (b)(1), the judge still must determine the legal sufficiency of the affidavit filed pursuant to Section 144. If that affidavit is sufficient on its face, the motion must be referred to another judge for a determination of its merits under Section 144. *Id.*

## ARGUMENT

This Court should enter an order disqualifying Judge Aiken from this case. Judge Aiken's repeated statements confirm that she has "bias," "prejudice," and lack of "impartiality" within the meaning of the federal disqualification statutes. Judge Aiken has stated that "Oregon has had significant problems in the child welfare system," Child Welfare "has needed revisions

for a long time," defendants operate a "pipeline to prison," and defendants "know where the problems are" but are not "trying to do better work on behalf of this system." (*Supra* II.) Because reviewing Judge Aiken's statements would lead a reasonable person to question her impartiality, she should not preside over this case.

I. **Disqualification is required where a judge has prejudged the parties' positions or the intended outcome of the proceedings.**

"Bias" and "prejudice" as used in Sections 144 and 455(b)(1) "connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . , or because it is excessive in degree." *Liteky v. United States*, 510 U.S. 540, 550 (1994). Under Sections 144 and 455, "the test for recusal is 'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 714 (9th Cir. 1990) (quoting *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983); *see also Sibla*, 624 F.2d at 867 ("The test for personal bias or prejudice in section 144 is identical to that in Section 455(b)(1)."). A court should consider all of the objected-to conduct in totality, not in isolation.

As one court has explained, "the cumulative effect of a judge's individual actions, comments and past associations could raise some question about impartiality, even though none (taken alone) would require recusal." *In re Martinez-Catala*, 129 F.3d 213, 221 (1st Cir. 1997). If it is a close case, the balance tips in favor of recusal. *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008). Expressions of impatience, dissatisfaction, annoyance, and even anger at one party are not grounds for disqualification. *Liteky v. United States*, 510 U.S. 540, 555 (1994). But where a judge's comments during proceedings reveal a "high degree of favoritism or antagonism as to make fair judgment impossible," the judge must be disqualified. *Id.*

Judges have been disqualified for making statements that prejudge defendants' culpability or express a preference for the judge's intended outcome for the litigation. In *United States v. Liggins*, the Sixth Circuit disqualified a trial judge who remarked that a criminal defendant "looks like a criminal to me." 76 F.4th 500, 506 (6th Cir. 2023). In *United States v. Townsend*, the Third Circuit disqualified a trial judge in the criminal trial of an alleged draft dodger because the trial judge previously remarked that he had a "duty to pressure conscientious objectors into submitting to induction." 478 F.2d 1072, 1073 (3d Cir. 1973). In *In re Antar*, the Third Circuit disqualified a trial judge from overseeing a civil fraud case where the judge stated in a related action that his "object in this case from day one has always been to get back to the public that which was taken from it as a result of the fraudulent activities of [an alleged co-conspirator] and others." 71 F.3d 97 (3d Cir. 1995); *see also Webbe v. McGhie Land Title Co.*, 549 F.2d 1358 (10th Cir. 1977) (disqualifying a trial judge where the judge granted summary judgment based on oral argument of one party and only reluctantly heard argument from opposing party). In sum, where a trial judge indicates that she has prejudged the facts at issue in the case or that she has a preferred goal in the litigation other than presiding over a fair trial, disqualification is required.

**II.     Judge Aiken has already made up her mind about plaintiffs' claims and defendants' defenses.**

Judge Aiken has prejudged the facts and preferred outcome in this case. In this case, plaintiffs allege that defendants have been deliberately indifferent to significant structural problems at Child Welfare and that a federal monitor should be appointed to oversee the agency. The central theme of plaintiffs' case is that there have been "more than a decade of reports, audits, and reviews exhaustively documenting the[] problems" but defendants have failed to "adequately redress the worsening conditions for foster children." Instead, plaintiffs contend that

Page 9 –     DEFENDANTS' MOTION TO DISQUALIFY JUDGE ANN L. AIKEN

defendants operate a system that results in "poor outcomes" for foster children including higher rates of "incarceration and death." (Compl. ¶¶ 13, 250.)

Judge Aiken has already stated that she agrees with plaintiffs on these core issues. Regarding the existence of problems at Child Welfare, Judge Aiken has stated:

- "Oregon has had significant problems in the child welfare system,"[4]

- "This system has needed revisions for a very long time. Anybody who has worked in it knows that,"[5]

- "The lawsuit was filed because there was a problem, . . . -- everyone's acknowledged there has been a problem. That's just the -- that's just how this got started."[6]

- "[H]aving done this work on the criminal side for about, you know, 40 -- 40 years, is we -- it's a pipeline to prison. And it's time to stop the flow with how we handle children."[7]

- "You know where the problems are. Your experts know where the problems are."[8]

- "[Y]ou know there are stories out there -- and, you know, I know them as well as you do -- that things have not been the way they should be."[9]

---

[4] Blaesing Decl. Ex. 3, Tr. of 4/22/24 at 21:9.

[5] Blaesing Decl. Ex. 1, Tr. of 4/19/24 at 21:5-6.

[6] Blaesing Decl. Ex. 1, Tr. of 4/19/24 at 24:1-4.

