**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
**Vivek A. Kothari, OSB #182089**
VivekKothari@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for Defendants*
*Additional Counsel of Record Listed on Signature Page*


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S. by his next friend Paul Aubry; RUTH T. by her next friend Michelle Bartov; BERNARD C. by his next friend Ksen Murry; NAOMI B. by her next friend Kathleen Megill Strek; and NORMAN N. by his next friend Tracy Gregg, individually and on behalf of all others similarly situated,<br><br>                        Plaintiffs,<br><br>    v.<br><br>TINA KOTEK, Governor of Oregon in her official capacity; FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; APRILLE FLINT-GERNER, Director, Child Welfare in her official capacity; and OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>                        Defendants. | Case No. 6:19-cv-00556-AA<br><br><br>**DEFENDANTS' OPPOSITION TO SENATOR GELSER BLOUIN'S MOTION TO QUASH SUBPOENA** |

**DEFENDANTS' OPPOSITION TO SENATOR GELSER BLOUIN'S
MOTION TO QUASH SUBPOENA**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

ARGUMENT ................................................................................................................. 4

    I.    Defendants' subpoena to the Senator is timely because defendants could not obtain the requested testimony earlier. ...................................................................................... 4

    II.    No relevant privilege bars the production of documents pursuant to the subpoena. .......... 6

        A.    Federal privilege law governs this subpoena, not the state laws cited in the Motion..... 6

        B.    The Senator waived any federal legislative privilege by voluntarily appearing in this case. 6

        C.    Defendants' subpoena seeks only Senator Gelser's personal documents, not any public records, and thus is outside the scope of the state and federal privileges. ............................ 7

        D.    The Senator does not have an informer's privilege in her personal communications. ... 9

        E.    The Senator does not have standing to object to the production of children's case files, and regardless the Court's protective order already addresses this issue. .......................... 10

        F.    The Senator does not have a First Amendment right to protect her conversations with journalists. ......................................................................................................... 11

    III.    The scope of defendants' subpoena is proper and reasonable. ........................................ 12

        A.    The documents that defendants seek are relevant to the Senator's testimony. ............. 12

        B.    The subpoena is proportional to the needs of the case. .................................................. 12

        C.    The date range of responsive records in the subpoena is reasonable. ........................... 14

        D.    Alternatively, the Court should narrow the scope of the subpoena to reflect the compromise that defendants offered in conferrals. ............................................................. 15

    IV.    The Senator's assertions that defendants are attempting to intimidate and retaliate against her are baseless. ............................................................................................................ 16

    V.    Enforcement of the subpoena is consistent with the policy in favor of governmental transparency. ................................................................................................................... 17

    VI.    The Court should deny the Senator's request for attorney fees. ................................... 18

    VII.    The Court should deny the Senator's requests for alternative forms of relief. ............ 19

    VIII.    Finally, if the Court is inclined to grant the Senator's alternative Motion for more time to respond, defendants ask that their opportunity to cross-examine her remain open until such time as her responsive records have been produced. ............................................................. 20

    CONCLUSION ..................................................................................................... 21

      **DEFENDANTS' OPPOSITION TO SENATOR GELSER BLOUIN'S MOTION TO QUASH SUBPOENA**

# TABLE OF AUTHORITIES

Page(s)

Cases

*Behler v. Hanlon*,
  199 F.R.D. 553 (D. Md. 2001) ................................................................... 15

*Bialostosky v. Cummings*,
  319 Or. App. 352 (2022) .......................................................................... 7, 8

*Brown v. Gatti*,
  195 Or. App. 695 (2004) ............................................................................ 12

*Chao v. Westside Drywall, Inc.*,
  254 F.R.D. 651 (D. Or. 2009) ..................................................................... 9

*Hemstreet v. Duncan*,
  No. CV-07-732-ST, 2007 WL 4287602 (D. Or. Dec. 4, 2007) ................... 6

*Hoffman v. Cnty. of L.A.*,
  No. CV 15-03724-FMO (ASx), 2016 WL 4698939 (C.D. Cal. Jan. 5, 2016) ........................ 17

*In re Madden*,
  151 F.3d 125 (3d Cir. 1998) ........................................................................ 11

*In re REMEC, Inc. Securities Litigation*,
  No. 04cv1948 JLS (AJB), 2008 WL 2282647 (S.D. Cal. May 30, 2008) ............................... 10

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ..................................................................... 9

*In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*,
  439 F.3d 740 (D.C. Cir. 2006) ..................................................................... 8

*Lane Transit Dist. v. Lane County*,
  146 Or. App. 109 (1997) ........................................................................... 8, 9

*Lee v. City of Los Angeles*,
  908 F.3d 1175 (9th Cir. 2018) ..................................................................... 7

*Nelson v. Aiosa*,
  616 Fed. App'x 369 (9th Cir. 2015) ............................................................ 18

*New York v. Cedar Park Concrete Corp.*,
  130 F.R.D. 16 (S.D.N.Y. 1990) ................................................................... 9

*Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*,
  No. 3:12CV220 (WWE), 2013 WL 5274355 (D. Conn. Sept. 18, 2013) ................................. 5

*Santella v. Grizzly Indus., Inc.*,
  286 F.R.D. 478 (D. Or. 2012) ..................................................................... 6

*Shoen v. Shoen*,
  5 F.3d 1289 (9th Cir.1993) ......................................................................... 11

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*,
  305 F.R.D. 630 (D. Or. 2015) ..................................................................... 12

