*Wyatt B., et al. v. Tina Kotek, et al.*, Case No. 6:19-cv-00556-AA
May 10, 2024

***Wyatt B. et al. v. Kotek et al.* Settment Term Sheet***

Subject to drafting a final and detailed settlement agreement, including releases, which the parties will complete within five business days of the Court's preliminary approval of this term sheet, between Plaintiffs (the class representatives and the plaintiff class) and Defendants (Governor Tina Kotek, Oregon Department of Human Services ("**ODHS**"), ODHS Director Fariborz Pakseresht, and ODHS Child Welfare Director Aprille Flint-Gerner) ("**Settlement Agreement**"), the Parties agree to the following material terms.

A. **Introduction.** The Parties are entering into this settlement term sheet to resolve the litigation and ensure that ODHS continues to protect child safety while also making improvements to the child welfare system and supporting and preserving families. The settlement is structured around collaborative partnership between ODHS and an experienced Neutral with subject matter expertise. The Neutral will help ODHS continue its progress by setting and measuring flexible goals aimed at improving outcomes for children and continuing system transformation regarding ODHS's role within the larger child-serving system in Oregon.

B. **Definitions.**

   1. "**Parties**": WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S. by his next friend Paul Aubry; RUTH T. by her next friend Michelle Bartov; BERNARD C. by his next friend Ksen Murry; NAOMI B. by her next friend Kathleen Megill Strek; and NORMAN N. by his next friend Tracy Gregg, individually and on behalf of all others similarly situated in Oregon ("**Plaintiffs**") and TINA KOTEK, Governor of Oregon in her official capacity; FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; APRILLE FLINT-GERNER, Director, Child Welfare in her official capacity, and OREGON DEPARTMENT OF HUMAN SERVICES ("**ODHS**") ("**Defendants**").
   2. "**Party**": Plaintiffs collectively, on one hand; the Defendants collectively, on the other.
   3. "**Effective Date**": Shall mean the date the Court approves the Settlement Agreement and approves payment of attorney's fees and costs for class counsel for Plaintiffs.
   4. "**The Certified Class**": Children certified by the Court.
   5. "**The Court**": Hon. Judge Ann Aiken, or her successor.
   6. "**Child in Care**": The scope of this definition is in dispute. The Parties agree that it shall mean children who are in the legal and physical custody of ODHS. The Parties disagree on whether the term excludes: 1) children who have not been removed and are receiving services in-home (i.e. through ODHS Family Preservation) because while those children may be in ODHS's legal custody so that ODHS can draw down Title IV-E federal funding to provide in-home services, they are not in ODHS's physical custody and not "in care"; or 2) children who have been removed, are in ODHS's legal custody, but are not in ODHS's physical custody because they are placed in-home with a parent or legal

*Wyatt B., et al. v. Tina Kotek, et al.*, Case No. 6:19-cv-00556-AA
May 10, 2024

       guardian (i.e. on Trial Home Visit). The Parties will submit this issue by motion to the Court for resolution in a limited judgment, so that it is appealable by either party. If there is an appeal, the Parties agree it shall not affect the other terms of this Settlement Agreement, which shall otherwise proceed, including the awarding of attorney fees.

7. "**Efforts**": All actions, policies, practices, and procedures made and/or undertaken by ODHS to achieve **Ultimate Outcomes**, which may include, for example, ODHS's continuous quality improvement work.

8. "**Maltreatment**": Shall include all abuse as defined in ORS 419B.005 and ORS 418.257, and as further amended or renumbered, and will apply to and include all "Child(ren) in Care" as defined above.

9. "**Ultimate Outcomes**": Specific, concrete and identifiable metrics that are goals to be met at the conclusion of the term of this Settlement Agreement.

10. "**Measurements**": Methods of assessing progress toward Ultimate Outcomes.

11. "**Substantial Compliance**": Sufficient and sustained good faith and meaningful Efforts that work toward achieving the Ultimate Outcomes, which does not require strict compliance, but requires meaningful progress toward the Ultimate Outcomes.

12. "**Timelines**": Specific benchmarks, dates, and/or periods of time by which to achieve Measurements and Ultimate Outcomes.

13. "**Categories**": Are the particular areas of assessment set forth in paragraph C below.

14. "**Services**": Are the services identified in the case plan for a Child in Care.

