**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
**Vivek A. Kothari, OSB #182089**
VivekKothari@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for Defendants*
*Additional Counsel of Record Listed on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S.; RUTH T.; BERNARD C.; NAOMI B.; and NORMAN N., individually and on behalf of all others similarly situated, | Case No. 6:19-cv-00556-AA<br><br>**DEFENDANTS' MOTION TO CONFIRM THE DEFINITION OF THE GENERAL CLASS** |
| Plaintiffs, | |
| v. | **FRCP 23(d)** |
| TINA KOTEK, Governor of Oregon in her official capacity; FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; APRILLE FLINT-GERNER, Director, Child Welfare in her official capacity; and OREGON DEPARTMENT OF HUMAN SERVICES, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**Page 1 –   DEFENDANTS' MOTION TO CONFIRM THE DEFINITION OF THE GENERAL CLASS**

## CERTIFICATE OF COMPLIANCE

In compliance with Local Rule 7-1, the parties made a good faith effort, by video conference, to resolve the disputes that are the subject of this motion and have been unable to do so.

## MOTION

Pursuant to Federal Rule of Civil Procedure 23(d), defendants Governor Tina Kotek; Fariborz Pakseresht, Director of the Oregon Department of Human Services ("ODHS"); Aprille Flint-Gerner, Director of ODHS Child Welfare; and "ODHS," move the Court for an order setting forth the course of proceedings. The parties have entered into a Settlement Agreement to resolve this class action lawsuit, but they dispute whether the general class includes children who, although they are in the legal custody of ODHS, are living at home with their parents. (*See* Settlement Agreement (Dkt. 481) ¶ 1.). Defendants respectfully request that this Court confirm, consistent with its prior rulings, that the general class does not include children who are living at home with their parents. Alternatively, if this Court expands the scope of the general class to include children living at home with their parents, defendants respectfully request that this Court certify its order for interlocutory appeal under 28 U.S.C. § 1292(b).

## MEMORANDUM OF LAW

### I.    Introduction

Although the parties have entered into a Settlement Agreement to resolve this class action lawsuit, the parties dispute whether the general class definition includes children who, although they are in the legal custody of ODHS, are living at home with their parents. For the reasons explained below, this Court should confirm, consistent with its prior rulings, that the general class does not include children who are living at home with their parents. As this Court has already ruled, there is no substantive due process right to government protection while children

are at home with their parents, nor did plaintiffs raise that claim in their Complaint.  As explained below, a class definition is overbroad when it includes members who are not entitled to bring suit under the applicable substantive law.  Accordingly, this Court should confirm that the definition of the general class does not include children who cannot assert the substantive due process rights asserted by children in the general class who have been removed from their homes.

## II.    Background

This case is a class action brought by ten class representatives who, at the time this case was filed, were children in foster care who were placed in substitute care (*i.e.*, in an out-of-home placement with a caregiver who is not a biological parent).  *See* OAR 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(70)-(71) (defining "substitute care" and "substitute caregiver").  Plaintiffs alleged, among other things, that the Substantive Due Process Clause requires the State to ensure that each child "placed" in foster care "is free from the foreseeable risk of physical, mental, and emotional harms."  (Compl. (Dkt. 1) ¶ 200(a).)  Plaintiffs alleged that the State's duty to children "placed in foster care" arises from "a special relationship" with the child in care.  (Compl. ¶¶ 301, 304, 306(b).)  Similarly, in their opposition to Defendants' Motion to Dismiss, plaintiffs argued that the Complaint stated a claim under the Substantive Due Process Clause because "Children *who have been removed from their homes* into state foster care custody, such as the Named Plaintiffs in this case, are in a 'special relationship' with the state, triggering Fourteenth Amendment due process protections."  (Dkt. 35 at 25 (emphasis added).)

