**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
**Vivek A. Kothari, OSB #182089**
VivekKothari@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for Defendants*
*Additional Counsel of Record Listed on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S.; BERNARD C.; NAOMI B.; and NORMAN N., individually and on behalf of all others similarly situated, | Case No. 6:19-cv-00556-AA **DEFENDANTS' NOMINATION OF JULIE FARBER, MSW TO SERVE AS NEUTRAL** |
| Plaintiffs, | |
| v. | |
| TINA KOTEK, Governor of Oregon in her official capacity; FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; APRILLE FLINT-GERNER, Director, Child Welfare in her official capacity; and OREGON DEPARTMENT OF HUMAN SERVICES, | |
| Defendants. | |

Page 1 –    DEFENDANTS' NOMINATION OF JULIE FARBER TO SERVE AS NEUTRAL

## INTRODUCTION

With 30 years' experience in every aspect of child welfare work including leading a foster care agency, setting policy for a leading child welfare advocacy organization that litigates child welfare class action lawsuits around the country, and serving on monitoring teams, Julie Farber is the right choice to serve as a Neutral.  She meets all the requirements of the Settlement Agreement and the principles that guide the United States Department of Justice when it selects monitors in civil settlements involving governmental entities in a range of cases, including ones that involve ADA claims identical to the ones in this case.  Her experience across the child welfare spectrum will allow her to help the parties advance the work of transforming Oregon's child welfare system to improve outcomes for children and families in the shortest time frame possible.  Defendants respectfully request that this Court appoint Julie Farber as the Neutral.

## I.    Standard

This Court has wide latitude to choose the Neutral.  The Settlement Agreement requires that the Neutral possess three qualifications: (1) prior experience with child welfare systems; (2) experience with the federal oversight process; and (3) knowledge of current child welfare best practices and trends.  (5/17/24 Settlement Agreement (Dkt. 481) § 4.1.)

Beyond the Settlement Agreement's requirements, the Court should also consider principles that the United States Department of Justice ("USDOJ") uses when selecting monitors "in civil settlement agreements and consent decrees." (9/13/21 Review of the Use of Monitors in Civil Settlement Agreements and Consent Decrees Involving State and Local Governmental Entities ("Garland Memo"), attached to the Declaration of Vivek Kothari ("Kothari Decl.") as

Ex. 2 at 1.)[1]  The Garland Memo recognizes that the USDOJ primarily uses monitors in three types of cases, including "lawsuits regarding the rights of people with disabilities pursuant to Title II of the American with Disabilities Act, 42 U.S.C. § 121132, *et. seq.*, and *Olmstead v. L.C.*, 527 U.S. 581 (1999)," which is one of the claims brought by plaintiffs in this lawsuit.  (*Id.* at 3.)  Therefore, its principles apply in the context of this case.

The Garland Memo is the result of substantial research.  (*Id.* at 3-4.)  The USDOJ conducted a systematic review that involved surveying the heads of civil litigating components and United States Attorneys, studying current and historical uses of consent decrees, and convening 50 listening sessions with key stakeholders that included current and former monitors, state and local officials, civil rights advocates, community leaders, and academics relating to system-wide reform in civil settlement agreements involving state and local governmental entities.  (*Id.* at 2-4.)

So, while Garland Memo's principles are not binding on this Court, they provide a useful barometer to consider the neutrals proposed by both parties.  As used in the Garland Memo, the term "monitor" includes "any third party whose job is to monitor a state or local governmental entity's compliance with the terms of any settlement agreement or consent decree, whether the third party is called a monitor, trustee, auditor, or other name."  (*Id.* at 1, fn. 3.)  It articulates five principles:

*First*, monitorships should be designed to "avoid any appearance of a conflict of interest," because "such an appearance can undermine a community's trust in the consent decree process."  (*Id.* at 5.)  In the same vein, an individual "serving as the lead monitor should be

---

[1] The Garland Memo uses "neutral" and "monitor," as well as the phrases "settlement agreement" and "consent decree," interchangeably and we will do the same.  (*See* Garland Memo, Kothari Decl. Ex. 2 at 2, fn.1 and 3.)

**Page 3 –    DEFENDANTS' NOMINATION OF JULIE FARBER TO SERVE AS NEUTRAL**

solely committed to the jurisdiction they are serving and should not be simultaneously supporting multiple monitorships at the same time." (*Id*. at 6.)

*Second*, monitors must be accountable to the court, the parties, and the public. (*Id*.)

