**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
**Vivek A. Kothari, OSB #182089**
VivekKothari@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for Defendants*
*Additional Counsel of Record Listed on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S.; RUTH T.; BERNARD C.; NAOMI B.; and NORMAN N., individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>TINA KOTEK, Governor of Oregon in her official capacity; FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; APRILLE FLINT-GERNER, Director, Child Welfare in her official capacity; and OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>     Defendants. | Case No. 6:19-cv-00556-AA<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' BRIEF ON THE DEFINITION OF CHILD IN CARE** |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

I.      The Court already correctly ruled that children in their parents' care are not part
        of the General Class. ................................................................................2

II.     Plaintiffs' proposed expansion of the general class is not supported by the
        Fourteenth Amendment. ...........................................................................4

        A.      The government did not have a "special relationship" with the plaintiff in
                *DeShaney* even though the plaintiff was receiving in-home services from a
                child protection agency. ...............................................................5

        B.      The Ninth Circuit has held that a person is in "custody" for purposes of the
                special relationship doctrine when the person is in the state's physical
                custody. ......................................................................................7

        C.      None of the cases plaintiffs cite establish that the "special relationship"
                exception applies to children living at home with their parents. ............8

        D.      Plaintiffs' late assertion of a "state-created danger" theory of liability fails. ........11

                1.      Plaintiffs never brought a substantive due process claim based on a
                        state-created danger theory. ...............................................11

                2.      Neither the decision not to remove children from their homes nor
                        the decision to return children to their homes are sufficient to
                        establish that the state-created danger exception applies. ...............13

III.    State juvenile law and federal funding regulations do not govern the scope of the
        Substantive Due Process Clause. ..............................................................17

IV.     Plaintiffs' ADA argument, which is based on a regulation that will not come into
        effect until July 2024, is not helpful for determining the scope of the general class
        that was certified in 2022. ......................................................................19

V.      Plaintiffs' factual assertions are not helpful for resolving the legal question before
        this Court. ..........................................................................................21

CONCLUSION ................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**State Cases**

*A.M. ex rel. Youngers v. New Mexico Dep't of Health*,
  65 F. Supp. 3d 1206 (D.N.M. 2014) ............................................................... 10

*Ansari v. Carter*,
  No. CV-19-05636-PHX-JJT (MHB), 2020 WL 4933626 (D. Ariz. Aug. 24, 2020).. 12, 20

*Booth v. Appstack, Inc.*,
  No. C13-1533JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015)............................ 2

*Briggs v. Oklahoma*,
  472 F. Supp. 2d 1294 (W.D. Okla. 2007) ........................................................ 10

*Cassie M. ex rel. Irons v. Chafee*,
  16 F. Supp. 3d 33 (D.R.I. 2014), *rev'd on other grounds,* 784 F.3d 825 (1st Cir. 2015) ........................................................................................................... 19

*Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) .......................................................................... 2

*Currier v. Doran*,
  242 F.3d 905 (10th Cir. 2001) ................................................................. 10, 11

*D.W. by Renaud v. N.J. Div. of Child Prot. & Permanency*,
  No. CV2115789ZNQJBD, 2023 WL 3626266 (D.N.J. May 24, 2023) ................... 10, 11

*DeAnzona v. City and Cnty. of Denver*,
  222 F.3d 1229 (10th Cir. 2000) ..................................................................... 10

*DeShaney v. Winnebago County Department of Social Services*,
  489 U.S. 189 (1989)............................................................... 4, 5, 6, 7, 8, 16, 17

*Henry A. v. Willden*,
  678 F.3d 991(9th Cir. 2012) ................................................................ 9, 10, 12

*Jeff D. v. Andrus*,
  899 F.2d 753 (9th Cir. 1989) ........................................................................ 21

*Johnson v. City of Seattle*,
  474 F.3d 634 (9th Cir. 2007) ......................................................... 13, 14, 16, 17

*L.R. v. Sch. Dist. of Philadelphia*,
  836 F.3d 235 (3d Cir. 2016).......................................................................... 12

*LA All. for Hum. Rts. v. Cnt.y of Los Angeles*,
    14 F.4th 947 (9th Cir. 2021) ................................................................ 12, 13

*Lipscomb By & Through DeFehr v. Simmons*,
    962 F.2d 1374 (9th Cir. 1992) ............................................................ 8, 9, 18

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ...................................................................... 11

*Martinez v. City of Clovis*,
    943 F.3d 1260 (9th Cir. 2019) .................................................................... 12

*Mayweathers v. Terhune*,
    136 F. Supp. 2d 1152 (E.D. Cal. 2001) ........................................................ 8

*Miles v. Wesley*,
    801 F.3d 1060 (9th Cir. 2015) .................................................................... 24

*Murguia v. Langdon*,
    61 F.4th 1096 (9th Cir. 2023) ........................................................ 14, 15, 16

*Nicini v. Morra*,
    212 F.3d 798 (3d Cir. 2000) ............................................................... 10, 11

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
    810 F.3d 631 (9th Cir. 2015) ...................................................................... 2

*Patel v. Kent Sch. Dist.*,
    648 F.3d 965 (9th Cir. 2011) .............................................................. 4, 7, 8

*Samson v. City of Bainbridge Island*,
    683 F.3d 1051 (9th Cir. 2012) .................................................................... 17

*Sinclair v. City of Seattle*,
    61 F.4th 674 (9th Cir. 2023) ............................................................... 12, 13

*Younger v. Harris*,
    401 U.S. 37 (1971) .................................................................................... 24

**Statutes**

ORS 419B.440-443 ...................................................................................... 24

**Rules**

FRCP 23 ............................................................................................................. 25

FRCP 8 ............................................................................................................... 4

**Regulations**

45 C.F.R. § 84.60 .............................................................................................. 20

**Other**

Children's Bureau, Child Welfare Policy Manual § 8.3C.5 ........................................ 18

U.S. Department of Health and Human Services, *Nondiscrimination on the Basis of
Disability in Programs or Activities Receiving Federal Financial Assistance,* 89
FR 40066, 40161 (May 9, 2024) ...................................................................... 20

## INTRODUCTION

The question before the Court is whether the general class includes children who are living at home with their parents. Children may be living at home with their parents while the juvenile court has jurisdiction over the child if the child has been reunited with their parents as part of a trial reunification or if ODHS is providing in-home services to the child and their family to prevent removal. This Court should confirm that the class does not include children who, although they are in the legal custody of ODHS, are living at home with their parents. This Court has already ruled that plaintiffs never raised those issues in their Complaint and that those issues are beyond the scope of the claims certified for class-wide resolution. Instead, the general class includes children for whom the state has "legal responsibility" for purposes of the Substantive Due Process Clause, and "legal responsibility" in that context is triggered when the state takes physical custody of a child. Because children who are living at home with their parents are not in the state's "custody" for purposes of the Substantive Due Process Clause, they cannot be members of the general class.

