**P. ANDREW McSTAY, JR.**, OSB 033997
andymcstay@dwt.com
**WILLIAM D. MINER**, OSB 043636
billminer@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
560 SW 10th Avenue, Suite 700
Portland, OR 97205
Telephone: (503) 241-2300

**MARCIA ROBINSON LOWRY** (*pro hac vice*)
mlowry@abetterchildhood.org
**ANASTASIA BENEDETTO** (*pro hac vice*)
abenedetto@abetterchildhood.org
**A BETTER CHILDHOOD**
355 Lexington Avenue, Floor 16
New York, NY 10017
Telephone: (646) 795-4456

**EMILY COOPER**, OSB 182254
ecooper@droregon.org
**THOMAS STENSON**, OSB 152894
tstenson@droregon.org
**DISABILITY RIGHTS OREGON**
511 SW 10th Avenue, Suite 200
Portland, OR 97205
Tel: (503) 243-2081

**STEVEN RIZZO**, OSB 840853
srizzo@rizzopc.com
**MARY D. SKJELSET**, OSB 075840
mskjelset@rizzopc.com
**RIZZO BOSWORTH ERAUT, PC**
1300 SW 6th Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| WYATT B. *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>TINA KOTEK *et al.*,<br><br>　　　　　Defendants. | Case No. 6:19-cv-00556-AA<br><br>**PLAINTIFFS' OPPOSITION IN RESPONSE TO RULE 23(d) MOTION** |

Page 1 – PLAINTIFFS' OPPOSITION TO RULE 23(d) MOTION

On August 17, 2022, this Court certified the General Class in the following manner: "All children for whom the Oregon Department of Human Services ('DHS') has or will have legal responsibility and *who are or will be in the legal or physical custody of DHS*." ECF 275, at 79 (emphasis added). That class definition has never been modified. Defendants now seek to carve out liability under the Settlement Agreement and to exclude children who they acknowledge are in their legal custody from the class entirely. This motion is not proper under Rule 23(d), nor did the parties negotiate for that process in their settlement agreement. The current class definition includes all foster youth who are or will be in the legal *or* physical custody of the Department, expressly including all foster youth temporarily in their parents' care while still in the legal custody of the Department. Plaintiffs have repeatedly asserted, among many claims, that the rights of foster youth placed in their parents' care on a trial basis are a part of this case and have raised claims about the safety of youth on trial home visits. It is Defendants who now seek to change the class definition. Accordingly, the Court should deny Defendants' improper motion under Rule 23(d) to exclude from the class youth in the Department's legal custody and temporarily living with a parent but still entitled to ongoing supervision and services.

## I. The Court Should Refuse to Hear a Motion Under Rule 23(d)

For reasons Defendants fail to explain in their motion, they did not comply with the process outlined in the Settlement Agreement, which states that the parties should bring a "motion to the Court for resolution in a limited judgment." Settlement Agreement, ECF 481 at 3. A motion for a limited judgment is a term of art under Oregon law, exclusively describing a motion for partial judgment under federal Rule 54(b). *In re Peltier*, No. 3:21-AP-03018-DWH, 2022 WL 3371637, at *1 n.4 (B.A.P. 9th Cir. Aug. 16, 2022) ("A 'limited judgment' under ORS 18.005(13) and Oregon Rule of Civil Procedure 67 B is essentially the same as a judgment on fewer than all claims or parties under Civil Rule 54(b)."). Neither is a Rule 23(d)(1)(A) motion proper as a vehicle here, because the grounds

cited by Defendants, that the Court should "determine the course of proceedings . . . in presenting evidence or argument," are irrelevant and inappropriate in a case like the present, which has settled and has no trial or other similar proceedings pending. Defendants seek, in the guise of a procedural motion, a substantive declaration of the law.

### a. The Parties Bargained for Motion Practice to Establish a "Limited Judgment" under Rule 54(b)

Defendants assert that the parties dispute the scope of the class definition. This is false. In the settlement agreement, the parties reached a specific agreement identifying a particular dispute about the definition of "child in care" for the purposes of the settlement and articulating how the issue would be determined. The dispute, as the parties agreed, related to:

> whether the Settlement Agreement's defined term Child in Care excludes: 1) children who have not been removed and their family is receiving services through ODHS in-home (i.e., through ODHS Family Preservation) because while those children may be in ODHS's legal custody so, for example, ODHS can draw down Title IV-E federal funding to provide in-home services, they are not in ODHS's physical custody and not "in care"; and/or 2) children who have been removed, are in ODHS's legal custody, but are not in ODHS's physical custody because they are placed in-home with a parent or legal guardian (i.e., on Trial Home Visit). ECF 481, at 3.

