IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

WYATT B. et al.

            Plaintiffs,

  v.

TINA KOTEK et al.,

            Defendants.

Civ. No. 6:19-cv-00556-AA

**OPINION & ORDER**

AIKEN, District Judge.

This case comes before the Court for resolution of a dispute over the scope of the definition of the term "Child in Care" pursuant to the Settlement Agreement, ECF No. 482, between the parties.

In the Definitions section of the Settlement Agreement, the parties provide the following definition:

> **"Child(ren) in Care"** means children who are in the legal and physical custody of ODHS. The Parties disagree on the scope of this definition and will submit this disputed issue by motion to the Court as further detailed in Section 1.

Settlement Agreement, Definitions (3).

Section 1 of the Settlement Agreement provides for the resolution of the dispute over the scope of the definition of "Child in Care" and establishes the parameters of the dispute:

Page 1 –OPINION & ORDER

> The parties dispute the legal scope of this definition. Specifically, the dispute pertains to whether the Settlement Agreement's defined term Child in Care excludes: 1) children who have not been removed and their family is receiving services through ODHS in-home (*i.e.*, through ODHS Family Preservation) because while those children may be in ODHS's legal custody so, for example, ODHS can draw down Title IV-E federal funding to provide in-home services, they are not in ODHS's physical custody and not "in care"; and/or 2) children who have been removed, are in ODHS's legal custody, but are not in ODHS's physical custody because they are placed in-home with a parent or legal guardian (*i.e.*, on Trial Home Visit).
>
> The Parties will each submit those issues by motion to the Court for resolution in a limited judgment, so that it is appealable by either Party. The Parties' opening briefs shall be filed by May 31, 2024. The Parties shall file response briefs by June 14, 2024. There shall be no reply briefs. If either Party appeals the Court's decision on this dispute, the Parties agree it shall not affect the other terms of this Settlement Agreement, which shall otherwise proceed, including the awarding of attorney fees.

Settlement Agreement § 1.

Consistent with the schedule established by the Settlement Agreement, the parties submitted their opening briefs on the scope of the definition of Child in Care on May 31, 2024. ECF Nos. 486, 487.[1] Response briefs were filed on June 14, 2024. ECF Nos. 500, 501. The matter is now before the Court.

In essence, the present dispute between the parties and the decision before the Court is whether "Child in Care" covers children who are in the physical care and custody of DHS or whether it extends to include children who are in the physical care and custody of their parents, but for whom DHS maintains legal custody, such as children on trial home visits or trial reunifications.

---

[1] Defendants have framed their opening brief as a Motion to Confirm the Definition of the General Class. ECF No. 486.

Page 2 –OPINION & ORDER

In the Complaint, ECF No. 1, Plaintiffs asserted that a series of substantive due process rights were due to children "placed in foster care." Compl. ¶¶ 200(a)-(e). Plaintiffs further alleged that federal law provided additional protections for children "in foster care." *Id.* at ¶¶ 201(a)-(h). In their first cause of action, for the general class, Plaintiffs alleged that Defendants had obligations to "provide reasonable care, to and to protect from harm, a child with whom it has a special relationship, such as a child in foster care." *Id.* at ¶ 301; *see also* ¶¶ 304, 305, 306(b) (alleging that the substantive due process right as arising out of a special relationship or special duty). By its terms, the Complaint sought to bring claims on behalf of a general class of children in foster care. *See, e.g., Id.* at ¶ 305 ("As a result, the named Plaintiffs and all of the members of the general class of children to whom the state owes a special duty, *children in foster care*, have been, and are at risk of being deprived of substantive due process rights conferred upon them by the United States Constitution." (emphasis added)).

In seeking to confine the definition of "Child in Care" to those who are in the physical custody of DHS, Defendants focus their argument on *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989). In *DeShaney*, the petitioner was a child who was in the care and custody of his father and who was abused to the point of severe permanent injury by his father. *DeShaney*, 489 U.S. at 191. Child protective authorities learned information that strongly indicated that the child was being abused by his father, including incidents where the child required hospitalization, and the authorities investigated the abuse. *Id.* at 192. The child was

temporarily taken into custody before being returned to the care of his father. *Id.* Child protective services became involved with the DeShaneys and a caseworker made regular visits to the DeShaney home. *Id.* at 192-93. The caseworker observed suspicious injuries, which were recorded, but no action was taken. *Id.* Child protective services inaction continued, even after the child was hospitalized again. *Id.* Eventually, in 1984, the petitioner was beaten so severely by his father that he fell into a coma and suffered permanent brain damage. *Id.* at 193. The child, together with his mother, brought a 42 U.S.C. § 1983 action against the child protective services authorities, alleging violation of his substantive due process rights. *Id.*

In *DeShaney*, the Supreme Court held that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney*, 489 U.S. at 195. The *DeShaney* petitioners asserted that a constitutional duty had been created by virtue of the "special relationship" that existed "because the State knew that [the petitioner] faced a special danger of abuse at his father's hands, and specifically proclaimed, by word and deed, its intention to protect him against that danger." *Id.* at 197. The Supreme Court rejected that argument, noting that, while certain situations created a substantive due process duty of protection, they did not apply to the facts of *DeShaney*. *Id.* at 199-200.

