**DAVIS WRIGHT TREMAINE LLP**
P. Andrew McStay Jr.
William D. Miner
560 SW 10th Avenue, Suite 700
Portland, OR 97205

**A BETTER CHILDHOOD**
Marcia Robinson Lowry (*pro hac vice*)
Anastasia Benedetto (*pro hac vice*)
355 Lexington Avenue, Floor 16
New York, NY 10017

**DISABILITY RIGHTS OREGON**
Emily Cooper
Thomas Stenson
511 SW 10th Avenue, Suite 200
Portland, OR 97205

**RIZZO BOSWORTH ERAUT, PC**
Steven Rizzo
Mary D. Skjelset
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S.; RUTH T.; BERNARD C.; NAOMI B; and NORMAN N., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br>  v.<br><br>TINA KOTEK, Governor of Oregon in her official capacity, FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; APRILLE FLINT-GERNER, Director, Child Welfare in her official capacity, and OREGON DEPARTMENT OF HUMAN SERVICES,<br>        Defendants. | Case No. 6:19-cv-00556-AA<br><br>**OPPOSITION TO MOTION TO QUASH SUBPOENA** |

**OPPOSITION TO MOTION TO QUASH SUBPOENA**

Plaintiffs filed a reasonable, timely subpoena to obtain Defendants' billing records, consistent with substantial Ninth Circuit precedent and this Court's prior directive that it would "require everybody to provide their attorney's fees and costs." Tr. Apr. 19, 2024 Hrg., 18:1-5. A comparison between parties' billing records, while not dispositive, is a "particularly good indicator of how much time is necessary" in determination of a fee dispute. *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Such a comparison can be helpful, if the Court "carefully control[s] for factors such as those mentioned, as well as for the possibility that the prevailing party's attorney—who, after all, did prevail—spent more time because she did better work." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001).

Defendants filed a motion to quash Plaintiffs' subpoena for Markowitz Herbold's fee and cost billing records in this matter. Their arguments never mention the clear directives of this Court and distort or ignore black letter law. The Ninth Circuit has plainly and repeatedly held, including in the cases cited by Defendants in their motion to quash, ECF 507, at 13, that "the attorney-client privilege does not protect the attorney billing statements from disclosure." *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 128 (9th Cir. 1992). Similarly, while claiming the records Plaintiffs seek are "irrelevant" and "relate to no matter of consequence," Defendants nowhere address direct Ninth Circuit precedent that clearly declares an opposing party's billing records to be, not merely relevant, but a "useful guide in evaluating the appropriateness of time claimed." *Reed*, 388 F.3d at 1287. Defendants also advocate, simultaneously, that Plaintiffs' subpoena is not yet "ripe," but also that Defendants would need far more time to redact attorney-client information, in a fee petition matter that (per the settlement agreement) must be fully briefed before the end of the

month. Defendants somehow argue that Plaintiffs' subpoena comes both too soon (for ripeness) and too late (for redactions).

## I.     Plaintiffs' Subpoena is Timely and Seeks Relevant, Discoverable Information

The subpoena comes neither too soon nor too late. This Court provided Defendants notice over two months ago that their fees would be produced and examined.

> The COURT: "I'm going to require everybody to provide their attorney's fees and costs. I'm going to look at that attorney fee provision pretty carefully. So both sides are going to submit attorney's fees, so that there's a perspective in terms of what was spent in this case." Tr. Apr. 19, 2024 Hrg., 18:1-5.

The Court gave both parties notice that they would need to produce records of their fees and costs. Defendants were present and represented at that hearing, but offered no contemporaneous objections to the Court's directive. If Defendants heard that message and declined to review their own fee records and make any required redactions in preparation for disclosure, they have only themselves to blame. No part of the Court's statement on April 19 indicated any tentative, conditional, or hesitant attitude of the Court. The Court stated it was "going to *require*" those fee documents and "*both sides* are going to submit" them. The explicit purpose of the Court was to provide "perspective in terms of what was spent in this case," the exact purpose articulated by precedent. *Reed*, 388 F.3d at 1287.

