**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
**Vivek A. Kothari, OSB #182089**
VivekKothari@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for Defendants*
*Additional Counsel of Record Listed on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S.; RUTH T.; BERNARD C.; NAOMI B.; and NORMAN N., individually and on behalf of all others similarly situated,<br><br>                 Plaintiffs,<br><br>   v.<br><br>TINA KOTEK, Governor of Oregon in her official capacity; FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; APRILLE FLINT-GERNER, Director, Child Welfare in her official capacity; and OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>                 Defendants. | Case No. 6:19-cv-00556-AA<br><br>**DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

**DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..........................................................................................................1

BACKGROUND ..........................................................................................................2

LEGAL STANDARD....................................................................................................4

DISCUSSION ..............................................................................................................5

I.     The Court should use the 2022 Oregon State Bar Economic Survey 75th Percentile Rate. ..............................................................................................6

II.    Counsel's failure to exercise reasonable billing judgment and to sufficiently document the hours they spent justifies reducing plaintiffs' claimed hours by half. ......................................................................................13

     A.    Plaintiffs' counsel did not meet their obligation to exercise reasonable billing judgment.........................................................................14

         1.    Plaintiffs billed for an unreasonably high number of hours and did not offer any meaningful reductions. ...............................15

         2.    Plaintiffs' hours spent on claims that were dismissed or not alleged in the Complaint should be reduced as they are wasteful. .......................................................................................20

         3.    Plaintiffs impermissibly seek fees for the hours spent on performing non-recoverable media-related tasks...........................23

         4.    Plaintiffs seek fees for the hours billed by attorneys who were not admitted to practice before this Court...........................25

         5.    Plaintiffs did not apply a discount for tasks that should have been written off or down by the law firms....................................27

     B.    Plaintiffs' counsel have not met their burden to sufficiently document the hours they expended on the case. ........................................30

         1.    Plaintiffs did not sufficiently explain the reasonableness of the hours expended. ......................................................................30

         2.    Plaintiffs' billing records are replete with block billing and vague entries. ......................................................................31

             a.    Block Billing...................................................................31

             b.    Vague Entries..................................................................33

     C.    Plaintiffs' expert does not provide persuasive support for plaintiffs' motion. ..................................................................................................35

III.    In the alternative, the number of hours claimed by each of plaintiffs' four law firms should be reduced. ..............................................................................36

     A.    A Better Childhood ...................................................................................36

1.  ABC used sets of identical, vague entries to record their hours. ...................................................................................36

2.  The hours billed by ABC are unrealistically high. .......................37

3.  ABC cannot recover attorney fees for non-Oregon licensed attorneys who do not have pro hac vice admission.......................38

B.  Rizzo Bosworth Eraut PC ...........................................................................39

1.  Plaintiffs failed to reduce the excessive hours resulting from overstaffing with Rizzo Bosworth. .......................................39

2.  Rizzo Bosworth's hours are unrealistically high. .........................40

3.  Rizzo Bosworth engaged in wasteful litigation tactics in an extreme manner. ...........................................................................41

C.  Davis Wright Tremaine LLP .......................................................................43

1.  DWT continuously relied on its pro bono status to their advantage throughout this case. ....................................................43

2.  DWT charged excessive fees through their failure to reasonably staff this case. ..............................................................46

3.  DWT cannot recover attorney fees for non-Oregon licensed attorneys who do have not have pro hac vice admission. ..............47

D.  Disability Rights Oregon ............................................................................47

IV.  Plaintiffs' request for costs included many non-recoverable items. .....................49

A.  Plaintiffs' request includes unrecoverable expert fees.............................49

B.  Plaintiffs' request includes travel-related costs that are not taxable under FRCP 54(d) and 28 U.S.C. § 1920. ..................................................50

CONCLUSION ......................................................................................................................53

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## <u>Cases</u>

*A.F. v. Evans*,
 No. 2:18-cv-010506-SI, 2022 WL 18013416 (Dec. 30, 2022) .................................................. 12

*Agnes R. v. Comm'r of Soc. Sec.*,
 No. 3:18-CV-01022-JR, 2020 WL 1697097 (D. Or. Mar. 18, 2020) ....................................... 33

*Alexander Mfg., Inc. Emp. Stock Ownership & Tr. v. Illinois Union Ins. Co.*,
 688 F. Supp. 2d 1170 (D. Or. 2010) ......................................................................................... 51

*Atl. Recording Corp. v. Andersen*,
 No. 05-cv-933 AC, 2008 WL 2536834 (D. Or. June 24, 2008) ......................................... 34, 47

*Banta v. City of Merrill, Or.*,
 No. CIV. 06-3003-CL, 2007 WL 3543445 (D. Or. Nov. 14, 2007) ......................................... 51

*Bonnichsen v. United States*, No. CIV. 96-1481-JE,
 2004 WL 2901204 (D. Or. Dec. 15, 2004) ............................................................................... 24

*Boquist v. Courtney*,
 No. 6:19-cv-01163-MC, 2023 WL 7127676 (D. Or. Oct. 30, 2023).................................. 18, 19

*Cf. Brown v. Rawson-Neal Psychiatric Hosp.*,
 840 F.3d 1146 (9th Cir. 2016) .................................................................................................. 25

*Cf. In re Maruko Inc.*,
 160 B.R. 633 (Bankr. S.D. Cal. 1993) ...................................................................................... 27

*Cf. Shayler v. 1310 PCH, LLC*,
 51 F.4th 1015 (9th Cir. 2022) ................................................................................................... 22

*Christensen v. Stevedoring Servs. of Am.*,
 557 F.3d 1049 (9th Cir. 2009) .................................................................................................... 7

*Clark v. Capital Credit & Collection Servs.*, Inc.,
 561 F. Supp. 2d 1213 (D. Or. 2008) ......................................................................................... 20

*Connally v. Brooks*,
 2000 WL 36743692 (E.D. Cal. Dec. 4, 2000) .......................................................................... 30

*Coos Bay RV Invs., LLC v. Wheelhaus Inc.*,
 No. 3:21-cv-00448-AC, 2022 WL 508818 (D. Or. Feb. 3, 2022) ............................................. 9

Page iii –    **DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR
              ATTORNEYS' FEES AND COSTS**

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
   482 U.S. 437, (1987) .................................................................................... 50

*Cuellar v. Joyce*,
   603 F.3d 1142 (9th Circ. 2010) ................................................................... 43

*Dang v. Cross*,
   422 F.3d 800 (9th Cir. 2005) ......................................................................... 6

*Davis v. Wal-Mart Stores, Inc.*,
   No. 3:09-cv-01488-MO, 2012 WL 1424105 (D. Or. Apr. 23, 2012) ......................................... 9

*Democratic Party of Wash. State v. Reed*,
   388 F.3d 1281 (9th Cir. 2004) ..................................................................... 19

*Doby v. Sisters of St. Mary of Oregon Ministries Corp.*,
   No. 3:13-cv-00977-ST, 2015 WL 4877786 (D. Or. Aug. 14, 2015) ......................................... 19

*Don't Shoot Portland v. City of Portland*,
   No. 3:20-cv-00917-HZ, 2023 WL 6213352 (D. Or. Sept. 24, 2023) ....................................... 15

*Edwards v. Cincinnati Ins. Co.*,
   No. 3:19-cv-01425-BR, 2021 WL 6427817 (D. Or. Feb. 8, 2021) .................................. 19, 43

*Farrar v. Hobby*,
   506 U.S. 103 (1992) ................................................................................. 20

*Fitzgerald v. Am. Fam. Mut. Ins. Co.*,
   No. 6:14-cv-00497-AA, 2016 WL 1071096 (D. Or. Mar. 17, 2016) ......................................... 6

*Fox v. Vice*,
   563 U.S. 826 (2011) .................................................................................. 4

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
   886 F.2d 1545 (9th Cir. 1989) ...................................................................... 20

*Gary v. Unum Life Ins. Co. of Am.*,
   No. 3:17-cv-01414-HZ, 2023 WL 196172 (D. Or. Jan. 17, 2023) ......................................... 9

*Garza v. City of Salem*,
   No. 3:22-cv-00721-HZ, 2024 WL 1024829 (D. Or. Feb. 19, 2024) ....................................... 23

*Gates v. Deukmejian*,
   987 F2d 1392 (9th Cir 1992) ............................................................. 5, 7, 30, 31

*Gates v. Gomez*,
    60 F.3d 525 (9th Cir. 1995) ........................................................................... 23, 24

*Gessele v. Jack in the Box, Inc.*,
    No. 3:14-CV-01092-HZ, 2024 WL 1619425 (D. Or. Apr. 14, 2024) ..................................... 51

*Giovannoni v. Bidna & Keys*,
    255 Fed. App'x. 124 (9th Cir. 2007) ................................................................. 13

*Glas-Weld Sys., Inc. v. Boyle*,
    No. 6:12-cv-02273-AA, 2017 WL 1243151 (D. Or. Mar. 31, 2017) ....................................... 8

*Gonzalez v. City of Maywood*,
    729 F.3d 1196 (9th Cir. 2013) .................................................................... 4, 10, 13

*Harden v. Comm'r Soc. Sec. Admin.*,
    497 F.Supp.2d 1214 (D. Or. 2007) .................................................................. 27

*Helfand v. Gerson*,
    105 F.3d 530 (9th Cir. 1997) ...................................................................... 44, 45

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................... 4, 5, 13, 14, 15, 16, 21, 29, 31

*Hernandez v. Grullense*,
    2014 WL 1724356 (N.D. Cal. Apr. 30, 2014) ......................................................... 30

*Herrman v. LifeMap Assurance Co.*,
    497 F. Supp. 3d 970 (D. Or. 2020) .................................................................. 32

*Idaho Sporting Congress, Inc. v. Alexander*,
    23 Fed. App'x 713 (9th Cir. 2001) .................................................................. 26

*Kwiecinski v. Medi-Tech Int'l Corp.*,
    No. 3:14-CV-01512-BR, 2016 WL 11817973 (D. Or. Aug. 25, 2016) .................................... 51

*Langvin v. City of Portland*,
    No. 3:21-CV-01595-HZ, 2022 WL 4592550 (D. Or. Sept. 30, 2022) .................................... 11

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Turner*,
    305 F. Supp. 3d 1156 (D. Or. 2018) ............................................................. 10, 27

*Lemus v. Timberland Apartments, L.L.C.*,
    876 F. Supp. 2d 1169 (D. Or. 2012) ................................................................ 33

*McCormick & Schmick's Seafood Restaurants, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
 No. 08-cv-01011-AA, 2011 WL 4625728 (D. Or. Sept. 30, 2011) ........................................... 9

*McCown v. City of Fontana*,
 565 F.3d 1097 (9th Cir. 2009) ........................................................................................... 5, 20

*McKenzie Flyfishers v. McIntosh*,
 158 F. Supp. 3d 1085 (D. Or. 2016) ...................................................................................... 23

*Moreno v. City of Sacramento*,
 534 F.3d 1106 (9th Cir. 2008) ............................................................................................... 4

*MW Builders, Inc. v. Safeco Ins. Co. of Am*,
 No. CV 02-1578-AS,2006 WL 8446574, at *4 (D. Or. Feb. 15, 2006) ........................... 30, 31

*Nat'l Warranty Ins. Co. v. Greenfield*,
 No. 97-cv-01654-ST, 2001 WL 34045734, at *5 (D. Or. Feb. 8, 2001) .......................... 15, 19

*Noel v. Hall*, No. 3:99-CV-00649-AC,
 2013 WL 5376542 (D. Or. Sept. 24, 2013) ........................................................................... 31

*Northon v. Rule*,
 494 F. Supp. 2d 1183 (D. Or. 2007) ...................................................................................... 46

*Nufarm Americas Inc. v. Delta Ridge Holdings, LLC*,
 No. 22-CV-581-HL, 2024 WL 52973 (D. Or. Jan. 4, 2024) ................................................... 48

*Oberdorfer v. Glickman*,
 No. CV-98-1588-HU, 2001 WL 34045732 (D. Or. Sept. 14, 2001) ....................................... 32

*Orantes-Hernandez v. Holder*,
 713 F .Supp. 2d 929 (C.D. Cal. 2010) ................................................................................... 30

*Perdue v. Kenny A.*,
 559 U.S. 542 (2010)............................................................................................................... 4

*Prison Legal News v. Umatilla Cty.*,
 No. 2:12-cv-01101-SU, 2013 WL 2156471 (D. Or. May 16, 2013) ................................... 8, 11

*Quesnoy v. Oregon*, No. 3:10-cv-01538-ST,
 2012 WL 1155832 (D. Or. Apr. 6, 2012) ......................................................................... 49, 50

*Sanchez v. Cty. of San Bernardino*,
 2014 WL 12734756 (C.D. Cal. Mar. 10, 2014) ..................................................................... 49

*Schwarz v. Sec'y of Health & Hum. Servs.*,
    73 F.3d 895 (9th Cir. 1995) ............................................................... 13, 36

*Sutton v. Kijakazi*,
    No. 6:19-CV-1437-SI, 2021 WL 3145974 (D. Or. July 26, 2021) ........................ 33

*Tasakos v. Welliver Metal Prod. Corp.*,
    No. CIV. 04-6205-AA, 2005 WL 627633 (D. Or. Mar. 16, 2005) ........................ 50

*Thorne v. City of El Segundo*,
    802 F.2d 1131 (9th Cir. 1986) ........................................................... 21

*Tozer v. City of Portland*,
    2023 WL 8295886 (D. Or. Nov. 30, 2023) ................................... 24, 25, 33, 34

*U.S. v. Montagne Dev., Inc.*,
    No. 3:11-cv-01191-PK, 2014 WL 2334209 (D. Or. Mar. 10, 2014) ....................... 7

*United Steelworkers of Am. v. Ret. Income Plan for Hourly-rated Emps. of Asarco, Inc.*,
    512 F.3d 555 (9th Cir. 2008) ..................................................... 5, 25, 31

*Webb v. Ada Cty., Idaho*,
    195 F.3d 524 (9th Cir. 1999) ............................................................. 5

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) ........................................................... 32

*West Virginia Univ. Hosp., Inc. v. Casey*,
    499 U.S. 83 (1991) ..................................................................... 49

*Wilkens v. Edwards*,
    No. 6:14-cv-00907-MC, 2016 WL 1271663 (D. Or. Mar. 29, 2016) ...................... 49

*Wilson v. Decibels of Oregon, Inc.*,
    No. 1:16-cv-00855-CL, 2018 WL 3863489 (D. Or. Aug. 14, 2018) ...................... 18

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
    556 F.3d 815 (9th Cir. 2009) ....................................................... 26, 27

*Wit v. United Behav. Health*,
    578 F. Supp. 3d 1060 (N.D. Cal. 2022) .................................................. 24

*Wit v. United Behav. Health*,
    2023 WL 8723695 (9th Cir. Dec. 15, 2023) .............................................. 24

*Wolfe v. City of Portland*,
    No. 3:12-cv-02035-PK, 2013 WL 6002391 (D. Or. Nov. 8, 2013)..................................... 24, 34

## **Statutes**

28 U.S.C. § 1920.............................................................................................................. 50, 51, 52

42 U.S.C. §1981a(a)(2)........................................................................................................... 50

42 U.S.C. § 1983..................................................................................................................... 49

42 U.S.C. § 1988................................................................................................................... 4, 49

42 U.S.C. §§ 1981, 1981a....................................................................................................... 50

42 USC § 1988(b) .................................................................................................................... 49

42 USC § 1988(c) .................................................................................................................... 49

## **Rules**

FRCP 54(d) .............................................................................................................................. 50

FRCP 54(d)(1) ......................................................................................................................... 50

## **Other Authorities**

Black's Law Dictionary (12th ed. 2024)................................................................................... 44

U.S. Dist. Ct., Dist. of Or., Message from the Court Regarding Attorney Fee Petitions ....... 10, 31

## INTRODUCTION

Plaintiffs seek nearly $11,000,000 in attorney fees and almost $600,000 in costs.  Their attorney fee request should be reduced because their motion suffers from several fatal flaws under applicable laws and local rules and directives.  For the reasons set forth below, defendants request that plaintiffs' requested fees be reduced to: (1) $4,975,691.46 if the Court chooses to exercise its authority to apply an across-the-board reduction of plaintiffs' claimed hours by 50 percent for billing improprieties; or (2) $4,673,979.63 if the Court chooses to separately analyze each of the four law firms' billing records.  Defendants further request that plaintiffs' request for costs be reduced to $236,848.11.