[7] Blaesing Decl. Ex. 2. Tr. of 4/12/24 at 9:14-17.

[8] Blaesing Decl. Ex. 3, Tr. of 4/22/24 at 21:16-17.

[9] Blaesing Decl. Ex. 2, Tr. of 4/12/24 at 9:9-11.

- "[M]aybe that's hard for people to say, 'Yeah, there was a big problem,' but there was. Everybody knows that."[10]

Regarding whether Child Welfare is attempting to fix those problems, Judge Aiken has stated

> I have never, never in this case felt that anybody were trying to do better work on behalf of this system. I've wished like the dickens that it would happen faster and people would get down to business and put that system in a place where it could serve the community and the kids of this state in foster care and in dependency cases better.

(Blaesing Decl. Ex. 1, Tr. of 4/19/24 at 24:8-15.)

No reasonable person reviewing these statements could conclude that Judge Aiken can fairly assess whether plaintiffs' complaint allegations are true. At trial, defendants' fact witnesses will testify that Oregon Child Welfare is not an agency riddled with problems but that the agency has, in fact: increased recruitment of caseworkers; adopted appropriate caseload ratios; improved training and recruitment of resource (foster) homes; ended out-of-state placements; decreased the number of children entering foster care; increased the emphasis on culturally-appropriate placements; implemented a new child abuse reporting hotline; sought and received additional funding from the state legislature for numerous programs and initiatives; and accessed new federal dollars for evidence-based prevention services. (Defs.' Lay Witness Statements - Aprille Flint-Gerner (Dkt. 386) at 68, 74, 75, 77, 83, 84.) Defendants' experts intend to testify that a court monitor and injunction would stymie these efforts by diverting resources towards litigation and compliance, and lock the state into rigid metrics that do more harm than good. (*See e.g.*, Defs.' Expert Witness Statements – Jim Dimas (Dkt. 387) at 1.)

---

[10] Blaesing Decl. Ex. 1, Tr. of 4/19/24 at 24:19-20.

But Judge Aiken has told the parties she has already made up her mind. Worse still, Judge Aiken's opinions are not based on any evidence adduced in this case. As her own statements confirm she has prejudged this case based on personal beliefs and preconceptions gleaned from unidentified "stories out there" and "40 years" of experience as a judge and attorney "on the criminal side." (Blaesing Decl. Ex. 2, Tr. of 4/12/24 at 9:9-17.)

To be sure, this is a class action and in a Rule 23(e) fairness hearing, Judge Aiken would have had the occasion to review evidence and address the fairness of the parties' proposed settlement. But Judge Aiken did not hold a fairness hearing. She rejected the parties' proposed settlement out of hand, interjected different settlement terms she wanted to see in a future proposal, and prejudged the merits of the case. (Blaesing Decl. Ex. 1, Tr. of 4/19/24 at 17:18-19:25.) This was improper. Rule 23(e) required Judge Aiken to hold a fairness hearing when considering whether to approve the settlement. In reviewing a class action settlement, a district court must afford "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). The district court cannot delete, modify or substitute certain provisions; the settlement must stand or fall in its entirety. *Id.* at 1026 (citations omitted). Regardless, when reviewing a proposed class settlement, a district court must *not* "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Officers for Just. v. Civil Serv. Comm'n of City & Cnty. of San Fransisco*, 688 F.2d 615, 625 (9th Cir. 1982). The appearance of impartiality is especially important where, as here, a court rejects the proposed settlement structure and proceeds with a bench trial. *See Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 166 (3d Cir. 1993) ("When the judge is the actual trier of fact, the need to preserve the appearance of impartiality is especially pronounced.").

No reasonable person would believe that Judge Aiken will now keep an open mind as Child Welfare's witnesses describe their daily efforts to keep children safe.  No reasonable person would believe that Judge Aiken will now keep an open mind as defendants' experts describe the potential downsides of federal monitors and rigid goals.  Because Judge Aiken has prejudged the facts and outcome of this trial, she cannot preside over this case.

## CONCLUSION

This Court should grant this motion and disqualify Judge Ann L. Aiken from presiding over this case.

DATED: May 6, 2024.                MARKOWITZ HERBOLD PC

*s/ David B. Markowitz*
David B. Markowitz, OSB #742046
DavidMarkowitz@MarkowitzHerbold.com
Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Lauren F. Blaesing, OSB #113305
LaurenBlaesing@MarkowitzHerbold.com
Vivek A. Kothari, OSB #182089
VivekKothari@MarkowitzHerbold.com
*Special Assistant Attorneys General for Defendants*

Adele J. Ridenour, OSB #061556
AdeleRidenour@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
David A. Fauria, OSB #170973
DavidFauria@MarkowitzHerbold.com
Kelsie G. Crippen, OSB #193454
KelsieCrippen@MarkowitzHerbold.com
*Of Attorneys for Defendants*

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us
Sheila H. Potter, OSB #993485

sheila.potter@doj.state.or.us
*Of Attorneys for Defendants*

2136920

**Page 14 –    DEFENDANTS' MOTION TO DISQUALIFY JUDGE ANN L. AIKEN**