*Surgery Ctr. at 900 N. Mich. Ave., LLC v. Am. Physicians Assurance Corp., Inc.*,
  317 F.R.D. 620 (N.D. Ill. 2016) ................................................................. 17

*Tornay v. United States*,
  840 F.2d 1424 (9th Cir. 1988) ..................................................................... 6

*United States v. Bryan*,
    339 U.S. 323 (1950), ........................................................................... 11
*United States v. Nixon*,
    418 U.S. 683 (1974) ............................................................................ 11
*V5 Techs. v. Switch, Ltd.*,
    334 F.R.D. 297 (D. Nev. 2019) ........................................................... 18
*Wright v. F.B.I.*,
    241 Fed. App'x 367 (9th Cir. 2007) .................................................... 11

Statutes

Or. Const. art. I, § 10 ............................................................................... 18
Or. Const. art. IV, § 14 ............................................................................. 18
ORS 44.510 to 44.540 ............................................................................... 12
ORS 192.314 ............................................................................................... 8
ORS 192.620 ............................................................................................. 17
ORS 419B.035 ........................................................................................... 10
ORS 419B.035(1) ...................................................................................... 10

Rules

FRE 501 ....................................................................................................... 6
Fed. R. Civ. P. 26(b)(1) ....................................................................... 12, 13
Federal Rules of Civil Procedure Rule 45(c)(3) ...................................... 10
OEC 509 ................................................................................................... 3, 7
OEC 510 ..................................................................................................... 9
ORS 40.280 ................................................................................................. 6
Rule 26(b)(2)(C)(iii) ................................................................................. 12
Rule 45 ...................................................................................................... 13

## INTRODUCTION

This Court should deny Senator Gelser Blouin's Motion to Quash.  At the outset of this case, plaintiffs objected to defendants' requests for discovery regarding communications with legislators because, in plaintiffs' view, such communications were irrelevant.  Three weeks ago plaintiffs changed tacks and submitted a witness statement identifying Senator Gelser Blouin as a trial witness in this case.  That sprawling statement, together with its recent supplement, states that Senator Gelser Blouin ("the Senator") has had contacts with unidentified individuals and wants to provide testimony regarding broad topics related to Child Welfare.  The witness statement is often not limited by dates, events, or relevant individuals and instead states that the Senator intends to recount unidentified "observation" and "experiences" on issues related to this case and that she wants to report unidentified "concerns raised" regarding Child Welfare's practices.  Defendants served their subpoena days after learning that the Senator would testify in this case.  After the Senator raised burden concerns, defendants agreed to limit their scope of the subpoena.  Instead of offering her own counter-proposal, the Senator filed this Motion.

The Court should deny the Senator's Motion.  The Senator is voluntarily testifying and plaintiffs have already represented to this Court that she has waived her legislative privilege in agreeing to so testify.  Accordingly, the Senator has waived any official privilege that would have shielded her communications.  Although, the scope of the subpoena is dictated by the breadth of the Senator's proposed testimony, defendants have already proposed limitations that would relieve any burden.  The Senator has failed to confer in good faith regarding defendants' narrowed subpoena, as well as several of the arguments she raised in her Motion to Quash. Finally, to the extent this Court is inclined to grant the Senator's alternative request for further time to respond to defendants' subpoena duces tecum, defendants request that their opportunity

to cross-examine the Senator at trial remain open until such time as the Senator provides responsive records to defendants' validly issued document requests.

## BACKGROUND

On April 19, 2024, plaintiffs revealed for the first time that they intended to call the Senator as a witness at trial in this case. Before then, plaintiffs had consistently maintained there would be no evidence from third parties such as the Senator, because third-party evidence was—in plaintiffs' then-existing view—irrelevant. (*See* Declaration of Lauren F. Blaesing ("Blaesing Decl.") Ex. 1 at 3, 4, 9, 12 (asserting that communications with third parties were irrelevant); Blaesing Decl. Ex. 2 ("9/23/2019 Joint Letter") at 3 (asserting that correspondence between the Next Friends and legislators "are irrelevant").)

Six days after learning of plaintiffs' change of mind, defendants issued a subpoena duces tecum to Sara Gelser Blouin in her *personal* capacity. That subpoena specifically excludes from its scope documents "related to [the Senator's] duties in conducting the public's business as an Oregon state senator." (Declaration of Adele J. Ridenour ("Ridenour Decl.") Ex. 1 at 7.) Instead, the subpoena seeks a variety of communications and documents that the Senator in her personal capacity may have exchanged with the named plaintiffs, their counsel, Next Friends, media, and others relevant to this case and Oregon Child Welfare. (*See, e.g.*, *id.*, Ex. 1 at 8-9.) The subpoena was served on the Senator at her personal residence on April 25, 2024, and commanded a response by May 10, 2024 at 9:00 a.m., which is the maximum amount of time defendants could allow before the Senator was expected to testify. (*See* Dkt. 468 at 1,7.)