C. **Child Welfare Neutral.** The Parties agree to the selection of a child welfare Neutral ("**Neutral**").

    1. Neutral shall:

        a. Act as a subject matter expert to assess Oregon's child welfare system which will include a comprehensive review of the system and reviewing all of the Parties' expert reports in this litigation, and may include interviews, subject to entering a prior agreement regarding privacy and confidentiality concerns, with representatives and counsel for both Plaintiffs and Defendants (representatives for Defendants to include, but not limited to, Child Welfare leadership and staff (such as caseworkers (present and former)), representatives of related agencies, civil rights attorneys, providers, resource parents, current or former foster children[1], parents, judges, juvenile dependency and delinquency attorneys, CASAs, treatment providers, law enforcement, and legislators relating in any way to Efforts and/or Outcomes;

        b. Determine Measurements, Ultimate Outcomes, and Timelines and take into account federal standards and Oregon's performance (and practice

---

[1] Neutral will work with ODHS prior to interviewing any minor children to determine reasonable limits and contours of such contact (i.e. number of children, age, therapeutic contraindications, interview participants, juvenile attorney consent, etc.).

                variations) relative to those standards (i.e. Neutral to review Oregon's CFSR results and any PIP) in setting and evaluating the Measurements, Ultimate Outcomes, and Timelines;

        c. Annually determine whether ODHS's Efforts are sufficient to accomplish Measurements, Ultimate Outcomes, and Timelines (as defined in scope below), and such determination shall include both a qualitative and quantitative assessment, not a rigid "yes" or "no" assessment of compliance;

        d. Recommend changes, if any, to Efforts, Measurements, Ultimate Outcomes, and Timelines should Measurements and Ultimate Outcomes not be met within the Timelines established;

        e. Determine if and when sufficient Efforts and Ultimate Outcomes have been met and if any Ultimate Outcomes can be removed from reporting requirements; and

        f. Determine if Ultimate Outcomes have been substantially complied with in this Settlement Agreement as to warrant an exit from the terms of the Settlement Agreement.

2. Neutral should have prior experience with state child welfare systems and the federal government oversight process and knowledge of current national child welfare best practices and trends. The Parties agree that Neutral must not have served as an expert or consultant for any of the Parties or their counsel in connection with this action.

3. Neutral shall be selected as follows:
   a. Selection of the initial Neutral is a condition precedent to entry of the final Settlement Agreement;
   b. The Parties shall cooperate in good faith to jointly select Neutral within 15 business days of the Court's preliminary approval of this term sheet;
   c. If the Parties are unable to agree on the selection of Neutral by the date above, each Party shall submit to the Court a nominee, and the Court shall select Neutral from those nominations with the level of input from the Parties as determined by the Court.
   d. With respect to any Neutral proposed or nominated by any Party, the nominating Party must identify and describe each nominee's qualifications and experience, including listing and describing each instance in which the nominee has served as an expert, consultant, or monitor in any action involving the Parties and listing references from those engagements.
   e. A similar process will apply to the replacement of any Neutral.

4. Neutral shall have reasonable access to ODHS documents as requested. The Neutral shall only have access to child-specific data and documents, other than ODHS's case review sampling process, if the Neutral makes a showing of substantial need for additional individual Child Welfare documents or case files. Substantial need includes, but is not limited to, examining issues indicative of system-wide concerns or confirming the accuracy of the aggregate data, rather than intervening in individualized cases. ODHS has the opportunity to object to the Neutral's requests for individualized case information, subject to the dispute resolution in Paragraph I below.

*Wyatt B., et al. v. Tina Kotek, et al.*, Case No. 6:19-cv-00556-AA
May 10, 2024

    5.    Neutral should not communicate with any media outlet, post on social media, or publish any writings in media publications related to this Settlement Agreement while serving as the Neutral, without prior written consent of the Parties.

    6.    After the Neutral completes the Initial Review in Paragraph E below, the Neutral's communications related to this Settlement Agreement shall be limited to representatives for the Parties, the Parties' counsel, and the Court, unless the Parties given prior written consent for other communications (i.e. subject matter experts such as Casey Family Programs, government agencies such as CMS, or legislative testimony), or as otherwise required by law.

    7.    Neutral, along with any staff and third parties hired and/or consulted by Neutral for the purpose of assisting Neutral with their responsibilities under this Agreement, shall be reimbursed up to a maximum of $250,000 per year by Defendants, subject to yearly accounting for inflation and related factors.