In seeking class certification, plaintiffs continued to focus on children who had been removed from their homes and were placed in substitute care.  For example, in support of their class certification motion, plaintiffs argued that the typicality requirement under Rule 23 was satisfied because the ten named plaintiffs—by virtue of being in custody—were exposed to the

same risk of harm.  (Dkt. 56 at 56-57.)  Similarly, to prove numerosity, plaintiffs explained that the general class would include the "more than 8,000 children in DHS's legal *and* physical custody who depend on DHS to provide them a safe and appropriate place to live *after removal from their homes*."  (*Id.* at 31 (emphasis added).)  Consistent with that theory, plaintiffs asked the Court to certify the following general class:  "All children for whom the Department of Human Services ("DHS") has or will have legal responsibility and who are or will be in the legal and physical custody of the [*sic*] DHS."  (Dkt. 201 at 37.)

As the case progressed toward trial, plaintiffs submitted witness statements that indicated plaintiffs would take the new and different position that defendants were failing to provide proper services to children who were living at home with their parents on a "trial home visit."  (*See* Dkt. 385 at 28; Dkt. 385-8 at 20.)  A trial home visit or "trial reunification" means that a child has been in a substitute foster care placement but has returned home to live with the primary caregiver from whom the child was removed, in an effort to support family reunification.[1]  *See* OAR 413-100-0005 (defining "trial reunification").  Specifically, at trial, plaintiffs planned to present testimony from their experts that "[m]any children are going home to the parents from whom they were removed" and "[w]hile there, incidents of founded abuse/neglect occur[.]"  (Dkt. 385-8 at 20.)

---

[1] When a child is at home during a "trial reunification," ODHS retains legal custody of the child, which allows Oregon to draw down federal Title IV-E funding for services the State provides to the family to support reunification.  *See* OAR 413-100-0110(1)(b) (defining eligibility period for Title IV-E funding).  There may be other circumstances where ODHS has legal custody of a child while the child remains living at home with their parents, such as where ODHS is providing services to the family to prevent the child's entry into foster care through its family preservation program.  (*See* Dkt. 386 at 121-22.)  Plaintiffs have never asserted any constitutional challenges to either of those policies in this case.

Defendants moved to exclude evidence at trial relating to trial home visits on two grounds.  First, defendants argued that the Court should exclude evidence related to the alleged failure of defendants to protect children from their own parents because the evidence was not relevant.  (Dkt. 422 at 15.)  Defendants explained that the evidence was not relevant because in *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 202 (1989), the Supreme Court held that the plaintiff child could not bring a cause of action against the state defendants for failure to protect the plaintiff from his own parents.  (Dkt. 422 at 15).  Second, defendants argued that plaintiffs had not pled any allegations relating to trial home visits in their Complaint.  (Dkt. 422 at 16.)  In fact, in their Complaint, plaintiffs asserted the opposite, alleging that the State violated the Substantive Due Process Clause by keeping children in the State's custody for longer than necessary.  (Compl. ¶ 306(f).)

This Court agreed with both motions.  (Dkt. 464 at 2-3.)  This Court explained that the issue of "harms suffered by children in the care of their parents" was "not alleged in the Complaint in this case."  (*Id.* at 3.)  This Court also agreed that the plaintiffs' theories "related to harms suffered by children at the hands of their own parents . . . are not cognizable under the Fourteenth Amendment."  (*Id.* at 2-3.)

Following this Court's rulings on defendants' motions *in limine*, the parties entered into a Settlement Agreement.  Plaintiffs continue to dispute whether the general class includes children who are living at home with their parents on a trial home visit.  Accordingly, the parties agreed to submit briefing on that limited legal question.  (Settlement Agreement (Dkt. 481) ¶ 1.)  As explained below, this Court should confirm, consistent with its prior rulings, that the general class does not include children who are living at home with their parents.

### III.    Legal Standard

Under Rule 23(d) of the Federal Rules of Civil Procedure, in "conducting [a class] action . . . the court may issue orders that . . . determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument." The rule gives trial courts discretion to "manage the conduct of litigation . . . in a manner that expedites the proceedings while achieving the core purposes of a trial and protecting litigants' rights." *Barnes v. District of Columbia*, 278 F.R.D. 14, 17 (D.D.C. 2011). Trial courts have "both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989).