*Third*, monitors should assess compliance consistently across jurisdictions. (*Id.* at 7.)

*Fourth*, the USDOJ prioritizes sustained, meaningful engagement with the community, including using "the modern tools of communication, such as social media, to ensure they're reaching community members whose voices are not as regularly heard." (*Id.* at 8.)

*Fifth*, monitoring must be structured to efficiently move jurisdictions into compliance. (*Id.* at 9.)

## II.    This Court should select Julie Farber as the Neutral.

This court should select Ms. Farber as the Neutral. (*See* Julie Farber Resume and Publications ("Farber Resume"), Kothari Decl. Ex. 1.) Ms. Farber has dedicated her career to advocating for systemic change to improve outcomes for children and families. (*Id*.) For 30 years she has brought a data-driven, accountability focused approach to leading and supporting others to produce measurable and documented improvements in child-serving systems. (*Id*.) She meets all of the qualifications set out in the Settlement Agreement, and her selection would satisfy all of the principles identified in the Garland Memo.

### A.    Ms. Farber offers experience across the child welfare spectrum.

Ms. Farber brings a unique set of experiences to the Neutral position. She has first-hand experience with all three facets of class action litigation: as monitor, plaintiff, and defendant. (Farber Resume, Kothari Decl. Ex. 1.)

Early in Ms. Farber's career, she served on monitoring teams at the Center for the Study of Social Policy ("CSSP"), learning the art and science of monitoring while supervising jurisdictions across the country. (*Id*. at 3.) Ms. Farber's work included providing technical

assistance to advance key reforms in the context of class action litigation. (*Id.*) This experience on monitoring teams provided Ms. Farber with the foundation to identify and measure key child welfare system processes and outcomes and facilitate conversations between plaintiffs and defendants that result in positive change for children and families.

Ms. Farber has also served in leadership roles at a leading child welfare advocacy organization that uses litigation to effect change in child welfare systems. (Farber Resume, Kothari Decl. Ex. 1 at 3.) For five years, she served as the Director of Policy at Children's Rights, Inc., where she reported to plaintiffs' lead counsel. Children's Rights has brought child welfare class action lawsuits[2] across the country, including in Arizona, Florida, Washington, and Kansas, among others. Among other responsibilities, Ms. Farber worked with Children's Rights' litigation teams to assess child welfare system performance and provided technical assistance and strategic direction to support reform. (*Id.*) She believes strongly in the important role that child advocacy organizations can play.[3]

Finally, Ms. Farber led the New York City foster care system and has worked in and with child welfare systems in multiple other jurisdictions, including those operating under judicial oversight. (Farber Resume, Kothari Decl. Ex. 1 at 1-2.) From 2015 through 2022, Ms. Farber served as Deputy Commissioner for the New York City Administration for Children's Services ("ACS"). (*Id.* at 1.) In that position, Ms. Farber managed a $25 million annual budget and oversaw 300 staff and 26 nonprofit agencies with $500 million in annual contracts. (*Id.*) She produced measurable improved outcomes for children and families, including:

- reducing the numbers of children in foster care by 21%;

---

[2] Children's Rights, *In the Courts*, https://www.childrensrights.org/in-the-courts (last visited June 6, 2024).

[3] Ms. Farber left Children's Rights amicably.

- reducing the length of stay in foster care by 9%;

- increasing the proportion of children placed with relatives or friends (kinship care) from 31% to 42%; and

- increasing foster home recruitment by 50%.

(Farber Resume, Kothari Decl. Ex. 1 at 1.)

Ms. Farber also has experience operating under a consent decree.  In Washington D.C., she coordinated child welfare system reform initiatives within the Deputy Mayor's office while the D.C. child welfare system operated under judicial oversight.  (*Id*. at 3.)

### B.    Ms. Farber meets the Settlement Agreement's requirements and the principles articulated in the Garland Memo.

Ms. Farber easily meets the requirements of the Settlement Agreement.  (*See* Settlement Agreement (Dkt. 481) § 4.1.)  She has experience in child welfare systems including her role leading New York City's foster care system.  Additionally, she has experience working on monitoring teams at CSSP.  Through multiple roles during her career, she is familiar with the federal oversight process, specifically the complex and technical Child and Family Services Reviews (CFSR) process.  (Farber Resume, Kothari Decl. Ex. 1 at 4-5.)  Ms. Farber is also extremely knowledgeable of current child welfare best practices and trends based upon her 30-year career in the industry and current work consulting, where she provides technical assistance to government and nonprofit organizations to support the design and implementation of human service reforms and innovations to improve outcomes for children and families.  (*See supra*.)