As explained below, plaintiffs' arguments to the contrary are unavailing. Plaintiffs argue that this Court should adopt a constitutional rule that would incentivize the state to remove children from their families and disincentivize family reunification. But the Constitution operates as a limitation on the state's power to intervene in families' lives, and the incentives plaintiffs advance are directly contrary to that core constitutional principle. None of the cases plaintiffs cite establish otherwise. Moreover, plaintiffs' arguments based on federal regulations and state juvenile law are not helpful for determining the scope of the Substantive Due Process Clause because the Constitution does not mandate services simply because state or federal regulations might.

**ARGUMENT**

I.    **The Court already correctly ruled that children in their parents' care are not part of the General Class.**

This Court has already correctly ruled that the issue of "harms suffered by children in the care of their parents" is "beyond the scope of the claims pleaded in the Complaint and certified for class-wide resolution."  (Dkt. 464 at 3.)  This Court's prior rulings are determinative of the scope of the general class for two reasons.

First, this Court's certification order must be read in light of the actual claims plaintiffs asserted in their Complaint and the arguments plaintiffs made in support of class certification. *See Olean Wholesale Groc. Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (explaining that, to obtain class certification, a plaintiff must demonstrate "that the common question relates to a central issue in the plaintiff's claim"); *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("A court's equitable power lies only over the merits of the case or controversy before it.  When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction.").  Because plaintiffs neither pleaded the issues they now raise nor advocated for class certification of those issues, children who are living at home with their parents are not encompassed within the Court's class certification order.

Second, as explained in defendants' motion to confirm the scope of the class, a class definition is overbroad when it necessarily includes members who are not entitled to bring suit under the applicable substantive law.  *See Booth v. Appstack, Inc.,* No. C13-1533JLR, 2015 WL 1466247, at *15 (W.D. Wash. Mar. 30, 2015) (plaintiffs' class definition was overbroad where it necessarily included members to which the substantive law did not apply).  As explained below, the general rule under the Substantive Due Process Clause is that the state does not have an

affirmative duty to protect individuals from harm caused by third parties, and the "special relationship" exception to that rule does not apply to children who are living at home with their parents.

Plaintiffs' arguments to the contrary are incorrect. Plaintiffs argue that the phrase "has or will have legal responsibility" includes children who, although they are under the legal custody of ODHS, are physically living at home with their parents. (Dkt. 487 at 14.) But the phrase "legal responsibility," when read in the context of the substantive due process claim asserted by the general class and the arguments that plaintiffs' made in support of class certification, incorporates the scope of the special relationship doctrine. Specifically, when seeking class certification, plaintiffs argued that the numerosity requirement was satisfied because the general class would include the "more than 8,000 children in DHS's legal *and* physical custody who depend on DHS to provide them a safe and appropriate place to live *after removal from their homes.*" (Dkt. 64 at 31 (emphasis added).) Similarly, in their opposition to defendants' motion to dismiss, plaintiffs argued that "Children *who have been removed from their homes* into state foster care custody, such as the Named Plaintiffs in this case, are in a 'special relationship' with the state, triggering Fourteenth Amendment due process protections." (Dkt. 35 at 25 (emphasis added).) Given that context, the phrase "legal responsibility" in this Court's class certification order means children who "have been removed from their homes," which, according to plaintiffs, triggers the state's legal responsibility under the Fourteenth Amendment.

Plaintiffs do not ask this Court to reconsider its prior rulings.[1]  This Court should confirm, consistent with those rulings, that the general class is made up of children who have been removed from their homes and placed in substitute care.

## II.    Plaintiffs' proposed expansion of the general class is not supported by the Fourteenth Amendment.

Plaintiffs argue that the general class should include children who are living at home with their parents because the state has a duty to protect those children under the Fourteenth Amendment.  Plaintiffs are incorrect for several reasons.  First, plaintiffs' argument is inconsistent with the facts and reasoning in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989).  Second, although the Ninth Circuit has never expressly addressed the argument that plaintiffs make here, the Ninth Circuit has nevertheless made clear that "custody" for purposes of the special relationship doctrine under the Fourteenth Amendment does not exist until the state has removed the child from their home, so that "parents cannot care for the child's basic needs."  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011).  Third, none of the cases plaintiffs cite in their brief justify departure from this Court's prior correct ruling on the scope of *DeShaney*.  Finally, for the reasons explained below, plaintiffs' tardy

---

[1] Plaintiffs argue that "Defendants have had over five years to challenge the inclusion of children on trial home visits as class members and over two years to challenge the inclusion of Family Preservation children." (Dkt. 487 at 15.)  But plaintiffs' argument ignores basic pleading standards and this Court's prior rulings.  Plaintiffs are required to place defendants on notice of the claims and issues in the case by filing a complaint that encompasses those issues.  *See* FRCP 8(a).  Defendants did not challenge the inclusion of children who are on trial home visits or who are being served as part of the family preservation program because, as this Court has already ruled, plaintiffs did not raise those issues in their Complaint. (Dkt. 464 at 2-3.)  When plaintiffs raised those issues in their pretrial filings, defendants objected, and this Court ruled in defendants' favor. (*Id.*)  Defendants were not required to affirmatively raise and defend against claims and arguments that plaintiffs themselves never raised.

Page 4 –    DEFENDANTS' RESPONSE TO PLAINTIFFS' BRIEF ON THE DEFINITION OF CHILD IN CARE

assertion that the state-created danger exception applies is inapposite and does not justify revisiting this Court's prior rulings.