The settlement agreement explicitly discussed what the term "child in care" includes, as a matter of substantive law in the settlement agreement. The agreement in no way described the dispute as related to the *scope of the class*, but instead the definition of a particular term as it relates to the substantive law governing the settlement agreement. The Court shared this understanding, ordering that, "[t]he parties will file opening briefs on the narrow issue of the definition of 'Child in Care' related to the scope of the settlement on 5/31/2024." ECF 473.

Further, the parties agreed to the specific legal mechanism for addressing their dispute: a motion "for resolution in a limited judgment," which exclusively means a Rule 54(b) motion for partial determination. *In re Peltier*, 2022 WL 3371637, at *1 n.4; *Santoro v. Ocwen Loan Servicing*, LLC, No. 6:14-CV-00522-AA, 2022 WL 2354581, at *2 (D. Or. June 30, 2022) (Aiken, J.)

(discussing a "limited judgment of dismissal under Rule 54(b)"); *Sec. & Exch. Comm'n v. Aequitas Mgmt., LLC*, No. 3:16-CV-00438-JR, 2020 WL 7318305, at *2 (D. Or. Nov. 10, 2020), *report and recommendation adopted*, No. 3:16-CV-00438-JR, 2020 WL 7318129 (D. Or. Dec. 11, 2020) (discussing "limited judgment under Rule 54(b)"); *Haile v. Hickory Springs Mfg. Co.*, No. 3:13-CV-00053-KI, 2014 WL 4101720, at *2 (D. Or. Aug. 18, 2014) (same). After diligent search, Plaintiffs find zero cases across all federal jurisdictions referring to any Rule 23 order as a "limited judgment." Defendants point this Court to no such cases in their motion.

Defendants may not unilaterally rewrite the settlement agreement. Nor may the Court "delete, modify, or substitute certain provisions of the" agreement. *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982). The parties agreed to these terms a matter of a few weeks ago. Had Defendants wished to require that any motion practice to resolve this issue be done under Rule 23, they could have bargained for that term. Instead, they bargained for a "limited judgment" under Rule 54(b). These terms are not arbitrary but reflect substantial legal rights.

First, the difference between who is in the class at all is quite different from definitions such as "child is in care" that determine whether substantive rights under the settlement agreement accrue. The purpose of the class "certification ruling is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). The parties are attempting to prepare this matter for a fairness hearing, and Defendants' efforts to change who may object to the settlement agreement could jeopardize the fairness of the process. For instance, if this Court excludes youth in trial home visits from the class entirely, comments from those youth are not accepted at the fairness hearing, and the Ninth Circuit reverses the resolution of this motion, a whole new fairness proceeding may be required. Plaintiffs have already sought and obtained approval of the notice to the class members: if class

Page 4 – PLAINTIFFS' OPPOSITION TO RULE 23(d) MOTION

members in DHS's legal custody and parental physical custody must be excluded, the notice may have to be redrafted and resubmitted. Attempting to change the definition of the class in the midst of the fairness process would complicate that process significantly.

In addition to unnecessarily complicating questions of the *scope* of the class during these fairness proceedings, the change to the type of motion at issue would substantively change the law that governs. On appeal, a substantive legal determination, such as determining a term in a contract, would be reviewed de novo. *AmerisourceBergen Corp. v. Dialysis W., Inc.*, 465 F.3d 946, 949 (9th Cir. 2006). By contrast, a Rule 23 motion is a trial management tool, not a substantive declaration of legal rights. Review of a Rule 23 motion is typically an abuse of discretion standard. *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009). Rule 23(d) motions are so rare the Ninth Circuit has never ruled on one, but the same standard should apply. *See, e.g., Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 541 F. App'x 181, 186 (3d Cir. 2013) (memorandum).

Last, the cited portion of Rule 23 is inapplicable here, where its terms expressly address "undue repetition or complication in presenting evidence or argument." FED. R. CIV. P. 23(d)(1)(A). For a case going to settlement, not trial, similar provisions of Rule 23 are irrelevant. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (courts "need not inquire whether the case, if tried, would present intractable management problems" where a settlement is put forward). Rule 23(d) is uniquely about the means of "conducting the action" and "similar procedural matters," not about adjudicating substantive law. Defendants have had almost two years to file a Rule 23 motion to alter the scope of the class, but have chosen not to do so. Rather than obeying the Court's directive to focus briefing on the "narrow issue" of "the definition of 'Child in Care,' related to the scope of the settlement" Defendants have submitted an inappropriate and broad motion that would rewrite the class definition in the middle of the fairness process.