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to

> provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. . . . In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney*, 489 U.S. at 200 (internal quotation marks and citations omitted).

In *DeShaney*, the harms suffered by the petitioner occurred when he was in the care of his father, and "[w]hile the State may have been aware of the dangers that [the petitioner] faced in the free world, it played no part in their creation, nor did it do anything to render him more vulnerable to them." *DeShaney*, 489 U.S. at 201. Nor did the fact that child protective services had taken temporary custody of the child impose a continuing substantive due process obligation on them, "for when it returned to him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety having once offered him shelter." *Id*. The Supreme Court left open, however, that "the State may be held liable under the Due Process Clause for failing to protect children in foster homes from mistreatment at the hands of their foster parents." *Id*. at 201 n.9.

Plaintiffs attempt to distinguish *DeShaney*, arguing that children may still be in the legal custody of DHS even if they are not in the physical custody of DHS. In support of this position, Plaintiffs point to *Lipscomb by & Through DeFehr v. Simmons*, 962. F.2d 1374 (9th Cir. 1992), in which the Ninth Circuit held that "[o]nce

the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child." *Id.* at 1379. The Ninth Circuit went on to clarify:

> The word "custody" is not a talisman, however. In our view, custody cases such as *DeShaney* and *Youngberg* [*v. Romero*, 457 U.S. 307 (1982)] stand for the proposition that the government has an affirmative obligation to facilitate the exercise of constitutional rights by those in its custody only when the circumstances of the custodial relationship directly prevent individual exercise of those rights.

*Lipscomb*, 962 F.2d at 1379.

Read in context, the holding of *Lipscomb* is entirely consistent with *DeShaney*, in that the attachment of substantive due process obligations based on a "special relationship" arise out of a restraint on the ability of the individual, or their parent in the case of a minor, to look after those rights themselves.

This is made further clear in *Patel v. Kent School District*, 648 F.3d 965 (9th Cir. 2011), where the Ninth Circuit, applying *DeShaney*, held that a school did not possess a "special relationship" with a disabled student because "[i]n the case of a minor child, custody does not exist until the state has so restrained the child's liberty that the parents cannot care for the child's basic needs." *Id.* at 974. Likewise, in *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012), the Ninth Circuit explained that the "special relationship" exception for substantive due process claims applies "when a custodial relationship exists between the plaintiff and the State such that the State assumes some responsibility for the plaintiff's safety and well-being." *Id.* at 998 (citing *Patel*, 648 F.3d at 971 and *DeShaney*, 489 U.S. at 198-202); *see also*

*Murguia v. Langdon*, 61 F.4th 1096, 1109 (9th Cir. 2023) (holding same, citing *Patel* 648 F.3d at 972 and *DeShaney*, 489 U.S. at 200).

The inescapable conclusion of *DeShaney*, *Lipscomb*, *Patel*, and *Henry A.* is that in order for there to be a "special relationship" giving rise to substantive due process rights, the child must be in the physical custody of DHS, such as when a child is placed in a foster home or institution.

Plaintiffs' arguments concerning the requirements of the ADA are unavailing, as the ADA claims apply to a subclass, which must necessarily already be part of the general class. Nor may Plaintiffs, at this late hour, shift their focus to the "state created danger" exception to the limitations of Due Process Clause of the Fourteenth Amendment.[2] The Complaint invokes only the "special relationship" exception as part of its substantive due process claim and does not invoke the "state-created danger" exception. Compl. ¶ 301. The Court declines to impose a more expansive definition of "Child in Care" based on unpled legal theories.

Consistent with *DeShaney*, the Court concludes that the "special relationship" and the corresponding substantive due process obligations of Defendants extend to children who are in the physical care and custody of DHS, such as those who are in foster care placements, and does not extend to children who are in the physical care and custody of their parents, such as those on trial home visits. The holding of *DeShaney* expressly forecloses the contention that those rights extend to those who

---

[2] The "state created danger" exception applies "when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known and obvious danger." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012) (internal quotation marks and citations omitted, alterations normalized).

are receiving in-home services from a child protective agency, as well as those who had been released from the physical custody of child protective services into the care of their parents. This determination is consistent with the Court's prior rulings, particularly the Court's ruling on Defendants' motions in limine, where the Court determined that, under *DeShaney*, Plaintiffs' Fourteenth Amendment substantive due process claims were not cognizable with respect to children who were in the care and custody of their parents.

## CONCLUSION

Pursuant to Section 1 of the Settlement Agreement, the Court finds that the definition of Child in Care excludes (1) children who have not been removed and their family is receiving services through Oregon DHS in-home (*i.e.*, through ODHS Family Preservation) because while those children may be in ODHS's legal custody, they are not in ODHS's physical custody and so are not "in care"; and (2) children who have been removed, are in ODHS's legal custody, but are not in ODHS's physical custody because they are place in-home with a parent or legal guardian (*i.e.*, on Trial Home Visit). Consistent with the terms of Section 1 of the Settlement Agreement, a limited judgment will be issued on this ruling.

It is so ORDERED and DATED this ___27th___ day of June 2024.

                                         /s/Ann Aiken
                                         ANN AIKEN
                                         United States District Judge