Defendants make no representation about what they thought of this statement by the Court in their motion. They never mention it. Because they make no mention of this Court's April directive, they offer no explanation for their apparent inaction since that directive. Pretending, by omission, that the Court did not give them direct instruction in April does not create a matter of doubt in June.

Plaintiffs did not need to wait to request fee materials until they filed their motion for fees and costs, nor, as Defendants suggest, until Defendants' oppose that request. Following Defendants' suggestions would require the following protocol be condensed into a single *week*: Plaintiffs would

have to read the opposition, due July 24; immediately identify Defendants' challenges to billing practices; file a subpoena immediately upon receiving Defendants' opposition, Defendants would have to respond to and fulfill that subpoena (including resolving any objections to the subpoena before the Court); then Plaintiffs would have to digest 5 years' worth of billing records in whatever remained of those seven days and incorporate that material intelligently into their reply, which is due July 31. Attempting to compress so much activity into a single week is absurd, particularly when Defendants already claim that they could not timely redact their attorney's fees records in the two weeks since receiving the subpoena.

The fee mediation is over. Plaintiffs have submitted their fee motion with all the required supporting documentation. Even in less contentious litigation, most disputed fee proceedings entail some dispute of the number of hours claimed. Attempting to compress a subpoena process into a single week—which Defendants concede is likely unreasonable in less than 10 days, ECF 507, at 14—between the opposition and the reply (assuming that Defendants may at some point concede major issues on fees) is likely wishful thinking. Defendants' plan for delay merely imposes massive burdens on Plaintiffs, the Court, and Defendants to meet an unreasonable schedule.

The Ninth Circuit, along with many other federal courts, has repeatedly found the opposing party's fee records to be relevant and probative in fee proceedings. *Reed*, 388 F.3d at 1287. Under Rule 26, records which are relevant to a claim are discoverable. Fed. R. Civ. Pro. 26(b); *Campbell v. Facebook Inc*., 310 F.R.D. 439, 447 (N.D. Cal. 2015) (discovery process not premature where timing followed Court's directives and discovery would assist in preparing the timely motions). Those discoverable and relevant billing records are obtainable by subpoena. *Miller v. Schmitz*, No. 1:12-CV-00137-LJO, 2014 WL 1154108, at *4 (E.D. Cal. Mar. 21, 2014) (denying Defendants' motion to quash subpoena, as their billing records were "not clearly irrelevant," and questions of weight should be presented in the fee briefing).

None of the cases cited by Defendants holds that a subpoena for fee records is untimely before the filing of either the motion for fees or the opposition. Indeed, no case that Plaintiffs can find indicates that a movant's discovery process must wait for any form a nonmovant's future opposition might take. One case cited by Defendants supports the opposite conclusion, approving a discovery request as properly filed "in *anticipation* of an attorneys' fees dispute," just as Plaintiffs' subpoena was. *Real v. Cont'l Grp., Inc.*, 116 F.R.D. 211, 212 (N.D. Cal. 1986) (emphasis added) *see also Naismith v. Pro. Golfers Ass'n*, 85 F.R.D. 552, 562 (N.D. Ga. 1979) (allowing fee discovery without reference to a pending fee motion). In *Henson v. Columbus Bank & Trust Co.*, the Eleventh Circuit decided it was an abuse of discretion *not* to allow discovery into fee materials once a dispute arose but that court did not indicate that any court could not or should not permit discovery into the fee materials before such disputes were articulated in motion practice. 770 F.2d 1566, 1575 (11th Cir. 1985); *see also Stastny v. S. Bell Tel. & Tel. Co.*, 77 F.R.D. 662, 664 (W.D.N.C. 1978) (court granted reciprocal discovery of fee information amid a dispute because it was "relevant information" and "may be good evidence of the 'market'"). The unpublished opinion in *McKenzie-Willamette Med. Ctr. v. PeaceHealth*, has no precedential value and is at odds with the controlling case law. *Compare* No. CV 02-6032-HA, 2005 WL 8164916, at *2 (D. Or. May 10, 2005) ("The amount defendant paid its counsel is irrelevant.") *with* Reed, 388 F.3d at 1287 (losing party's time comparison is a "useful guide in evaluating the appropriateness of time claimed"). Defendants' assertions that such discovery requests are untimely until Defendants express some objection to their fee petition have no support, even in the cases they cite.