As a threshold matter, the Court should apply the 75th percentile rates from the 2022 Oregon State Bar Economic Survey as the reasonable rate because plaintiffs fail to justify the unreasonably high rates requested by their attorneys.

The Court should then reduce plaintiffs' claimed hours by half for their counsel's failure to exercise sound billing judgment.  Plaintiffs ask to be compensated for excessive hours and obtain fees they have no legal basis to seek from the State.  Compounding these errors, plaintiffs' counsel failed to meet their burden to sufficiently document the hours they recorded, impermissibly block billed, and submitted vague time entries.  The Ninth Circuit has empowered district courts to employ an "across-the-board percentage cut" to address such deficiencies.  The Court should exercise that authority here to reduce plaintiffs' request for attorney fees by half.

In the alternative, the Court should reduce each of the four firms' claimed hours.

A Better Childhood's ("ABC") hours should be reduced by 50 percent because their billings include nebulous time entries and unrealistically high hours.  They also fail to account for a revolving door of new attorneys joining their firm and experienced attorneys leaving and taking institutional knowledge with them.  Rizzo Bosworth Eraut's ("Rizzo Bosworth") hours

**Page 1 –     DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

should also be reduced by 80 percent due to overstaffing, inflated hours billed, and for pursuing legal theories even the Court described as, "frankly, a waste of time for all concerned." (4/11/24 Op. & Order (Dkt. 367) at 8.) Davis Wright Tremaine's ("DWT") hours should be reduced by 80 percent in light of their representation to the Court, and to the public, that they were "donating" their time for this case and their fee-inflating staffing decisions. Disability Rights Oregon's ("DRO") submission warrants a 20 percent reduction to address block billing and vague time entries.

As for plaintiffs' bill of costs, although they are entitled to their expert fees related to their Americans with Disabilities Act ("ADA") claim, black letter law bars their mistaken attempt to recover fees for other experts. Likewise, plaintiffs' attempt to recover costs for their travel have no basis in the law.

## BACKGROUND

Plaintiffs filed their Class Action Complaint on April 16, 2019. (*See generally* Compl. (Dkt. 1).) Plaintiffs brought the Complaint on behalf of a general class of all children "in the legal and physical custody" of the Oregon Department of Human Services ("ODHS"), and three subclasses: the ADA subclass, made up of children "who have or will have physical, intellectual, cognitive, or mental health disabilities"; the SGM subclass, made up of children "who identify as sexual or gender minorities, including lesbian, gay, bisexual, queer, transgender, intersex, gender non-conforming and non-binary children"; and the aging-out subclass, made up of children "who are or will be 14 years of older, who are eligible for transition services and lack an appropriate reunification or other permanency plan." (*Id.* ¶ 33.)

Defendants moved to dismiss plaintiffs' claims, and this Court granted in part and denied in part defendants' motion. (7/25/19 Defs.' Mot. to Dismiss (Dkt. 31); 9/27/21 Op. & Order (Dkt. 215).) In that ruling, the Court significantly narrowed the scope of the case. (Dkt. 215.)

**Page 2 –    DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

First, the Court dismissed plaintiffs' substantive due process claims to the extent that they sought to vindicate a substantive due process right to be housed in the least restrictive setting, or a right to an array of community-based placements. (*Id.* at 20.) Second, the Court dismissed plaintiffs' substantive due process claims insofar as they asserted claims based on a right to a "duration of foster care reasonably related to the purpose of government custody," or "the right not to be maintained in custody longer than is necessary to accomplish the purpose to be served by taking a child into government custody." (*Id.*) Third, the Court dismissed plaintiffs' substantive due process claims on behalf of the aging-out subclass, concluding that the rights alleged by that subclass fell outside constitutional guarantees of substantive due process. (*Id.* at 21.)

This Court certified the case as a class action on August 17, 2022. (Op. & Order (Dkt. 275).) The parties proceeded through extensive fact and expert discovery and the Court ultimately ordered the parties to confer on new case schedule deadlines that would "allow them to be ready for trial by May 13, 2024." (9/28/23 Min. of Proceedings (Dkt. 306).) As the parties prepared for the May 13 trial, settlement talks continued. Ultimately, on May 10, the parties agreed to enter into a final detailed settlement agreement by May 17 and submit a joint motion for preliminary approval of the settlement by May 24, which the Court accepted on the record. (5/10/24 Min. of Proceedings (Dkt. 473); Tr. of 5/10/24 Status Conference at 21:6-9.) The parties submitted their Settlement Agreement (both public and restricted versions) and filed a joint motion for preliminary approval of the Settlement Agreement on May 23. (5/17/24 Settlement Agreement (Dkt. 481, 482) ("Settlement Agreement"); 5/23/24 Joint Mot. for Prelim. Approval (Dkt. 483).) The Court granted the joint motion for preliminary approval on May 31. (5/31/24 Op. & Order (Dkt. 485).)

Section 12 of the Settlement Agreement governs plaintiffs' attorney fee petition. (Settlement Agreement at § 12.)  Section 12 provides that despite no admission of liability on the part of defendants, that plaintiffs' counsel would be entitled to "an award of fees and costs pursuant to 42 U.S.C. § 1988 and any applicable laws."  (*Id*.)  Prior to seeking fees before the Court, the Settlement Agreement required that the parties participate in non-binding mediation, which was unable to resolve their dispute.  (*Id*.; 6/14/24 Min. of Proceedings (Dkt. 503).)  The Settlement Agreement further provides that plaintiffs shall not seek any enhancement or multiplier and that this Court's decision "shall not be appealable."  (Settlement Agreement § 12.)

Plaintiffs submitted their fee petition to the Court on July 3, 2024.  (Pls.' Mot. for Fees and Costs (Dkt. 514).)

## LEGAL STANDARD

Under 42 U.S.C. § 1988, a court may award a "reasonable attorney's fee to the prevailing party in various kinds of civil rights cases, including suits brought under § 1983."  *Fox v. Vice*, 563 U.S. 826, 832-33 (2011).  The calculation of a reasonable fee award begins with calculating the lodestar figure, by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (holding that "the lodestar approach" is "the guiding light" when determining reasonable fees).  This Court has the discretion to adjust the lodestar figure upward or downward based on a variety of factors.  *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citing *Hensley*, 461 U.S. at 434).

In determining the "reasonable hourly rate to use for attorneys and paralegals[,]" courts look to the "prevailing market rates in the relevant community."  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (citations and internal quotation marks omitted).  The court

excludes hours "that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at 434 (1983)).

The party seeking fees bears "the burden of documenting the appropriate hours expended in the litigation, and [is] required to submit evidence in support of those hours worked." *United Steelworkers of Am. v. Ret. Income Plan for Hourly-rated Emps. of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (internal quotation marks and citation omitted). Even in the absence of objections, the court has an independent duty to review the requested fee award for reasonableness. *Gates v. Deukmejian*, 987 F2d 1392, 1401 (9th Cir 1992) (finding that the "district court [is] required to independently review plaintiffs' fee request even absent defense objections"). The court has "considerable discretion" in determining the reasonableness of a fee award. *Webb v. Ada Cty., Idaho*, 195 F.3d 524, 526 (9th Cir. 1999).

## DISCUSSION

Plaintiffs contend they are entitled to a "full fee award" because this was impact litigation for which they achieved a significant settlement agreement. This contention sidesteps the factors this Court must evaluate when considering the reasonableness of the fees (*i.e.*, the requested hourly rates and the claimed hours) and costs requested.

Defendants have analyzed under applicable laws and local rules plaintiffs' counsel's billing entries and costs provided in exhibits attached to the Declarations of Marcia Lowry ("Lowry Decl.") (Dkt. 518), Emily Cooper ("Cooper Decl.") (Dkt. 519), Steven Rizzo ("Rizzo Decl.") (Dkt. 522), and William Miner ("Miner Decl.") (Dkt. 523) in Support of Plaintiffs' Motion for Attorneys' Fees and Costs. (A copy of all of plaintiffs' billing entries, in chronological order with defendants' analysis, is attached as Exhibit 1 to the Declaration of Laura Salerno Owens in Support of Defendants' Objections to Plaintiffs' Motion for Attorneys' Fees and Costs ("Salerno Owens Decl.").)

**Page 5 –    DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiffs' fees and costs total as follows:

| Law Firm | Dates | Claimed Hours | Billed Hourly Rate(s) | Requested Fees | Requested Costs |
|---|---|---|---|---|---|
| ABC | 2018-2024 | 16,055.75 | $250-$800 | $7,537,572.98 | $429,112.45 |
| DWT | 2019-2024 | 2,678.30 | $250-$650 | $1,459,934.98 | $112,876.41 |
| DRO | 2019-2024 | 2,064.10 | $75-$805 | $1,241,117.50 | $20,730.52 |
| Rizzo Bosworth | 2023-2024 | 2,293.70 | $250-$798 | $1,220,825.40 | $4,447.26 |
| **Total** | | **23,091.85** | **$75 - $805** | **$11,459,450.86** | **$581,166.64** |

(Salerno Owens Decl. Ex. 2, Summary of Pls.' Att'y Fees by Law Firm.)

Plaintiffs noted they discounted their total amount by $497,823.67, or approximately 4 percent, based on the opinion of their expert. (Pls.' Mot. for Fees and Costs at 9; Decl. of James McDermott in Supp. of Pls.' Mot. for Fees and Costs ("McDermott Decl.") ¶¶ 44-45 (Dkt. 515).)

I.    **The Court should use the 2022 Oregon State Bar Economic Survey 75th Percentile Rate.**

Plaintiffs seek unreasonably high rates.[1] (*See* Salerno Owens Decl. Ex. 3, Summary of Pls.' Att'y Fees by Law Firm and Timekeeper.) Plaintiffs bear the burden to prove that "the rates requested are in line with the prevailing rates in the community." *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005). The benchmark for assessing the reasonableness of an attorney's hourly rate in this District is the Oregon State Bar Economic Survey ("OSB Survey"). *Fitzgerald v. Am. Fam. Mut. Ins. Co.*, No. 6:14-cv-00497-AA, 2016 WL 1071096, at *3 (D. Or. Mar. 17, 2016) (cleaned up).

---

[1] While this section focuses on the rates billed by plaintiffs' attorneys, defendants note that plaintiffs also used unreasonably high rates to bill the hours expended by their paralegals. For example, DWT's paralegals billed up to $425 per hour.

The 2022 OSB Survey is the most recent survey published by the Oregon State Bar.[2] While the Court has the discretion to adjust the OSB Survey rates for inflation for "delay in payment and loss of the use [of] funds," *see Gates*, 987 F.2d at 1406, this case does not warrant such adjustment. Approximately 11,000 of the more than 23,000 hours claimed by plaintiffs' counsel were billed on or after January 1, 2022. (Salerno Owens Decl. Ex. 3.) The Ninth Circuit has found that a similar 2-year delay was "not so egregious or extraordinary as to require a delay enhancement." *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1056 (9th Cir. 2009). Indeed, this District has relied on *Christensen*, and found that a rate adjustment was not warranted for the hours expended between July 2006 and September 2013. *U.S. v. Montagne Dev., Inc.*, No. 3:11-cv-01191-PK, 2014 WL 2334209, at *8 (D. Or. Mar. 10, 2014), *report and recommendation adopted as modified*, 2014 WL 2333777 (D. Or. May 29, 2014)). Moreover, defendants ask that the Court apply the 75th percentile rates from the 2022 OSB Survey, not the mean rates, which means any loss plaintiffs argue they would suffer by using 2022 rates would be mitigated by applying the higher rates from the 2022 OSB Survey, not the standard mean rates.[3] Finally, using the 2022 OSB Survey rates would give an increase in rates to more than 50 percent of plaintiffs' total claimed hours, 12,105.49 out of 23,091.85 hours, that were billed before January 1, 2022. (Salerno Owens Decl. Ex. 4 at 1, Summary of Pls.' Att'y Fees by Date Billed.) Accordingly, the reasonable rate to apply in this case is the 2022 OSB Survey rates.

---

[2] The 2022 OSB Survey is available at https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf. A copy has been attached to the Declaration of Laura Salerno Owens as Exhibit 15. Defendants rely on Table 36, Hourly Billing Rates by Total Years Admitted to Practice (Private Practice) in Downtown Portland. (*See id.* at 42-43.)

[3] Defendants recognize that the Court has the discretion to adjust the OSB Survey rates for inflation and will make any adjustments ordered by the Court.