On May 4, 2024, counsel for the Senator sent defendants a letter requesting conferral on various objections to defendants' subpoena and counsel conferred via telephone.[1] (Ridenour

---

[1] The arguments and objections as cited in counsel's conferral letter to defendants' subpoena included that the requested records and subpoena: (a) fall within the Public Officer's

Decl. Ex. 2.)  In response, counsel conferred via telephone.  (Ridenour Decl. at ¶¶ 3-4.)  In this

conferral, defendants confirmed that the issued subpoena was only seeking documents and

communications which the Senator made or received in her personal capacity.[2]  *Id.*  Defendants

further agreed to strike several of the requested records (Requests 6-9 and 12-16) and to narrow

the scope and time period for various other requests.  (*Id.*, Ex. 3.)  To assuage the Senator's

concerns related to the privacy of named plaintiffs or other children with whom she may have

personally interacted over the years, defendants also sent her counsel a copy of the Second

Amended Protective Order noting the protocols and procedures for protecting confidential and

sensitive information as defined in that order.  (*Id.*)  In exchange for narrowing the scope and

breadth of their requests, defendants asked that the Senator return responsive documents by May

10, as originally requested, because plaintiffs had stated they would call the Senator as one of

their first witnesses at trial, starting on May 13.  (*Id.*, Ex. 3)  Defendants did not receive any

further offers to confer and instead were told the Senator would be filing a Motion to Quash the

subpoena.  (Ridenour Decl. at ¶ 6, Ex. 4.)

The Senator filed her Motion to Quash Defendants' Subpoena Duces Tecum yesterday.

The Senator's Motion now asserts several new objections and arguments which were not part of

counsel's prior conferral.  (Ridenour Decl. Ex.4)  For the reasons that follow, this Court should

---

Privilege set forth in OEC 509; (b) are redundant to a recent public records request as made by
defendants; (c) are irrelevant and inadmissible impeachment evidence of a non-party witness; (d)
relate to cases and people who have no apparent connection to the present case; (e) include an
overly broad responsive time period; (f) are too expensive to provide with only 13 calendar days
for a response; (g) carry the unlawful purpose of circumventing the Court's discovery scheduling
orders and is being used to intimidate and harass the Senator or otherwise deter her from
testifying or taking legislative positions adverse to defendants; (h) seeks records outside of the
Senator's personal possession; (i) seeks records protected by the First Amendment; and (j)
violates the Senator's personal privacy and that of child victims.  (*See*, Decl. of Ridenour Ex. 3.)

[2] Including those records the Senator's legislative staff sent out on her behalf but as a
personal communication on behalf of the Senator.

deny the Senator's Motion to Quash and order that the requested discovery be immediately produce.  In the alternative, and to the extent the Court is inclined to give the Senator additional time to respond to defendants' subpoena, defendants request that their opportunity to cross-examine the Senator at trial remain open until such time as responsive records are produced.

## ARGUMENT

**I.    Defendants' subpoena to the Senator is timely because defendants could not obtain the requested testimony earlier.**

Defendants' subpoena to the Senator was necessary because until the eve of trial, plaintiffs have avoided discovery from third parties.  Defendants first learned that the Senator would be a witness in this case and that plaintiffs intend for her to be one of the first witnesses to testify on April 19, 2024.  Prior to that date, plaintiffs had consistently maintained that evidence from third parties such as the Senator was irrelevant.  (9/23/2019 Joint Letter at 3 ("Defendants have indicated that they are seeking any correspondence that may exist in terms of contact with the press and legislators.  Any such documents and communications are irrelevant . . . and don't appear reasonably calculated to lead to the discovery of admissible evidence.").  Further, as discussed in greater detail below, state legislators' legislative communications are privileged, and the Senator did not waive her privilege until April 19, 2024, when she voluntarily agreed to testify at trial.  Thus, defendants likely could not have subpoenaed her personal email and phone for communications related to child welfare issues until she waived her legislative privilege three weeks ago.  On these facts, defendants did not delay in issuing their subpoena, serving the senator six calendar days after learning that she would be a witness.

The Senator's suggestion that defendants should have anticipated her testimony in this case—notwithstanding plaintiffs' prior position—is not tenable.  While the Senator is a prominent legislative voice on the issue of children care, the mere fact that a legislator is an

advocate does not provide notice that the legislator will be a party's witness in constitutional litigation.  That is even more the case here, where plaintiffs identified the Senator as a third-party witness after four years of repeatedly insisting that third-party witnesses would not be offering evidence relevant to this case, and less than one month before the scheduled trial date.  Under these circumstances, defendants are entitled to serve their subpoena for records in order to defend themselves.  *See Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 3:12CV220 (WWE), 2013 WL 5274355, at *1 (D. Conn. Sept. 18, 2013) (permitting service of subpoena on late discovered expert where disclosure was not harmless and the defendants did not have the benefit of information needed to defend themselves).  Indeed, despite her legislative advocacy, even the Senator was surprised that she would be a witness in this case.  (*See* Gelser Blouin Decl. (Dkt. 468) ¶ 3 ("I am not a party to this case, and I did not ask to be included as a witness. Plaintiffs' counsel named me as a fact witness for the upcoming trial[.]").  It is unfair gamesmanship to both prevent defendants from accessing the relevant discovery to cross-examine and probe the testimony of a witness plaintiffs clearly intended to call all along.

Finally, the Senator's argument that defendants are attempting to circumvent the Court's discovery orders is incorrect.  Discovery in this case has continued to the eve of trial.  Plaintiffs deposed a witness in this case on April 29, 2024, four days after service of defendants' subpoena. Furthermore, in the past few weeks defendants have made 12 separate productions to plaintiffs, totaling over 11,000 pages, and since April 25, 2024 alone, defendants have made four productions, totaling 1,312 pages.  As discovery continues to be ongoing, defendants' requests are appropriate.