**D.**    **Scope.**  The Parties agree that the scope of Neutral's assessment, recommendations, and determination of compliance and any enforcement, pertains to the following categories (the current Measurements for Oregon in the below categories are as listed below and shall be used to inform the decision of the Neutral):

    1.    Ultimate Outcomes for the levels and/or rate of Maltreatment of Children in Care;
        a.    As of March 11, 2024, the current federal measure for rate of "Maltreatment in Foster Care" in Oregon is 16.4 victimizations/100,000 days (statewide average for prior 12-month period).
        b.    In addition to the Measurement in paragraph D.1.a. above, Neutral and ODHS will work together to develop an additional measure that does not count maltreatment of children who are in the legal custody of ODHS but not in ODHS's physical custody (for example, children living at home on a Trial Home Visit).

    2.    The appropriateness and quality of placements and Services for all children in the Certified Class, to be qualitatively evaluated through ODHS's case review sampling process;

    3.    Ultimate Outcomes relating to the re-entry rate for Children in Care;
        a.    As of March 11, 2024, the current federal measure for rate of "Re-entry to Foster Care" within twelve months is 10.7% (statewide average for prior 12-month period).

    4.    Ultimate Outcomes relating to the timelines by when an initial case plan must be completed for a Child in Care;
        a.    As of December 2023, 71% of initial case plans were completed within 60 days.

    5.    Ultimate Outcomes relating to the timelines to complete professional mental health and medical assessments and referrals for reasonable and necessary medical and mental health care, services, and treatment for a Child in Care;
        a.    For 2022, 88.3% of children received age appropriate mental, physical, and dental health assessments within 60 days of notification to Coordinated Care Organizations (CCO) that the child was placed into

                ODHS's custody (statewide CCO average for 2022 CCO Performance Metrics Data).

      b.      In addition to the Measurement in paragraph D.5.a. above, Neutral and ODHS will work together to develop additional (or alternate) measures to assess timeliness of assessments and referrals for example, timeliness of intake nursing assessments and timeliness of referrals for physical health, dental, and mental health assessments.

6.      Efforts, policies, and practices of notifying and providing any reports or materials required by Oregon law concerning Maltreatment of Children in Care to all statutorily required parties or individuals pursuant to ORS 419B.015, ORS 419B.035, and ORS 418.259, and as further amended or renumbered;

7.      Any other child welfare category Neutral recommends, provided that such category must be within the scope of claims and relief in this case that are actionable under the Constitution or the ADA and recommended within two (2) years of the Effective Date and no more than two (2) additional categories can be recommended. Any dispute between the Neutral and Defendants regarding this provision would be submitted to the Arbitrator per paragraph I below.

8.      The categories above will not contain, in total, more than 15 Measurements.

**E.**      **Initial Determination of Ultimate Outcomes and Timelines.** The Parties agree that the Neutral shall establish Ultimate Outcomes, Measurements, and Timelines ("**Initial Review**"). The Initial Review shall occur by April 30, 2025, which may be extended by up to 90 days at the request of the Neutral.

**F.**      **Substantial Compliance Review.** The Parties agree that once per year following the issuance of the Initial Review and through the term of this Settlement Agreement, Neutral shall:

1.      Conduct an annual review assessing whether ODHS's Efforts are in Substantial Compliance within the Timelines established ("**the Annual Review**");

      a.      The Annual Review shall include:

            i.      Whether ODHS is undertaking the Efforts it has established (or Neutral has recommended) to substantially achieve the Measurements and Ultimate Outcomes within the Timelines established;

            ii.      Whether the Efforts taken by ODHS (or recommended by Neutral) are effective in substantially achieving the Measurements and Ultimate Outcomes within the Timelines established;

            iii.      Whether there are circumstances outside of the control of ODHS that have affected ODHS's ability to substantially achieve the Measurements and Ultimate Outcomes within the Timelines established, and whether such circumstances warrant a change in the Measurements, Ultimate Outcomes, and/or Timelines established;

            iv.      What changes, if any, should be made to the Efforts, previously established;

        v.    Whether any Category no longer needs to be a part of Neutral's Annual Review because a particular Ultimate Outcome has been met (or alternatively, if any released Category needs to be re-included in Neutral's Annual Review because a particular Category has become an area of concern); and

        vi.    Any other recommendations Neutral may have for Defendants relating to Efforts to achieve the Measurements and Ultimate Outcomes within the Timelines established.