The Rule 23 requirements are not met where the class definition is overbroad. *See, e.g.*, *Simon v. Am. Tel. & Tel. Corp.*, No. 99-11641, 2001 WL 34135273, at *3 (C.D. Cal. 2001) (class certification was inappropriate because the proposed class definitions included persons who had not yet been aggrieved); *Mateo v. M/S Kiso*, 805 F. Supp. 761, 773 (N.D. Cal. 1991) (a class defined by a "radically overbroad" class definition was "on that basis alone, un-certifiable"). A class definition is overbroad when it necessarily includes members who are not entitled to bring suit under the applicable substantive law. *See, e.g.*, *Olean Wholesale Grocery Cooperative, Inc.*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (a class definition is "fatally overbroad" when "a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct"); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2015 WL 1466247, at *15 (W.D. Wash. Mar. 30, 2015) (plaintiffs' class definition was overbroad where it necessarily included members to which the substantive law did not apply); *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 320 (C.D. Cal. 1998) ("[W]hile

Plaintiffs need not prove that class members have been injured for purposes of defining the

Class, Plaintiffs' class definitions must have some relation to the Defendants' activities[.]").

## IV.    Analysis

### A.    This Court should enter an order confirming that the general class does not include children who are living at home with their own parents.

This Court should confirm that the definition of the general class does not include

children who are living at home with their parents.  As this Court has already ruled, the

Complaint does not allege that defendants have violated the Substantive Due Process Clause by

failing to remove children from their homes or by returning children to their homes before it is

safe to do so.  (Dkt. 464 at 2-3.)  Because those claims were never asserted, children living at

home with their parents are not a part of the general class.  Moreover, as this Court has already

recognized, allegations that defendants failed to protect children from their own parents fall

outside of the scope of the Substantive Due Process Clause.  (Dkt. 464 at 2-3.)  Accordingly, if

the general class included children who are living at home with their parents, the class definition

would be fatally overbroad.

#### 1.    Plaintiffs did not allege that defendants violated the Substantive Due Process Clause by failing to remove children from their homes or returning children to their homes when those homes were unsafe.

As this Court already ruled, plaintiffs' Complaint does not allege any claim related to

harms that occur during trial home visits.  Specifically, this Court already ruled that the "issue of

harms suffered by children in the care of their parents" is "beyond the scope of the claims

pleaded in the Complaint and certified for class-wide resolution, and so [is] not properly before

the Court."  (Dkt. 464 at 3.)  This Court should adhere to its prior ruling.  As explained in

defendants' motions *in limine*, paragraphs 251 through 254 of the Complaint refer to

maltreatment of foster children, but no paragraph references harm that occurred during a trial

home visit.  (*See* Dkt. 422 at 17-18.)  Because those allegations were never a part of the claims in this case, this Court should confirm that the general class does not include children who are living at home with their parents.

2.   **The Substantive Due Process Clause does not create an affirmative duty requiring defendants to protect children from their own parents.**

This Court should also adhere to its prior ruling that "harms suffered by children at the hands of their own parents" are not cognizable under the Fourteenth Amendment.  (Dkt. 464 at 3.)  Under *DeShaney*, claims alleging that defendants returned children to their homes when those homes were unsafe or failed to prevent abuse that occurred while children were at home with their parents are beyond the scope of the Substantive Due Process Clause.  489 U.S. at 200-01.  Accordingly, this Court should clarify that the general class does not include children who are living with their parents on a trial home visit, or children who have not yet been removed from their home.  Otherwise, the general class would be fatally overbroad.