She also satisfies the principles articulated in the Garland Memo.  In our conferrals, plaintiffs have identified no conflicts of interest.  (Kothari Decl. ¶ 3.)  Indeed, Ms. Farber has experience in a leadership position at Children's Rights, a leading child welfare advocacy organization where she reported directly to lead plaintiffs' counsel.  Nor is Ms. Farber serving as

a neutral or monitor in any other jurisdiction.  Further, not only will the terms of the Settlement

Agreement ensure accountability, but Ms. Farber also has 30 years of experience working in

child welfare and has a demonstrated history of being held accountable by litigants, courts, and

the public.  (*See* Farber Resume, Kothari Decl. Ex. 1.)  Having previously served on monitoring

teams and leading and working in child welfare agencies across the country, she can assess

compliance across jurisdictions.  (*Id.*)  She is committed to including the voices of all

communities and has a proven track record of achieving substantial progress in key child welfare

areas so she can help to ensure that Oregon improves outcomes for children and families as

quickly as possible.

     Ms. Farber's experience across the child welfare spectrum equips her with a

comprehensive and nuanced understanding of the entire system, enabling her to be an

exceptionally effective Neutral.  (*See* Garland Memo, Kothari Decl. Ex. 2 at 8.) (explaining that

the neutral selected "should be able demonstrate an understanding of [a] variety of interests and

perspectives").)  She combines the plaintiffs' perspective on system change with the defendants'

understanding of what is required to implement systemic change within child serving systems.

She can provide technical assistance to overcome the difficult challenges that exist.  Perhaps

most importantly, she understands the priorities that are important to all and can communicate

credibly regarding the needs, concerns, and interests of all involved.  Appointing Ms. Farber as

the Neutral will benefit Oregon's children and families for decades to come.

     In conferral, plaintiffs have articulated only one reason why they oppose Ms. Farber's

nomination—because she has led a child welfare agency which was a defendant in a child

welfare lawsuit.  (Parties' Conferral Communications, Kothari Decl. Ex. 3 at 2-3.)  Under this

standard, plaintiffs' own choice would be disqualified because he led New Jersey's child welfare

agency while it was a defendant in a child welfare lawsuit. Plaintiffs have not offered any reason why their choice is different from Ms. Farber in this regard, despite being requested to provide their reasoning. (*Id.* at 3; 6/2/24 Email from Marcia Lowry ("Lowry Email"), Kothari Decl. Ex 4 (failing to answer this question).) Plaintiffs' skepticism of Ms. Farber also ignores her other professional experiences on a monitoring team and with Children's Rights. Ms. Farber's experience across the spectrum of child welfare is a strength and defendants respectfully ask this Court to select Ms. Farber as the Neutral.

## III. The plaintiffs' nominee does not meet the principles established by the Garland Memo.

Plaintiffs nominate Kevin Ryan to be the Neutral. (Kothari Decl. ¶¶ 5-6.) As a monitor in several other jurisdictions, Mr. Ryan has a strong background and impressive credentials. Under different circumstances, he might be an excellent pick to serve as the Neutral. But because he does not meet several of the Garland Memo's principles, Ms. Farber is a more appropriate choice here.

Mr. Ryan's involvement in prior cases brought by plaintiffs' counsel creates the appearance of a conflict. He and his firm, Public Catalyst, are serving as the monitor in at least four states (Mississippi, Michigan, Oklahoma, and Texas) where plaintiffs' counsel settled or otherwise adjudicated a class action lawsuit.[4] For the work on these cases brought by plaintiffs' counsel, Mr. Ryan and his firm have earned over $85 million in monitoring fees. Plaintiffs' lead counsel has recommended Mr. Ryan in every case requiring outside supervision since Mr. Ryan founded his firm, Public Catalyst. (*See* Lowry Email, Kothari Decl. Ex 4.) That connection

---

[4] The Texas case did not result in a settlement and the parties went to trial. *M.D., et al. v. Abbott, et al.* 2:11-cv-00084, USDC S.D. Texas (2011). Following trial, the Texas court appointed Public Catalyst as monitors after soliciting recommendations from both parties. (Lowry Email, Kothari Decl. Ex 4.)