> **A.** **The government did not have a "special relationship" with the plaintiff in** *DeShaney* **even though the plaintiff was receiving in-home services from a child protection agency.**

Plaintiffs' argument that the state has a duty under the Fourteenth Amendment to protect children from harm caused by private actors while those children are living at home with their parents is inconsistent with the U.S. Supreme Court's holding and reasoning in *DeShaney*. As *DeShaney* made clear, a state may provide in-home services to a child without triggering a duty to protect the child from harm from private actors under substantive due process clause. *Id.* at 200.

Plaintiffs argue an open juvenile court case giving the state "legal custody" over children who are living at home with their parents is sufficient to establish a "special relationship" under the Fourteenth Amendment. (Dkt. 487 at 21.) Plaintiffs' argument slices *DeShaney* too thin. In *DeShaney*, the plaintiff had been receiving in-home services from a government child protection agency for six months when his injuries occurred. *DeShaney*, 489 U.S. at 192-93. But the agency's involvement with the child while he was living at home with his father was insufficient to establish a duty under the Fourteenth Amendment. *Id.* As the Court explained, "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200.

Similarly, here, the fact that ODHS has "express[ed] intent to help" by initiating a juvenile court case and providing services to children and families in their homes does not make ODHS responsible under the Fourteenth Amendment for harms caused by non-government actors, such as the child's parents or family. *See id.* at 200. In both *DeShaney* and in this case,

the government is providing in-home services to children in their own homes.  Nonetheless, in

*DeShaney* and in this case, the fact that the government is providing in-home services does not

trigger a constitutional duty because those services do not limit plaintiffs' parents' "freedom to

act on [their] own behalf."  *Id.* at 200.

 This Court has already correctly decided that claims "related to harms suffered by

children at the hands of their own parents . . . are not cognizable under the Fourteenth

Amendment."  (Dkt. 464 at 2-3.)  This Court should adhere to its prior decision because it was

correct, and plaintiffs' argument to the contrary is unavailing.  In fact, the Court in *DeShaney*

expressly noted that its decision depended on the fact that the plaintiff had not been removed

from his home.  According to the Court, "[h]ad the State by the affirmative exercise of power

removed [the plaintiff] from free society and *placed him in a foster home operated by its agents*,

we might have a situation sufficiently analogous to incarceration or institutionalization to give

rise to an affirmative duty to protect."  *Id.* at 201 n.9 (emphasis added).  A situation where a

child is living at home with their parents and receiving services through government programs is

not "sufficiently analogous" to physical incarceration or institutionalization to give rise to

Fourteenth Amendment claims.

 Plaintiffs' argument shows that they would like to see more children removed from their

families and fewer children returning home on trial reunification.  Specifically, plaintiffs argue

that applying *DeShaney* in this case would lead to "perverse incentives" such as "plac[ing]

children with their biological parents regardless of whether they are equipped to care for them."

(Dkt. 487 at 15.)  This Court should decline to adopt a rule holding that a state has a duty under

the Substantive Due Process Clause to protect children from their own parents in order to

incentivize government intervention.  In *DeShaney*, the Court expressly warned that creating a

constitutional rule to incentivize removal would be inconsistent with the Court's caselaw, which holds that a parent has a substantive due process right to care for their children. *See DeShaney* 489 U.S. at 202-03 (warning judges and lawyers against "find[ing] a way" for the state the be held responsible for harms caused by a child's parents because, had the state prematurely removed the plaintiff from his father's home, "they would likely have been met with charges of improperly intruding into the parent-child relationship, charges based on the same Due Process Clause"). The Constitution is structured as a limitation on the government's ability to intervene in our lives. *Id.* at 195. Plaintiffs' attempt to advance a constitutional rule aimed at incentivizing government action to keep children from their parents, in the case of trial reunification, or to remove children from their families, in the case of family preservation, is inconsistent with core constitutional principles.

For those reasons, this Court should confirm that the general class includes children who have been placed in substitute foster care and that the general class does not include children who are living at home with their parents.

**B.    The Ninth Circuit has held that a person is in "custody" for purposes of the special relationship doctrine when the person is in the state's physical custody.**

Plaintiffs contend that the state is in a "special relationship" with a child if the child is in the state's legal custody even if the child remains in their own parent's physical custody. In making this argument plaintiffs ignore relevant precedent and overread the cases they do cite. In *Patel*, the Ninth Circuit reasoned that "'physical custody'" is "'necessary to bring [a defendant] within *DeShaney*.'" 648 F.3d at 973 (quoting *D.R. by L.R. v. Middle Bucks Vocational Tech. Sch.*, 972 F.2d 1364, 1372 (3d Cir. 1992)). In *Patel*, a high school student with special needs engaged in sexual encounters while unsupervised at school. *Id.* at 968-69. Although school attendance was compulsory and the school was aware of the child's special needs, the Ninth

Circuit reasoned that no special relationship existed because the child remained in her parents'
physical custody, *i.e.* she went home at night, and thus the state had not so "restrained the child's
liberty that the parents cannot care for the child's basic needs." *Id.* at 974; *see also Lipscomb By
& Through DeFehr v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992) ("The word 'custody' is
not a talisman . . . custody cases such as *DeShaney* and *Youngberg* stand for the proposition that
the government has an affirmative obligation to facilitate the exercise of constitutional rights by
those in its custody only when the circumstances of the custodial relationship directly prevent
individual exercise of those rights."). Put differently, the state must have physically separated
the child from their parents so that the parents cannot care for the child.

In this case, plaintiffs' own experts acknowledged that the circumstances of children
living at home with their parents on a trial home visit are indistinguishable from children who are
living at home with their parents under other circumstances. Specifically, plaintiffs' experts
explained that, in cases involving trial home visits, "the child has returned to their parents, and in
a sense, only the lack of a resumption of legal custody by the parent distinguishes the situation
from an official reunification." (Dkt. 365-1 at 20.) Consistent with *DeShaney*, this Court
should—again—reach the same conclusion here.

### C. None of the cases plaintiffs cite establish that the "special relationship" exception applies to children living at home with their parents.