Page 5 – PLAINTIFFS' OPPOSITION TO RULE 23(d) MOTION

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

## II. Plaintiffs Have Thoroughly Pursued and Repeatedly Sought to Address the Needs of Youth in DHS' Legal Custody, Consistent with the Existing Class Definition

### a. The Current Class Definition Reaches All Children in Legal or Physical Custody of DHS and Should Not Be Changed

Regardless of Defendants' claims to the contrary, there is one definition of the general class that applies to this case: foster youth "who are or will be in the legal or physical custody of DHS." This Court declared this class definition in August 2022. The class definition has not changed since then, and Defendants have filed no motion to change the scope of the class. The Ninth Circuit in all cases looks to the explicit definition of the class determined by the trial court in response to a motion to certify a class in order to assess its scope. *See, e.g.*, *Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017) ("class definition" is "critical to determine" scope of class). Where a trial court leaves its class definition in place without amendment, the "same class definition controls, the same Plaintiffs make up the class, and the status quo remains unchanged." *Walker v. Life Ins. Co. of the S.W.*, 953 F.3d 624, 636 (9th Cir. 2020). This Court's August 2022 order exclusively defines the scope of the class and plainly includes all youth in the legal custody of DHS, even those not in the physical custody of DHS.

Defendants have no basis to claim that Plaintiffs ask the court to "expand[] the scope of the general class," nor ask the Court to "confirm, consistent with its prior rulings, that the general class does not include children who are living at home with their parents." The status quo in this matter is that any child in *either* the legal *or* physical custody of DHS is in the class, including those placed with a parent while in DHS's legal custody.[1] Defendants cite to no holding and no order of this Court changing the class definition since August 2022. Defendants have never even filed a motion under Rule 23(c) seeking to amend the class definition. Plaintiffs, not Defendants, act consistently with the

---

[1] Plaintiffs have never claimed that youth in *neither* the physical nor legal custody of DHS are in the class, except to the extent that they may in the future be in DHS custody.

Page 6 – PLAINTIFFS' OPPOSITION TO RULE 23(d) MOTION

class definition.

This Court's class definition including all children in DHS's legal custody is consistent with class definitions in other similar matters. *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 965 (9th Cir. 2019) (class definition of "all children who are or will be in the *legal* custody of DCS due to a report or suspicion of abuse or neglect"); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1192 (10th Cir. 2010) (approving class of all youth "who are or will be in the *legal* custody of OKDHS due to a report or suspicion of abuse or neglect or who are or will be adjudicated deprived due to abuse or neglect"); *Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 82 (1st Cir. 2010) (approving class of "all children who are or will be in the *legal* custody of the" Rhode Island authorities) (emphasis added in all). Defendants' belated motion does not address the numerous similar cases—including direct Ninth Circuit precedent—where legal custody, without more, was an adequate basis for a class definition in a foster care proceeding.

Neither do Defendants suggest a new class definition. Defendants merely say that the class should not include youth in the legal but not physical custody of DHS. They do not grapple with who would then actually be in the class, nor identify a new class definition. Since the current class definition includes all those "who are or will be in the legal or physical custody of DHS," Defendants' proposal leaves no guidance for whether youth *currently* in parental care but who *will be* in the physical custody of DHS in the future (e.g., when a trial home visit fails) would be in the class. Defendants' proposal would inject both legal error and more confusion into the litigation.

### b. Plaintiffs Have Repeatedly Addressed the Needs of Youth in DHS's Legal Custody and in Parental Physical Custody Throughout the Litigation

Plaintiffs have addressed the needs of youth in DHS's legal custody throughout the five years of litigation of this case, including the original complaint and in the class certification pleadings. In the Complaint, Plaintiffs discussed at length the abuse of Unique by her mother during a trial home

visit. ECF 1, ¶¶ 77-83. The complaint discussion specially criticized DHS's decision-making in choosing to place her temporarily in her mother's custody. *Id.* Likewise, in the class certification pleadings, Plaintiffs introduced numerous expert reports. ECF 67-1. Those expert reports, filed as early as December 2019, extensively criticized Defendants' misuse of trial home visits.