Typical discovery practice does not require a party to wait until a motion and an opposition are filed to pursue relevant discovery requests. Defendants' proposed resolution—to compress a great deal of discovery into a week—would leave both parties and the Court in a bind. This Court's own directive from April of this year indicated that the Court would "require everybody to provide their

attorney's fees and costs," without limitation around whether any particular claims were made or issues raised. What the Defendants misunderstand about that is unclear. The Court has said many times that *transparency* is important. It is especially important for the children, and the citizens of this state.

## II.    Defendants' Assertion of Privilege Is Directly Contradicted by Ninth Circuit Precedent

Defendants claim that the subpoena must be quashed as it "improperly seeks attorney-client communications." ECF 507, at 13. But the Ninth Circuit has held, over and over, including in the cases cited by Defendants, that "the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege." *Clarke*, 974 F.2d at 129. "We have said repeatedly . . . that fee information generally is not privileged." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988) "[T]he attorney billing records requested in the challenged subpoenas are not protected by the attorney-client privilege." *United States v. Amlani*, 169 F.3d 1189, 1194 (9th Cir. 1999); *In re Osterhoudt*, 722 F.2d 591, 595 (9th Cir. 1983) (no "reasonably informed" client would believe that basic billing information was privileged). Since those billing records are not privileged, a subpoena for them does not seek privileged information.

For reasons unclear, Defendants assert that their counsel places into their billing documents "the subjects of privileged communications" and "defendants' litigation strategy." ECF 507, at 13. Attorney-client privilege narrowly attaches to "confidential disclosures made by a client to an attorney [and] the attorney's advice in response to such disclosures," which advice is not typically communicated to a client via a billing entry. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). "The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed." *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966). Defendants

have failed to meet their burden. Defendants do not explain why an attorney recording time would routinely convey confidential client communications in a billing entry, nor have they presented any evidence showing why such entries, if any, would occur so often that redacting them would impose an unreasonable burden. *Ferrington v. McAfee, Inc*., No. 10-CV-01455-LHK, 2013 WL 3814474, at *2 (N.D. Cal. July 22, 2013) (inappropriate to seal billing records where no showing was made of how billing records would disclose litigation strategy and plaintiff failed to identify any portion of billing descriptions that would disclose strategy). Markowitz Herbold's Laura Salerno Owens advises attorneys in her training materials that brief descriptors like "strategy regarding counterclaims" or "strategy regarding non-economic deal terms" are sufficiently specific billing entries.[1] Her advice plainly does not include articulating exactly what the strategies on those topics *are*, nor do attorneys commonly include such substantive strategic information in billing records in any contemporary law firm practice.

The billing practices Defendants allege their counsel performs would serve no purpose, would take up needless time, and would only complicate defense counsel's efforts to assert their own claims for fees, where appropriate. The mere suggestion that some billing entries *might* include confidential information, based on the unsupported claim that defense counsel provide in billing entries high levels of sensitive information, fails to meet Defendants' burden on their motion to quash. To the extent defense counsel ignores good practice and their own guidance by including needless detail in billing entries, they have only themselves to blame for the need for redactions of material that never belonged in billing records in the first place.