**Page 7 –    DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND COSTS**

"If the rate requested exceeds **the average rate** reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate."[4]  *Glas-Weld Sys., Inc. v. Boyle*, No. 6:12-cv-02273-AA, 2017 WL 1243151, at *3 (D. Or. Mar. 31, 2017) (citing *Prison Legal News v. Umatilla Cty.*, No. 2:12-cv-01101-SU, 2013 WL 2156471, *4 (D. Or. May 16, 2013) (emphasis added).  "Even when such justification is present, the court usually limits the hourly rate to the 75th percentile of the OSB Survey."  *Id.*

Plaintiffs fail to meet their burden to justify their unreasonably high attorney rates that go well beyond the mean.  DWT, for example, seeks rates above the 2022 OSB Survey mean for all of its attorneys, and, for two of its attorneys, William Miner and Andrew McStay, they seek rates that are just below the 95th percentile adjusted for inflation.  (*See* Miner Decl. at 3-5.)  In addition, some high hourly rates for DWT associates appear to be tied to their location in other legal markets.  For example, Emma Englund work in the DWT Seattle office and billed $530-$625/hour, and Soraya Mohamed billed $635-725/hour in the DWT Washington, DC office.  (*Id.* at 4-5.)

Although plaintiffs submitted a declaration outlining some of the DWT attorneys and paralegals' educational and professional backgrounds who worked on this case,[5] they failed to adequately justify why they are entitled to such large deviations from the OSB Survey's mean rates beyond their assertion that the requested rates are reasonable because they "fit within the median and 95th percentile of the 2022 Economic Survey" for attorneys with their years of experience as adjusted for inflation.  (Pls' Mot. for Fees and Costs at 30; McDermott Decl. ¶¶

---

[4] "Average" rates are listed as "mean" rates in the 2022 OSB Survey, Salerno Owens Decl. Ex. 15 at 17, ("The mean, also known as the average, is calculated by summing all the values of a numeric response and dividing by the number of respondents.")

[5] Significantly, of the 20 attorneys from DWT who billed on this case, DWT submitted educational and professional background information for only four.  (*See* Miner Decl. ¶ 6.)

**Page 8 –    DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

28-32.); *McCormick & Schmick's Seafood Restaurants, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 08-cv-01011-AA, 2011 WL 4625728, at *5 (D. Or. Sept. 30, 2011) ("The court does not award rates higher than the average without some justification for doing so.") (internal citation omitted).

And courts in this District regularly reduce similar requests from near the 95th percentile to the 75th.  *See*, *e.g.*, *Gary v. Unum Life Ins. Co. of Am.*, No. 3:17-cv-01414-HZ, 2023 WL 196172, at *5 (D. Or. Jan. 17, 2023) (reducing an attorney who requested "an hourly rate closer to the 95th percentile average during the relevant years" to an inflation-adjusted 75th percentile); *Coos Bay RV Invs., LLC v. Wheelhaus Inc.*, No. 3:21-cv-00448-AC, 2022 WL 508818, at *3 (D. Or. Feb. 3, 2022) (reducing request for 95th to 75th percentile for an attorney with a background in "complex commercial litigation" and "extensive experience as trial counsel [with a] standard billing rate is $810 per hour"); *Davis v. Wal-Mart Stores, Inc.*, No. 3:09-cv-01488-MO, 2012 WL 1424105, at *2 (D. Or. Apr. 23, 2012) ("I find that [the attorney] has not met his burden of proof justifying compensation at the 95th percentile.  Therefore, in determining [the attorney's] reasonable rate in this case, I have averaged the aforementioned inflation adjusted estimates from the 75th percentile[.]").[6]

In a similar vein, ABC cannot justify the rates it seeks.  (*See* Lowry Decl. at 2-10.)  ABC seeks rates above the mean rates under the 2022 OSB Survey—with at least one timekeeper near the 95th percentile—and fails to provide a persuasive justification for such an exceptional departure from the OSB Survey:

---

[6] For the same reasons, DRO and Rizzo Bosworth's requests for rates at the 95th percentile are unreasonably high and should be reduced.

**Page 9 –    DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

| Attorney | Rate Sought | 2022 OSB Survey Mean Rate | 2022 OSB Survey 75th Percentile[7] | 2022 OSB Survey 95th Percentile |
|---|---|---|---|---|
| Ms. Lowry | $800 | $483 | $620 | $798 |
| Ms. Post | $600 | $447 | $530 | $697 |
| Attorneys with 10-12 years of practice | $450 | $379 | $450 | $567 |
| Attorneys with 7-9 years of practice | $400 | $339 | $400 | $486 |

(*See generally* Salerno Owens Decl. Exs. 7, 15.)

Plaintiffs assert that ABC should receive their New York rates based on their practice

specialty, but the case on which they rely directly contradicts that proposition:

> Where higher rates are justified, a court looks to prevailing market rate to set reasonable hourly rates. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). "Generally, when determining a reasonable hourly rate, the relevant community is *the forum in which the district court sits*." *Id.*

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Turner*, 305 F. Supp. 3d

1156, 1165 (D. Or. 2018) (emphasis added). As a result, the most recent OSB Survey serves as

the "initial benchmark"—not ABC's New York rates. *Id.* (citing U.S. Dist. Ct., Dist. of Or.,

Message from the Court Regarding Fee Petitions, https://ord.uscourts.gov/index.php/rules-

orders-and-notices/notices/fee-petitions.). In other words, plaintiffs' argument for New York

rates suffers from the fundamental flaw that ABC's physical office location is not relevant to the

Court's analysis in determining whether a higher rate is justified here.[8] As a result, plaintiffs

---

[7] Defendants requested and received calculations of the 75th percentile for the 2022 OSB Survey from the Oregon State Bar in July 2024. (*See* Decl. of David Fauria in Supp. of Defs.' Obj. to Pls.' Mot. for Fees and Costs, Ex. 1.)

[8] Further, ABC has a national practice, not one focused in the New York region. *See* https://www.abetterchildhood.org/ ("A Better Childhood is a national 501(c)(3) nonprofit advocacy organization that uses the courts to reform dysfunctional child welfare systems around the country.").

**Page 10 –    DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

have not met their burden of establishing their entitlement to rates well beyond the average in the OSB Survey.

Moreover, plaintiffs do not adequately explain why ABC is entitled to rates above the mean, let alone the typical cap of the 75th percentile. *Prison Legal News*, 2013 WL 2156471, at *4 ("Even when such justification is present, the court usually limits the hourly rate to the 75th percentile of the OSB Survey."). Plaintiffs' expert, James McDermott simply offers a conclusory opinion that the requested rates fall within "the median and the 95th percentile" and are therefore reasonable. (McDermott Decl. ¶¶ 17-18.) Plaintiffs submit a second declaration from Shenoa Payne in which she opines as an expert based on her personal experience that this type of "impact litigation" justifies rates in the 95th percentile. (7/3/24 Decl. of Shenoa Payne in Supp. of Pls.' Mot. for Fees and Costs (Dkt. 516) ¶¶ 7, 24, 34.) However, plaintiffs' own fee expert has been awarded a rate between the 50th and 75th percentile in the past for similar "impact litigation," nowhere near the 95th percentile sought here. *See Langvin v. City of Portland*, No. 3:21-CV-01595-HZ, 2022 WL 4592550, at *4 (D. Or. Sept. 30, 2022) ("Because of Ms. Payne's qualifications and specific experience litigating civil rights cases as well as the complex issues involved in this § 1983 excessive force case, an hourly rate between the 50th and 75th percentile is appropriate.").

ABC's requested rates are also well above the rates they requested and have been awarded in other jurisdictions. For example, here Ms. Lowry seeks a rate of $800 per hour and Ms. Benedetto seeks a rate of $400 per hour. *See supra.* Those rates are almost double what a court awarded Ms. Lowry and Ms. Benedetto just last year in a class action child welfare lawsuit in Mississippi, awarding $475 and $225 respectively for work performed in 2022. (*See* Salerno Owens Decl. Ex. 16, *Olivia Y. v. Reeves*, No. 3:04cv-251-HSO-FKB, Mem. Op. and Order (S.D.

Miss. Mar. 20, 2023) at 17.)  ABC's requested rates in this case are also well above the rates they

requested in a very similar class action based on similar claims three months ago.  In April 2024,

ABC applied for attorney fees and expenses related to a motion for sanctions for spoilation in

West Virginia requesting $600/hour for Ms. Lowry.  (Salerno Owens Decl. Ex. 17 at 14,

*Jonathan R. v. Justice*, No. 3:19-cv-00710, Application with Exhibit A-1 (S.D. W.Va. Apr. 16,

2024).)[9]

Likewise, Mr. Rizzo's requested billing rate of $798 per hour is in excess of the 2022

OSB Survey mean rate ($483) or 75th percentile rate ($620).  Likewise, Ms. Skjelset's

requested billing rate of $683 per hour is in excess of the 2022 OSB Survey mean rate ($445) or

75th percentile ($550).  This Court previously approved a rate of $600/hour for Mr. Rizzo and

$400/hour for Ms. Skjelset.  *A.F. v. Evans*, No. 2:18-cv-010506-SI, 2022 WL 18013416 (Dec.

30, 2022).

Plaintiffs fail to justify the reasonableness of the rates they are seeking, and accordingly,

the Court should limit the rates of all counsel to the 75th percentile of the 2022 OSB Survey

rates, which would reduce the total amount of plaintiffs' requested fees from $11,459,450.86

(minus additional discounts) to $9,951,382.92.

| Law Firm | Claimed Hours | Requested Fees | Fees Calculated with 2022 OSB Survey 75th Percentile Rates |
|---|---|---|---|
| ABC | 16,055.75 | $7,537,572.98 | $6,690,347.34 |
| DWT | 2,678.30 | $1,459,934.98 | $1,185,485.58 |
| DRO | 2,064.10 | $1,241,117.50 | $1,061,157.00 |
| Rizzo Bosworth | 2,293.70 | $1,220,825.40 | $1,014,393.00 |
| **Total** | **23,091.85** | **$11,459,450.86** | **$9,951,382.92** |

---

[9] ABC subsequently filed a stipulation that the parties reached a compromise and the defendants would issue an undisclosed payment. *Jonathan R. v. Justice*, No. 3:19-cv-00710, Stipulation (S.D. W.Va. May 7, 2024).  (Attached as Exhibit 18 to Salerno Owens Decl.)  No other information is available on the public docket regarding the hours, rates, or fees paid.

(*See* Salerno Owens Decl. ¶ 7, Exs. 1 and 2 (Summary of Pls.' Att'y Fees by Law Firm).)

**II.    Counsel's failure to exercise reasonable billing judgment and to sufficiently document the hours they spent justifies reducing plaintiffs' claimed hours by half.**

Plaintiffs fail to meet their burden of establishing the reasonableness of their fees in multiple respects, as discussed below.  First, plaintiffs did not exercise sound billing judgment: they billed excessive hours and also ask for fees for work that is not compensable via fee petition here.  Second, plaintiffs do not meet their burden of sufficiently documenting the hours they did record in a manner that would allow this Court to review their reasonableness (for instance, using block billing and impermissibly vague entries).  These two compounding errors leave the Court with the impossible task of analyzing over 16,000 billing entries, effectively asking the Court to sift through five years' worth of records to assess whether plaintiffs have properly excluded hours that are "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434.

"[W]hen faced with a massive fee application," courts in the Ninth Circuit have "the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application."  *Gonzalez*, 729 F.3d at 1203 (citation omitted; bracketing in original).  The Ninth Circuit has upheld a district court's across-the-board reduction of fees by 50 percent when the district court's order "provide[d] a sufficiently detailed basis for determining that half, or fifty percent, of [counsel's] time prosecuting the matter was unreasonably spent."  *Giovannoni v. Bidna & Keys*, 255 Fed. App'x. 124, 125-26 (9th Cir. 2007).  The Ninth Circuit also found that the district court was "well within its discretion" in applying a 50 percent across-the-board reduction in the fees-on fees when "counsel failed to document with any degree of accuracy productive work and unproductive churning, which resulted in an unnecessarily painstaking examination of the record."  *Schwarz v. Sec'y of Health & Hum. Servs*., 73 F.3d 895, 909 (9th

Cir. 1995). The Court should exercise its authority to apply an across-the-board reduction here and cut plaintiffs' claimed hours by half, thereby reducing the total fees calculated using the 2022 OSB Survey's 75th percentile rates from $9,951,382.92 to $4,975,691.46.

| Law Firm | Claimed Hours | Plaintiffs' Hours Reduced by 50% | Defendants' Proposed Fees with 2022 OSB 75th Percentile Rate | Reduction |
|---|---|---|---|---|
| ABC | 16,055.75 | 8,027.88 | $3,345,173.67 | -$4,192,399.31 |
| Rizzo Bosworth | 2,293.70 | 1,339.15 | $507,196.50 | -$713,628.90 |
| DWT | 2,678.30 | 1,032.05 | $592,742.79 | -$867,192.19 |
| DRO | 2,064.10 | 1,146.85 | $530,578.50 | -$710,539.00 |
| **Total** | **23,091.85** | **11,545.93** | **$4,975,691.46** | **-$6,483,759.40** |

(*See* Salerno Owens Decl. Exs. 4 & 5.)

> ### A.   Plaintiffs' counsel did not meet their obligation to exercise reasonable billing judgment.

Attorneys submitting fee petitions have an obligation to exercise sound "billing judgment" when applying for fees, just as an attorney in private practice would. *See Hensley*, 461 U.S. at 434. This requires a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Id.*

Plaintiffs made no such efforts here. They seek excessive hours without providing any meaningful discounts for their excessive, redundant, or otherwise unnecessary work. Plaintiffs also seek excessive fees for claims that were dismissed by this Court as well as fees for litigating frivolous arguments that this Court squarely rejected. Plaintiffs seek fees for non-recoverable tasks that are prohibited by basic black letter law. Finally, plaintiffs did not apply any meaningful discount for tasks that should have been written off or down by the law firms. At bottom, plaintiffs failed to exercise sound billing judgment and as a result this Court should reduce their award by 50 percent.

1.    **Plaintiffs billed for an unreasonably high number of hours and did not offer any meaningful reductions.**

Plaintiffs billed for an unreasonable number of hours and applied no meaningful reductions.[10]  A fee applicant bears the burden to demonstrate that the number of hours spent on the case were "reasonably expended" on the litigation and that counsel made "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Don't Shoot Portland v. City of Portland*, No. 3:20-cv-00917-HZ, 2023 WL 6213352 *4 (D. Or. Sept. 24, 2023) (citing *Hensley*, 461 U.S. at 434 (1983)).  "When attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys."  *Nat'l Warranty Ins. Co. v. Greenfield*, No. 97-cv-01654-ST, 2001 WL 34045734, at *5 (D. Or. Feb. 8, 2001).