## II.    No relevant privilege bars the production of documents pursuant to the subpoena.

### A.    Federal privilege law governs this subpoena, not the state laws cited in the Motion.

As a threshold matter, the Senator incorrectly argues that state privilege law applies to this subpoena.  FRE 501 provides that the federal privilege law applies to claims in federal court except in civil litigation regarding "a claim or defense for which state law supplies the rule of decision."  Here, plaintiffs do not assert any state-law claims.  Thus federal privilege law applies. *Hemstreet v. Duncan*, No. CV-07-732-ST, 2007 WL 4287602, at *1 (D. Or. Dec. 4, 2007) (state privilege law did not apply in the case asserting only a federal cause of action).  As the responding party, the Senator has the burden of identifying and establishing the relevant privileges which apply to defendants' requests, and her failure to do so is reason alone for rejecting her privilege arguments.  *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988) ("The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question.")

### B.    The Senator waived any federal legislative privilege by voluntarily appearing in this case.

Regardless, the Senator has waived any federal legislative privilege that may have attached to her communications.  Federal law recognizes a qualified legislative privilege in state legislative communications.  Federal law also recognizes that the holder of a privilege can waive the privilege by testifying about the subject of otherwise privileged communications.  *Santella v. Grizzly Indus., Inc.*, 286 F.R.D. 478, 483 (D. Or. 2012) (noting that voluntary disclosure of privileged information waives the privilege).[3]  Here, the Senator intends to testify broadly about

---

[3] Although inapposite, state law would compel the same result.  *See* ORS 40.280 (providing that the privilege is waived if a person who holds the privilege "voluntarily discloses or consents to disclosure of any significant part of the matter or communication").

her communications with "kids," facility "staff," and other individuals "involved in the Child Welfare system." She also intends to testify regarding various site visits and other events that she purportedly witnessed. Accordingly, by agreeing to testify in this case, she has waived any privilege that may have attached to her communications regarding these events, individuals, and "the Child Welfare system" generally. Indeed, in arguing for the admissibility of the Senator's testimony, plaintiffs have already represented to this Court the Senator's decision to voluntarily testify constitutes "a 'knowing and voluntary waiver' of the legislative privilege." (Dkt. 435 at 12.)

> **C.    Defendants' subpoena seeks only Senator Gelser's personal documents, not any public records, and thus is outside the scope of the state and federal privileges.**

Notwithstanding the above, defendants' subpoena does not implicate the Senator's federal legislative privilege or any state-law analogue. The subpoena seeks documents that the Senator keeps or maintains in her personal capacity, *i.e.*, documents that are not "related to [the Senator's] duties in conducting the public's business as an Oregon state senator." The Senator's personal documents are outside the scope of federal legislative privilege. *Lee v. City of Los Angeles*, 908 F.3d 1175, 1181 (9th Cir. 2018) (stating that legislative privilege applies to communications regarding "legislative acts, motivations, or deliberations").

Similarly, the Senator's personal documents are outside the scope of the public records privilege found in OEC 509 and 510. *See* ORS 40.270 (privilege applies to "public records determined to be exempt from disclosure"). Oregon's public records law does not cover Oregon public officials when they are acting in their personal capacities. *See* Or. Dep't of Justice, Attorney General's Public Records and Meetings Manual 8-9 (2019), https://www.doj.state.or.us/wp-content/uploads/2019/07/public_records_and_meetings_manual.pdf ("[D]ocuments in possession

Page 7 –    DEFENDANTS' OPPOSITION TO SENATOR GELSER BLOUIN'S MOTION TO QUASH SUBPOENA

of a public officer or employee in a personal capacity are not public records."); *contra Bialostosky v. Cummings*, 319 Or. App. 352, 367 (2022) (city councilor's records "serving in her function as legislator of the city" were public records).

Defendants issued a distinct public records request seeking the Senator's legislative records. Defendants took this bifurcated approach because defendants do not know what communications related to the child welfare system the Senator considers to be legislative in nature and thus official public records and conversely those which she considers to relate to her personal interest on the topic of child welfare separate and apart from the Senator's legislative duties. As her Motion explains the Senator is a "part-time citizen legislator" but "works year-round serving her constituents" and is a "champion of children's rights." To the extent Senator Gelser maintains personal documents (*e.g.*, personal emails) that pertain to the issues in this case, defendants are entitled to those documents, and they would not necessarily be captured by the Legislative Counsel's Office when responding to a public records request.

And even if the subpoena reached the Senator in her public capacity, it would not provide any basis to quash it. Both Oregon and federal law recognizes that a public body can be subject to both a public records request and other judicial processes simultaneously. *See In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 753-54 (D.C. Cir. 2006) (noting that the Freedom of Information Act and its exemptions did not alter a federal agency's "duty to comply with lawful subpoenas"); ORS 192.314 (recognizing that every person has the right to inspect public records, but requiring a person who is a civil litigant against a public body to give notice to the public body's attorney when making a public records request); *Lane Transit Dist. v. Lane County*, 146 Or. App. 109, 123 (1997), *rev'd on* other *grounds*, 327 Or. 161 (1998) (rejecting notion that litigation requests to a public body were subject to state

public records law).  Thus this Court should reject the Senator's effort to rely on Oregon's public records law to quash defendants' subpoena.

>   **D.**    **The Senator does not have an informer's privilege in her personal communications.**

The Court should likewise reject the Senator's suggestion that the informer's privilege applies to her personal communications.[4]  Although federal law recognizes an informer's privilege, the privilege only permits the government to "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Chao v. Westside Drywall, Inc.*, 254 F.R.D. 651, 655 (D. Or. 2009).  The Senator is not a law enforcement officer charged with investigating violations of law.  *See In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (describing the informer privilege as one of a series of "executive privileges").  Furthermore, the privilege protects only identity, not information.  *See New York v. Cedar Park Concrete Corp.*, 130 F.R.D. 16, 21 (S.D.N.Y. 1990) (informer's privilege does not protect the content of the communication unless the content would tend to reveal identity).  Nevertheless, even if a federal informer privilege applies to state legislators, because it is a government privilege and therefore cannot apply to a legislator in their personal (*i.e.*, non-government) capacity.  As defendants' subpoena was issued to the Senator in her personal capacity, informer privilege does not apply.