    b.    Defendants shall have 30 days from the date of receipt of the Annual Review to accept the review and any recommendations. If Defendants do not accept the review and recommendations, Defendants shall work with Neutral to establish alternative Efforts, Measurements, or Timelines agreeable to Defendants and Neutral.

    c.    If, after 60 days of Defendants' receipt of the Annual Review, Defendants and Neutral are unable to agree, Defendants and Plaintiffs shall submit the issue(s) to the Arbitrator per the dispute resolution process in paragraph G below.

    d.    If Defendants accept the findings and recommendations of the Annual Review, or if the Annual Review is modified through agreement between Defendants and Neutral, the Annual Review shall be filed with the Court.

    e.    Plaintiffs shall receive copies of the Annual Review and any revisions thereto at all steps in the process.

**G.** **Role of the Governor.** The Governor is a Party to the Settlement Agreement and shall provide support to ODHS toward its Efforts to achieve the Ultimate Outcomes. This includes, but is not limited to, assisting ODHS's collaboration with other state agencies to work toward the Ultimate Outcomes, Measurements, Timelines, and related recommendations from the Neutral. The Governor and/or her staff will review the Neutral's Initial Review and Annual Reviews, including the Neutral's recommendations for Defendants. The Governor is not committing in this Settlement Agreement to seeking any specific funding from the Legislature or any specific budgetary, funding, or resource allocation and is not subject to Paragraph I regarding recommended budget decisions or legislative appropriations.

**H.** **Exit and Termination.**

    1.    The Agreement shall terminate when the Neutral determines ODHS is in Substantial Compliance with the Ultimate Outcomes or within ten years, whichever is sooner ("Termination Date"). The Parties may, upon mutual agreement, extend the Termination Date.

    2.    If, after ten years, the Neutral determines that additional time is needed for ODHS to be in Substantial Compliance with the Ultimate Outcomes, the Neutral may recommend extension of the termination date by no more than two (2) years. The Neutral's recommendation is subject to dispute resolution in paragraph I below.

       3.    Defendants may challenge the Neutral's determination that ODHS is not in Substantial Compliance with the Ultimate Outcomes and request the termination of the Agreement by initiating dispute resolution in paragraph I below at any time.

**I.**    **Dispute Resolution.**  The Parties agree that an arbitrator ("**Arbitrator**") shall first determine any and all disputes arising under this Agreement except the amount of attorney fees and costs in paragraph M below.  The Arbitrator shall be the Honorable Judge Stacie F. Beckerman.  If Judge Beckerman becomes unavailable or unwilling to continue serving as the Arbitrator, the Parties will choose a mutually agreeable alternative.  If the Parties are unable to agree upon an alternative Arbitrator, the Parties will request that the Presiding Judge select an Arbitrator that is an active Magistrate Judge or District Judge within the U.S. District Court for the District of Oregon.

       1.    **Term Sheet Disputes.**  The Arbitrator will decide any disputes related to the language in this term sheet while the Parties are drafting the final settlement agreement.

       2.    **Raising a Dispute.**  To raise a dispute under this Settlement Agreement, a Party must provide written notice of the dispute or assertion of non-compliance to the other Parties and the Arbitrator.  The written notice must be supported by reasoned argument, factual allegations, and a specific request for remedies.  The other Parties must provide a response in writing to the initiating Party and the Arbitrator within 28 days.  Plaintiffs may only raise a dispute with the Arbitrator if the Neutral has determined that ODHS is not in Substantial Compliance with the Settlement Agreement.  Plaintiffs may, however, respond to any disputes raised by the Neutral or Defendants.

       3.    **Process.**  Once a dispute is raised, the Arbitrator shall resolve the dispute.  If the dispute concerns whether ODHS is in Substantial Compliance, and the Arbitrator determines that ODHS is not in Substantial Compliance, the Arbitrator shall determine an appropriate remedy.

            a.    In determining any remedy under this Section, the Arbitrator may employ or recommend any enforcement mechanisms that are within the legal and equitable powers of the Court to enforce the Agreement, including requiring specific performance of the Agreement; finding ODHS is in contempt of this Agreement; requiring ODHS to submit a plan for remedying any deficiencies; and awarding reasonable attorneys' fees and costs for enforcement of the Agreement in excess of the fees allowed by this Agreement.

            b.    If there is a dispute whether ODHS is in Substantial Compliance, the Arbitrator shall make a determination of Substantial Compliance or non-compliance, or may make a determination of contempt.  The Arbitrator may request that the Parties submit any briefing and documentary evidence required to make its determination.