In *DeShaney*, a child who had been the victim of abuse by his father sued Winnebago County Department of Social Services ("DSS") alleging that the county had violated his substantive due process rights under the Fourteenth Amendment.  *Id.* at 191.  The plaintiff's parents were divorced, and the plaintiff's stepmother had reported to the police that the plaintiff's father had abused the plaintiff and, as a result, a caseworker from DSS investigated the abuse.  *Id.* at 192.  The plaintiff's father denied that any abuse occurred, and DSS did not pursue the investigation further.  *Id.*  Later, the plaintiff was hospitalized under circumstances indicating abuse, and the examining physician reported suspected child abuse to DSS.  *Id.*  This time, DSS obtained an order granting DSS temporary custody from the juvenile court.  *Id.*  However, DSS ultimately determined that the plaintiff could return home under a voluntary safety agreement with the plaintiff's father.  *Id.*

Under the safety agreement, upon the plaintiff's return home to his father, a DSS caseworker continued to provide services to the family.  For example, for a six-month period, the caseworker made monthly visits to the family's home and DSS provided the father with counselling services.  *Id.*  During the monthly visits, the caseworker observed a number of suspicious injuries to the plaintiff along with other violations of the safety agreement, but DSS did not remove the plaintiff from his father's care.  *Id.* at 192-93.  Tragically, the plaintiff's father abused the plaintiff so severely that he fell into a life-threatening coma and needed emergency brain surgery.  *Id.*  The plaintiff alleged that the county, DSS, and various individual employees at DSS violated the plaintiff's substantive due process rights for "failing to protect him against a risk of violence at his father's hand of which they knew or should have known." *Id.* at 193.

The Supreme Court held that the plaintiff could not bring a cause of action against the defendants for failure to protect the plaintiff from his own parent.  *Id.* at 202.  The Court explained that the Substantive Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimum levels of safety and security."  *Id.* at 195. The clause's "purpose [is] to protect people from the State, not to ensure that the State protected them from each other.  The Framers were content to leave the extent of governmental obligation in the latter area to the democratic processes."  *Id.* at 196.  Accordingly, there is no "affirmative right to governmental aid," and "[if] the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them."  *Id.* at 196-97.

Applying the law to the plaintiff's case, the Court explained:

> Petitioners concede that the harms Joshua suffered occurred *not while he was in the State's custody, but while he was in the custody of his natural father, who was in no sense a state actor*. While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. *That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety having once offered him shelter.*

*Id.* at 201 (emphasis added). The Court distinguished the plaintiff's case from a case in which a child has been physically removed from the child's parents' home, explaining that if the plaintiff had been "placed . . . in a foster home operated by its agents, we might have a different situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect." *Id.* at 201 n.9. Accordingly, the Court concluded:

> Judges and lawyers, like other humans, are moved by a natural sympathy in a case like this to find a way for Joshua and his mother to receive adequate compensation for the grievous harm inflicted upon them. But before yielding to that impulse, it is well to remember once again that the harm was inflicted not by the State of Wisconsin, but by Joshua's father. The most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them. In defense of them it must also be said that had they moved too soon to take custody of the son away from the father, they would likely have been met with charges of improperly intruding into the parent-child relationship, charges based on the same Due Process Clause that forms the basis for the present charge of failure to provide adequate protection.

*Id.* at 203.

This Court should reject plaintiffs' invitation to yield to that same impulse here. Several other courts have adhered to *DeShaney*'s general rule that a child does not have a substantive due process right to be removed from their parent's custody. *See*, *e.g.*, *Wooten v. Campbell*, 49 F.3d

696, 699 (11th Cir. 1995) (holding that the Substantive Due Process Clause is not "implicated where a public agency is awarded legal custody of a child, but does not control that child's physical custody except to arrange a court-ordered visitation with the non-custodial parent"); *K.H. v. Morgan*, 914 F.2d 846, 852 (7th Cir. 1990) ("Certainly if a state decides to return a child whom it has taken custody of to the child's natural parents, those parents do not become state agents.  That would undo *DeShaney*.").[2]  This Court should do the same in this case.