**Page 8 –    DEFENDANTS' NOMINATION OF JULIE FARBER TO SERVE AS NEUTRAL**

establishes the appearance of a conflict.  (*See* Garland Memo, Kothari Decl. Ex. 2 at 5

(explaining that the "appearance [of a conflict of interest] can undermine a community's trust in

the consent decree process" and that survey participants encouraged USDOJ to do more to

"dispel the perception that monitoring is becoming a cottage industry, closed to outside

voices.").)

      Next, according to his resume, Mr. Ryan currently serves as the monitor (or equivalent)

in at least six jurisdictions, so he cannot satisfy the principle that the lead monitor "should be

solely committed to the jurisdiction they are serving and should not be simultaneously

supporting multiple monitorships at the same time."  (Garland Memo, Kothari Decl. Ex. 2 at 6.)

Oregon's children and families deserve the full attention of the Neutral.

      Finally, while monitoring "must be structured to efficiently move jurisdictions into

compliance," (Garland Memo, Kothari Decl. Ex. 2 at 9), none of the jurisdictions where Public

Catalyst has served as a monitor have exited their settlement agreements or consent decrees.

      Therefore, despite Mr. Ryan's impressive credentials and experience with monitoring

other jurisdictions, defendants believe that Ms. Farber is a more appropriate choice to serve as a

Neutral.  (Kothari Decl. ¶¶ 5-6.)

## IV.    Defendants approached the process of selecting a Neutral in the spirit of collaboration and cooperation.

      Defendants engaged in an open-minded, rigorous, and equitable process designed to

identify the best candidate for the Neutral position.  (Kothari Decl. ¶ 2.)  Defendants cast a wide

net, gathered dozens of potential candidates, and vetted them.  (*Id*.)  The Child Welfare, ODHS

Directors, and a representative from the Governor's office, among others, interviewed 12

finalists.  (*Id*.)  The same questions were asked to each candidate to promote equity in the

process.  (*Id*.)  Defendants offered the list of 12 finalists to plaintiffs, identified their top five

candidates, and informed plaintiffs that any of the top five would be acceptable.  (Conferral Communications, Kothari Decl. Ex. 3 at 2-8; Kothari Decl. ¶ 2.)

Plaintiffs took a different approach.  Having already worked with Mr. Ryan in several different jurisdictions, they settled on him as their nominee very early in the case and did not meaningfully consider the candidates presented by defendants.  (Kothari Decl. ¶¶ 4-5.)  They rejected each of the 12 candidates defendants proposed and did not even interview some of the five candidates on defendants' short list.  (Conferral Communications, Kothari Decl. Ex. 3 at 3.) While claiming to desire a collaborative and cooperative process, plaintiffs offered a take it or leave it proposition by offering only one candidate who initially demanded almost a $1 million per year to serve.  (*Id*. at 1-3; Kothari Decl. ¶¶ 4-5.)  Plaintiffs' approach does not reflect the type of collaborative or cooperative process defendants had envisioned or expected at the outset of the selection process.

## CONCLUSION

Defendants respectfully request that the Court appoint Ms. Farber as the Neutral.

DATED: June 7, 2024.                ELLEN ROSENBLUM
                                    ATTORNEY GENERAL
                                    FOR THE STATE OF OREGON


                                    _____
                                    David B. Markowitz, OSB #742046
                                    DavidMarkowitz@MarkowitzHerbold.com
                                    Laura Salerno Owens, OSB #076230
                                    LauraSalerno@MarkowitzHerbold.com
                                    Harry B. Wilson, OSB #077214
                                    HarryWilson@MarkowitzHerbold.com
                                    Lauren F. Blaesing, OSB #113305
                                    LaurenBlaesing@MarkowitzHerbold.com
                                    Vivek A. Kothari, OSB #182089
                                    VivekKothari@MarkowitzHerbold.com
                                    *Special Assistant Attorneys General for Defendants*

Adele J. Ridenour, OSB #061556
AdeleRidenour@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
David A. Fauria, OSB #170973
DavidFauria@MarkowitzHerbold.com
Kelsie G. Crippen, OSB #193454
KelsieCrippen@MarkowitzHerbold.com
*Of Attorneys for Defendants*

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us
Sheila H. Potter, OSB #993485
sheila.potter@doj.state.or.us
*Of Attorneys for Defendants*

2152270

**Page 11 – DEFENDANTS' NOMINATION OF JULIE FARBER TO SERVE AS NEUTRAL**