Plaintiffs argue that the state's duty is not conditioned upon a child being in the state's
physical custody. As explained below, none of the cases plaintiffs cite justify this Court
revisiting its prior rulings. *See Mayweathers v. Terhune*, 136 F. Supp. 2d 1152, 1153-54 (E.D.
Cal. 2001) (noting a court should only revisit its prior decisions where there is a change in
controlling authority or a need to correct a clearly erroneous decision which would work
manifest injustice could justify revisiting a prior ruling).

Plaintiffs rely heavily on *Lipscomb*, but that case is not helpful for plaintiffs.  The question in *Lipscomb* was whether Oregon's foster care funding scheme violated the Equal Protection Clause because, for children who were not eligible for Title IV-E federal funding, Oregon paid non-relative foster parents a higher reimbursement rate than relative foster parents. *Lipscomb*, 962 F.2d at 1376.  The court held that Oregon's scheme was constitutionally sound. *Id.*  In reaching that conclusion, the court discussed certain "basic principles" of constitutional law, such as the principle that "[o]nce a state assumes wardship of a child, the state owes the child, as part of that persons' protected liberty interest, reasonable safety and minimally adequate care and treatment."  *Id.* at 1379.  The court went on to explain, however, that the word "'custody' is not a talisman," and "custody cases such as *DeShaney* and *Youngberg* stand for the proposition that the government has an affirmative obligation to facilitate the exercise of constitutional rights by those in its custody only when the circumstances of the custodial relationship *directly prevent* individual exercise of those rights."  *Id.* (emphasis added). Plaintiffs make no attempt to show that the fact of an open state juvenile court case giving the state "legal custody" over a child *directly prevents* the child's parents from providing reasonable safety and minimally adequate care and treatment.  Instead, plaintiffs treat "legal custody" as a talisman, directly contrary to *Lipscomb*.

Plaintiffs' reliance on *Henry A. v. Willden*, 678 F.3d 991 (9th Cir. 2012), fares no better. There, the Ninth Circuit explained that, "[g]enerally, the Fourteenth Amendment's Due Process Clause does not confer any affirmative right to government aid and typically does not impose a duty on the state to protect individuals from third parties."  *Id.* at 998 (internal quotation omitted).  In *Henry A.*, the named plaintiffs were all removed from their homes and placed in substitute care with a foster parent or other facility.  *See id.* at 997 (describing the individual

plaintiffs' circumstances). Accordingly, *Henry A.* did not address the issue before the Court in this case.

Plaintiffs also cite *A.M. ex rel. Youngers v. New Mexico Dep't of Health*, 65 F. Supp. 3d 1206, 1259 (D.N.M. 2014), asserting that the court rejected a "claim that, under *DeShaney*, New Mexico authorities lacked substantive due process obligations to person with disabilities in legal custody of state, even though state had discharged her from their care." (Dkt. 487 at 21.) Plaintiffs' summary of the court's holding is incorrect. In *A.M.*, the plaintiff was involuntarily committed to state custody and, after spending time in a state-run institution called the "Training School," was transferred to a privately-run care home called the "Homestead House." *Id.* at 1256. The court reasoned that, despite the transfer, the state had a special relationship with the plaintiff because "Training School administrators continued to exercise *both physical and legal authority* over aftercare residents like her." *Id.* at 1257 (emphasis added). In fact, *A.M.* cited favorably several cases that demonstrate physical custody of a child is necessary to establish a special relationship under *DeShaney*. For example, the *A.M.* court explained that, in the context of foster care, "'[w]here the parents are still the primary caregivers for the child there is no special relationship and no due process violation.'" *Id.* at 1258 (quoting *DeAnzona v. City and Cnty. of Denver*, 222 F.3d 1229, 1234 (10th Cir. 2000)). The court noted that "'[i]n the absence of both legal and physical custody, no special relationship exists, and thus, no attendant affirmative duty to protect exists.'" *Id.* at 1258 (quoting *Briggs v. Oklahoma*, 472 F. Supp. 2d 1294, 1301 (W.D. Okla. 2007)).

The remaining cases plaintiffs rely on, *Nicini v. Morra*, 212 F.3d 798, 808 (3d Cir. 2000), *Currier v. Doran*, 242 F.3d 905, 920 (10th Cir. 2001), and *D.W. by Renaud v. N.J. Div. of Child Prot. & Permanency*, No. CV2115789ZNQJBD, 2023 WL 3626266 (D.N.J. May 24, 2023), are

not inconsistent with the principle that physical custody must be present to give rise to a "special relationship" for purposes of the Fourteenth Amendment.  In *Nicini*, the plaintiff was a child in the state's physical custody—the plaintiff was placed in the home of a foster family that the plaintiff's older brother knew.  *Nicini*, 212 F.3d at 802.  The court held that, "[f]oster children, like the incarcerated or the involuntarily committed, are *placed in a custodial environment* and are unable to seek alternative living arrangements."  *Id.* at 808 (cleaned up; emphasis added).  In *Currier*, the court's decision was based on the state-created danger doctrine, which, as discussed below, is a separate claim from the special relationship claim plaintiffs make here.  Moreover, *Currier* was not a class action and involved individualized facts of *Currier* different from those present in this case.  Finally, in *D.W.*, the court held that the special relationship exception applied, but in that case, the children were physically removed from their mother's home.  *D.W.*, 2023 WL 3626266, at *7.[2]

In summary, plaintiffs do not cite any case that would justify this Court revisiting its prior decisions.  Thus, this Court should adhere to its prior ruling and confirm that the general class is made up of children who are in substitute care.

### D.    Plaintiffs' late assertion of a "state-created danger" theory of liability fails.

#### 1.    Plaintiffs never brought a substantive due process claim based on a state-created danger theory.

The Ninth Circuit has explained that, generally, "members of the public have no constitutional right to sue state [actors] who fail to protect them against harm inflicted by third

---

[2] Similarly, in *Marisol A.*, the court did not analyze the question of whether a state has a "special relationship" for purposes of the Fourteenth Amendment when a child is in the legal custody of the state but is physically living at home with the child's parents.  In fact, the court did not cite or analyze *DeShaney* at all, and instead certified a general class of children "who are or will be in the custody of the New York City Administration for Children's Services."  *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997).