Dr. Steib and Ms. Rideout, for instance, extensively discussed the maltreatment of Noah and Wyatt while on a trial home visit. ECF 67-1 at 154-62. They went on to discuss Unique's failed trial unification extensively. ECF 67-1 at 214-15. In each case, Dr. Steib and Ms. Rideout specifically criticized DHS's failure to create adequate safety plans, DHS's unreasonable decision-making about the timing of those trial home visits, failure to protect Noah, Wyatt, and Unique appropriately, and the long-term negative effects of those trial home visits on those youth.

Dr. Puckett, another Plaintiffs' expert, even more directly tackled the misuse of trial home visits in foster care, including a major segment of his report entitled "Use of Trial Home Visits." ECF 67-1 at 470-473. This topic received roughly equal attention in his report as other issues like caseloads, late or inappropriate case plans and assessments, placement instability, re-entry to foster care, and the failure to identify youth with disabilities. *Id.* Dr. Puckett extensively documented the misuse of trial home visits on exactly the issues identified by Plaintiffs later in the litigation: the very high rate of use of trial home visits, the high rate of abuse on trial home visits, and Oregon's acknowledged "lack of sufficient ongoing safety monitoring" of youth on trial home visits. *Id.* On this topic, Dr. Puckett stated that the "extensive utilization of THVs is a questionable strategy from a safety and well-being perspective." *Id.* at 473.

Following class certification, Plaintiffs served multiple discovery requests on Defendants that both 1) defined children in care to include legal and/or physical custody, consistent with the class definition, and 2) requested information related to trial home visits. To date, Plaintiffs have served eleven requests for production of documents ("RFPs") requesting information on children placed on

trial home visits. Despite voluminous objections to Plaintiffs' discovery requests, Defendants did not object to either to inclusion of children on trial home visits or the scope of the class.

For example, Plaintiffs' Twelfth RFP includes three requests specifically related to trial home visits. For example, Request 12.32 seeks:

> Request No. 32: Documents sufficient to show since January 1, 2019, in three-month periods, a) the total number of children on trial home visits, b) the total number of children discharged from Oregon foster care to reunification who had been on a trial home visit for any length of time in the previous six months, and c) the number of children re-entering Oregon foster care who had been on trial home visits for any length of time during their prior stay in Oregon foster care.

Ex. 1 to Stenson Decl. at 17. Defendants incorporated their general objections, and further objected on the grounds that the request was vague and ambiguous, unduly burdensome, a disguised interrogatory, and to the extent it called for privileged documents. Defendants *did not* object that the request called for information on children outside the scope of this case. Ex. 2 at 38.[2]

Defendants did raise definitional objections. Plaintiffs defined "trial home visit" to "have the same meaning as in the Adoption and Foster Care Analysis and Reporting Foster Care Annual File Code Book". Ex. 1 at 5. Defendants objected to this definition on the grounds that state standards vary from AFCARS and instead interpreted "trial home visit" to mean "trial reunification" as defined in OAR 413-100-0005(27). Ex. 2 at 8. But OAR 413-100-0005(27) makes it abundantly clear that Oregon considers children placed on trial home visits to be in foster care, stating that a child has "been in a foster care placement" and is then "returned to the primary caregiver" for "a limited and specified period," typically not to exceed six months. If the trial home visit fails and the child is returned to

---

[2] Defendants *did* object to discovery requests that they believed exceeded the scope of the litigation or related to matters not giving rise to claims. Defendants, for instance, refused to produce documents responsive to Plaintiffs' RFPs regarding children in the Aging Out Subclass, believing that these children had been dismissed from the lawsuit. "[T]he request calls for production of documents or communications that are no longer relevant to any party's claim or defense…Defendants will therefore not search for or produce documents in response to this request." Ex. 3 at 39.

Page 9 – PLAINTIFFS' OPPOSITION TO RULE 23(d) MOTION

placement in substitute care, both Oregon law and federal law consider that move to another placement, and not a re-entry info care—because the child never left foster care.

Additionally, Plaintiffs' Fifteenth and Sixteenth RFPs, which the Court ordered Defendants to comply with (ECF 294), specifically included children on trial home visits. Plaintiffs' Fifteenth RFP requested:

> Request No. 2: A random sample consisting of fifteen (15) case files of unique children—who are not members of the same sibling group—who were in Defendants' legal and/or physical custody on June 30, 2022 whose permanency goal at that time was reunification with their biological parent(s) and who as of June 30, 2022, had been in Defendants' legal and/or physical custody for a period of eighteen (18) months or more. The sample population shall not exclude children placed on trial home visits as of June 30, 2022, who remain in the legal and/or physical custody of Defendants.