Plaintiffs recognize Defendants may review their billing records prior to disclosure and

---

[1] Laura Salerno Owens, Markowitz Herbold PC, "Client Claims Law Firm Ran Up $90M Legal Bill—Lessons for Clients and Lawyers in Billing Practices," *at* https://www.markowitzherbold.com/Client-Claims-Law-Firm-Ran-Up-90M-Legal-Bill-Lessons-for-Clients-and-Lawyers-in-Billing-Practices.

make minor redactions to address incidental comments that may impact attorney client privilege or

work product. Routine billing records should not require substantial redaction for privilege. *Tornay*,

840 F.2d at 1427 (in order to identify a privilege, communication sought must entail "more than

information about fees paid"). The subpoena form expressly permits and invites redaction for

privilege. ECF 508-2, at 3. The two months and more since the Court advised Defendants to prepare

those records provided ample time for the minor redactions that should be needed. The mere

possibility of some privileged information in need of redaction is not a basis to quash a subpoena.

Defendants produce no privilege logs, no exemplar redactions, or other evidence that would support

the degree of burden they allege redaction would impose.

Much of Defendants' asserted grounds for privilege or work-product—such as their strategy

in motion practice, defense of depositions, response to discovery, and preparation for trial—has

been waived or mooted by self-disclosure. *See* ECF 508, at 3. The motion practice is over; the

pleadings are public. Those depositions were already performed. Plaintiffs have already seen

Defendants' trial exhibits, witness statements, and trial brief. Plaintiffs have seen the broad strokes

of what Defendants' arguments and strategies were. The case has settled. Little if any surprise could

possibly remain in brief entries of a few words on billing documents relating to these stale topics.[2]

Finally, Defendants never offered in conferral, nor propose in their motion, how much time

they *would* need to conduct appropriate redactions. Redaction of privileged material incidentally

included in nonprivileged material sought, not quash of the subpoena, is ordinarily sufficient. Fed.

R. Civ. Pro. 45(d)(3) (subpoena should be quashed where it "*requires* disclosure of privileged or

---

[2] Plaintiffs are not seeking lengthy strategic legal memoranda or foundational case documents which could arguably retain privilege or work product status. No new information will be disclosed in a billing entry indicating that Defendants were researching a line of argument that they then pursued in later-filed motions, or a billing entry discussing a line of impeachment on an expert witness on a topic that they later actually used in cross-examining the expert.

other protected matter") (emphasis added); *In re Grand Jury Subpoena*, 75 F.3d 446, 448 (9th Cir. 1996); *Anderson v. SeaWorld Parks & Ent., Inc*., 329 F.R.D. 628, 636 (N.D. Cal. 2019) (privilege adequately protected by "narrowly tailored redactions" in documents that may contain "small amounts of work product"). The parties have already agreed to resolve such disputes by first examining whether the dispute can be resolved by redaction rather than a refusal to produce. ECF 411, ¶ 11. The incidental inconvenience of redactions and review for privilege over a body of documents not generally protected by privilege is not a basis to quash a subpoena. Had Defendants told Plaintiffs that they could not provide the records by June 28, but could provide them at a later date, that counter-proposal would have generated a grounds for discussion. Instead, Defendants took in conferral and in their motion to quash the untenable position that *no* amount of time would be adequate to fulfill the request.

**III.    Defendants' Disclosure Must Be Complete to Be Helpful to the Court and to Plaintiffs**

Plaintiffs must be able to review detailed billing records in order to make use of them. Contrary to Defendants' assertions, allowing *in camera* review of billing records is disfavored by the Ninth Circuit. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986) (remanding to ensure opposing party had "opportunity to challenge" billing records, as "no reason" prevented them from being "made available," instead of subject to in camera review). Such *in camera* review would be tedious and largely pointless, since such reviews rarely turn up the kind of privileged material alleged. *United States v. $1,379,879.09 Seized From Bank of Am*., 374 F. App'x 709, 711 (9th Cir. 2010) (memorandum) (in camera review revealed "garden variety, unprivileged billing records"). Defendants' proposal to assign to the Court the job of sifting through five years of billing records would encumber the Court needlessly with a task that belongs to the Plaintiffs, while unfairly depriving the Plaintiffs of the opportunity to make their own case for relief.