Plaintiffs' fee request is replete with excessive, redundant, and otherwise unnecessary hours.  For example, plaintiffs billed approximately 3,200 hours for preparing for and attending co-counsel conferences and team meetings and emailing and calling other team members to strategize.  These intra-team communications account for nearly $1,764,000 in attorney fees:

| Law Firm | # of Entries | Claimed Hours | Requested Fees |
|---|---|---|---|
| ABC | 3,708 | 1,835.45 | $940,027.52 |
| DWT | 1,300 | 705.7 | $421,973.50 |
| DRO | 337 | 364.6 | $231,381.00 |
| Rizzo Bosworth | 415 | 276.6 | $170,731.90 |
| **Total** | **5,760** | **3,182.35** | **$1,763,753.92** |

---

[10] Plaintiffs' expert reduced ABC's travel time entries by 50% and eliminated some of the fees sought by ABC due to "inherent inefficiencies" and overstaffing.  (McDermott Decl. ¶ 44.)  He also reduced DWT's fees by roughly 3% to account for several timekeepers in 2020 and 2024 "who did not spend a significant time on the case and/or who appeared to not contribute to the case moving forward."  (*Id.*)  However, these reductions left approximately 94% of the fees sought by ABC, and approximately 97% of the fees sought by DWT.  (*Id.* ¶ 45.)  No similar reductions were applied to the other two law firms.  (*Id.*)

**Page 15 –    DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

(Salerno Owens Decl. ¶¶ 41-45; *see id.* Ex. 1.)

Although plaintiffs voluntarily reduced approximately $460,000.00 from their fees,[11] plaintiffs did not meaningfully reduce the fees incurred for duplicative tasks.[12] The Court repeatedly expressed frustrations about overstaffing in this case during multiple status conferences. Plaintiffs had four *or more* timekeepers in nearly half (12) of the 25 status conferences and hearings held in this case, including several instances where they had more than six attendees and as many as eight timekeepers charging to attend the same court appearance. (Salerno Owens Decl. Ex. 9.) Despite the Court's clear expression of its concerns on the record, plaintiffs did not retroactively reduce the number of hours in their fee petition for prior status conferences and hearings where multiple attendees were excessive and redundant. Where there were rare examples of plaintiff attendees not billing for their time, defendants assume this was an oversight because plaintiffs offer no explanation of a deliberate reduction.

The chart below illustrates several examples where plaintiffs seek attorney fees for multiple attorneys at the same status conference. (*Id.*)

---

[11] Plaintiffs' motion reduces: (1) $458,763.67 from ABC's fees for ABC's travel time and by eliminating the 7 lowest billing timekeepers, and (2) $39,060 from DWT's fees for several inefficient timekeepers. (McDermott Decl. at 12 (Dkt. 515).)

[12] DWT applied approximately $13,000 in fee discounts related to research for plaintiffs' attorney fee petition and preparing a motion for summary judgment that was never filed, but that discount fails to address the excessive and redundant hours plaintiffs' attorneys spent discussing the case among themselves. (*See*, *e.g.*, Miner Decl. Ex. 1 at 125-27, 129-30 (Dkt. 523-1).) Considering plaintiffs seek nearly $11 million in attorney fees and almost $600,000 in costs, a reduction of $13,000, or 0.1% of the total amount they are seeking, does not evidence exercise of "billing judgment." *See Hensley*, 461 U.S. at 434.

**Page 16 –    DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR**
**ATTORNEYS' FEES AND COSTS**

| Date | Proceeding | Total Attendees | | Billing Attendees | Non-Billing Attendees (per transcripts) | |
|---|---|---|---|---|---|---|
| 10/4/2021 | Status Conference | 7 | 7 | Aarti Iyer (ABC) Anastasia Benedetto (ABC) Dawn Post (ABC) Jonathan Borle (ABC) Kayla Abrams (ABC) Marcia Lowry (ABC) Emily Cooper (DRO) | 0 | |
| 11/15/2021 | Motion to Certify the Class | 9 | 7 | Aarti Iyer (ABC) Anastasia Benedetto (ABC) Jonathan Borle (ABC) Kayla Abrams (ABC) Emily Cooper (DRO) Tom Stenson (DRO) Gregory Chaimov (DWT) | 2 | Marcia Lowry (ABC) Paul Southwick (DWT) |
| 1/18/2023 | Status Conference | 6 | 6 | Aarti Iyer (ABC) Marcia Lowry (ABC) Emily  Cooper (DRO) Tom Stenson (DRO) Andrew McStay (DWT) William Miner (DWT) | 0 | |
| 7/25/2023 | Status Conference | 8 | 8 | Anastasia Benedetto (ABC) Jonathan Borle (ABC) Lindsay Gus (ABC) Marcia Lowry (ABC) Emily Cooper (DRO) Tom Stenson (DRO) | 0 | |

| Date | Proceeding | Total Attendees | | Billing Attendees | Non-Billing Attendees (per transcripts) |
|------|-----------|----------|---|-----|-----|
| | | | | Andrew McStay (DWT) William Miner (DWT) | |
| 9/25/2023 | Status Conference | 7 | 7 | Garima KC (ABC) Lindsay Gus (ABC) Marcia Lowry (ABC) Emily Cooper (DRO) Sam Shaw (DRO) Andrew McStay (DWT) William Miner (DWT) | 0 |
| 5/7/2024 | Pretrial Conference | 7 | 7 | Marcia Lowry (ABC) Andrew McStay (DWT) William Miner (DWT) David MacKenzie (DWT, paralegal) Steve Rizzo (Rizzo) Mary Skjelset (Rizzo, partial) Nathan Rizzo (Rizzo, partial) | 0 |

(Salerno Owens Decl. Ex. 9, Pls.' Counsel Attendance at Court Hearings.)

Numerous courts in this District have found similar practices warrant the reduction of an award. *See*, *e.g.*, *Wilson v. Decibels of Oregon, Inc.*, No. 1:16-cv-00855-CL, 2018 WL 3863489, at *7 (D. Or. Aug. 14, 2018) (concluding that it was unnecessary for two attorneys to attend a "routine hearing" and that "good billing judgment" "mandates that only one attorney should bill for attending the conference"); *Boquist v. Courtney*, No. 6:19-cv-01163-MC, 2023 WL 7127676 *4 (D. Or. Oct. 30, 2023) ("Courts in this District have also reduced fees when the prevailing party charged for having multiple attorneys attend pre-trial conferences, depositions, mediations,

conferences with opposing counsel, and intra-office conferences."); *see also Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) ("[C]ourts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do.") (footnote omitted).

Likewise, in another example, nine of plaintiffs' attorneys attended and billed for Judge Nan Waller's January 6, 2021, deposition, and eight plaintiffs' attorneys attended and billed for Marilyn Jones's January 14, 2021, deposition. (Salerno Owens Decl. Ex. 10 at 1, Pls.' Counsel Attendance at Select Depos.) While "[a] party is certainly free to hire and pay as many lawyers as it wishes, [it] cannot expect to shift the cost of any redundancies to its opponent." *Nat'l Warranty Ins.*, 2001 WL 34045734, at *5. Courts in this District consistently hold that the attendance of multiple attorneys at a deposition is duplicative and warrants a reduction in fees. *See*, *e.g.*, *Boquist*, 2023 WL 7127676, at *4 (reducing fees where "[Attorney A] spent numerous hours attending depositions ([Attorney B] was responsible for). These are redundancies that a private client may be willing to pay for but should not be passed along in a fee-shifting case. The non-prevailing party should not be on the hook for an extra set of eyes on a draft or for training a less experienced attorney."); *Edwards v. Cincinnati Ins. Co.*, No. 3:19-cv-01425-BR, 2021 WL 6427817 *15 (D. Or. Feb. 8, 2021) ("The Court also agrees with Defendant that Plaintiffs have not established it was necessary for both [Attorney A] and [Attorney B] to attend three depositions."); *Doby v. Sisters of St. Mary of Oregon Ministries Corp.*, No. 3:13-cv-00977-ST, 2015 WL 4877786, at *4 (D. Or. Aug. 14, 2015) (finding two attorneys' attendance of the same deposition "duplicative" and reducing their fees).

Plaintiffs also failed to reduce their fee request to account for the numerous attorneys who performed identical and duplicative tasks. For example, five ABC attorneys and one paralegal billed to prepare for the Marilyn Jones deposition. (Salerno Owens Decl. ¶ 47 and Ex. 10 at 1.) Additionally, both Ms. Lowry and Ms. Post billed for multiple multi-day trips to and from Oregon. (Lowry Decl. Ex. 1.) While ABC's billing descriptions note Ms. Lowry and Ms. Post were participating in interviews, it is unclear from the entries if they were attending the same or different meetings or for which case.

> **2.    Plaintiffs' hours spent on claims that were dismissed or not alleged in the Complaint should be reduced as they are wasteful.**

Plaintiffs should have reduced the time they devoted to unsuccessful and wasteful claims. *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("Plaintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their [ ] claims."). "A plaintiff is not eligible to receive attorney's fees for time spent on unsuccessful claims that are unrelated to a plaintiff's successful § 1983 claim." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009). "In fixing a reasonable fee award, the most critical factor is the degree of success that the [] party [seeking fees] obtained." *Clark v. Capital Credit & Collection Servs.*, Inc., 561 F. Supp. 2d 1213, 1218 (D. Or. 2008) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). "If the successful and unsuccessful claims are 'distinctly different,' the hours devoted to the unsuccessful claims should be excluded, because work on an unsuccessful claim cannot be deemed to have been expended in pursuit of an ultimately successful result." *Id.* (internal citations omitted).

In this case, plaintiffs pursued many unsuccessful claims. On defendants' motion to dismiss, the Court dismissed plaintiffs' claims to the extent they asserted the rights to: (1) an array of placement options; (2) be placed in a community-based or least restrictive setting; (3) a

short length of time in foster care; and (4) placement stability.  (Dkt. 215 at 18-21.)  The Court also dismissed claims to the extent they asserted rights by the aging-out subclass to independent living services.  (*Id.*)  When plaintiffs improperly attempted to revive these claims, the Court again ruled at the May 8, 2024, pretrial conference that they were outside of the scope of the case.  (5/8/24 Op. & Order (Dkt. 464) at 2.)

Led by their new co-class counsel, Rizzo Bosworth, plaintiffs also attempted to insert additional claims into this case regarding: (1) ODHS's alleged failure to protect children while they are home with their parent(s); (2) issues not alleged in the Complaint regarding the alleged withholding of evidence of maltreatment in dependency proceedings and child-specific resource home certification; and (3) evidence of other lawsuits or settlements involving ODHS Child Welfare.  The Court rejected plaintiffs' attempt, finding these issues and evidence were "not properly before the Court."  (*Id.* at 2-3.)

The excluded claims and issues are "distinctly different" from the ones that were set to proceed to trial because they involve distinct factual allegations and are not rooted in any permissible legal theories.  *See Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) ("The test for relatedness of claims is not precise.  However, related claims will involve a common core of facts or will be based on related legal theories, while unrelated claims will be distinctly different, and based on different facts and legal theories.") (citing *Hensley*, 461 U.S. at 435-37, n.12) (cleaned up).  Children who are in the physical custody of their parents, ODHS allegedly not providing maltreatment records to children's juvenile dependency attorneys, and child-specific certifications involve factual allegations that are entirely different from the claims and issues that were set to proceed to trial.  Further, the Court found that there are not

permissible legal theories that would support plaintiffs' claims regarding placement array.  (Dkt. 215 at 18-20.)

Plaintiffs also required the parties to spend significant resources to litigate plaintiffs' unfounded whims related to defendants' expert, Public Knowledge.

First, Rizzo Bosworth led plaintiffs' efforts to obtain documents related to ODHS's media announcements and press releases regarding Public Knowledge's expert report.  The Court, however, found that the documents plaintiffs sought are "not relevant to any claim or defense presented by either party" when it granted defendants' motion for a protective order.  (4/11/24 Op. & Order (Dkt. 367) at 8.)  The Court specifically stated: "The details of either party's media or public relations strategy will not assist this Court in resolving the issues before it and Plaintiffs' request for those materials is, frankly, *a waste of time for all concerned*."  (*Id.*) (emphasis added.)

Second, Rizzo Bosworth asserted an unsupported argument that defendants waived privilege regarding Public Knowledge's communications with defendants' attorneys.  The Court granted defendants' motion for protective order in part, concluding that there was no such waiver, and blocking plaintiffs' attempt to obtain Public Knowledge's privileged communications with defendants' attorneys.  (*See* Dkt. 367.)  This frivolous pursuit wasted the parties' and the Court's time.  *Cf. Shayler v. 1310 PCH, LLC*, 51 F.4th 1015, 1022 (9th Cir. 2022) ("The court also denoted how Shayler's attorneys had wasted time on an ex parte subpoena request that was both untimely and substantively meritless.").  Later, the Court expressed displeasure with Rizzo Bosworth's "hyperbolic statements" when its lawyers were arguing to exclude Public Knowledge as an expert in the case.  (5/8/24 Op. & Order (Dkt. 463) at 19-20 ("Plaintiffs argue that there is 'pervasive clubbiness' between Public Knowledge,

Markowitz Herbold, the DOJ, and DHS. The hyperbolic statements are not well taken. Plaintiffs' argument could not be more out of place and has no application here in evaluating admissibility under Rule 702.").)

Plaintiffs also did not remove fees related to trial exhibits and witnesses related to the motion to amend the protective order in *J.M. v. Major*, No. 6:18-cv-00739 (D. Or.) through which they sought to add trial witnesses and 90 trial exhibits to this case. The Court granted defendants' motion in limine to exclude "evidence and argument concerning other lawsuits and settlements involving Oregon DHS." (Dkt. 464 at 3.) In addition, plaintiffs billed fees related to briefing a motion to quash defendants' subpoena to plaintiffs' trial witness, Senator Gelser Blouin, but the Court denied the motion "because Plaintiffs lack standing to quash a subpoena served on a third party." (5/1/24 Op. & Order (Dkt. 444) at 5.)

Plaintiffs made no effort to exercise sound "billing judgment" and to voluntarily reduce their request for fees based on these unsuccessful and wasteful claims and related to other litigation.

### 3.    Plaintiffs impermissibly seek fees for the hours spent on performing non-recoverable media-related tasks.

Plaintiffs inappropriately seek fees for media strategy. Attorney fees for tasks associated with counsel's contact with the media are generally not recoverable. *See Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995), *as amended* (Aug. 3, 1995) (finding the district court abused its discretion in awarding attorney fees for "media contact" and noting this was the type of activity "that attorneys generally do at their own expense"), *as amended* (Aug. 3, 1995).