---

[4] Again, the Senator cites the wrong body of law.  The Senator cites the state informer privilege identified in OEC 510, not the federal common-law privilege.  This is reason alone for rejecting her argument.

**E.     The Senator does not have standing to object to the production of children's case files, and regardless the Court's protective order already addresses this issue.**

The Senator also challenges defendants' subpoena as calling for the production of private information of third parties, including information contained in ODHS case files covered by ORS 419B.035(1).  This argument fails for three reasons.  First, the Senator does not have standing to protect the privacy interest of others.  *See In re REMEC, Inc. Securities Litigation*, No. 04cv1948 JLS (AJB), 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008) ("As a general proposition, a party lacks standing under Federal Rules of Civil Procedure Rule 45(c)(3) to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena.").  This is especially true here where the subpoena seeks her communications with plaintiffs and the Next Friends, and they have declined to move to quash the subpoena by asserting those interests.  Second, the Senator has already stated that she intends to testify about the "lived experiences" of the children she has interacted with.  The Senator cannot simultaneously assert that her communications with others are privileged even as she testifies about those same communications.  Third, the Court has entered a protective order that controls who can access the documents in this litigation and that protective order covers the exchange of confidential information relating to children in the care and custody of ODHS Child Welfare.  Indeed, 105 child case files have already been exchanged pursuant to the protective order.  The state statute that the Senator cites for her contrary view governs "public inspection"—not confidential disclosures pursuant to a protective order.  *See* ORS 419B.035.

**F.    The Senator does not have a First Amendment right to protect her conversations with journalists.**

Journalists have a qualified privilege that protects the media from revealing confidential sources.  *Wright v. F.B.I.,* 241 Fed. App'x 367, 368 (9th Cir. 2007) (recognizing a qualified privilege for journalists against compelled disclosure of information gathered in the course of their work; "[W]hen facts acquired by a journalist in the course of gathering the news become the target of discovery, a qualified privilege against compelled disclosure comes into play," *relying on Shoen v. Shoen,* 5 F.3d 1289, 1292 (9th Cir.1993).)

But persons who are not journalists or reporters are not entitled to invoke the reporter's privilege.  *In re Madden*, 151 F.3d 125, 128-30 (3d Cir. 1998) (refusing to extend reporter's privilege to information obtained by non-party witness who was a sports commentator, and not a professional reporter or journalist; the reporter's privilege applies "only to legitimate members of the press.")  As recognized in *Madden*, testimonial exclusionary rules and privileges "are not favored."  151 F.3d at 128.  Indeed, the Supreme Court has "not shown enthusiasm for the creation of constitutional privileges because these privileges contravene a fundamental principle of our jurisprudence that the public has a right to every man's evidence."  *Id., quoting United States v. Bryan*, 339 U.S. 323, 331 (1950).  Such privileges should not be "lightly created or expansively construed, for they are in derogation of the search for truth."  *Madden*, 151 F.3d at 128, *quoting United States v. Nixon*, 418 U.S. 683, 710 (1974).  *Cf. Shoen*, 5 F.3d at 1293 (extending reporter's privilege to investigative author of a non-fiction book).

The Senator is a politician.  She is not a reporter or journalist, so any First Amendment right afforded to those professionals does not apply.  Her communications with journalists are not protected by the First Amendment.

**Page 11 –    DEFENDANTS' OPPOSITION TO SENATOR GELSER BLOUIN'S MOTION TO QUASH SUBPOENA**

For similar reasons, Oregon's Media Shield Law, ORS 44.510 to 44.540, does not apply here.  With the exception of certain defamation claims, the purpose of the Media Shield law "is to provide a shield that *media personnel* can use to avoid having to disclose sources and unpublished notes."  *Brown v. Gatti*, 195 Or. App. 695, 713 (2004), *aff'd in part, rev'd in part on other ground*s, 341 Or. 452 (2006) (emphasis added).  The Senator's communications with reporters on the subject of this litigation that were made in her personal capacity are fair game.  No privilege applies, and the Court should deny her Motion to Quash the Subpoena on any such grounds.

**III.    The scope of defendants' subpoena is proper and reasonable.**

   **A.    The documents that defendants seek are relevant to the Senator's testimony.**

Defendants have previously explained why the documents sought in their subpoena are relevant to this matter.  (4/30/2024 ODHS's Resp. to Pls.' Mot. to Quash (Dkt. 442) at 6-8.)  Each of the categories of documents sought by defendants directly tracks those topics.  (*Id.*)  The Senator's own witness statement conclusively establishes defendants' need for each category of documents.[5]  In that regard, the documents requested are relevant and should be produced.

   **B.    The subpoena is proportional to the needs of the case.**

The Senator incorrectly objects that the scope of the documents is not proportionate to the needs of the case.  Courts assess undue burden imposed on a third-party subpoena under Fed. R. Civ. P. 26(b)(1)'s proportionality standard.  *See St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 637 (D. Or. 2015) ("Because the 'rule of proportionality' concerns the scope of discovery generally, *see* Rule 26(b)(2)(C)(iii), it applies both to Rule 34 requests to parties and to

---

[5] To the extent that the Court has limited the Senator's testimony—as well as some of the evidence that plaintiffs may offer since the Senator submitted her initial witness statement—defendants agree that they no longer have a need for those records.