**J.**    **Court Enforcement and Appeal.**  Any Party may seek review by the Court of the Arbitrator's decisions regarding only Substantial Compliance with the Settlement Agreement.  Any Party may also apply to the Court for an Order to enforce a

*Wyatt B., et al. v. Tina Kotek, et al.*, Case No. 6:19-cv-00556-AA
May 10, 2024

      determination or remedy by the Arbitrator. The Court retains all legal and equitable powers of the Court to enforce the Agreement. Any order of the Court is not appealable.

**K.**    **Ongoing Conferrals.** Plaintiffs, Neutral, and ODHS will meet at least once every six (6) months to review the progress under the Settlement Agreement and any changes that may be needed.

**L.**    **Joint Media Plan.** The Parties agree to work together on a joint press release to be included in the final Settlement Agreement.

**M.**    **Attorney Fees.** Even though no liability was determined by the Court, counsel for the class are entitled to an award of reasonable attorney's fees and costs incurred in the prosecution of the claims pursuant to 42 U.S.C. § 1988 and caselaw related thereto. The Parties agree to work in good faith to agree on the amount of the reasonable fees and costs that will be paid to counsel for the class. If an agreement could not be reached on attorney fees, the Parties agree to go to mediation with the Arbitrator. The mediation would not be binding. In the event the Parties do not reach agreement on the amount of the reasonable fees and costs that will be paid to counsel for the class by June 30, 2024, this Agreement shall remain in force, including the provisions of this Section, and counsel for the class shall submit a fee petition to the Court. Plaintiffs will not seek any fee enhancement or multiplier. Defendants shall be entitled to present any and all objections to any fee petition submitted by counsel for the class. The Parties agree that the Court's decision on attorney fees shall not be appealable. The Parties further agree that payment shall be made within 90 days of final determination by the Court, unless a payment plan is otherwise agreed.

**N.**    **Post Judgment Attorney Fees.** Upon the decision of any attorney fees approved by the Court, the law firms of Davis Wright Tremaine, LLP and Rizzo Bosworth Eraut P.C. shall withdraw as counsel of record for Plaintiffs. The law firms of A Better Childhood and Disability Rights Oregon shall remain as counsel for Plaintiffs through the term of the Settlement Agreement and shall be compensated for their continued monitoring of the Settlement Agreement. The collective attorney fees and costs shall not exceed $150,000 annually, subject to yearly accounting for inflation and related factors.

**O.**    **Court Approval.**

    1.    As soon as practical after the date of this Agreement, the Parties will file a joint or unopposed motion seeking preliminary approval of this Agreement. The motion will request that the Court set a schedule for a fairness hearing on the settlement, a process for providing notice to interested parties, and a schedule for moving for a judgment and order granting final approval of the Agreement. The Parties shall use their best efforts to cause this Settlement Agreement to receive final approval from the Court.

    2.    The Parties' proposed judgment and order granting final approval of this settlement will:

*Wyatt B., et al. v. Tina Kotek, et al.*, Case No. 6:19-cv-00556-AA
May 10, 2024

a. Grant final approval of the settlement without modification of its terms as fair, reasonable, and adequate to the Class and Subclasses under Fed. R. Civ. P. 23(e);

b. Find that the Settlement Agreement resulted from extensive arm's length, good faith negotiations between the Parties through experienced counsel;

c. Dismiss the action under Fed. R. Civ. P. 41(a)(2) after compliance with Fed. R. Civ. P. 23(e);

d. Comply with the content and scope requirements of Fed. R. Civ. P. 65(d)(1), expressly incorporate the actual terms of this Settlement Agreement, and make the Parties' compliance with the terms of this Settlement Agreement part of the dismissal order;

e. Incorporate the entirety of the express terms of the Settlement Agreement and provide that the Court has and will retain jurisdiction over the judgment and order to enforce the Settlement Agreement; and

f. This Settlement Agreement will be effective on the date of final approval by the Court. If the Court does not grant final approval of the Settlement Agreement and retains jurisdiction to enforce the Agreement, the Settlement Agreement will be null and void.

2129793.12