Moreover, the Supreme Court has made clear that parents have a substantive due process right to care for their own children.  *See Troxel v. Granville*, 530 U.S. 57, 66 (2000) ("[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.").  As one court explained, "[s]tate employees who withhold a child from her family run the risk of being sued by the family for infringing their liberty of familial association."  *K.H.*, 914 F.2d at 853.  Courts should not "place child welfare workers on a razor's edge—damned if they return the child to [his or her] family and damned if they retain custody of the child or place him in a foster home or institution."  *Id.*

---

[2] Although some courts have distinguished *DeShaney* in individual damages cases involving unique factual circumstances, this Court should decline to do so here for several reasons.  *See Currier v. Doran*, 242 F.3d 905, 921 (10th Cir. 2001) (holding that an exception to *DeShaney* exists where the state transfers custody from one parent to another and instructs non-custodial parent to stop reporting abuse by custodial parent); *but see Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106-07 (10th Cir. 2014) (distinguishing *Currier* based on the individual factual circumstances of the case).  First, those cases involved a different legal theory than the legal theory plaintiffs bring here.  Here, plaintiffs assert that the special relationship exception to *DeShaney* applies.  *Currier* involved the state-created danger exception, which is a separate claim.  *See L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 247 n. 57 (3d Cir. 2016) (declining to address the plaintiffs' "special relationship" claim because "this is an entirely separate theory" from the state-created danger exception).  Second, this is a class action, so it is not an appropriate case to decide such individualized claims.

Departure from *DeShaney*'s general rule would be particularly inappropriate in this case. This case is aimed at the State's high-level policies; it is not a case involving individual claims for damages based on specific, individualized factual circumstances.  Here, plaintiffs seek more emphasis on removing children from their homes.  The emphasis they seek reflects plaintiffs' view that parents of children in foster care are potential perpetrators of abuse that must be closely monitored, and children as potential victims that must be "saved" from their families.  But, as defendants have explained, plaintiffs' views are inconsistent with the direction that modern child welfare agencies are moving.  *See*, *e.g.*, (Dkt. 372 at 13-14); Family First Prevention Services Act, P.L. 115-123 (2018); Theo Liebmann, *What's Missing from Foster Care Reform?  The Need for Comprehensive, Realistic, and Compassionate Removal Standards*, 28 Hamline J. Pub. L. & Pol'y 141,153 (2006) (discussing the history of foster care and explaining that the "zeal" of child advocates "while derived from admirable impulses to protect children, was powerful and uncompromising, and had no room for broader considerations of the harms children might suffer from being separated from their families and communities").

Instead, as defendants have explained, the best way to improve outcomes for children is to keep them from entering foster care in the first place.  (Dkt. 372 at 49.)  The decision to separate a family is a serious, complex, and difficult one, and the placement of children in stranger foster care should only be utilized when no other options exist.  (*Id.*)  This Court should—again—reject plaintiffs' attempt to put their thumb on the scale in favor of separating children from their parents and keeping them separated.

**B.    If this Court modifies the class definition to include children who are living at home with their parents, this Court should certify its order for an interlocutory appeal.**

If this Court grants plaintiffs' motion and modifies the class definition to include children in the physical custody of their own parents, the Court should certify its order for an

interlocutory appeal under 28 U.S.C. § 1292(b).  The Interlocutory Appeals Act, 28 U.S.C. § 1292(b), authorizes district courts to certify an order for interlocutory appeal if (1) the "order involves a controlling question of law"; (2) there is "substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  For the reasons discussed below, the certification criteria under § 1292(b) would be met by an order including children at home in the class definition.[3]

### 1.    The Court's order involves a controlling question of law.

The question at issue here qualifies as a controlling question of law under § 1292(b).  A question of law is controlling if an answer "could materially affect the outcome of litigation in the district court."  *Arizona v. Ideal Basic Indus. (In re Cement Antitrust Litig.)*, 673 F.2d 1020, 1026 (9th Cir. 1981).  Here, the parties dispute whether defendants have a constitutional duty to protect children from their own parents in their own homes.  This is a pure question of law and resolution of this issue will materially affect the outcome of the litigation.  As part of their settlement, the parties agreed that defendants have different obligations if the definition of "children in care" for the purposes of this litigation includes children at home with their own parents.  If children at home with their parents are properly in this class, the measurements used to assess defendants' progress towards ultimate outcomes under the Settlement Agreement will be different.  Thus, resolution of this legal issue directly and materially affects the outcome of the litigation.