Page 11 –    DEFENDANTS' RESPONSE TO PLAINTIFFS' BRIEF ON THE DEFINITION OF CHILD IN CARE

parties." *Sinclair v. City of Seattle*, 61 F.4th 674, 680 (9th Cir. 2023); *see also Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) ("Simply failing to prevent acts of a private party is insufficient to establish liability."). There are two exceptions to the general rule: (1) the "special relationship" exception, and (2) the "state-created danger" exception. *Id.* at 1271.

The two exceptions are distinct legal claims with different elements. "To establish a state-created danger claim, a plaintiff must establish that (1) a state actor's affirmative actions created or exposed him to an actual, particularized danger [that he] would not otherwise have faced, (2) that the injury he suffered was foreseeable, and (3) that the state actor was deliberately indifferent to the known danger." *Sinclair*, 61 F.4th at 680 (cleaned up). By contrast, to prove that the "special relationship" exception applies, a plaintiff must prove that the state has "tak[en] a person into its custody and holds him there against his will," and that the state is deliberately indifferent to the person's safety and well-being. *Henry A. v. Willden*, 678 F.3d 991, 1000 (9th Cir. 2012).

In this case, plaintiffs asserted a claim for relief under the Substantive Due Process Clause based on the special relationship exception. (Compl. ¶ 301.) Plaintiffs never alleged a claim based on the state-created danger theory, so they cannot assert such a claim now. *See, e.g.*, *LA All. for Hum. Rts. v. Cnt.y of Los Angeles*, 14 F.4th 947, 955, 957 (9th Cir. 2021) (the district court abused its discretion in entering a preliminary injunction based on legal theories not pled, including the state-created danger theory); *Ansari v. Carter*, No. CV-19-05636-PHX-JJT (MHB), 2020 WL 4933626, at *1 (D. Ariz. Aug. 24, 2020) (declining to consider the state-created danger theory advanced by the plaintiff where plaintiff failed to plead that theory, and explaining that the gravamen plaintiff's claims were "a moving target, which, once determined to be foreclosed by a provision of law, Petitioner has sought to 'clarify' by untimely adding new issues"); *L.R. v.*

*Sch. Dist. of Philadelphia*, 836 F.3d 235, 248 n.57 (3d Cir. 2016) (declining to address plaintiffs' arguments that the special relationship exception applied to the case, because the plaintiffs "does not raise this claim").

This Court should reach the same decision as the courts in *LA Alliance for Human Rights* and *Ansari* and decline to consider plaintiffs' tardy assertion of an entirely new legal theory. This Court correctly held that children who are living at home with their parents do not fall within the "special relationship" exception to *DeShaney*. Plaintiffs ignore that decision and attempt to assert an entirely new theory of liability based on the state-created danger exception. It is far too late for plaintiffs to do so. For that reason, this Court should reject plaintiffs' argument and confirm that the general class is made up of children who are in substitute foster care.

> **2.  Neither the decision not to remove children from their homes nor the decision to return children to their homes are sufficient to establish that the state-created danger exception applies.**

Notwithstanding the above, even if plaintiffs had alleged that the state-created danger exception applies and sought to certify a general class that includes children that are not in the state's physical custody, such claim would fail.

A state-created danger claim requires showing that the state in fact created or enhanced a danger; simply trying to help and failing is not enough. *Sinclair*, 61 F.4th at 680. Plaintiffs' argument otherwise is inconsistent with *Johnson v. City of Seattle*, 474 F.3d 634 (9th Cir. 2007), which is analogous to the facts of this case. In *Johnson*, ten plaintiffs brought claims under § 1983 alleging that city officials violated their substantive due process rights by affirmatively placing them in danger. *Id.* at 635. The plaintiffs had been injured in a multi-day riot and sued the city and its police department for failing to prevent the harm. *Id.* at 636. The plaintiffs argued that, since the police had intervened with crowd control measures on previous nights, the

police had a duty to continue to control the crowd. *Id.* They argued that the city officials were "liable for enhancing their danger and proximity causing their injuries by abandoning the operational plan for crowd control . . . and instead implementing a more passive plan of staying on the perimeter of the crowd." *Id.* at 638.

The District Court dismissed the plaintiffs' claims, and the Ninth Circuit affirmed. *Id.* at 635. The Ninth Circuit explained that, under *DeShaney*, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 639. According to the court, the state-created danger exception to *DeShaney* did not apply because the "decision to switch from a more aggressive operation plan to a more passive one was not affirmative conduct that placed the Pioneer Square Plaintiffs in danger, because it did not place them in any worse position than they would have been in had the police not come up with any operational plan whatsoever." *Id.* at 641. The "change of plans," the court explained, was "analogous to the decision by Joshua DeShaney's 'Child Protection Team' to transfer him from state custody to the custody of his father, whom they had reason to believe was abusive." *Id.* at 641. The fact that the defendants in *Johnson* "at one point had an operational plan that might have more effectively controlled the crowds at Pioneer Square does not mean that an alteration to this plan was affirmative conduct that placed the Pioneer Square plaintiffs in danger." *Id.*

Plaintiffs' reliance on *Murguia v. Langdon*, 61 F.4th 1096 (9th Cir. 2023), is likewise unavailing. In *Murguia*, police officers responded to a father's 911 call that his wife was having a mental health crisis. *Id.* at 1100. When the police arrived, they allowed the wife to leave to the neighbor's house with the couple's twin children. *Id.* at 1102. From there, the neighbor took the mother and children to a woman's shelter. Once there, the mother began acting erratically, so

the shelter called the police.  *Id*. at 1104.  The police arrived and observed the mother's erratic

behavior and called child protective services.  *Id.*  According to the plaintiff, the child protective

services worker lied to the police, informing them that the mother had no prior involvement with

CPS.  *Id.* at 1105.  In reality, there had been several allegations of child abuse against the

mother.  *Id.* at 1101.  Further, the officer, despite having observed the mother's erratic behavior,

drove the mother and twins to an isolated hotel, where they got a room.  That night, the mother

tragically drowned the twins in the bathtub.  *Id.* at 1105.