Ex. 4 to Stenson Decl. at 3. Defendants incorporated their general objections, and further objected on the grounds that the request was unduly burdensome, and to the extent that it called for production of privileged documents. Ex. 5 to Stenson Decl. at 8. Defendants *did not* object that the request included children they allegedly believed to be excluded from the lawsuit. Plaintiffs' Sixteenth RFP requested:

> Request No. 3: A random sample consisting of twenty (20) case files of unique children—who are not members of the same sibling group—who had at least one founded report of abuse or neglect while in Defendants' legal **and/or** physical custody, **including on a trial home visit**, during the 2022 calendar year.

Ex. 6 to Stenson Decl. at 5. Defendants again incorporated their general objections, and further objected on the grounds that the request was vague and ambiguous as to the definition of "at least one founded report of abuse or neglect", unduly burdensome, and to the extent it called for production of privileged documents. Ex. 7 to Stenson Decl. at 7-8. Defendants again *did not* object that the request included children they allegedly believed to be excluded from the lawsuit.

Given the extensive record of Plaintiffs' efforts to document and challenge the misuse of trial home visits as early as 2019, Plaintiffs find it hard to understand Defendants' assertion that Plaintiffs

identified in the run-up to trial the "new and different position" that Defendants failed to provide proper services to youth on trial home visits. ECF 486 at 4. Defendants never objected to the inclusion of trial home visits in the complaint via their motion to dismiss, nor did they object to the expert opinions on trial home visits in their opposition to class certification, nor their Daubert motions on the 2019 opinions of Dr. Steib, Ms. Rideout, or Dr. Puckett.[3] Cumulatively, the Defendants' repeated failure to raise any objection of this sort to Plaintiffs' complaint, Plaintiffs' class certification pleadings, and Plaintiffs' requests for discovery involving youth in trial home visits demonstrate that the Plaintiffs did not belatedly discover their interest in trial home visits; instead, Defendants have only belatedly discovered their objections to the inclusion of trial home visits in the scope of the case.

Even assuming (as Defendants nowhere claim, cite, or prove) that a party could somehow waive portions of a class definition by failing to advance specific allegations in the pretrial phase, Plaintiffs demonstrated a robust interest in the issue of trial home visits from the outset of the case. Defendants point to no cases where a party who has presented extensive testimonial evidence from two different experts in support of a motion for class certification on a particular topic is later deemed to have somehow waived its interests in that topic. In a large, complex system like a foster care system, no party would be able to monomaniacally focus on a single issue, but Plaintiffs have more than adequately briefed and supported their concerns about trial home visits. Defendants' efforts to rewrite the history of this case to eradicate the extensive briefing on this exact topic are unavailing.

Indeed, the Court's own order on class certification reflected this focus. The August 2022 order specifically reported Wyatt and Noah's disastrous trial reunification experience. ECF 275 at 38. The Court cited specifically to the account in the Steib-Rideout report. *Id.* The Court's order on class

---

[3] In contrast to Defendants' protestations today about their reunification efforts, their only substantive response to Dr. Puckett's review on this issue at the time was to claim that the Department reunified far *fewer* children with their parents than he understood. ECF 117 at 39-40; ECF 141-1 at 14.

Page 11 – PLAINTIFFS' OPPOSITION TO RULE 23(d) MOTION

certification explained that, of the "7260 children in Oregon foster care," 12% "were on 'Trial Home Visit' status, meaning that they were living with their parents or caregivers *while DHS retained custody*." ECF 275 at 60 (emphasis added).

The settlement agreement includes all children who are or will be in foster care. The state itself acknowledges that children on trial home visits are in foster care. Plaintiffs claim that children are harmed while they are in foster care, and children on trial home visits are in foster care. Even if Plaintiffs had not raised the issue of harm during trial home visits, by raising the risk of harm that all children *in foster care* are exposed to, children on trial home visits are included.

### III.     Defendants Repeatedly Acknowledge That Children on Trial Home Visits Are in Foster Care

Basic state law defines the legal custody of children by the Department and the care that is due to them during that custody. A juvenile court in Oregon places the child in DHS's legal custody "for care, placement, and supervision," when it is in the child's best interest. ORS 419B.337(1). During that legal custody, DHS must "provide the ward with care, education, and discipline." ORS 419B.373(3). The juvenile court "may specify the type of care, supervision, or services to be provided by the Department." ORS 419B.337(1)(c). That commitment to the Department's legal custody continues, as a matter of state law, "until dismissed by the court" or the child's 21st birthday. ORS 419B.337(6). The legal custody and corresponding responsibility for care from the Department does not terminate when placed in a parent's physical custody (absent a court order dismissing the matter). By contrast, when referring to foster care placements *excluding* parental homes, Oregon law uses the distinct statutory term, "substitute care," which means an "out-of-home placement" including a "foster family home, group home, [or] child-caring agency." ORS 419A.004.