Generic data regarding Defendants' overall fees would tell Plaintiffs and the Court something, but not as much as records reflecting how much time was spent on each task. The Ninth Circuit is both clear that the nonmovant's billing records themselves are relevant and that they must be carefully analyzed in context. *Ferland*, 244 F.3d at 1151 (courts must consider that parties do not always "have the same responsibilities under the applicable rules, nor are they necessarily similarly situated with respect to their access to necessary facts"). In the absence of specific evidence, Defendants will surely allege, as they do in the motion to quash, that any difference in billing hours between defense counsel and Plaintiffs' counsel must stem from the substantial privilege review that defense counsel conducted of documents disclosed. ECF 507, at 9-10. Neither Plaintiffs nor the Court would be able to discern the truth or falsity of this assertion just from gross overall billing hours or dollar amounts for the case as a whole. Court and counsel would have no idea if Defendants spent $500,000, $2 million, or $10 million in fees specifically for document privilege review. The overall utility of comparison between Defendants' and Plaintiffs' time expenditures depends on a careful analysis of any dissimilarity between Defendants' and Plaintiffs' posture in the case. Plaintiffs are entitled to discover what, exactly, defense counsel spent their time on in order to make a more meaningful comparison between their own records and Defendants. To the extent that any records actually support Defendants' allegations once those facts are examined, Defendants may make use of their records to their own benefit. If Defendants truly believed their untested allegations, they would favor transparency, and promptly disclose their billing records which support the comparison. Instead, Defendants continue to fight against transparency. The Court should note that Defendants' actions, not their words, reveal whether such a detailed, evidence-based comparison would benefit them.

## IV.    Defendants Assertions of Vagueness Are Waived and Invalid

Defendants belatedly raise for the first time the claim that somehow the subpoena's terms

are "vague." In the District of Oregon, a movant is required to discuss "each claim, defense, or issue" that is the subject of the motion with the opposing party. LR 7-1. Defendants wonder whether the subpoena may be seeking records regarding "fees and costs of other law firms, experts, vendors or other litigation support professionals". ECF 507, at 15-16 n.3. They consider too whether the subpoena might be "vague as to certain kinds of records." *Id.* at 15.

But these musings are a distraction. Defendants never took the position that the subpoena was vague in conferral, nor did they mention "vagueness" in their brief statement in the letter to the Court. ECF 508-3, at 4. Local rules require such conferral precisely to limit the issues that must come before the court, not so that a party can spring load their briefing. In conferral, Plaintiffs and Defendants could have ironed out these questions, but Defendants answered, when asked by Plaintiffs, that they had no proposal or plan to narrow, alter, change the schedule for delivery, or clarify the terms of the subpoena (other than withdrawing the subpoena) that would be adequate to them. Decl. Thomas Stenson. Since Defendants never identified any vague terms to Plaintiffs in conferral, the Court should conclude that they waived the newfound vagueness contention. LR 7-1(3) (allowing Court to deny any motion not meeting this requirement). Notably absent from Defendants' vagueness plea is any discussion of any effort they made to clarify the terms of the subpoena, which they now allege is "vague."

The subpoena is not vague and, other than a small point made in a single footnote, Defendants fail to articulate what they find vague about it or how it could be clarified. Plaintiffs' modifying language makes it very clear what records are sought: the more specific of either the billings actually submitted to the Defendants or the billing records as defense counsel would present them to the Court were they entitled to recover a full fee. The amount billed for fees and costs in this matter is not an abstract concept, but a very finite universe of fees and costs that were paid by the state. Since those billings have *already been paid*, no real ambiguity exists in the terms of the

scope of the subpoena. Unless Defendants represent that they typically pay unreasonable fees and costs, the fees and costs actually paid were presumably judged reasonable by Defendants (possibly including DAS risk management) and should be disclosed.