Indeed, courts in this District nearly uniformly follow *Gates*' reasoning. *See*, *e.g.*, *McKenzie Flyfishers v. McIntosh*, 158 F. Supp. 3d 1085, 1096 (D. Or. 2016) ("an award of attorneys' fees should not include amounts for contact with the media") (citation omitted); *Garza*

*v. City of Salem*, No. 3:22-cv-00721-HZ, 2024 WL 1024829, at *1 (D. Or. Feb. 19, 2024) (finding fees "for speaking to the media about the case" and "uploading documents to give to the media" were "not recoverable"); *Bonnichsen v. United States*, No. CIV. 96-1481-JE, 2004 WL 2901204, at *9 (D. Or. Dec. 15, 2004) (declining to award fees where "action could have been successfully litigated without counsel's extensive media communications, and that any benefit plaintiffs derived from that work is of such marginal relevance to the actual litigation of the issues in question"); *Wolfe v. City of Portland*, No. 3:12-cv-02035-PK, 2013 WL 6002391, at *7 (D. Or. Nov. 8, 2013) ("contact with the media is an activity 'that attorneys generally do at their own expense'") (quoting *Gates*, 60 F.3.d at 535).

Recently, however, a court in this District permitted recovery of fees associated with the media, invoking an exception to *Gates*. *Tozer v. City of Portland*, 2023 WL 8295886 (D. Or. Nov. 30, 2023). After acknowledging the general rule that attorney fees should generally not include amounts for contact with the media, *Tozer* identified a limited exception that applies "when [the media contact] is 'directly and intimately related to the successful representation of a client.'" *Id.* (quoting *Wit v. United Behav. Health*, 578 F. Supp. 3d 1060, 1087 (N.D. Cal. 2022), *vacated and remanded*, No. 22-15184, 2023 WL 8723695 (9th Cir. Dec. 15, 2023).[13]

Plaintiffs wholly failed to meet their burden and explain how the large amount of time they billed on media strategy—over 160 hours totaling more than $60,000 in fees—was directly and intimately related to the successful representation of their clients.[14] (*See* Salerno Owens

---

[13] The Ninth Circuit vacated and remanded *Wit* approximately two weeks after *Tozer* was decided. *See Wit v. United Behav. Health*, 2023 WL 8723695, at *1 (9th Cir. Dec. 15, 2023).

[14] Rizzo Bosworth offers conclusory statements that "it was important—if not essential—to ensure both that the class members (who are largely children) and the public were accurately apprised about the litigation." (Rizzo Decl. ¶ 51.) The firm, however, does not specifically explain how their media-related efforts were "related to the successful representation of a client." *Tozer*, 2023 WL 8295886.

Decl. Ex. 1.)  Plaintiffs bore the burden of establishing their entitlement to fees and have failed to

meet that burden here.  *United Steelworkers*, 512 F.3d at 565 (the fee petitioner bears "the

burden of documenting the appropriate hours expended in the litigation, and [is] required to

submit evidence in support of those hours worked").

Mr. Rizzo acknowledged in his declaration in support of plaintiffs' motion for an award

of attorney fees the general rule that media-related fees are ordinarily not permitted in fee

petitions, affirmatively arguing why the exception should apply in this case.  (*See* Rizzo Decl. at

14-15); *Tozer*, 2023 WL 8295886 ("In effect, Plaintiffs' counsel utilized media to great effect to

advance and attain their 'litigation goals.'").)  But, as noted above, plaintiffs failed to raise any

argument as to why the exception to the general rule should apply here.  Perhaps it is because

this Court has already specifically told the parties that media contacts and strategy are not

relevant to any of the claims or defenses in this case.  (*See*, *e.g.*, Dkt. 367 at 8) (documents

plaintiffs sought regarding media contacts are "not relevant to any claim or defense presented by

either party" and stating: "The details of either party's media or public relations strategy will not

assist this Court in resolving the issues before it.")  In any event, plaintiffs make no argument

why the *Tozer* exception should apply in their motion and thus have waived any arguments as to

why the general rule does not control.  *Cf. Brown v. Rawson-Neal Psychiatric Hosp.*, 840 F.3d

1146, 1149 (9th Cir. 2016) ("Rather, our case involves a civil appellant who tiptoed around a

central issue in his opening brief.  Whether the omission was intentional or merely negligent, it

was a significant error.").

### 4.    Plaintiffs seek fees for the hours billed by attorneys who were not admitted to practice before this Court.

Plaintiffs seek the fees incurred by the following attorneys who were neither generally

nor specially admitted to practice before the Court.

| Law Firm & Timekeeper | Location | Hours | Average Hourly Rate | Fees |
|---|---|---|---|---|
| **A Better Childhood, Inc.** | | **647.24** | **$422.39** | **$273,385.09** |
| Tavi Unger | New York, NY | 257.46 | $400 | $102,989.32 |
| Sarah Jaffe | New York, NY | 223.41 | $450 | $100,532.12 |
| Allison Mahoney | New York, NY | 53.25 | $450 | $23,950.50 |
| Valerie McLaughlin | New York, NY | 39.92 | $400 | $15,969.33 |
| Julia Tebor | New York, NY | 32.87 | $450 | $14,793.00 |
| David Baloche | New York, NY | 29.93 | $350 | $10,470.82 |
| Laura Welikson | New York, NY | 10.40 | $450 | $4,680.00 |
| **Davis Wright Tremaine** | | **89.20** | **$523.47** | **$46,693.50** |
| Tahiya Sultan | San Francisco, CA | 36.80 | $470.00 | $17,296.00 |
| Emma Englund | Seattle, WA | 29.70 | $540.24 | $16,045.00 |
| Soraya Mohamed | Washington, DC | 13.60 | $671.40 | $9,131.00 |
| William Wu | Seattle, WA | 5.40 | $420.00 | $2,268.00 |
| Nicholas Traver | Seattle, WA | 3.70 | $527.97 | $1,953.50 |
| | **Total** | **736.44** | **$434.63** | **$320,078.59** |

(Salerno Owens Decl. ¶ 20 and Ex. 8, Summary of Pls.' Fees Billed by Non-Oregon Att'y
Without Pro Hac Vice Admission.)

When out-of-state counsel do not "properly and timely secure pro hac vice admission
before the district court" in accordance with the district court's local rules, that failure is
"sufficient reason to deny [an applicant's] application for attorneys' fees." *See Idaho Sporting
Congress, Inc. v. Alexander*, 23 Fed. App'x 713, 714 (9th Cir. 2001) ("Failure ... to properly and
timely secure pro hac vice admission before the district court was a sufficient reason to deny
[plaintiffs'] application for attorney's fees."). Exceptions exist for out-of-state attorneys: (1) if
the attorney at issue "would have certainly been permitted to appear pro hac vice as a matter of
course had he or she applied"; or (2) if the work of the attorney "did not rise to the level of
'appearing' before the district court." *Winterrowd v. Am. Gen. Annuity Ins. Co*., 556 F.3d 815,
822–23 (9th Cir. 2009). Plaintiffs seek to recover the fees incurred by the attorneys who were
neither generally nor specially admitted before this Court without showing that the two
exceptions under *Winterrowd* apply.

**Page 26 –    DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND COSTS**

First, plaintiffs have failed to demonstrate that the attorneys who were not admitted before the Court meet the requirements of this Court's pro hac vice admission rules under Local Rule 83-3, or even address pro hac vice admission in their declarations. Second, plaintiffs did not explain whether these attorneys' work rise to the level of "appearing" before this Court. In other words, plaintiffs failed to explain to the Court whether their out-of-state attorneys meet the exceptions under *Winterrowd*. Therefore, plaintiffs should not be allowed to recover the fees charged by these attorneys totaling $320,078.59.

### 5. Plaintiffs did not apply a discount for tasks that should have been written off or down by the law firms.

Plaintiffs submitted a fee request that failed to apply a reduction for onboarding new attorneys to the case. In the fee shifting context, "it is unreasonable to shift the total financial burden of training new counsel onto the government." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Turner*, 305 F. Supp. 3d 1156, 1173 (D. Or. 2018) (quoting *Harden v. Comm'r Soc. Sec. Admin.*, 497 F.Supp.2d 1214, 1216 (D. Or. 2007), *abrogated on other grounds by Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132 (9th Cir. 2012)).

Over the life of this case, ABC had 14 different attorneys work on this case, including 12 non-senior attorneys. (*See* Lowry Decl. Ex. 1; McDermott Decl. ¶ 44.) That number included five attorneys with less than 60 hours and another five attorneys with less than 1,000 hours who presumably spent a good portion of time "getting up to speed" on this class action lawsuit. (*See* Salerno Owens Decl. Ex. 1.) Plaintiffs did not exercise any billing judgment to reduce any of that redundant time. *Cf. In re Maruko Inc.*, 160 B.R. 633, 639-40 (Bankr. S.D. Cal. 1993) (explaining that "[b]illing judgment is the adjustment or write-down of time by a law firm because of its own judgment that the time was either excessive, duplicative, unnecessary or part

of start-up time or training time for a new lawyer or a lawyer new to the case" that "are made by a senior attorney of the firm in advance of sending a bill to a client").

ABC also did not reduce any fees from the departed attorneys, thereby failing to acknowledge the loss of valuable institutional knowledge caused by experienced attorneys' departures. Over the course of this lawsuit, at least four ABC attorneys of record for plaintiffs withdrew their appearance in this case.

- Erin Gallagher (2/5/2021-10/06/2021) (Notice of Withdrawal (Dkt. 218).)

- Dawn Post (6/6/2019-11/11/2021) (Notice of Withdrawal (Dkt. 239).)

- Aarti Iyer (11/17/2020-8/1/2023) (Notice of Withdrawal (Dkt. 296).)

- Jonathan Borle (8/7/2023-3/14/2024) (Notice of Withdrawal (Dkt. 338).)

Plaintiffs do not acknowledge or offer appropriate discounts for the loss caused by these attorneys' departures from the case. Many billing hours were spent getting these lawyers ready for important case events and trial, on the expectation that the lawyers will be sufficiently educated for taking and defending depositions, working with experts, selecting trial exhibits, and trying the case. For example, Dawn Post played a significant role in the initial investigation and case development, traveling to and from Oregon throughout 2018 and early 2019 and assisting in drafting plaintiffs' Complaint. (*See generally* Lowry Decl. Ex. 1 (Dkt. 518-1).) Prior to her withdrawal, Ms. Post also played a significant role in the parties' conferrals, mediation negotiations, and attended nearly all status conferences and depositions held to that point. (*Id.*) In the 2.5 years Aarti Iyer worked on the case, she put in extensive time on plaintiffs' motion for class certification and related expert work, discovery and document review, as well as deposition preparation. (*Id.*) Likewise, Erin Gallagher and Jonathan Borle were in regular attendance at depositions, conferrals, and, as shown in ABC's billing records, involved in other significant

briefing, countless communications with co-counsel, and document review.  (*Id.*)  Notably, Mr. Borle, who had been very active through the first few months of 2024, withdrew in the midst of trial preparation.  (*See id*; 3/14/24 Notice of Withdrawal (Dkt. 338).)

Similarly, partners at DWT, Rizzo Bosworth, and ABC performed tasks that associates should have performed at lower rates.  As *Hensley* explained, "the skill and experience of lawyers var[ies] widely" and sound "billing judgment" requires that "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  461 U.S. at 434.

DWT did not staff this case reasonably.  Partners at DWT billed 1,391.3 hours ($1,016,190.00 in fees) to this case as compared to only 265.3 hours ($113,077.00 in fees) billed by associates.  (*See generally* Salerno Owens Decl. Ex. 3.)  Put differently, DWT billed approximately 71% of their attorney hours in this case at the partner rate (up to $805/hour).  Rizzo Bosworth partners billed 1,284.30 hours ($968,475.40 in fees) at the partner rate and did not have a single associate work on this case.  This includes approximately 90 hours totaling approximately $65,000 *before* the Court approved the firm as co-class counsel.  (*Id.*)

ABC also heavily staffed this case with senior attorneys: Ms. Post and Ms. Lowry billed 4,980.92 hours combined ($3,417,58.21 in fees) at $600/hour and $800/hour, respectively.  (*Id.*)  Despite Ms. Post's withdrawal from the case in 2021, these timekeepers represent approximately 31% of ABC's total hours and more than 45% of ABC's total fees billed.  (*Id.*)

Many of the tasks performed by these partners and senior attorneys should have been billed by a timekeeper (attorney, paralegal, or other staff member) with a lower billing rate.  For example, on August 4, 2020, senior attorney Dawn Post billed 5.0 hours ($3,000.00 in fees) to

"Download and send motion documents and exhibits for printing and review."  (Lowry Decl. Ex. 1 (Dkt. 518-1) at 54.)  Likewise, on April 3, 2024, DRO Legal Director & Attorney Tom Stenson billed 3.4 hours ($2,193.00 in fees) for "pulling data from relativity in prep for trial memorandum."  (Cooper Decl. Ex. F (Dkt. 519-6) at 18.)

Attorneys with "specialized knowledge and [a] commensurately high billing rate . . . should reasonably limit [their] involvement to matters requiring [their] level of skill." *Hernandez v. Grullense*, 2014 WL 1724356, at *8 (N.D. Cal. Apr. 30, 2014).  Consequently, plaintiffs should have exercised sound "billing judgment" and applied a discount for this work. *See, e.g.*, *Orantes-Hernandez v. Holder*, 713 F .Supp. 2d 929, 969-70 (C.D. Cal. 2010) (reducing fees for drafting background section of brief by 70 percent because "a paying client would not have paid $650 an hour . . . when the task could have been performed by a less senior, less expensive associate"); *Connally v. Brooks*, 2000 WL 36743692, at *4 (E.D. Cal. Dec. 4, 2000) (awarding the lead attorney rate on the associate performing "associate-level tasks").