Rule 45 subpoenas to non-parties.").  This case is important to the future of Oregon's children and families and defendants have no other way of obtaining the sought-after information.  *See* Rule 26(b)(1) (recognizing that the importance of the issues at stake and the relative access to the information are relevant considerations).

As defendants previously noted, only the Senator's personal communications are at issue here.  (4/30/2024 ODHS's Resp. to Pls.' Mot. to Quash, (Dkt. 442) at 8.)  Defendants' subpoena is narrowly focused, seeking only the Senator's non-official communications with certain identified third parties.  The vast majority of her communications with these third parties would presumably have been in her capacity as an Oregon state senator, but those communications are outside the scope of this subpoena.  (*Id.*)  Furthermore, defendants offered to narrow the subpoena significantly during conferral, even before learning of the difficulties that the Senator may face in identifying her private communications due to intermixing of personal and official records on her cell phones.  The Senator rejected defendants' narrowed subpoena, yet offers no indication of the burden to her in complying with such narrowed subpoena.

Further, this Court has previously permitted plaintiffs to take broad discovery from third parties.  For example, on February 6, 2020, plaintiffs' counsel issued a subpoena to Alvarez and Marsal Holdings, LLC ("A&M") a consultant hired by the governor's office in 2019.  The subpoena contained a single broad request for documents and communications between over 16 different entities and individuals.  (2/6/2020 Subpoena Duces Tecum re A&M, Blaesing Decl. Ex. 3 at 2).  A&M produced over 100,000 pages of documents in response to the subpoena for work it performed for the state between April and December 2019.  Despite this, plaintiffs' counsel routinely dismissed A&M's production as inadequate.  (7/14/2020 Post Letter, Blaesing Decl. Ex. 4 at 1-2; 12/16/2020 Post Letter, Blaesing Decl. Ex. 5 at 1).

Similarly, on January 14, 2021, plaintiffs' counsel issued a subpoena to Casey Family Programs ("Casey"), a consultant that routinely worked with ODHS. The subpoena contained a single broad request for documents and communications between over 16 different entities and individuals. (1/14/2021 Subpoena Duces Tecum re Casey, Blaesing Decl. Ex. 6 at 2). Casey produced approximately 21,000 pages of documents in response to the subpoena for work it performed for the state between January 1, 2018 and July 1, 2020. (7/20/2020 Post Letter, Blaesing Decl. Ex. 7 at 1-2).

Moreover, as ODHS has pointed out, plaintiffs have insisted about discovery on issues that have been dismissed from the case, (7/25/2022 Joint Letter to the Court, Blaesing Decl. Ex. 8 at 4; 1/18/2023 Joint Letter to the Court, Blaesing Decl. Ex. 9; 9/27/2021 Op. & Order (Dkt. 215)), and sought burdensome discovery for 95 case files on the eve of the discovery cutoff requiring defendants to continue producing documents until just weeks before trial.

Given the issues at stake, and the scope of discovery that plaintiffs have received, this subpoena duces tecum for communications made by a witness plaintiffs identified 16 business days before trial is proportional to the needs of the case and reasonable.

### C.    The date range of responsive records in the subpoena is reasonable.

The Senator's argument that the date range and timing of the subpoena are unreasonable is not well taken. Defendants' subpoena seeks documents in accordance with the scope of discovery in this case and the witness statement that plaintiffs have proffered for the Senator. Plaintiffs have represented that the Senator has regularly interacted with children in care, attorneys, judges, and resource families in connection with the child welfare system. (Dkt. 385-5 at 1; Dkt. 456 at 1.) The subpoena seeks communications between the Senator and the attorneys, children, judge, and Next Friends in this case. (Ridenour Decl. Ex. 1 at 8-9, 13.) It is reasonable for defendants to seek communications between a witness and important actors in the litigation

in part to uncover whether the witness may be biased.  *See Behler v. Hanlon*, 199 F.R.D. 553, 557 (D. Md. 2001) (observing that the relationships or circumstances that allow a finding or bias are virtually limitless and include, among other things, shared beliefs).  Indeed, the Senator acknowledges that there are real questions about her potential bias.  (*See* Decl. of Sara Gelser Blouin (Dkt. 468) ¶ 18 ("I have developed significant personal relationships with a handful of the children and youth I have met, including Unique, who is a class representative in this case.").)  Moreover, the subpoena's date range is reasonable because it corresponds to the dates at issue in this case, which was filed in 2019. [6]

### D.    Alternatively, the Court should narrow the scope of the subpoena to reflect the compromise that defendants offered in conferrals.

If this Court is persuaded that the subpoena is overly broad and burdensome, it could adopt the following narrowing limitations to alleviate any burden:

- Requests Nos. 6, 7, 8, 9, 12, 13, 14, 15, and 16 – Set aside.

- Request Nos. 3 and 4 –Limit this request to just Documents and Communications exchanged between the Senator and Next Friends, Annette Smith and Paul Aubry.

- Request No. 5 – Limit the request to Communications and Documents evidencing Communications with plaintiffs' counsel which are about or reference: (a) this case, *Wyatt, et al. v. Kotek, et al.* (formerly *Wyatt, et al. v. Brown, et al.*), (b) children in the care of Oregon DHS/Child Welfare, and/or (c) Oregon foster care children.