---

[3] To be sure, an order expanding the class definition to include a new group of children would also be subject to appeal under FRCP 23(f) as an order granting or denying class certification.  *See Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 636 (9th Cir. 2020) (holding that FRCP 23(f) permits appeals of orders that "materially change the original certification order and thereby affect the status quo").  Rule 23(f) does not require certification from this Court as a prerequisite to an interlocutory appeal.

**2.      If the Court expands the definition of the general class, there would be substantial grounds for difference of opinion.**

If the Court expands the definition of the general class, there would be substantial grounds for difference of opinion as to whether defendants owe a duty to protect children from their own parents. A substantial ground for difference of opinion exists in cases involving issues on which "fair-minded jurists might reach contradictory conclusions." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Additionally, "courts must examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Thus, a party may show that a substantial ground for difference of opinion exists by identifying conflicting or contradictory opinions. *Id.* at 634 (internal citation omitted). Courts will also find that a substantial ground for difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point," or if "novel and difficult questions of first impression are presented." *Id.* at 633. As shown, the Supreme Court has long held that the Substantive Due Process Clause does not create a cause of action against defendants for "failing to protect [a child] against a risk of violence at his [parent's] hand." *DeShaney*, 489 U.S. at 193. The Ninth Circuit has never held that a child welfare agency owes a duty to protect children from their own parents, and case law from other circuits confirms that no such duty exists. *See*, *e.g.*, *Wooten*, 49 F.3d at 699; *K.H.*, 914 F.2d at 852. Thus, at the very least, there would be substantial grounds for difference of opinion on this issue.

**3.      An immediate appeal from the Court's order would materially advance the ultimate termination of the litigation.**

If this Court expands the definition of the general class, an immediate appeal would materially advance the ultimate termination of the litigation. Here, the parties have settled this case but disagree about whether the general class includes children who are living at home with

their parents.  The parties agree that this unresolved issue will alter the rights and remedies

available under the Settlement Agreement, which may remain in effect for ten years.

Accordingly, resolution of this issue will "materially advance" the "ultimate termination" of the

litigation via the settlement.

**CONCLUSION**

For the reasons explained above, this Court should exercise its authority under FRCP

23(d) to determine the course of proceedings and confirm that the general class does not include

children who are living at home with their parents.  Alternatively, this Court should certify any

contrary order for an interlocutory appeal under 28 U.S.C. § 1292(b).

DATED: May 31, 2024              ELLEN ROSENBLUM
                                 ATTORNEY GENERAL
                                 FOR THE STATE OF OREGON


                                 *s/ Kelsie G. Crippen*
                                 David B. Markowitz, OSB #742046
                                 DavidMarkowitz@MarkowitzHerbold.com
                                 Laura Salerno Owens, OSB #076230
                                 LauraSalerno@MarkowitzHerbold.com
                                 Harry B. Wilson, OSB #077214
                                 HarryWilson@MarkowitzHerbold.com
                                 Lauren F. Blaesing, OSB #113305
                                 LaurenBlaesing@MarkowitzHerbold.com
                                 Vivek A. Kothari, OSB #182089
                                 VivekKothari@MarkowitzHerbold.com
                                 *Special Assistant Attorneys General for Defendants*

                                 Adele J. Ridenour, OSB #061556
                                 AdeleRidenour@MarkowitzHerbold.com
                                 Anit K. Jindal, OSB #171086
                                 AnitJindal@MarkowitzHerbold.com
                                 David A. Fauria, OSB #170973
                                 DavidFauria@MarkowitzHerbold.com
                                 Kelsie G. Crippen, OSB #193454
                                 KelsieCrippen@MarkowitzHerbold.com
                                 *Of Attorneys for Defendants*

**Page 15 –    DEFENDANTS' MOTION TO CONFIRM THE DEFINITION OF THE
               GENERAL CLASS**

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us
Sheila H. Potter, OSB #993485
sheila.potter@doj.state.or.us
*Of Attorneys for Defendants*

2147477