The twins' father sued the police officers and the CPS worker, asserting both that the

twins were in the state's custody, so the special-relationship exception applied, and that the state-

created danger exception applied.  The Ninth Circuit held that the special relationship exception

did not apply because, "In the case of a minor child, custody does not exist until the state has so

restrained the child's liberty that the parents cannot care for the child's basic needs."  *Id.* at

1109.  The Ninth Circuit noted that the "twins were always in the custody of [the

mother]."  *Id.*  The Ninth Circuit rejected the plaintiffs' argument that the defendants had "de

facto" custody because, under California law, "if one parent is . . . unable or refuses to take

custody, or has abandoned the child, the other parent is entitled to custody of the

child."  *Id.*  According to the court, as a general matter, "[r]egardless whether any Defendant had

'custody' in some sense of the word, the facts of this case simply do not resemble those in which

courts have found a custodial relationship for the purposes of imposing 1983 liability."  *Id.* at

1110.  Instead, "custody" for purposes of the special-relationship exception requires that the state

restrict the plaintiffs' parents' liberty so that the parent is unable to meet the plaintiffs' basic

needs.  *Id.*

Although the Ninth Circuit held that the state-created danger exception applied to some—but not all—defendants, the court reached that conclusion for reasons that had nothing to do with whether the state had any form of "custody" over the twins.  Specifically, the court held that the plaintiff stated a state-created danger claim against the officer who drove the mother and twins to the hotel because the officer affirmatively took actions to isolate the twins with their mother, who the officer knew was dangerous.  *Id.* at 1113.  Had the officer not acted at all, the twins would have remained with their mother at the women's shelter in the presence of third parties.  *Id.* at 1113-14.  Similarly, the plaintiffs stated a claim against the CPS worker because she affirmatively lied to the police officer, and a jury could find that placed the twins in additional danger they otherwise would not have faced.  *Id.* at 1115.

This case is like *Johnson* and *DeShaney* and is distinguishable from *Murguia*.  In *Murguia*, the plaintiffs pointed to specific actions that the defendants took to *increase* the risk of harm by third parties.  Here, by contrast, plaintiffs allege that the state's decisions to return children to their home and the state's decision not to separate children from their parents may place children at risk of harm.  (Dkt. 487 at 15.)  But returning children to their home or choosing to provide in-home services instead of separating families is more similar to *Johnson* than it is to *Murguia*.  In *Johnson* and *DeShaney*, just like in this case, the fact that the government chose a less-intrusive intervention than removing a child and keeping the child separated from their family does not mean that the government "created" the danger.

In the child welfare context, the state will almost always have knowledge of a safety risk in a parent's home—that is the basis for the state's decision to place a child into foster care.  If returning a child to their home with knowledge of the safety risk was sufficient to create liability under the state-created danger exception, the Supreme Court's decision in *DeShaney* would be

turned on its head. *DeShaney* specifically stated that a state is not liable for harm that occurs to a child after the state returns a child to their home: "That the State once took temporary custody of [the plaintiff] does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." *DeShaney,* 489 U.S. at 201. This Court should, accordingly, rely on *Johnson* and *DeShaney* and reject plaintiffs' arguments.

III.    **State juvenile law and federal funding regulations do not govern the scope of the Substantive Due Process Clause.**

The fact that Oregon has legal obligations toward children living at home with their parents on trial home visits under state and federal statutes and regulations is not determinative in the analysis of what the Substantive Due Process Clause requires. *See Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1060 (9th Cir. 2012) (explaining that "[i]t is axiomatic . . . that not every violation of state law amounts to an infringement of constitutional rights"). Nor is it determinative of the scope of issues certified for class-wide resolution, which this Court has already ruled does not include those issues. (Dkt. 464 at 3.)

Specifically, plaintiffs assert that because "DHS does not close a child's case, and the court's jurisdiction over that child does not end, by virtue of the child being placed on a trial home visit or receiving Family Preservation services," the state owes a duty to protect those children under the Substantive Due Process Clause. (Dkt. 487 at 21.) Plaintiffs are incorrect. In *DeShaney*, the Court specifically noted that, even if state law created "a duty . . . to provide [the plaintiff] with adequate protection against danger," state law does not govern the scope of the Substantive Due Process Clause. *DeShaney,* 489 U.S. at 201-202. As explained above, "custody" for purposes of the Substantive Due Process Clause requires a showing that the state

has directly prevented a child's parents from providing minimally adequate care and treatment for their child.  *Lipscomb*, 962 F.2d at 1379.  State law does not control the scope of substantive due process rights; instead, courts examine whether the state has physical custody of the child.

Similarly, the scope of the substantive due process clause does not depend on federal funding statutes and regulations.  If that were true, then Congress or federal agencies could amend substantive constitutional requirements by simply amending funding statutes and regulations.  Regardless, as explained by the Children's Bureau, there is no federal definition of "trial home visit" or "trial reunification."  *See* Children's Bureau, *Child Welfare Policy Manual* § 8.3C.5 (Foster Care Maintenance Payments Program, State Plan/Procedural Requirements, Trial home visit) ("There is no regulatory definition of the term 'trial home visit,' as it is within the State's discretion to define.  We do not think it would be appropriate for us to develop a regulatory definition.") (available at

https://www.acf.hhs.gov/cwpm/public_html/programs/cb/laws_policies/laws/cwpm/policy_dsp.jsp?citID=93).  Accordingly, the fact that Oregon is subject to federal oversight though funding regulations is not determinative of the question at issue before this Court; it simply means that there are other statutes and regulations that govern state services to children and their families.

Plaintiffs' argument about how Oregon calculates various data points, such as Oregon's maltreatment in care rate, is inapposite.  To begin, plaintiffs' argument that "[i]t cannot be that children who are on trial home visits are in DHS's custody for purposes of the agency's reentry rate yet are not in DHS's custody for purposes of its maltreatment in care rate," is factually incorrect.  (Dkt. 487 at 20.)  Children at home on a trial home visit are included in Oregon's maltreatment in care rate published on its public-facing dashboard, available at

https://www.oregon.gov/odhs/data/pages/cw-dashboard-fpm.aspx#dashboard.  (*See* Dkt. 372 at

**Page 18 –   DEFENDANTS' RESPONSE TO PLAINTIFFS' BRIEF ON THE DEFINITION OF CHILD IN CARE**

6-654.)  Moreover, there is no constitutional requirement that Oregon must track data in a specific way, and the data set Oregon uses to calculate its maltreatment in care rate or other measures is not determinative of what the Federal Constitution requires.  Indeed, each state tracks its maltreatment in care rate in different ways, which is why at least one other court has held that a state's maltreatment in care rate is not indicative of class-wide *constitutional* violations.  *See Cassie M. ex rel. Irons v. Chafee,* 16 F. Supp. 3d 33, 55-56 (D.R.I. 2014), *rev'd on other grounds,* 784 F.3d 825 (1st Cir. 2015) (in a foster care class action, plaintiffs' expert's "simplified analysis" that compared Rhode Island's maltreatment in care rate to other states' rates for purposes of establishing constitutional violations was "conceptually flawed" because it failed to consider differences between how Rhode Island calculated its maltreatment in care rate as compared to other states).  If constitutional protections depended on how states track various child welfare data points, then the constitution would mean something different in every state.