Consistent with the common use of these terms, Defendants *repeatedly* acknowledge that children placed on trial home visits are in foster care. Indeed, Exhibit 3 to the Settlement Agreement—

the March 2024 Child Welfare Division Progress Report for the Governor—plainly acknowledges that children in care include children on trial home visits. *See* ECF 481-3 at 10-11. The same monthly report relies on data from the University of Kansas for total number of children in care, which also plainly includes children on trial home visits. The operational definition of all children in Foster Care states, "children are in an out-of-home placement or in a Trial Home Visit and not yet 'discharged' according to federal rules (discharge comes at the time of being released of state custody or 6 months following the start of a continuous trial Home Visit whichever comes first)."[4] Carving out the population of children in the legal but not physical custody of DHS for the purposes of this settlement agreement would be nonsensical.

Defendants also suggest that the reason DHS retains legal custody of children on trial home visits is to allow the state to draw down federal Title IV-E funding for those children, implying that except for additional funding for services, children on trial home visits are functionally reunified. *See* ECF 486 n.1. This is misleading, as there are other fundamental procedural distinctions between placing a child on a trial home visit and reunifying a child with their caregivers, closing their case, and terminating legal custody. For example, when the State maintains legal custody of a child while placing the child with their primary caregiver, DHS may move that child to a different placement without it being considered re-entry into foster care and requiring court authority. *See, e.g.*, ECF 488-5.

Finally, Defendants' inflammatory allegation that Plaintiffs are attempting to "put their thumb on the scale in favor of separating children from their parents and keeping them separated," is patently false. Plaintiffs are advocating that *all* children *in foster care* be entitled to the protections and benefits of this settlement agreement. Throughout this litigation, Plaintiffs have pursued the interests of all

---

[4] *See* Univ. of Kans., ROM OR.04 Count of Children in Foster Care-Total Served during Period, available at https://oregon.rom.socwel.ku.edu/docs/reports/6104 (last visited June 14, 2024).

Page 13 – PLAINTIFFS' OPPOSITION TO RULE 23(d) MOTION

children in care—all children in the Department's legal custody—and have never limited their representation only to children in substitute care. Regardless of whether the number of children on trial home visits or other reunification programs is large or small, Plaintiffs must insist, as class counsel, that the state ensure that all children in its legal custody are safe.

## CONCLUSION

Considering all these factors, the Court should determine that (1) it cannot hear Defendants motion under Rule 23(d)(1)(A), (2) that Defendants' inappropriate motion is inconsistent with the explicit terms of the settlement agreement, (3) that Plaintiffs, in their pleadings and their expert reports, have sought to document the misuse of trial reunifications and trial home visits, and (4) that the August 2022 class definition controls this matter. The Court should reject Defendants' motion and grant Plaintiffs' motion.

Dated: June 14, 2024

**DAVIS WRIGHT TREMAINE LLP**

By: *s/ P. Andrew McStay Jr.*
P. Andrew McStay Jr., OSB 033997
andymcstay@dwt.com
William D. Miner, OSB 043636
billminer@dwt.com
560 SW 10th Avenue, Suite 700
Portland, OR 97205
Tel: (503) 241-2300

**A BETTER CHILDHOOD**
Marcia Robinson Lowry (*pro hac vice*)
mlowry@abetterchildhood.org
Anastasia Benedetto (*pro hac vice*)
abenedetto@abetterchildhood.org
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456

            **DISABILITY RIGHTS OREGON**
            Emily Cooper, OSB 182254
            ecooper@droregon.org
            Thomas Stenson, OSB 152894
            tstenson@droregon.org
            511 SW 10th Avenue, Suite 200
            Portland, OR 97205
            Tel: (503) 243-2081

            **RIZZO BOSWORTH ERAUT, PC**
            Steven Rizzo, OSB 840853
            srizzo@rizzopc.com
            Mary D. Skjelset, OSB 075840
            mskjelset@rizzopc.com
            1300 SW 6th Avenue, Suite 330
            Portland, OR 97201
            Tel: (503) 229-1819

            *Attorneys for Plaintiffs*