### V.        Plaintiffs Do Not Seek to Shift a Burden on Defendants

Plaintiffs seek relevant, discoverable information from Defendants, not—as Defendants allege—to shift any burden in seeking fees to Defendants. Defendants' arguments on this point fit with no recognized basis to quash a subpoena, so Plaintiffs will address them only briefly. Plaintiffs recognize their initial burden to file a motion adequately justifying reasonable time and reasonable rates. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). The Court can decide, when it reviews the motion, whether Plaintiffs' have borne that burden. Defendants' briefing further disregards the significant burden that falls on Defendants. "[T]he burden of producing a sufficiently cogent explanation [of identifying excessive fees] can mostly be placed on the shoulders of the losing parties, who not only have the incentive, but also the knowledge of the case to point out such things as excessive or duplicative billing practices." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008); *Gates*, 987 F.2d at 1397-98 (burden of rebuttal falls on opposing party to challenge accuracy and reasonableness of hours). Where an opposing party fails to disclose their own billing records, that failure may be used against them in the fee proceeding. *Best W. Int'l Inc. v. NM Hosp. Roswell LLC*, No. CV-17-01274-PHX-DJH, 2020 WL 13573983, at *2 (D. Ariz. Apr. 28, 2020) (rejecting losing party's arguments on unreasonable billing where they refused to provide documentation their own records); *Bruner v. City of Phoenix*, No. CV-18-00664-PHX-DJH, 2020 WL 554387, at *10 (D. Ariz. Feb. 4, 2020) (same); *Saint Alphonsus Med. Ctr.- Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, No. 1:12-CV-00560-BLW, 2016 WL 1232656, at *4 (D. Idaho Mar. 28, 2016), *judgment corrected*, No. 1:12-CV-00560-BLW, 2016 WL 7017401 (D. Idaho Nov. 29, 2016) (same).  Since Defendants will bear the burden of identifying with specificity any excessive fees

claimed, it is fair and just for Plaintiffs to obtain discovery from them on that exact topic.

## CONCLUSION

This Court previously directed both parties that their fees and costs would be required in this matter. In keeping with that directive, Plaintiffs have submitted their own fees and costs information in support of their motion for fees and costs. Defendants should submit the same information. Defendants bear no greater burden than Plaintiffs in doing so. Defendants and defense counsel received a timely, appropriate subpoena for the same information that Plaintiffs have just submitted to the Court. The subpoena's terms are clear. The Ninth Circuit uniformly holds that billing records of the type sought are not generally privileged. The subpoena properly seeks relevant, discoverable information, as this Court acknowledged on the record in April 2024. The Court directed at that time that both parties should produce their fees and costs records. Defendants, by moving to quash the subpoena, ask the Court to repeat itself. The Court's directive was correct then, and an order denying the motion to quash would be correct again.

DATED this 3rd day of July 2024 in Portland, Oregon.

**DISABILITY RIGHTS OREGON**

By:/s/ Thomas Stenson
Emily Cooper, OSB 182254
ecooper@droregon.org
Thomas Stenson, OSB 152894
tstenson@droregon.org
511 SW 10th Avenue, Suite 200
Portland, OR 97205
Tel: (503) 243-2081

**DAVIS WRIGHT TREMAINE LLP**
P. Andrew McStay Jr., OSB 033997

andymcstay@dwt.com
William D. Miner, OSB 043636
billminer@dwt.com
560 SW 10th Avenue, Suite 700
Portland, OR 97205
Tel: (503) 241-2300

**A BETTER CHILDHOOD**
Marcia Robinson Lowry (*pro hac vice*)
mlowry@abetterchildhood.org
Anastasia Benedetto (*pro hac vice*)
abenedetto@abetterchildhood.org
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456

**RIZZO BOSWORTH ERAUT, PC**
Steven Rizzo, OSB 840853
srizzo@rizzopc.com
Mary D. Skjelset, OSB 075840
mskjelset@rizzopc.com
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819

*Attorneys for Plaintiffs*