**B.     Plaintiffs' counsel have not met their burden to sufficiently document the hours they expended on the case.**

**1.     Plaintiffs did not sufficiently explain the reasonableness of the hours expended.**

As the party seeking attorney fees, plaintiffs have "the burden of documenting the appropriate hours expended in the litigation."  *Gates*, 987 F.2d at 1397.  For example, "the large number of attorneys working on [this case] no doubt led to some duplication of efforts and excessive time being spent on certain tasks."  *MW Builders, Inc. v. Safeco Ins. Co. of Am.*, No. CV 02-1578-AS, 2006 WL 8446574, at *4 (D. Or. Feb. 15, 2006), *report and recommendation adopted as modified*, 2006 WL 8446571 (D. Or. July 31, 2006).  However, plaintiffs' motion offers only conclusory statements and does not adequately explain the reasonableness of the hours spent.  Plaintiffs "do not attempt to persuade the court that there was no duplication of

effort or inefficiency in its requested hours," even though they are seeking fees for 40 attorneys, 18 paralegals, and additional staffing from four different firms. *Id.* The main justification plaintiffs offer is the complexity of this case—*i.e.*, that different firms with their own expertise and knowledge were necessary. Plaintiffs' conclusory statements that the complexity of this case justifies their billing fails to meet their "burden to justify [their] request for attorney fees." *Id.*

### 2. Plaintiffs' billing records are replete with block billing and vague entries.

Plaintiffs also have the duty to "submit evidence in support of those hours worked," *Gates*, 987 F.2d at 1397, and were required to "keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and needs for the service, and the reasonable fees to be allowed." *United Steelworkers of Am. v. Ret. Income Plan For Hourly-Rated Emps. of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (citing *Hensley*, 461 U.S. at 441). This District "has specifically cautioned against both block-billing and providing vague or otherwise inadequate descriptions of tasks because these practices greatly hinder the court's ability to assess the reasonableness of the time expended." *Noel v. Hall*, No. 3:99-CV-00649-AC, 2013 WL 5376542, at *6 (D. Or. Sept. 24, 2013); *see also* U.S. Dist. Ct., Dist. of Or., Message from the Court Regarding Attorney Fee Petitions, available at https://www.ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions (advising attorneys not to block bill or record hours with vague entries). Plaintiffs' billing records, however, show counsel's systematic failure to comply with their duty to sufficiently document the hours expended.

### a. Block Billing

"Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on

specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007). In the District of Oregon, "block billing is any single time entry of three or more hours containing four or more tasks, or containing only two tasks where one of the two tasks could have taken anywhere from a small to a substantial period of time." *Herrman v. LifeMap Assurance Co.*, 497 F. Supp. 3d 970, 976 (D. Or. 2020). Block billing is problematic because "the court cannot assess the reasonable number of hours spent on a given task when the time spent on the task is not segregated from time spent on other tasks." *Oberdorfer v. Glickman*, No. CV-98-1588-HU, 2001 WL 34045732, at *4 (D. Or. Sept. 14, 2001).

Plaintiffs' billing records include numerous block-billed entries, such as:

- Ms. Post billed 67 instances of "Document review and FOF." This totals 194.5 hours ($116,700.00 in fees).

- Eight timekeepers billed 131.30 hours ($84,084.50) for activities that began with "Prepare for and attend…" or "Prep and attend…" This included status conferences, team meetings, and depositions.

- Mr. Miner billed 28.10 hours ($22,480.00 in fees) to "Continue taking the lead on drafting and finalizing settlement agreement including multiple communications with litigation team, class representatives, opposing counsel and judge Beckerman."

(*See* Salerno Owens Ex. 1.)

In addition, Steve Rizzo included two large block-billed estimated hours and fees for post-settlement work totaling over $35,000:

| SR Estimate | Prepare/finalize RBE Decls + related documents re fee petition | 32.00 | $798.00 | $25,542.10 |
|---|---|---|---|---|
| SR: Estimate | Prepare /trvl to-from/attend Fairness Hearing on 9/12 | 12.00 | $798.00 | $9,557.00 |
| | **Fees Estimate Subtotal** | | | **$35,099.10** |

**Page 32 –    DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR
                    ATTORNEYS' FEES AND COSTS**

(Rizzo Decl. Ex. 1 at 66 (Dkt. 522-1).)

This District has applied an across-the-board reduction for the requesting party's block billing as it prevented the court from assessing the reasonableness of the time spent on a specific task. *Sutton v. Kijakazi*, No. 6:19-CV-1437-SI, 2021 WL 3145974, at *3 (D. Or. July 26, 2021) ("The block-billed time for multiple tasks requested above the three-hour maximum will be reduced by fifty percent."); *Agnes R. v. Comm'r of Soc. Sec.*, No. 3:18-CV-01022-JR, 2020 WL 1697097, at *2 (D. Or. Mar. 18, 2020), *adopted*, 2020 WL 1693675 (D. Or. Apr. 7, 2020) ("Here, the Court cannot assess the reasonableness of the majority of the requested hours due to plaintiff's block billing. Accordingly, consistent with District practice, the Court finds that reducing the block billed entry by fifty percent is appropriate in this case.").

### b.    Vague Entries

Because plaintiffs have the "burden to demonstrate that the compensation sought is for hours reasonably related to the litigation of successful claims and claims closely related to successful claims, failure to specify the subject of work performed results in the exclusion from the lodestar calculation of any time spent in tasks whose relatedness to such claims cannot be determined from the supporting time entries." *Lemus v. Timberland Apartments, L.L.C.*, 876 F. Supp. 2d 1169, 1178 (D. Or. 2012) (citations omitted). The District of Oregon has "warn[ed] against vague billing items such as "conference," "telephone call with ...," or "correspondence to ..." with no description of the subject of the communication because such entries make it "nearly impossible to assess the reasonableness of the requested time." *Tozer v. City of Portland*, No. 3:22-CV-01336-AN, 2023 WL 8295886, at *4 (D. Or. Nov. 30, 2023).

Plaintiffs' billing records include hundreds of time entries with vague descriptions, including:

| Description | Law Firm(s) | Claimed Hours | Requested Fees |
|---|---|---|---|
| "Document review for findings of fact" | ABC | 441.79 | $188,123.87 |
| "Document review and FOF" | ABC | 199.00 | $118,500.00 |
| "Reviewed the documents produced by defendants and organized them for expert review." | ABC | 320.55 | $80,932.50 |
| "Document review – Oregon" | ABC | 115.00 | $64,300.00 |
| "Analyze documents produced by State for inclusion in findings of fact or use in deposition" and "Continue to analyze documents produced by State for use in depositions and inclusion in findings of fact" | DWT | 152.30 | $35,986.00 |
| "Travel between meetings" | ABC | 24.00 | $16,500.00 |
| "Review discovery" | ABC, DRO | 20.93 | $11,950.17 |

(Salerno Owens Decl. ¶ 17 and Ex. 1.)

In addition, ABC billed for travel to and from New York (or NYC) and Portland, Oregon (or PDX), without any further description or context, totaling 816.00 hours ($514,400.00 in fees). (*See* Salerno Owens Decl. ¶¶ 17, 60-63 and Ex. 1.)

This District has applied an across-the-board reduction for vague time entries when the entries did not identify the subject matter of a task on the grounds that the court cannot determine whether those hours were necessary and reasonable. *See*, *e.g.*, *Tozer*, 2023 WL 8295886, at *5 (reducing the entries that do not include subject matter by 50 percent); *Wolfe v. City of Portland*, No. 3:12-cv-02035-PK, 2013 WL 6002391, at *5 (D. Or. Nov. 8, 2013) (recommending reducing all billing entries "where the documentation is vague and fails to include even a general subject matter" because the Court was unable to determine the reasonableness of the entries); *Atl. Recording Corp. v. Andersen*, No. 05-cv-933 AC, 2008 WL 2536834, at *9 (D. Or. June 24,

2008) (deducting the hours with the entries that are "too vague and fail to provide sufficient information upon which the court can evaluate the Rule 54 factors").[15]

### C.    Plaintiffs' expert does not provide persuasive support for plaintiffs' motion.

Plaintiffs' expert, Mr. McDermott, concluded that the "effort, work, and time that Plaintiffs' counsel devoted is reasonable" based purely on his understanding of attorney fees incurred by defendants.  (McDermott Decl. at 11.)  He recommends approximately $140,000 in reductions to the fee award for "hours spent by the seven ABC timekeepers who recorded the fewest hours" and "several inefficient timekeepers in 2020 and 2024" at DWT who did not make significant contributions to the case.  (*Id.* ¶¶ 44-45; *see* Salerno Owens Decl. Ex. 3.)  However, he does not indicate that he has reviewed the billing entries for reasonableness of time spent, nor for the activities performed, nor that billing judgment has been properly applied to remove excessive and duplicative billing.  (*See generally* McDermott Decl.)

For the foregoing reasons, plaintiffs' lack of billing judgment justifies an across-the-board reduction of 50 percent to their claimed hours.

In sum, plaintiffs made no meaningful efforts to exercise billing judgment.  Instead, they submitted to the Court their bulk billing records with no meaningful reduction and attempt to shift their burden to defendants and the Court to parse through five years of billing records to

---

[15] Plaintiffs' billing records also include inaccurate entries.  For example, many of DWT's billing entries include more than one task, with each task assigned a specific amount of time.  However, the total number of hours billed for each entry is inaccurate for some of DWT's entries when the activities are unbundled.  Below is one of DWT's inaccurate entries, which should add up to 9.7, not 10.7.

| 8/21/2019 | Davis, Jennifer L. | 2.9 | $768.50 | $265.00 | Review and analysis of documents received from Defendants for inclusion in discovery and attorney review (1.5); communications with co-counsel regarding review protocol and database requirements (.4) |

(Miner Decl. Ex. 1 at 24.)  There may be some gaps with defendants' analysis due to these inaccuracies in plaintiffs' billing records.

determine the appropriateness of their requested rates and hours expended.  The Court should decline that invitation and for the reasons stated above, apply an across-the-board 50 percent reduction.  *Schwarz*, 73 F.3d at 909.  Plaintiffs' claimed hours should be reduced by half, to 11,545.93, and then multiplied by the timekeepers' respective hourly rates using the 2022 OSB Survey's 75th percentile rates.  That results in plaintiffs' requested fees being reduced from $9,951,382.92 to $4,975,691.46.

| Law Firm | Claimed Hours | Plaintiffs' Hours Reduced by 50% | Defendants' Proposed Fees with 2022 OSB 75th Percentile Rate | Reduction |
|---|---|---|---|---|
| ABC | 16,055.75 | 8,027.88 | $3,345,173.67 | -$4,192,399.31 |
| DWT | 2,678.30 | 1,032.05 | $592,742.79 | -$867,192.19 |
| DRO | 2,064.10 | 1,146.85 | $530,578.50 | -$710,539.00 |
| Rizzo Bosworth | 2,293.70 | 1,339.15 | $507,196.50 | -$713,628.90 |
| **Total** | **23,091.85** | **11,545.93** | **$4,975,691.46** | **-$6,483,759.40** |

(*See* Salerno Owens Decl. ¶ 7 and Exs. 5, Defs.' Proposed Reduction Option 1, and 7, Defs.' Proposed Reductions to Pls.' Att'y Fees.)

## III.    In the alternative, the number of hours claimed by each of plaintiffs' four law firms should be reduced.

### A.    A Better Childhood

ABC's billing records reveal an egregious failure to comply with their duties to exclude or voluntarily reduce the hours that are excessive, redundant, or otherwise unnecessary and to sufficiently document the hours expended.

### 1.    ABC used sets of identical, vague entries to record their hours.

Rather than recording their hours using specific descriptions for each task, ABC used vague descriptions, many of which were identical to other repetitive entries.  The below table shows the four most expensive entries submitted by ABC:

| Description | # of Entries | Hours | Fees |
|---|---|---|---|
| "Travel from NYC to Oregon." | 53 | 424.00 | $272,400.00 |
| "Travel from Oregon to NYC." | 46 | 368.00 | $232,400.00 |
| "Document review for findings of fact" | 172 | 441.79 | $188,123.87 |
| "Document review and FOF" | 69 | 199.00 | $118,500.00 |
| | **Total** | **1,432.79** | **$811,423.87** |

(Salerno Owens Decl. ¶ 17 and Ex. 1.)

There are 53 separate entries with the identical description, "Travel from NYC to Oregon," and 46 separate entries with the identical description, "Travel from Oregon to NYC." ABC did not specify the purpose of their timekeepers' trips. Additionally, ABC submitted 241 identical entries titled: "Document review of findings of fact" or "Document review and FOF" which also do not sufficiently describe what documents were being reviewed or the purpose of such document review. Together these entries total more than 6% of the hours and approximately 7% of the fees billed by ABC during the life of the case. (*Id.*)

> **2.** **The hours billed by ABC are unrealistically high.**

The chart below shows the number of days each timekeeper from ABC billed more than 8 hours and 10 hours.

| Timekeeper | Title | Billed > 8 hours per day | Billed > 10 hours per day |
|---|---|---|---|
| Anastasia Benedetto | Attorney | 141 | 59 |
| Dawn Post | Senior Attorney | 101 | 22 |
| Marcia Lowry | Senior Attorney | 70 | 27 |
| Aarti Iyer | Attorney | 57 | 14 |
| Lindsay Gus | Attorney | 26 | 6 |
| Jared Hirsch | Paralegal | 10 | 2 |
| Jonathan Borle | Attorney | 7 | 0 |
| Erin Gallagher | Attorney | 5 | 2 |
| Sarah Jaffe | Attorney | 5 | 5 |
| Sarah Corning | Paralegal | 4 | 2 |
| Garima KC | Paralegal | 3 | 0 |
| Lillian Barany | Paralegal | 1 | 0 |
| | **Total** | **430** | **139** |

(Salerno Owens Decl. Ex. 12, Analysis of High Billing Days.)

These hours appear to be objectively excessive given that ABC was involved in at least 12 other child welfare lawsuits during the five years since this case was filed.[16]  Specifically, ABC initiated lawsuits against Alaska, Indiana (twice), Louisiana, San Bernardino County in California, and West Virginia since they filed the Complaint in this Court on April 16, 2019.[17] ABC billed 1,405.74 hours ($786,888.01 in fees) during the pre-complaint phase of this litigation, which shows the great time and efforts ABC takes prior to initiating a child welfare lawsuit.  (Salerno Owens Decl. ¶ 15.)  It appears unrealistic that ABC was able to file complaints against 6 other jurisdictions while monitoring several others and had many of its attorneys work more than 8 hours a day on numerous days on this case during the same time period.

> **3.      ABC cannot recover attorney fees for non-Oregon licensed attorneys who do not have pro hac vice admission.**

As previously noted, ABC billed $273,385.09 in fees (647.24 hours) by attorneys who are not licensed in Oregon and do not have pro hac vice status in this case.  (*See supra* § II.A.4.) These fees are not recoverable.

For ABC's lack of reasonable billing judgment, the Court should reduce the hours they submitted by 50 percent, which would reduce the total fees calculated using the 75th percentile

---

[16] Alaska, Indiana (two cases), Louisiana, Minnesota, Mississippi, New Jersey, New York City, Oklahoma, San Bernadino, CA, Texas, Washington DC, and West Virginia; *see also* A Better Childhood, Our Work, https://www.abetterchildhood.org/ (last visited Jul. 20, 2024).