---

[6] Defendants' issued subpoena sought documents related to the Senator's communications with others in two other lawsuits involving ODHS Child Welfare, both of which involved issues that pre-dated 2019.  In light of the Court's rulings on defendants' motions *in limine*, defendants agree that these requests are no longer relevant and no longer seek communications that pre-date 2019.

- Request Nos. 10-11 – Narrow these requests to just those which are about or reference this case (*Wyatt, et al. v. Kotek, et al.*).

- Request No. 17 – Narrow the time period to Jan 1, 2019 to present.

These substantial reductions in the scope of the subpoena should eliminate any burden experienced by the Senator.  The Senator's primary concern is that she may have used her personal device and accounts to engage in communications related to child welfare, and that it would be difficult to separate those communications from irrelevant communications with friends and family.  The narrowed documents described above eliminates this concern entirely by limiting the scope of the subpoena to communications with specific categories of highly relevant individuals (*e.g.*, Next Friends, the Court, plaintiffs' counsel, foster children).

Also, the Senator has already collected the information described above.  Shortly after receiving the subpoena, the Senator told the media, "my office is searching for potentially responsive records spanning dozens of individuals, children, attorneys, media outlets and other entities over the past nine years so that I am ready to comply with any parts of the subpoena the court deems should move forward."  https://oregoncapitalchronicle.com/2024/04/30/facing-a-class-action-lawsuit-oregon-dhs-subpoenas-senators-emails-before-she-testifies/.  Thus, the Senator has already collected and reviewed the documents related to specific categories of individuals.  If necessary to alleviate the burden, this Court should order the Senator to produce those limited set of documents now, before she testifies.

**IV.    The Senator's assertions that defendants are attempting to intimidate and retaliate against her are baseless.**

The Senator asserts that defendants' subpoena is an attempt to harass her in order to deter her testimony in this case and retaliate against her legislative activities.  The Senator offers no reasoned explanation for her claim that defendants have acted improperly in subpoenaing her for

information that may be relevant to their defense.  This assertion is not correct.  Defendants'

subpoena seeks documents related to that the Senator's credibility as a witness.  The bias and

credibility of a witness is always relevant.  *See Hoffman v. Cnty. of L.A.*, No. CV 15-03724-FMO

(ASx), 2016 WL 4698939, at *9 (C.D. Cal. Jan. 5, 2016) (credibility); *Surgery Ctr. at 900 N.

Mich. Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 625-26 (N.D. Ill.

2016) (bias).  Defendants seek records that could show that the Senator has been given

incomplete or inaccurate information by individuals she has interacted with.  Communications

between the Senator and plaintiffs in this and other cases, as well as communications between

plaintiffs' attorneys and the Senator in this case, would reveal whether the Senator has received

incomplete or slanted information that may in turn demonstrate that the Senator's testimony is

not neutral or perhaps inaccurate.  Any misconceptions or misimpressions revealed by the

Senator's prior communications would be highly relevant to her testimony about the child

welfare system.  The Senator's witness statement is filled with references to her interactions and

communications with third parties.  Defendants are entitled to probe the basis of her testimony to

understand the accuracy and neutrality of her testimony at trial.  Fundamental fairness and due

process argue in favor of production.  As defendants' requests are proper, the Senator's Motion

should be denied

## V.    Enforcement of the subpoena is consistent with the policy in favor of governmental transparency.

Oregon has a broad public policy in favor of governmental transparency.  For example,

the purposes of Oregon's Public Meetings Laws is to ensure government transparency: "[t]he

Oregon form of government requires an informed public aware of the deliberations and decisions

of governing bodies and the information upon which such decisions were made."  ORS 192.620.

And Oregon has long recognized the importance of transparency in governmental operations.

Page 17 –    **DEFENDANTS' OPPOSITION TO SENATOR GELSER BLOUIN'S MOTION TO QUASH SUBPOENA**

*See, e.g.*, Or. Const. art. I, § 10 (prohibiting secret courts); Or. Const. art. IV, § 14 (legislative deliberations to be open).  Defendants have of course issued a public records request to the Senator for certain categories of documents including her communications with plaintiffs' lawyers.  Defendants' subpoena to the Senator in her personal capacity is in keeping with the principles of government transparency in that it seeks information that will aid the Court's understanding of the basis for the Senator's testimony about a matter of significant public concern.  As described above, and in Defendants' Response to Plaintiffs' Motion to Quash, the other categories of documents sought in defendants' subpoena duces tecum are relevant to the issues in this case, they are proportional to the needs of the case, and production of them can only further the goal of transparency in governmental affairs.

## VI.    The Court should deny the Senator's request for attorney fees.

The Court should reject the Senator's request for sanctions in the form of her attorney fees.  The Senator's request is premised on the theory that defendants have violated the discovery deadline by issuing their subpoena.  As discussed above, discovery in this case has continued to the eve of trial. Moreover, the Senator failed to comply with her conferral obligations under Local Rule 7-1(a)(1) in seeking this Motion and now a request for attorney fees.  *See Nelson v. Aiosa*, 616 Fed. App'x 369, 370 (9th Cir. 2015) (affirming denial of motion based on the moving party's failure to comply with the meet and conferral rule).  Good faith conferral requires litigants to treat the informal negotiation process as a substitute for judicial resolution of disputes and present the merits of their respective positions with the same candor, specificity, and support as they would in briefing a motion.  *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 302 n.2 (D. Nev. 2019).  However, prior to filing her Motion, the Senator failed to raise several issues—either in her counsel's conferral letter or his telephonic and electronic communications with defendants' counsel—including that she may seek attorney fees associated with her Motion to Quash and that

she intended to assert an informer privilege. Defendants, on the other hand, conferred in good

faith, offering to narrow the scope of their subpoena, an offer which the Senator rejected without

any further response or reasoning. In light of the Senator's failures to confer in good faith on the

substance of all arguments as framed in her Motion and request for fees, this Court, even were it

inclined to grant the Senator's Motion to Quash, should deny any request for attorney fees or

costs.