A class definition must align with the underlying substantive claims of the class.  This Court has already correctly ruled that the issue of "harms suffered by children in the care of their parents" is "beyond the scope of the claims pleaded in the Complaint and certified for class-wide resolution."  (Dkt. 464 at 3.)  Because those issues are "beyond the scope of the claims" asserted in this case, the phrase "legal responsibility," in the Court's class certification order does not encompass children whose claims are based on those issues.  Instead, the phrase "legal responsibility" captures the scope of the general class's underlying substantive due process claim, and does not include children who are living at home with their parents.

**IV.    Plaintiffs' ADA argument, which is based on a regulation that will not come into effect until July 2024, is not helpful for determining the scope of the general class that was certified in 2022.**

Finally, plaintiffs argue that this Court should rule in their favor because, under new ADA regulations, state agencies may not "require children to be placed outside the family

home . . . in order to receive necessary services." (Dkt. 487 at 24-25.) This Court should reject plaintiffs' ADA argument for three reasons.

First, the ADA subclass is a *subclass*; members of the ADA subclass must be members of the general class. (*See* Dkt. 275 at 79 (defining the ADA subclass as "All members in the General Class who have or will have physical, intellectual, cognitive, or mental health disabilities.") As explained above, this Court has already ruled that the claims of children who are living at home with their parents are "beyond the scope of the claims . . . certified for class-wide resolution." (Dkt. 464 at 3.) Because the general class does not include children who are living at home with their parents, and members of the ADA subclass is made up of a subset of members of the general class, this Court should reject plaintiffs' argument.

Second, plaintiffs have never asserted a claim under 45 C.F.R. § 84.60(b)(5), nor could they have: As plaintiffs acknowledge, that regulation is not effective until July 8, 2024. (Dkt. 487 at 25.)[3] As explained above, this Court should follow *LA Alliance for Human Rights* and *Ansari* and decline to consider plaintiffs' tardy assertion of an entirely new legal theory.

Finally, plaintiffs' argument under the ADA is inconsistent with their constitutional arguments. Plaintiffs argue that 45 C.F.R. § 84.60(b)(5) is intended to incentivize keeping families together, explaining that "agencies 'should consider and facilitate the full range of services and supports a family may be eligible for to keep parents and children together.'" (Dkt. 487 at 25 (quoting U.S. Department of Health and Human Services, *Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance,* 89 FR 40066, 40161 (May 9, 2024)). But, in the very same brief, plaintiffs argue against creating

---

[3] The amendments to 45 C.F.R. § 84.60 are available here:
https://www.federalregister.gov/documents/2024/05/09/2024-09237/nondiscrimination-on-the-basis-of-disability-in-programs-or-activities-receiving-federal-financial.

incentives "to place children with their biological parents." (Dkt. 487 at 15.) Plaintiffs' arguments do not establish that the general class includes children who are living at home with their parents; instead, plaintiffs' competing arguments demonstrate the complexity and competing interests that child welfare agencies must navigate on a daily basis.

In sum, neither plaintiffs' constitutional arguments nor their ADA arguments justify departure from this Court's prior ruling that the issue of "harms suffered by children in the care of their parents . . . are beyond the scope of the claims pleaded in the Complaint and certified for class-wide resolution and so are not properly before the Court." (Dkt. 464 at 3.) Therefore, this Court should confirm that the general class does not include children who are living at home with their parents.

## V.    Plaintiffs' factual assertions are not helpful for resolving the legal question before this Court.

Plaintiffs make several factual assertions in their brief which are not helpful for resolving the question before the Court. The question before this Court is purely a legal question of whether the general class includes children who are living at home with their parents. *Jeff D. v. Andrus*, 899 F.2d 753,759 (9th Cir. 1989). For the reasons explained above, this Court should confirm that the class does not include children who are living at home with their parents and reject plaintiffs' invitation to wade into post-settlement factual disputes.

The parties' pretrial filings show that the facts in this case would have been highly disputed at trial. If this issue had been pled in the Complaint and gone to trial, defendants would have argued that plaintiffs' factual assertions paint an inaccurate picture because plaintiffs ignore the fact that the majority of children whose case files have been reviewed by the parties' experts in this case were successfully reunified with their parents following a trial reunification period. For example, following a detailed review of 95 child welfare casefiles produced in discovery in

this case, defendants' expert, Cynthia Jackson, concluded that ODHS does not "prematurely"

return children to their parents on trial home visits.  Instead, Ms. Jackson concluded that many

children who were returned home on a trial home visit:

> positively benefitted . . . and were successfully returned to their parents.  In the records we reviewed, we noted caseworkers using THVs *where safety factors were mitigated and the child could be returned to their parent(s) with a safety plan in place*. Not every THV resulted in reunification and for a few cases it took more than one THV before the child could be reunified. For others, the disrupted THV resulted in a change of the permanency goal, which is also a step towards permanency. *But for the majority of children in the Reunification group, a THV resulted in their reunification with a parent, which is a central goal of any child welfare agency.*

(Dkt. 387-6 at 7 (emphasis added).)

Moreover, many of plaintiffs' factual assertions lack support and important context.  For

example, plaintiffs assert that "

."  (Dkt. 487 at 11.)  Plaintiffs do not cite any support

for that factual assertion, instead, they point to a psychological evaluation of ▮▮▮ stating he

was "

."  (Dkt. 489 at 56.)  Contrary to plaintiffs'

assertion, ▮▮▮'s evaluation reflects good case practice and attention to ▮▮▮'s needs.  The

evaluation "

"

(*Id.* at 38 (emphasis added).)  ODHS subsequently followed the recommendations in the

evaluation resulting in permanency for ▮▮▮▮▮▮▮.  Specifically, ▮▮▮▮▮

▮▮▮'s parents' parental rights were terminated within months of ▮▮▮▮▮▮.