[17] *Jeremiah M., et al. v. Crum, et al.*, U.S. Dist. Ct. Civ. No. 3:22-cv-00129 (D. Alaska); *Ashley W., et al. v. Holcomb, et al.*, U.S. Dist. Ct. Civ. No. 3:19-cv-00129 (S.D. Ind.); *A.B., et al. v. Holcomb, et al.*, U.S. Dist. Ct. Civ. No. 3:23-cv-00760 (N.D. Ind.); *Fernandez et al. v. Louisiana Dept. of Children and Fam. Serv., et al.*, U.S. Dist. Ct. Civ. No. 3:24-cv-00289 (M.D. La.); *Gary G. et al. v. Newsom, et al.* U.S. Dist. Ct. Civ. No. 5:23-cv-00947 (C.D. Cal.); *Jonathan R. et al. v. Justice, et al.*, U.S. Dist. Ct. Civ. No. 3:19-cv-00710 (S.D. W.Va.).

rates from the 2022 OSB Survey for the firm from $6,690,347.34 to $3,345,173.67. (Salerno Owens Decl. Ex. 7.)

### B.    Rizzo Bosworth Eraut PC

#### 1.    Plaintiffs failed to reduce the excessive hours resulting from overstaffing with Rizzo Bosworth.

During the January 3, 2024, hearing, plaintiffs responded to the Court's concern about potential overstaffing when Rizzo Bosworth was appointed as co-class counsel, representing to the Court: "If defendants are concerned that we have overstaffed the case, that is something that can be addressed . . . if the petition is before Your Honor[.]" (Tr. of 1/3/24 Status Conference at 5:16-18.) Yet, plaintiffs have failed to appropriately "address" the overstaffing issue in their motion.

During oral argument on plaintiffs' motion to appoint co-class counsel (Dkt. 316), plaintiffs represented to the Court that the addition of Mr. Rizzo and Ms. Skjelset was in part to replace the loss of Paul Southwick's firm. Plaintiffs argued:

> Your Honor, as Your Honor is probably aware from the docket, Mr. Southwick and his firm were also involved representing the plaintiffs. Mr. Southwick has left the private practice of law in the state of Oregon. We fully anticipated that he would be a member of our trial team and have the resources of his firm involved. So we are down a firm that had been involved in the case since Mr. Southwick left DWT and started his own firm a couple of years ago.

(Tr. of 1/3/24 Status Conference at 9:18-23.)

In turn, the Court relied on this representation in granting plaintiffs' motion, stating "the loss of the other attorney and the pro bono nature of this case argues that this motion shall be granted, and I will, in fact, grant it." (*Id.* at 11:6-11.) While at the time Mr. Southwick had only recently withdrawn as co-counsel for plaintiffs, (Dkt. 311), plaintiffs' billing records indicate that Mr. Southwick worked on this case for just under 15 months and had not billed time for any

work since June 2020.  (*See* Miner Decl. Ex. 1 at 1-75 (Dkt. 523-1).)  Plaintiffs submitted no

billing records for Mr. Southwick's separate firm as part of their fee petition, nor do they provide

any support for their claim that "Mr. Southwick continued with the case at his own firm until

2023."[18]  (*See id.*; Pls.' Mot. for Fees and Costs at 29.)  Plaintiffs' billing records also reveal that

ABC and Rizzo Bosworth made their initial contact in August 2023, which means that plaintiffs

were litigating this case for over three years without Mr. Southwick and had no need to add a

fourth law firm.  (Rizzo Decl. Ex. 1 (Dkt. 522-1).)

Plaintiffs further represented to the Court that Mr. Southwick had "unique knowledge

around the law affecting LGBTQ+ People," which was relevant to the SGM subclass.  (Decl. of

Thomas Stenson in Supp. of Pls.' Mot. to Certify as Class Action (Dkt. 66) ¶ 14.)  However,

there is no indication that Rizzo Bosworth provided any "unique knowledge" or particular focus

on this subclass.  It is clear at this juncture that Rizzo Bosworth did not replace the loss of Mr.

Southwick.  Plaintiffs leveraged the official withdrawal of Mr. Southwick to justify the addition

of what turned out to be costly and ineffective co-counsel.  (*See id*. ¶ 15.)

### 2.    Rizzo Bosworth's hours are unrealistically high.

Mr. Rizzo and Ms. Skjelset billed approximately 1,300 hours (nearly $970,000 in fees)[19]

despite only being appointed co-class counsel in January 2024, four months before trial was

scheduled to begin.  (1/4/24 Op. & Order (Dkt. 324).)  This is roughly equivalent to the

combined total hours billed in ***approximately five years*** (since April 2019) by DWT lead counsel

---

[18] ABC, DWT, and Rizzo Bosworth did not record any communications or work with Mr. Southwick after 2020, and Mr. Southwick had not appeared at any hearings in this case since November 15, 2021 and had not appeared at any depositions since February 7, 2020.  (*See* Miner Decl. Ex. 1 at 1-75; 12/27/23 Defs.' Opp'n to Pls.' Mot. to Appoint Co-Class Counsel at 9 (Dkt. 321).)

[19] Mr. Rizzo and Ms. Skjelset also did not delegate any work to associates and began working on this case nearly five months before the Court approved them as co-class counsel.

Bill Miner, Andy McStay, and Paul Southwick.  This is even more unreasonable in light of the fact they are actively involved in at least two other lawsuits against ODHS in this District[20] and administering a settlement in the *J.M.* matter.

In addition, Rizzo Bosworth billed more than 1,000 hours (over $252,000 in fees) of paralegal hours—this is almost 40 percent more time (and 30 percent more fees) than was billed by seven DWT paralegals during the life of the case.  (Salerno Owens Decl. ¶¶ 24-25.)

### 3. Rizzo Bosworth engaged in wasteful litigation tactics in an extreme manner.

In their motion to appoint co-class counsel and supporting declarations, plaintiffs assured the Court that Mr. Rizzo and Ms. Skjelset had thoroughly investigated the claims, analyzed pleadings, reviewed the entire docket, and familiarized themselves "with the legal and factual issues involved and the history of the case."  (Pls.' Mot. to Appoint Co-Class Counsel (Dkt. 316) at 5.)  Specifically, Mr. Rizzo and Ms. Skjelset declared that they had performed this analysis to understand the "claims at issue" and the current "posture of the case."  (Decl. of Mary Skjelset in Supp. of Pls.' Mot. for Fees and Costs (Dkt. 317) ¶ 13; Rizzo Decl. (Dkt. 318) ¶ 16.)  Further, plaintiffs represented that Mr. Rizzo and Ms. Skjelset "have substantial experience litigating claims of deliberate indifference, which are at the heart of Plaintiffs' § 1983 claims against the

---

[20] Since November 18, 2022, Mr. Rizzo and Ms. Skjelset have been actively litigating *Levi v. Chapman*, 6:22-cv-01813-MK (D. Or.), and the *Estate of Matthew Reynolds v. ODHS, et al.*, 3:23-cv-705-SB (D. Or.) since May 12, 2023.  In *Levi*, as an example of their active involvement, Mr. Rizzo and Ms. Skjelset filed 10 pleadings between December 1, 2023, and May 30, 2024, including two discovery motions.  (*See* Salerno Owens Decl. Ex. 24 at 16-18.)  Mr. Rizzo and Ms. Skjelset also responded to one set of interrogatories and two sets of requests for production.  (*See id.*)  Further, during the same time period, they litigated ODHS's request for relevant juvenile records in a state court case related to *Levi*, *In the Matter of J.C.*, Lane County Circuit Court Case Nos. 16JU05857, 17JU03535, with Ms. Skjelset personally appearing on April 24, 2024, at a hearing in Lane County Circuit Court.

defendants in this action.  [Mr.] Rizzo and [Ms.] Skjelset's contribution to this case, especially through the completion of discovery and preparation for the May 2024 trial, will represent a high degree of professionalism, dedication, and thoroughness, and will be used to further develop and prove the claims alleged by the class.  These efforts will be made alongside those of existing class counsel and, combined, will lead to the best outcome for the class."  (Pls.' Mot. to Appoint Co-Class Counsel at 5-6 (Dkt. 316).)

However, contrary to the above representations, plaintiffs' counsel, led by Rizzo Bosworth, spent a significant amount of pretrial time and resources on irrelevant matters  not at issue in the case.  (*See supra* § I.A.2.)  In an attempt to improperly leverage discovery obtained from *J.M. v. Major*, No. 6:18-cv-00739-YY (D. Or.),[21] Rizzo Bosworth led plaintiffs' efforts to add theories that were not alleged in the Complaint to this case, on the eve of trial, and required the parties to spend significant resources to litigate plaintiffs' frivolous privilege waiver argument regarding Public Knowledge's communications with defendants' attorneys.  (*See supra* § I.A.2.)

Further, Rizzo Bosworth led plaintiffs' efforts to obtain documents related to ODHS's media announcements and press releases regarding Public Knowledge's expert report.  The Court, however, found that the documents plaintiffs sought are "not relevant to any claim or defense presented by either party" when it granted defendants' motion for a protective order. (Dkt. 367.)  The Court specifically stated: "The details of either party's media or public relations strategy will not assist this Court in resolving the issues before it and Plaintiffs' request for those materials is, frankly, ***a waste of time for all concerned***."  (*Id*.) (emphasis added.)

---

[21] This is evident from the fact that 90 of plaintiffs' proposed trial exhibits came from the *J.M.* case.

A specific example of Rizzo Bosworth's wasteful litigation tactic to pursue their frivolous theories is the remarkable 532.8 hours—more than 13 full weeks—(nearly $307,000 in fees) they billed to analyze the Public Knowledge report and prepare for Stacey Moss's deposition.  (Salerno Owens Decl. ¶¶ 25-26 and Ex. 1.)  Specifically, paralegals Nathan Rizzo and Shelley Maddox billed approximately 71 hours and 110 hours, respectively, and Steve Rizzo a staggering 288 hours.[22]  (*Id.*)  Despite various demands by plaintiffs to hold a two-day deposition, the deposition lasted a total of approximately seven hours.  (*See* Dkt. 463.)

This time was excessive, redundant, and otherwise unnecessary, and a reasonable "billing judgment" would have required plaintiffs to apply a reduction.  *See Edwards*, 2021 WL 6427817 *15 ("The Court, however, agrees with Defendant that the 38.2 hours [Attorney A] spent reviewing the file [in preparation for depositions] after [Attorney B] had already done so was excessive, particularly in combination with the 22.6 hours [Attorney A] spent preparing for depositions.  Accordingly, the Court declines to award attorneys' fees to Plaintiffs for 38.2 hours of [Attorney A] time spent reviewing the file.").

For the foregoing reasons, the Court should reduce Rizzo Bosworth's claimed hours by 80 percent, thereby reducing the total fees for the firm calculated using the 75th percentile rates of the 2022 OSB Survey from $1,014,393.00 to $202,878.60.

### C.    Davis Wright Tremaine LLP

#### 1.    DWT continuously relied on its pro bono status to their advantage throughout this case.

Although counsel's pro bono status ordinarily does not bar recovery of fees, *Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Circ. 2010), DWT should be judicially estopped from collecting

---

[22] This equates to 10 full workdays for Nathan Rizzo; 13 full workdays for Shelley Maddox; and 34 full workdays for Steve Rizzo.  (Salerno Owens Decl. ¶ 26 and Ex. 1.)

fees for the hours they "donated" to this case.  Plaintiffs repeatedly represented to the Court that

DWT took this case on a pro bono basis.  *See* Pro Bono, Black's Law Dictionary (12th ed. 2024)

(defining "pro bono" work as "[u]ncompensated, esp. regarding free legal services performed for

the indigent or for a public cause").  For example, in the parties' September 23, 2019, joint letter

to the Court, plaintiffs noted that they are "children in the foster care system represented on a pro

bono basis."  (Salerno Owens Decl. Ex. 19 at 3.)

       Moreover, plaintiffs gained a litigation advantage by relying on DWT's pro bono status

to convince the Court to add an additional law firm five months before trial.  Again, during the

January 3, 2024, hearing for plaintiffs' motion to add co-class counsel, defendants expressed

concern that adding a ***fourth*** law firm to the case would unreasonably increase costs.  In

response, plaintiffs represented to the Court that this case is "a pro bono lawsuit for Davis

Wright Tremaine."  (Tr. of 1/3/24 Status Conference at 10:4 (Dkt. 336).)  In support of their

request to add a fourth law firm to the case, plaintiffs represented that DWT "would have to get

other people [who would] have to *volunteer* their time to be part of a four week trial."  (*Id.* at

11:4-6) (emphasis added).)  Plaintiffs' representation to the Court regarding DWT's pro bono

status was one of the reasons the Court granted the motion to add co-class counsel.  (*Id.* at 11:8-

11 ("The expertise that has been represented by new counsel and the loss – which is in the

motion – the loss of the other attorney and ***the pro bono nature of this case*** argues that this

motion shall be granted, and I will, in fact grant it.") (emphasis added).)

       Plaintiffs should be judicially estopped from changing their position on DWT's pro bono

status because they relied on it to obtain a favorable result for their motion to add co-class

counsel.  *See Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997) ("Judicial estoppel . . .

precludes a party from gaining an advantage by taking one position, and then seeking a second

advantage by taking an incompatible position.") (quotation marks and citation omitted). Plaintiffs represented to the Court that DWT was working pro bono, and "gain[ed] an advantage" in the form of the Court's decision to add co-class counsel, which the record directly reflects in the Court's statements. They cannot "seek[] a second advantage by taking an incompatible position." *See id*.

Plaintiffs also gained practical advantages using DWT's pro bono status. For example, plaintiffs also used their counsel's pro bono status to resist discovery. (Salerno Owens Decl. Ex. 20 at 4, Excerpt of Pls.' Resp. to Defs.' First Req. for Produc. at 42 ("Plaintiffs have significantly fewer resources than Defendants, as the Plaintiffs are children in the foster care system represented on a pro bono basis, while Defendants are state executives and a large state agency represented by at least five Markowitz Herbold attorneys . . .").).

Moreover, DWT has repeatedly represented to the public that they "donated" (*i.e.*, gave without expectation of compensation) the hours they worked on this case. DWT's 2019 Pro Bono & Social Impact Report describes DWT's role in filing the lawsuit with DRO and ABC. (Salerno Owens Decl. Ex. 21 at 4, Do Good Report.) In the October 2020 issue of the *Oregon State Bar Bulletin*, DWT included this case as one of the firm's pro bono "opportunities" and stated that DWT's attorneys "care deeply about giving back to their communities and donating their time and talent to causes and constituencies that otherwise wouldn't be seen or heard." (Salerno Owens Decl. Ex. 22 at 3-4, OSB Bulletin Excerpt.) Also, on May 31, 2024, DWT posted on its LinkedIn page discussing the settlement and announcing that it "donated more than 2,500 hours to the case." (Salerno Owens Decl. Ex. 23.) It is improper for plaintiffs to seek the fees for the hours that DWT represented were "donated." Indeed, seeking over a $1 million in

taxpayer money for fees while representing to the community those hours were donated turns the plain meaning of "pro bono" and "donated" on its head.