**VII.    The Court should deny the Senator's requests for alternative forms of relief.**

In the event the Court denies her Motion to Quash, the Senator seeks several forms of

alternative relief, all of which should be denied. First, the Senator seeks an additional 30 days to

respond to defendants' subpoena. The Court should deny the Motion because the Senator is

expected to testify on the opening day of trial. Next, the Senator requests that the Court limit the

scope of defendants' subpoena to one year before service of the subpoena. The Senator offers no

reason for this limit and the Court should not impose one. The Senator has acknowledged that

she has a significant personal relationship with at least one of the class representatives and

communicated with at least one Next Friend that since 2019. (Dkt. 468 at 11, 18.) There is good

reason to believe that evidence related to the Senator's expected testimony dates back to 2019.

The Senator also next requests that the Court strike the portions of the subpoena "that

seek public records in the possession of the Oregon Legislature." (Dkt. 465 at 3.) Such an order

is unnecessary because defendants' subpoena does not reach public records. The Senator further

requests that this Court strike the defendants' subpoena to the extent that it seeks privileged or

confidential information, or information for which there is a reasonable expectation of privacy.

(*Id.*) The Court need not enter such an order because, to the extent that the Senator makes any

argument about privilege, they relate to privileges that would be applicable only to records held

in her public capacity, none of which are implicated by defendants' subpoena which reach only

her personal records.  Moreover, as discussed below, a protective order has been entered in this case that permits the Senator to label records as confidential, thus protecting records in which others may have a reasonable expectation of privacy.

The Court should also deny the Senator's request to strike the portions of the subpoena that request her communications with the Court.  The Senator makes no argument about why this request is burdensome.  In fact, she suggests her personal communications with the Court are limited such that they should not be burdensome to produce.  (*See* Gelser Blouin Decl. ¶ 16(a) (noting one interaction with the Court since 2019, while carrying out senatorial duties).)  Finally, the Senator requests that the Court conduct an *in camera* review of all potentially responsive documents but does not explain why this is necessary.  To the extent that the Senator is concerned about the sensitive nature of her personal communications, as noted above, a protective order has been entered in this case.  (*See* Dkt. 410.)  The Senator may mark any sensitive information responsive to the subpoena "confidential" or "attorneys eyes only," thus protecting her privacy interests or the privacy interests of persons mentioned in her personal records.  To the extent that the Senator believes that an *in camera* review is necessary to protect privileged communications, that argument fails because she has not identified any privilege that would apply to her personal communications.

**VIII.  Finally, if the Court is inclined to grant the Senator's alternative Motion for more time to respond, defendants ask that their opportunity to cross-examine her remain open until such time as her responsive records have been produced.**

In the event that Court is inclined to consider the Senator's alternative motion to allow her more time to respond, defendants respectfully request that their opportunity to cross-examine the Senator at trial remain open until such time as responsive records are produced. Notwithstanding her protestations about the relevance of her personal communications in this matter, the Senator has confirmed that her personal communications contain evidence that goes

**Page 20 –    DEFENDANTS' OPPOSITION TO SENATOR GELSER BLOUIN'S MOTION TO QUASH SUBPOENA**

to her potential bias. (*See* Gelser Blouin Decl. ¶ 18 (attesting to a "significant personal relationship[]" with a class representative).) This Court significantly narrowed the scope of the Senator's expected testimony in response to defendants' motion *in limine*, but permitted her testify as a fact witness. (*See* Op. & Order (Dkt. 464) at 5.) As the Court believes that the Senator may offer some relevant, appropriate testimony, it is clear that the Senator's personal communications contain information that will be important in assessing her credibility. Defendants should be permitted reasonable opportunity to cross-examine her regarding highly relevant documents related to her testimony. Therefore, to the extent the Court allows the Senator additional time to respond to defendants' subpoena, defendants request that their opportunity to cross-examine the Senator at trial remain open until her responsive records are produced.

**CONCLUSION**

The Court should deny the Senator's Motion to Quash Defendants' Subpoena Duces Tecum. Alternatively, if the Court allows the Senator more time to respond, defendants request an extended opportunity to cross-examine the Senator until such time as responsive records have been produced.

DATED: May 8, 2024.        ELLEN ROSENBLUM
                                   ATTORNEY GENERAL
                                   FOR THE STATE OF OREGON

                                   *s/ Adele J. Ridenour* _____

David B. Markowitz, OSB #742046
DavidMarkowitz@MarkowitzHerbold.com
Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Lauren F. Blaesing, OSB #113305
LaurenBlaesing@MarkowitzHerbold.com
Vivek A. Kothari, OSB #182089
VivekKothari@MarkowitzHerbold.com
*Special Assistant Attorneys General for Defendants*

Adele J. Ridenour, OSB #061556
AdeleRidenour@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
David A. Fauria, OSB #170973
DavidFauria@MarkowitzHerbold.com
Kelsie G. Crippen, OSB #193454
KelsieCrippen@MarkowitzHerbold.com
*Of Attorneys for Defendants*

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us
Sheila H. Potter, OSB #993485
sheila.potter@doj.state.or.us
*Of Attorneys for Defendants*

2141066