(Declaration of Kelsie Crippen in Support of Def.s' Resp. to Pl.s' Brief on the Definition of

Child in Care ("Crippen Decl.") Ex. 1.) ████████ were then placed with an adoptive family and formally adopted ████████. (Crippen Decl. Exs. 2, 3.)

Plaintiffs note that "████████████████████████████████████████" but ODHS seeks assessments to properly evaluate the needs of the child and to continually evaluate the appropriateness of a child's case plan. Indeed, plaintiffs note that one "████████████ ████████████████████████████████." (Dkt. 487 at 11 n.6; *see also* Dkt. 489 at 73.) Plaintiffs note that a psychologist evaluating the child "████████ ████████████████████████████." (Dkt. 487 at 11 n.6) But the evidence shows that ODHS sought the assessment for the purpose of making informed decisions about permanency and family connections for the child. In the case of ████████████, he expressed a desire to live with his mother, but "████████████████████████ ████████████." (Dkt. 489 at 76-77.) Additionally, describing the trial home visits as "failures" omits important context. Rather, the two instances were supported by robust in-home safety plans and a change in family circumstances that reasonably warranted an attempt to preserve the mother-child relationship. (*Id.* at 60-63.) There is nothing in the evaluation to suggest that ODHS, child's attorney, or the juvenile court did anything improper. To the contrary, the assessment shows why moving too swiftly to sever the relationship between the child and his mother would be harmful. (*Id.*)

Plaintiffs discuss ████████'s casefile and note that "████████████████ ████████████████████████" (Dkt. 487 at 12-13.) But plaintiffs' own experts concluded otherwise. Specifically, plaintiffs' own experts concluded that "████ ████████████████████████████████████ ████████████████████████████." (Dkt. 67-1

at 217.)  Although ▮▮▮ later returned to foster care before again returning home to live with

her mother, describing the decision to return ▮▮▮ to her home with her mother as

inappropriate ignores the bond between ▮▮▮ and her mother and ▮▮▮'s mother's

constitutional right to care for her own child.  Moreover, the facts show that ODHS made the

decision to recommend reunification[4] for ▮▮▮ after working with ▮▮▮ s care team

(including her therapist) and ▮▮▮'s juvenile dependency attorney, and "▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮" ▮▮▮ was "▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮."  (*Id.* at 85.)

Finally, plaintiffs' factual assertions do not acknowledge the Vision for Transformation

and the key infrastructure ODHS Child Welfare has built geared toward providing services to

families to prevent the need for foster care.  Had this case gone to trial, defendants would have

put forth substantial evidence of improvements ODHS has made across many different program

areas.  (*See, e.g*, Dkt. 387 at 9-12.)  In fact, plaintiffs' key trial witness, Senator Gelser Blouin,

recently acknowledged ODHS Child Welfare's family preservation work and praised Director

Aprille Flint-Gerner for "leading the challenging work of helping everyone involved rethink the

way we assess family function as well as better understanding the traumatic impact child

protective service involvement has on kids and families in the short and long run despite

everyone's best intentions."  (Crippen Decl., Ex. 4 at 1.)  Senator Gelser Blouin explained that

---

[4] As explained in defendants' motion to dismiss, the state juvenile court is the ultimate decisionmaker regarding whether a child's case plan should be reunification.  (Dkt. 31 at 17); *see also* ORS 419B.440-443; ORS419B.449.  If plaintiffs had raised claims challenging the state's decisions not to remove children from their parents home or the state's decisions to return children to their parents in in their Complaint, abstention would have been appropriate.  *See Miles v. Wesley*, 801 F.3d 1060, 1063 (9th Cir. 2015) (explaining that the Supreme Court has "repeatedly recognized a 'longstanding pubic policy against federal court interference with state court proceedings' based on principles of federalism and comity'") (quoting *Younger v. Harris*, 401 U.S. 37, 43 (1971)).

Director Flint-Gerner "is the right person to lead this incredibly important work of family preservation and anti-racist family interventions and true prevention services at this critical time. We're lucky she is in Oregon to carry this work forward." (*Id.*)

This Court need not weigh into those factual disputes because this case has been settled. The issue before the Court is a purely legal question and weighing the facts above is unnecessary.  This Court should therefore grant defendants' motion to confirm that the general class does not include children who are living at home with their parents.

## CONCLUSION

For the reasons explained above, this Court should reject plaintiffs' arguments.  Instead, this Court should affirm its prior rulings, grant defendants' motion under FRCP 23(d), and confirm that the general class does not include children who are living at home with their parents.

DATED: June 14, 2024     ELLEN ROSENBLUM
              ATTORNEY GENERAL
              FOR THE STATE OF OREGON

              *s/ Kelsie G. Crippen*
              David B. Markowitz, OSB #742046
              DavidMarkowitz@MarkowitzHerbold.com
              Laura Salerno Owens, OSB #076230
              LauraSalerno@MarkowitzHerbold.com
              Harry B. Wilson, OSB #077214
              HarryWilson@MarkowitzHerbold.com
              Lauren F. Blaesing, OSB #113305
              LaurenBlaesing@MarkowitzHerbold.com
              Vivek A. Kothari, OSB #182089
              VivekKothari@MarkowitzHerbold.com
              *Special Assistant Attorneys General for Defendants*

              Adele J. Ridenour, OSB #061556
              AdeleRidenour@MarkowitzHerbold.com
              Anit K. Jindal, OSB #171086
              AnitJindal@MarkowitzHerbold.com
              David A. Fauria, OSB #170973

DavidFauria@MarkowitzHerbold.com
Kelsie G. Crippen, OSB #193454
KelsieCrippen@MarkowitzHerbold.com
*Of Attorneys for Defendants*

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us
Sheila H. Potter, OSB #993485
sheila.potter@doj.state.or.us
*Of Attorneys for Defendants*

2155147.4