Accordingly, a significant portion of DWT's fees should be reduced.

### 2.    DWT charged excessive fees through their failure to reasonably staff this case.

In addition to charging unreasonably high rates (*supra* § I, III.C), DWT did not reasonably staff the case.  While "the client or the lawyer can make their own decisions about how to staff the case, [] such decisions must be reasonable."  *Northon v. Rule*, 494 F. Supp. 2d 1183, 1187 (D. Or. 2007).  This District has found that "the imbalance between the time spent by the senior attorney in relation to the junior attorneys unreasonably inflated defendants' fee request."  *Id.*

DWT had a total of $1,459,934.98 in fees from 30 different timekeepers, but of the 1,967.00 hours ($1,275,633.50 in fees) billed by the attorneys over the course of this lawsuit, 1,389.50 ($1,015,049.00 in fees) were billed by three partners with high hourly rates.  (*See also supra* § II.A.5 discussing DWT billing approximately 71% of their attorney hours (and 80% of attorney fees) in this case at the partner rate.)  Further, between February and early May 2024, when the parties were preparing for trial and preparing pretrial briefing, there were five entries from associates totaling 11.0 hours ($7,448.50 in fees), compared to 391 entries from Mr. Miner and Mr. McStay totaling 517.90 hours ($416,034.50 in fees).  (Salerno Owens Decl. Ex. 1.)  This means the two partners, who were billing at $800.00 or more per hour, were doing nearly all of DWT's trial preparation work.  (*Id*.)  These imbalances between the hours billed by partners and associates show DWT's contribution to plaintiffs' unreasonably inflated fee request.

**3.      DWT cannot recover attorney fees for non-Oregon licensed attorneys who do have not have pro hac vice admission.**

As previously noted, DWT billed $46,693.50 in fees (89.20 hours) by attorneys who are not licensed in Oregon and do not have pro hac vice status in this case (*supra* § II.C.3). These fees are not recoverable.

For the foregoing reasons, DWT's claimed hours should be reduced by 80 percent, which would reduce the total fees calculated using the 75th percentile rates from the 2022 OSB Survey for the firm from $1,185,485.58 to $291,476.76.

**D.      Disability Rights Oregon**

DRO's billing records include numerous block-billed or vague entries. DRO's vague entries include:

- "Call with media."

- "Attend conference"

- "Spoke with fact witness."

- "Check in with co-counsel."

- "Co-counsel meeting."

(*See* Salerno Owens Decl. Ex. 1.)

DRO's vague entries do not even include the subject matter of a task, thereby hindering the Court's ability to determine the reasonableness of the task recorded. *See Atl. Recording Corp. v. Andersen*, No. CV 05-933 AC, 2008 WL 2536834, at *9 (D. Or. June 24, 2008) (deducting the hours with the entries that are "too vague and fail to provide sufficient information upon which the court can evaluate the Rule 54 factors").

DRO also submitted many block-billed entries that lump together several tasks in a single entry. (Stenson Decl. in Supp of Pls.' Mot. for Fees and Costs (Dkt. 520).) Mr. Stenson asserts

in his declaration that he does not "block bill" because he "place[s] multiple tasks under a single heading when they relate to the *same topic, pleading, or event*."  (*Id.* at ¶ 19 (italics in original).) Grouping multiple tasks about "the same topic, pleading, or event" without indicating how much each task took does not alleviate the problem of block billing.  DRO's block-billed entries still do not allow the Court to "assess the reasonableness of the time spent on each task billed."  *See Nufarm Americas Inc. v. Delta Ridge Holdings, LLC*, No. 22-CV-581-HL, 2024 WL 52973, at *4 (D. Or. Jan. 4, 2024).

Accordingly, the Court should reduce DRO's claimed hours by 20 percent, thereby reducing the total fees for the firm calculated using the 75th percentile rates from the 2022 OSB Survey from $1,061,157.00 to $834,450.60.

In sum, if the Court is not inclined to reduce plaintiffs' claimed hours by half, the Court should reduce DWT's claimed hours by 80 percent, ABC's by 50 percent, Rizzo Bosworth's by 80 percent, and DRO's by 20 percent, which would reduce the total fees calculated using the 75th percentile rates of the 2022 OSB Survey from $9,951,382.92 to $4,673,979.63.

| Law Firm | Claimed Hours | Requested Fees | Plaintiffs' Hours Reduced by Law Firm | | Defendants' Proposed Fees with 2022 OSB 75th Percentile Rate | Reduction |
|---|---|---|---|---|---|---|
| ABC | 16,055.75 | $7,537,572.98 | 50% | 8,027.88 | $3,345,173.67 | -$4,192,399.31 |
| Rizzo | 2,293.70 | $1,220,825.40 | 80% | 458.74 | $202,878.60 | -$1,017,946.80 |
| DWT | 2,678.30 | $1,459,934.98 | 80% | 535.66 | $291,476.76 | -$1,168,458.22 |
| DRO | 2,064.10 | $1,241,117.50 | 20% | 1,651.28 | $834,450.60 | -$406,666.90 |
| **Total** | **23,091.85** | **$11,459,450.86** | | **10,673.56** | **$4,673,979.63** | **-$6,785,471.23** |

(Salerno Owens Decl. ¶ 7 and Ex. 6.)

**Page 48 –   DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND COSTS**

IV.    **Plaintiffs' request for costs included many non-recoverable items.**

    A.    **Plaintiffs' request includes unrecoverable expert fees.**

Plaintiffs seek fees for non-recoverable expert fees that are prohibited by black letter law.

Plaintiffs' incorrect assertion that all their expert fees are compensable has no basis in law.

Courts in this District have explained that while a prevailing party is entitled to expert witness

fees under the ADA, that is not the case for a prevailing party under 42 U.S.C. § 1983:

> [P]laintiff argues that expert witness fees are recoverable as part of
> her attorney fee award under both the ADA and 42 USC § 1988.
> She is wrong with respect to 42 USC § 1988. In 1991, the
> Supreme Court held that § 1988 does not authorize the shifting of
> expert witness fees to the losing party. *West Virginia Univ. Hosp.,
> Inc. v. Casey*, 499 U.S. 83 (1991). After *Casey*, Congress amended
> § 1988 to allow the court, "in its discretion," to award expert
> witness fees "in any action or proceeding to enforce a provision of
> section 1981 or 1981a of this title." 42 USC § 1988(c). This
> amendment does not include claims brought under § 1983. Thus, §
> 1988 does not allow an award of expert witness fees to plaintiff for
> prevailing against Raines on her § 1983 claim.

*Quesnoy v. Oregon*, No. 3:10-cv-01538-ST, 2012 WL 1155832, at *10 (D. Or. Apr. 6, 2012)

(some citations omitted); *Wilkens v. Edwards*, No. 6:14-cv-00907-MC, 2016 WL 1271663, at *5

(D. Or. Mar. 29, 2016) (adopting Judge Stewart's *Quesnoy's* reasoning); *see also Sanchez v. Cty.

of San Bernardino*, 2014 WL 12734756, at *20 (C.D. Cal. Mar. 10, 2014) (collecting cases

recognizing that even after the Congress amended § 1988 a plaintiff may not recover expert fees

pursuant to § 1988(b)).

    Defendants do not dispute that plaintiffs are entitled to their expert fees totaling

$41,539.70 for Dr. Farina because her opinion related to plaintiffs' ADA claims. *See Quesnoy*,

2012 WL 1155832, at *10 (D. Or. Apr. 6, 2012) ("the ADA specifically authorizes an award of

'litigation expenses,' including expert witness fees, to the prevailing party"); *see also* 42 U.S.C.

§ 1988(c) (granting the court, in its discretion, authority to award expert fees for claims brought

pursuant to 42 U.S.C. §§ 1981, 1981a); 42 U.S.C. §1981a(a)(2) (providing a right to recovery for claims brought under the ADA).  The remainder of plaintiffs' expert fees, $256,011.30, however, must be excluded.  *Quesnoy*, 2012 WL 1155832, at *10.  (*See* Salerno Owens Decl. ¶ 59.)

**B.    Plaintiffs' request includes travel-related costs that are not taxable under FRCP 54(d) and 28 U.S.C. § 1920.**

FRCP 54(d)(1) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party."  Courts have no authority to award costs beyond those prescribed in 28 U.S.C. § 1920 absent "plain evidence of congressional intent."  *Tasakos v. Welliver Metal Prod. Corp.*, No. CIV. 04-6205-AA, 2005 WL 627633, at *2 (D. Or. Mar. 16, 2005) (quoting *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, (1987)).

Section 1920 costs are defined as:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title; and

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Plaintiffs seek $70,934.04 for travel costs and an additional $18,510.69 for canceled lodging for trial.  (*See* Pls.' Mot. for Fees and Costs at 37-38; Salerno Owens Decl. ¶¶ 60-65 and Ex. 14.)  Section 1920 does not contain any provisions for taxing the costs for counsel's travel, and courts have concluded that such costs are not taxable under Section 1920.  28 U.S.C. § 1920;

**Page 50 –    DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

*see also*, *e.g.*, *Gessele v. Jack in the Box, Inc*., No. 3:14-CV-01092-HZ, 2024 WL 1619425, at

*30 (D. Or. Apr. 14, 2024) (finding that counsel's travel costs are not taxable under Section

1920); *Kwiecinski v. Medi-Tech Int'l Corp*., No. 3:14-CV-01512-BR, 2016 WL 11817973, at *4

(D. Or. Aug. 25, 2016) (denying defense counsel's request for travel costs); *Alexander Mfg., Inc.*

*Emp. Stock Ownership & Tr. v. Illinois Union Ins. Co*., 688 F. Supp. 2d 1170, 1177 (D. Or.

2010) ("a party's travel expenses are not recoverable under § 1920"); *Banta v. City of Merrill,*

*Or.*, No. CIV. 06-3003-CL, 2007 WL 3543445, at *5 (D. Or. Nov. 14, 2007) ("the cost of travel

of a party is not a recoverable cost").

The Court can also see ABC's lack of billing judgment from their travel expenses.

(Salerno Owens Decl. ¶¶ 60-65.)  The State requires that its employees and counsel bill within

standard per diem rates when traveling within or outside the state of Oregon.[23]  However,

plaintiffs did not exercise such judgment.  Ms. Lowry and Ms. Benedetto exclusively stayed at

five-star luxury hotels in downtown Portland between 2022 and 2024.  (*See* Salerno Owens Decl.

¶ 62.)  Ms. Lowry also took black car services, each trip ranging from around $200-300 every

time she visited Portland.  (*Id*. at ¶ 62.)  On at least one occasion, on May 17, 2023, Ms. Lowry

billed for a black car service in Portland despite no billing entries providing context for this trip.

(*See* Lowry Decl. at 16 (Dkt. 518) and Ex. 1 at 116 (Dkt. 518-1).)  It is inappropriate to see that

ABC is asking Oregon's taxpayers to subsidize their luxury travel.

Ms. Lowry and Ms. Post also charged in this case multi-stop flights that include Portland.

(Salerno Owens Decl. ¶ 62.)  For example, on July 8, 2019, Ms. Post charged $1,149.70 for

multiple flights including travel to West Virginia where ABC filed a similar suit not too long

---

[23] *See* current per diem rates for Oregon travel at
https://www.oregon.gov/wcb/Documents/interpreter/travelrates24a.pdf (last visited July 23,
2024).

after.[24]  (*Id.*)  On July 12, 2019, Ms. Lowry flew to Los Angeles and San Diego as part of a trip to Portland and charged for the entire trip without any explanation.  (*Id.*)  On November 16, 2022, Ms. Lowry charged 18 hours ($14,400 in fees) to this case for her travel from New Orleans to Salt Lake City to New York City for a cancelled conference, without any explanation as to her trip's connection to this lawsuit.  (Salerno Owens Decl. ¶ 18; Lowry Decl. Ex. 1 at 106.)  It is equally inappropriate to see that ABC is asking Oregon's taxpayers to pay for their travel for work that has nothing to do with this case.

Accordingly, the Court should exclude $89,444.73 from plaintiffs' request for costs related to travel and trial lodging.

Defendants request that the Court exclude a total of $345,456.03 from plaintiffs' request for costs, reducing the award from the requested amount of $592,304.14 to $246,848.11.

| Category | Costs Requested | Defendants' Proposed Reductions | Authority Supporting Cost Request | Defendants' Proposed Total Costs |
|---|---|---|---|---|
| Travel | $70,934.04 | -$70,934.04 | n/a | $0.00 |
| Trial lodging | $18,510.69 | -$18,510.69 | n/a | $0.00 |
| Experts | $297,551.00 | -$256,011.30 | Partial - Americans with Disabilities Act (ADA) | $41,539.70 |
| Other Costs | $205,308.41 | $0.00 | 28 U.S.C. § 1920 | $205,308.41 |
| **Total** | **$592,304.14** | **-$345,456.03** | | **$246,848.11** |

(Salerno Owens Decl. ¶¶ 60-65.)

---

[24] *See* https://www.abetterchildhood.org/west-virginia, last visited July 23, 2024.

## CONCLUSION

For the foregoing reasons, defendants request that the Court apply the 75th percentile rates from the 2022 OSB Survey. Defendants further request that the Court reduce the amount obtained by applying the 2022 OSB Survey rates, $951,382.92, in half to $4,975,691.46, or in the alternative, to $4,673,979.63, after considering each of the four firms' improprieties. Defendants further request that the Court reduce plaintiffs' award of costs to $246,848.11.

DATED: July 24, 2024

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON


*s/ Laura Salerno Owens*
David B. Markowitz, OSB #742046
DavidMarkowitz@MarkowitzHerbold.com
Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Lauren F. Blaesing, OSB #113305
LaurenBlaesing@MarkowitzHerbold.com
Vivek A. Kothari, OSB #182089
VivekKothari@MarkowitzHerbold.com
*Special Assistant Attorneys General for Defendants*

Adele J. Ridenour, OSB #061556
AdeleRidenour@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
David A. Fauria, OSB #170973
DavidFauria@MarkowitzHerbold.com
Kelsie G. Crippen, OSB #193454
KelsieCrippen@MarkowitzHerbold.com
*Of Attorneys for Defendants*

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us
Sheila H. Potter, OSB #993485
sheila.potter@doj.state.or.us
*Of Attorneys for Defendants*