**DAVIS WRIGHT TREMAINE LLP**
P. Andrew McStay Jr.
William D. Miner
560 SW 10th Avenue, Suite 700
Portland, OR 97205

**A BETTER CHILDHOOD**
Marcia Robinson Lowry (*pro hac vice*)
Anastasia Benedetto (*pro hac vice*)
355 Lexington Avenue, Floor 16
New York, NY 10017

**DISABILITY RIGHTS OREGON**
Emily Cooper
Thomas Stenson
511 SW 10th Avenue, Suite 200
Portland, OR 97205

**RIZZO BOSWORTH ERAUT, PC**
Steven Rizzo
Mary D. Skjelset
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S.; RUTH T.; BERNARD C.; NAOMI B; and NORMAN N., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TINA KOTEK, Governor of Oregon in her official capacity, FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; APRILLE FLINT-GERNER, Director, Child Welfare in her official capacity, and OREGON DEPARTMENT OF HUMAN SERVICES, <br><br> Defendants. | Case No. 6:19-cv-00556-AA <br><br> **PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS** |

Following the conclusion of a settlement successfully resolving a five-year litigation, Plaintiffs submitted a motion for attorneys' fees and costs that seek a reimbursement for a reasonable number of hours, reimbursement at reasonable hourly rates, and for reasonable costs associated with the litigation. Defendants have opposed the motion ("Objection").

Plaintiffs are seeking $10,920,301 in attorney fees and $590,570.07[1] in costs through July 3, 2024. As has already been substantially discussed, Defendants had spent upwards of $18 million on fees and costs as of February 2024. A reasonable estimate of subsequent fees and costs subsequently billed to Defendants likely yields a total of $20,000,000. (McDermott Decl., at ¶11 (ECF 515).  In the Objection, Defendants do not dispute the $20,000,000 alleged to have been spent to defend this case.

Defendants have refused to provide any documents to support their billings. Plaintiffs' original request—less than 60% of the Defendants' likely expenditures—already represents a substantial reduction over Defendants' expected fees and costs. Defendants—who did not prevail—suggest that even Plaintiffs' remarkably reduced fees compared to their own are still unreasonable, even where Plaintiffs obtained a remarkable settlement on behalf of the class. In the Objection, Defendants do not dispute the remarkable results achieved by counsel for Plaintiffs outlined in ECF 514 at 4-9.

Rather, Defendants suggest that Plaintiffs should receive less than $5 million in costs and fees. That is, for winning the case, Defendants argue that Plaintiffs' counsel should only have reasonably expended less than **25%** of what defense counsel spent losing the case. Defendants point to no case where a Plaintiff, successful on all four of its claims, who obtained a highly favorable settlement, recovered a quarter of the fees the defense spent. Defendants point the court to no case,

---

[1] Plaintiffs originally sought $592,304.13 in costs, but ABC has reduced its costs by $1,734.06 based on its rejection.

where a Plaintiff successful on all four of its claims, had its requested fee slashed by more than 50%, in the way or for the reasons Defendants propose. Defendants spend 53 pages of briefing and 1500 pages of supplemental documentation trying to justify such an enormous cut in fees. In the end, Defendants' suggestion to slash all hours by 50% is simply a nice round number unrelated to any documented problem approaching that scale.

## I.    Plaintiffs' Overall Request is Reasonable

Plaintiffs have borne their initial burden to show the reasonableness of their fee request. A movant must "produce satisfactory evidence establishing the reasonableness of the requested fee." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015). That evidence "must include proof of market rates in the relevant community (often in the form of affidavits from practitioners)" and "detailed documentation of the hours worked." *Id.* Plaintiffs have produced three different declarations from practitioners agreeing that their rates are reasonable and have also produced extensive fee records describing the hours worked.

Once that threshold is met, the opposing party "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the facts asserted by the prevailing party in its submitted affidavits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). "[T]he burden of producing a sufficiently cogent explanation [of identifying excessive fees] can mostly be placed on the shoulders of the losing parties, who not only have the incentive, but also the knowledge of the case to point out such things as excessive or duplicative billing practices." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008). Notably, Defendants have failed to: 1) produce any expert declarations indicating that the rates or hours are unreasonable; and 2) produce any part of their own fee records to justify the positions that they have taken.

The court should disregard Defendants' arguments because Defendants have completely refused to disclose evidence in their own possession that would tend to prove or disprove their claims. Where an opposing party fails to disclose their own billing records, that failure may be used against them in the fee proceeding. *Best W. Int'l Inc. v. NM Hosp. Roswell LLC*, No. CV-17-01274-PHX-DJH, 2020 WL 13573983, at *2 (D. Ariz. Apr. 28, 2020) (rejecting losing party's arguments on unreasonable billing where they refused to provide documentation of their own records); *Bruner v. City of Phoenix,* No. CV-18-00664-PHX-DJH, 2020 WL 554387, at *10 (D. Ariz. Feb. 4, 2020) (same); *Saint Alphonsus Med. Ctr.- Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, No. 1:12-CV-00560-BLW, 2016 WL 1232656, at *4 (D. Idaho Mar. 28, 2016), *judgment correcte*d, No. 1:12-CV-00560-BLW, 2016 WL 7017401 (D. Idaho Nov. 29, 2016) (same). Throughout the objection, Plaintiffs are unable to discern whether Defendants paid for legal services based on similar time entries, using similar staffing patterns, or otherwise engaging in the same conduct for which they heavily criticize Plaintiffs' counsel.

While some of the issues raised by Defendants could be reasonably disputed, the length of their 53-page brief and 1500 pages of supporting documents are hardly justified by the thin assertions that pervade it. Nor can one take seriously Defendants' fundamental hypothesis—that it would be unreasonable to award the prevailing Plaintiffs *a quarter* of the fees and costs paid to defense counsel.

## II.    Plaintiffs Sought Reasonable Hourly Rates for Their Counsel

Plaintiffs presented *three* different expert opinions supporting their claims of reasonable hourly rates. Defendants presented *zero* experts opposing Plaintiffs' reasonable hourly rates. Defendants were likely unable to produce any experts who would claim Plaintiffs' hourly rates were unreasonable because: 1) no neutral attorney would claim Plaintiffs' rates are unreasonable; and 2) defense counsel's own rates often exceed those sought by Plaintiffs' counsel.

Defendants proceed with the theory that Plaintiffs' counsel cannot reasonably obtain any rates higher than what they deem the 75th percentile rate of the Oregon State Bar's Economic Survey. That marker—the 75th percentile—is no longer even reported by the state bar, presenting a unique challenge in asserting that a now-unreported number continues to constitute the "typical cap" for attorney's fees. ECF 531, at 20. Defendants ask this court to follow a series of unexamined emails, which have at least one serious error or statistical anomaly,[2] rather than the actual Economic Survey itself.

Plaintiffs presented adequate and substantial evidence in support of their fee rates. Defendants' complaint that the rates go "well beyond the mean" is ill-taken. ECF 531, at 17. The "mean" civil litigation rate in Oregon includes all civil litigation in state court and in federal court. The typical piece of civil litigation is probably some contract dispute or personal injury litigation in state court. A median attorney in civil practice might be an insurance defense attorney billing to defend some ordinary injury case. A median rate is appropriate where a case is not complex and not developed. *Bark v. Northrop*, 300 F.R.D. 486, 493 (D. Or. 2014) (Aiken, J.) (ordering the median rate because "issues were relatively straightforward," case was not complex, and "parties had not yet begun litigating its substantive merits"). To state the obvious, neither this case nor the attorneys behind it are ordinary. Even before discussing the individual expertise of counsel, the enormous difficulty and complexity of this case, as well as its very advanced status at the time of settlement on the eve of trial, puts the fee at issue in this case well beyond the mean rate that an ordinary litigator

---

[2] The Court should note that, in the exchange of data, the email suggests that the 75th percentile of attorneys with 16-20 years of experience make *more* than the 75th percentile of attorneys with 21-30 years of experience. ECF 534-1, at 5 (showing, in the 75th percentile, attorneys with 16-20 years of experience make $550 an hour and attorneys with 21-30 years of experience make $530). Suggesting that attorneys with 16 years of experience should make more than attorneys with 30 years of experience is at odds with all other data, consistently showing a trend of attorneys making a higher hourly rate as they accrue more experience. Since (unlike the 2022 Economic Survey) that email exchange has not been checked or reviewed for accuracy, and its results indicate either an error or a major statistical anomaly, the Court should not rely on it.

might get for defending a routine medical malpractice case.

While Oregon district courts have indicated that, as a *general rule*, they do not often go above the 75th percentile fee rate, they have in many cases done so. Awarding 95th percentile fee, while plainly requiring a certain showing, has not been unheard of and has been awarded for far less complex or challenging matters, or less unique qualifications, such as having a real estate specialty. *Oregon Realty Co. v. Greenwich Ins. Co.,* No. 3:12-CV-00200-MO, 2013 WL 3287092, at *5 (D. Or. June 28, 2013), *order amended on reconsideration*, No. 3:12-CV-00200-MO, 2013 WL 4859305 (D. Or. Sept. 11, 2013) (awarding a 95th percentile fee rate to Ms. Larsen because of her specialty; awarding a 95th percentile fee rate to Mr. Sondag for the same reason on reconsideration). In cases that do not approach the complexity of the present one, courts have awarded fee rates that exceeded 75th percentile numbers, even if they did not reach 95th percentile numbers. *See, e.g.*, *Schumacher v. City of Portland*, No. CV-07-601-MO, 2008 WL 219603, at *9 (D. Or. Jan. 23, 2008) (awarding two Lane Powell attorneys a rate "between the 75th and 95th percentile" in an anti-SLAPP proceeding that was dismissed in 9 months); *Gary v. Unum Life Ins. Co. of Am.*, No. 3:17-CV-01414-HZ, 2023 WL 196172, at *4 (D. Or. Jan. 17, 2023) (awarding rates between 75th and 95th percentile in single plaintiff ERISA case).

In support of their claims, Defendants also cite to hourly rates previously awarded to Plaintiffs' counsel in past cases in other jurisdictions, in award orders that go back to 2006, fee awards which may address work done many years earlier. *See, e.g.*, ECF 532, at 5-6. As a threshold matter, the duty of the court is to orient its award around the "prevailing rate" in Oregon, or possibly in exceptional cases in the attorney's home jurisdiction. What the prevailing rates are in West Virginia, Mississippi, or other jurisdictions have nothing to do with a proper market rate here. The age of the decisions likewise make comparisons to prior awards unhelpful. In the Ninth Circuit, it is legal error to "apply market rates in effect [more] than two years before the work was performed."

Page 6 – PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR
ATTORNEYS' FEES AND COSTS
                           DAVIS WRIGHT TREMAINE LLP
                              560 SW 10th Avenue, Suite 700
                                  Portland, Oregon 97205
                         (503) 241-2300 main · (503) 778-5299 fax

*Bell v. Clackamas Cnty.*, 341 F.3d 858, 869 (9th Cir. 2003). Defendants' citation to fee awards from 18 years ago from other states are not helpful. It would be error to rely on those decisions to set a reasonable rate.

The state complains that Mr. Miner and Mr. McStay, partners at Davis Wright Tremaine, seek rates "just below the 95th percentile." ECF 531, at 17. Partners at DWT are routinely afforded such rates. *See, e.g., Owens v. Klamath Falls Oregon State Police Dep't*, No. 1:11-CV-3049-PA, 2012 WL 1697310, at *2 (D. Or. May 14, 2012) (granting rate "close to 95th percentile" for DWT partner). In another recent matter, a senior partner at DWT earned well above the 95th percentile rate—$855 per hour in 2022 and $955 per hour in 2023, relative to a 95th percentile rate of $798— based on his "experience with public impact litigation." *Tozer v. City of Portland*, No. 3:22-CV-01336-AN, 2023 WL 8295886, at *3 (D. Or. Nov. 30, 2023). Judge Mosman awarded a partner at Stoel Rives a 95th percentile fee award rate a few years ago in a commercial landlord tenant case. *SPF Brewery Blocks, LLC v. Art Inst. of Portland, LLC*, No. 3:18-CV-1749-MO, 2019 WL 1497029, at *2 (D. Or. Apr. 4, 2019). ). In fact, David Markowitz himself recommends 95th percentile fee rates for major firm partners. *Schnitzer Steel Indus., Inc. v. Cont'l Cas. Corp.*, No. 3:10-CV-01174-MO, 2014 WL 6063976, at *6 (D. Or. Nov. 12, 2014), *aff'd*, No. 14-35793, 2016 WL 3059067 (9th Cir. May 31, 2016) (expert opinion from Mr. Markowitz recommending rates at or exceeding 95th percentile for Stoel Rives partners in a breach of contract matter, based on broad statements regarding the attorneys' reputation, experience, and skill). Top firm partners bill for and obtain 95th percentile rates.

Not only are Plaintiffs' rates consistent with the "prevailing rates in the community," Plaintiffs' rates are consistent with the rates prevailing in defense counsel's own office. Ms. Salerno Owens, for instance, recently billed for $700 per hour in a state court anti-SLAPP proceeding, in which her only role was to take two phone calls of less than six minutes. *See* Ex. 1, Stenson Suppl.

Page 7 – PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR
ATTORNEYS' FEES AND COSTS
            DAVIS WRIGHT TREMAINE LLP
                560 SW 10th Avenue, Suite 700
                    Portland, Oregon 97205
            (503) 241-2300 main · (503) 778-5299 fax

Decl. The proposed rationale for her $700 an hour rate was "counsel's expertise and experience." *Id.* Ms. Salerno Owens has been licensed to practice in Oregon since 2007, less experience than virtually all the primary counsel in this matter. *Id.* Another Markowitz attorney with 38 years of experience recently sought and obtained a $735 per hour rate in a breach of contract case. *Ave. 33, LLC v. Aventurine Cap. Grp., LLC*, No. 3:23-CV-00896-YY, 2024 WL 554285, at *6 (D. Or. Jan. 16, 2024), *report and recommendation adopted as modified*, No. 3:23-CV-896-YY, 2024 WL 1554169 (D. Or. Apr. 10, 2024). His colleagues with 17 and 14 years of experience sought and obtained rates of $630 and $600 per hour. *Id.* Nevertheless, Defendants believe that their own counsel should be entitled to command fees well above the 75th percentile in far less complex proceedings, with far less showing of specialized knowledge.

Plaintiffs' Oregon-based counsel and Defendants' counsel both work in the same community. The rates highlighted above are routine for defense counsel, even in comparatively less complex, less involved cases, like routine contract disputes and state-court proceedings that last a few months. For reasons Defendants never explain, those rates are permitted for defense counsel even in routine proceedings but somehow prohibited for Plaintiffs' counsel, even in a complex matter that lasted five years that required unique expertise in foster care proceedings, disability law, class action, and constitutional law. Defendants' positions on rates indicate that Ms. Lowry, who has been litigating on behalf of children since 1970, *see Roe v. State of N. Y.*, 49 F.R.D. 279, 280 (S.D.N.Y. 1970), and who has perhaps more experience in child welfare cases than any attorney in the United States, deserves to be paid less than the routine rates of Markowitz attorneys who have been practicing for only 17 years. Defendants' absurd methods on rates led to absurd results that no self-respecting expert would endorse and that the court should utterly disregard.

The declarations of Plaintiffs and their experts adequately establish both the complexity of the matter and the unique, specialized background of Plaintiffs' counsel in the fields justifying the

Page 8 – PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR
ATTORNEYS' FEES AND COSTS

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

higher rate. Considering that Oregon courts have felt free to award 95th percentile rates for

qualifications like real estate law experience, the Court cannot credit Defendants' arguments that a

75th percentile cap cannot be exceeded. Plaintiffs wonder in what case a court might go above the

75th percentile rate if not the present one: a complex, hard-fought 5-year long federal class action

that settled on the eve of trial, relating to a uniquely difficult and technically challenging topic, in

which virtually no other in-state expertise exists.

## III.    Plaintiffs Have Sought a Reasonable Number of Hours

Plaintiffs have filed a reasonable fee request, documenting the extensive work they did in

this matter. The Court should find Plaintiffs spent a reasonable amount of time litigating the matter.

"By and large, the court should defer to the winning lawyer's professional judgment as to how much

time he [or she] was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106,

1112 (9th Cir.2008). In particular, the Court should have less concern that Plaintiffs' counsel would

waste time needlessly, because the recovery of a fee was always contingent on success. "It would

therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning." *Id.*

This remark from the Ninth Circuit is borne out by looking at the overall posture of the case.

Plaintiffs ended up requesting far less in attorney's fees than Defendants have already received,

although Defendants contend (again without any records in support) that this is due to the different

burdens on the defense. However, Plaintiffs spent around 15% of what Defendants spent on costs.

Defendants spent more on just the Public Knowledge report (more than $800,000) or just on Dr.

Vinson's reports (about $450,000) than Plaintiffs' spent on all their expert reports put together.

Considering that Plaintiffs bore the initial burden to prove their case, Defendants clearly spent freely

from the almost unlimited coffers of the state, against Plaintiffs working on contingency, uncertain

if they would ever be reimbursed for their time or their costs.

Defendants' complaints about Plaintiffs' time records indulge in speculation, lack basis, or

Page 9 – PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR
ATTORNEYS' FEES AND COSTS
                        DAVIS WRIGHT TREMAINE LLP
                           560 SW 10th Avenue, Suite 700
                              Portland, Oregon 97205
                       (503) 241-2300 main · (503) 778-5299 fax

simply fail to make coherent sense. For instance, Defendants complaint that Plaintiffs' counsel simply could not have credibly spent 8 or 10 hours a day on this case. ECF 531, at 46. In essence, they declare that Plaintiffs' counsel must be lying about their hours because Defendants argue it is "unrealistic" to believe that lawyers work long hours on one case. *Id.* Plaintiffs can assure the Court that many attorneys work long hours, particularly to prepare for depositions, hearings, trial, or filing major pleadings. Such practices are not only supported by the declarations filed in support of the Motion, but by Plaintiffs' expert. Second McDermott Decl. ¶6. Defendants' raw conjecture does not create an issue of fact, nor does such speculation bear their burden to rebut the Plaintiffs' showing. *Moreno*, 534 F.3d at 1116.

### A. Alleged "Block Billing" Does Not Meet the Definition for the Term

Defendants complain about block billing repeatedly, but then cite to Plaintiffs' billings that plainly fail to meet the definition of block billing. As Defendants note, "block billing is any single time entry of three or more hours containing four or more tasks, or containing only two tasks where one of the two tasks could have taken anywhere from a small to a substantial period of time." *Herrman v. LifeMap Assurance Co.*, 497 F. Supp. 3d 970, 976 (D. Or. 2020). Yet their primary example of alleged block billing is the billing for document review in this matter, where "Document review and Findings of Fact," "Document review and FOF," or similar language was cited dozens of times. *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 969 (N.D. Cal. 2014) (rejecting criticism of "document review" billings as vague, as plaintiffs had not "cited any authority providing that timekeepers are required to identify how many documents they have reviewed in each entry, or that timekeepers may not use similar phrases to describe similar work performed on different days"); *S.G.W. v. Eugene Sch. Dist.*, No. 6:16-CV-01612-AA, 2017 WL 2365134, at *3 (D. Or. May 30, 2017) (Aiken, J.) (entry "received district discovery #1" was adequately descriptive of document review process).Those activities—reviewing documents and filling out the findings of fact—plainly

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

feed into one another: that, as an attorney reviews documents and finds helpful evidence, the attorney updates proposed findings of fact.[3] The Court should not penalize Plaintiffs for making a perfectly coherent and appropriate set of time entries and asking them to describe document review as anything other than what it is would entail merely "concocting different ways to describe the same task [and] would serve no purpose other than misleading the client or the Court." *Id.*

Other alleged examples of "block billing" are similarly invalid. Entries like "prepare for and attend. . ." comprise only two actions, and many of the cited actions do not stretch over three hours. *See, e.g.*, ECF 532-1, at 300 ("prep for and conferral on Casey subpoena" – 1.0 hours). Many entries cited as "block billing" do not even present an arguable case of block billing, but simply reflect any entry with the word "and" in it. *See, e.g.*, 532-1, at 368 (entry 106325—"review discovery and [l]egal research re same in preparation for conferral") *id*. at 491 (entry 108503 –"–Legal research re aging out subclass, elements of claims, and remaining claims." – 2.33 hours). Other challenged entries are an hour or less. *Id.* at 498 (entry 108613 - "Review and update deposition tracker, deposition transcripts" – 0.50 hours); *id.* at 524 (entry 109069 – 0.5 hours); *id.* at 526 (entry 109101 – 1 hour). This plainly falls short of the definition. *Updike v. Multnomah Cnty.*, 2020 WL 4736461, at *2 (D. Or. Aug. 14, 2020) (excusing block billing entries of under three hours). By taking such a heavy-handed approach and counting a wide variety of entries as "block billing," even when they are as short as half-an-hour or contain only one function or two closely-related functions, Defendants have multiplied the complexity of the fee adjudication without actually clearly identifying bona fide block billing practices. Rather, Plaintiffs' expert has opined that the level of description contained in Plaintiffs' law firms' billing records is similar to bills submitted by—and paid by—commercial clients in Oregon. Second McDermott Decl. ¶4. Since Defendants' extensive analysis is

---

[3] *See, e.g.,* ECF 532-1, at 156 entry 102510 "Reviewed and analyzed documents responsive to RFP 20, tagged, logged, updated for FOF."

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

plainly unreliable and extremely overinclusive, the Court should disregard it.

**B.      Plaintiffs Can Bill for Out-of-State Attorney Time**

Defendants criticize Plaintiffs for billing for attorneys not barred in Oregon, a wholly common and unremarkable practice. ECF 531, at 34-35 and 47; *Winterrowd v. Am. Gen. Annuity Ins. Co*., 556 F.3d 815, 823 (9th Cir. 2009) (out-of-state lawyers are, even if not admitted, "nevertheless an integral part of the litigation process"). The court may quickly peruse the list of those not-admitted attorneys and note that not one of them has argued any part of the case before the court nor signed any pleadings. As Defendants' own pleadings acknowledge, a party can properly seek fees for an out-of-state lawyer where their "conduct did not rise to the level of 'appearing' before the district court." *Id.* Appearing before a district court only happens if they "argue cases or sign briefs." *Id.* None of the out of state attorneys have done so, and Defendants produce no evidence that they have done either. Their work is plainly compensable under the same cases Defendants cite.

**C.      Defendants' Allegedly "Vague" Time Entries Do Not Meet the Standard**

Like the overzealous designation of "block billing," Defendants deem hundreds of entries to be "vague," even where no valid claim of vagueness attaches. "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). A "minimal" entry suffices, as long as it "establish[es] that the time was spent on the matters for which the district court awarded attorneys' fees." *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004). Other courts have found entries like "reviewing correspondence from opposing counsel" or "emails or phone calls with client" to be adequately descriptive. *Rahman v. FCA US LLC*, 594 F. Supp. 3d 1199, 1206 (C.D. Cal. 2022). By contrast, the kinds of entries that are too vague for reimbursement are those completely inscrutable, like "continued work on case," "research

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

of issues," or "case management." *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1195 (S.D. Cal. 2003); *Sierra Club v. BNSF Ry. Co.*, 276 F. Supp. 3d 1067, 1073 (W.D. Wash. 2017). The overwhelming majority of entries Defendants deem "vague" using uncertain criteria do not meet the legal standard for vagueness in this context.

As stated above, "document review" has been repeatedly held by this court and others, to not be vague. *S.G.W.*, 2017 WL 2365134, at \*3; *Banas*, 47 F. Supp. 3d at 969. Yet the Defendants' analysis repeatedly identifies such terms as vague. ECF 532-1, at 498 (entry 108620 – "ESI discovery in OR"); *id.* at 506 (entry 108753 – "ESI discovery document review"); *id* (entry 108763 – "document review and analysis").

Many entries Defendants deemed "vague" had plain meaning and were perfectly intelligible, particularly in context. *Tozer*, 2023 WL 8295886, at \*4 (context and timing enhanced understanding of time entries). An entry deemed vague from May 15, 2024 from Ms. Gus read "Meeting with A. Day to discuss neutrals." ECF 532-1, at 653 (entry 111344). That meaning is fairly obvious, particularly as it came as settlement was taking place: Ms. Gus met with Angelique Day (plaintiffs' expert) to discuss potential neutrals who might serve the court over the next 10-12 years in enforcing the settlement. Similarly, a May 2, 2024 entry reading "Prepare for Dr. Day trial testimony, review exhibits" is a perfectly intelligible entry, that Defendants have inexplicably labeled "vague." ECF 532-1, at 646.[4] Given the volume of invalid claims, Plaintiffs cannot possibly go through hundreds of objections and respond accordingly, and Plaintiffs doubt the Court would appreciate such a response. If Defendants enormous time analysis charts are so overbroad that they are unusable, the Court should just disregard them.

---

[4] Further examples of such entries being deemed "vague." ECF 532-1, at 643 (entry 111160 "Travel from NYC to Oregon"); *id.* (entry 111163 "Travel from NYC to Oregon"); *id.* (entry 11147 "Review plaintiff witness statement and Defendants witness statements"); *id.* at 636 (111029 "review expert deposition transcripts"); *id.* (entry 111031"draft trial home visit memo"); *id.* (entry 111032"draft trial home visit memo").

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

### D.    Defendants Manufacture Factual Issues

Some of Defendants' complaints are simply factually false. Defendants take special issue with Ms. Lowry billing hours and costs associated with "her travel from New Orleans to Salt Lake City to New York City for a cancelled conference without any explanation as to her trip's connection to the lawsuit." ECF 531, at 61. Defendants know perfectly well why Ms. Lowry billed for that time. Ms. Lowry made plans to travel to Portland for a meeting with Defendants. Defendants unilaterally cancelled the meeting without warning. At that moment, Ms. Lowry was in the air, flying to Salt Lake City to make a connection to Portland. When she landed in Salt Lake City and discovered Defendants' last-minute cancellation, she canceled her remaining travel plans and returned to New York City. Lowry Suppl. Decl., ¶8. Defendants do not explain what else Ms. Lowry should have done in the face of their unilateral cancellation of a meeting at the last minute, nor do they propose any reason why Ms. Lowry or her firm should bear the costs and time associated with a cancellation attributable solely to Defendants.

### E. Internal Communications Were Limited and Appropriate

Defendants object to Plaintiffs' billing for internal communications, such as emails and meetings, but provide no rational comparator or definition for an appropriate level of internal meeting and communication. Notably, as Defendants have never submitted their own fee records, the Court has no comparator between how many hours Defendants' counsel spent in internal meetings and how many the Plaintiffs' counsel spent in similar meetings. Case law, however, does provide one rubric for permissible internal communications, which sets the reasonable billing of internal communications in a complex case at 20% of the total hours. *Keith v. Volpe*, 644 F. Supp. 1317, 1324 (C.D. Cal. 1986), *aff'd*, 858 F.2d 467 (9th Cir. 1988) (where plaintiffs' attorneys in complex litigation claimed 600 hours, or roughly a quarter of all time, in conference with each other, district court reduced time in internal conference only by 100 hours, allowing about than 20%

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

of counsel's total billed time in internal conferences). Defendants only identified $1.7M of what they deemed "internal communications," which included emails and other communications, not just the conferences discussed in *Volpe*. ECF 531, at 24. Therefore, Plaintiffs' claimed hours for internal communications, even as construed by Defendants, came in well *under* the 20% threshold outlined by *Volpe*, resulting in less than 14% of their total hours being dedicated to internal communications.[5] Instead of proving that Plaintiffs spent *unreasonable* time in internal communications, Defendants analysis proves that Plaintiffs reasonably spent the overwhelming majority of their time in litigating the case and were comparatively careful to avoid billing for excessive internal communications. Plaintiffs' expert has also opined that the amount of time spent on internal meetings and communications is reasonable. Second McDermott Decl. ¶5.

### F. Firm-by-Firm Analysis

In addition to proposing a 50% across-the-board cut, Defendants propose significant cuts on a firm-by-firm basis. Plaintiffs respond briefly to these arguments in kind.

### 1. Davis Wright Tremaine (DWT)

Defendants first criticize DWT for pursuing fees, after previously stating that their actions were *pro bono*. Although Defendants cite Black's Law Dictionary for the meaning of *pro bono*, (ECF at 44), Defendants appear confused as to what the term actually means in legal practice. As the term is commonly used in Oregon and the legal community, *pro bono* means that a lawyer will not seek a fee from the indigent, needy, or vulnerable client. Miner Supp. Decl. ¶5. In other words, there is no expectation of payment from *the client*. *Id.*

An attorney who works *pro bono* does not mean that the attorney would never seek a fee from an opposing party, should they prevail as Defendants suggest. Defendants' own attorneys have

---

[5] *See, e.g.*, ECF 531, at 23 (identifying 23,091.85 claimed hours) and *id.* at 24 (identifying 3182.35 hours allegedly involved in internal communications). $3182.35/23091.85 = 0.1378$.

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

sought attorney fees after taking on a case *pro bono*. *Llanes v. Zalewski*, No. 3:18-CV-00267-SB, 2020 WL 207938, at *1 (D. Or. Jan. 14, 2020). This is consistent with the Ninth Circuit which has held that: "It is well-established, however, that attorneys' fees are recoverable by *pro bono* attorneys to the same extent that they are recoverable by attorneys who charge for their services." *Voice v. Stormans Inc.*, 757 F.3d 1015, 1017 (9th Cir. 2014). The Supreme Court of Oregon agrees: "[A] public interest organization that represents a party without charging a fee in order to further the organization's goals should receive an attorney fee award." *Domingo v. Anderson*, 325 Or. 385, 390, 938 P.2d 206, 208 (1997).

On an annual basis, DWT takes on many different types of *pro bono* cases. Some cases have entitlements to fees, and some do not. DWT recovers attorney fees on many types of *pro bono* cases, including cases involving the Freedom of Information Act, civil rights, Americans with Disability Act, Anti-SLAPP, and others involving fee shifting statues. The funds that are recovered allows DWT's attorneys to do more good in the world because it gives them the latitude to take on bigger cases without necessarily negatively impacting their compensation. Miner Supp. Decl. ¶6.

This practice allows DWT attorneys to take on cases with no entitlement to attorney fees, or cases that do not result in a fee award. *Id.* DWT engagement letters for *pro bono* cases specifically state that while a client will not be responsible for the fees incurred, DWT has the right to seek those fees. This case is no different. The engagement letters with Plaintiffs specifically allowed DWT to seek fees. Miner Supp. Decl. ¶7.

Ultimately, the fact that DWT took this case on as *pro bono* has no bearing on DWT's requests for attorney fees and Defendants arguments should be disregarded.

Defendants next argue that DWT did not staff the case appropriately (ECF 531, at 46), and then complain that DWT used too many "unlicensed" attorneys (ECF 531, at 47). The too many "unlicensed" attorney complaint has already been addressed. *See supra* §III B. Regarding

Page 16 – PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR
ATTORNEYS' FEES AND COSTS

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

appropriate staffing, without the billing records from Defendants' attorneys to use as a comparator of reasonableness, it is difficult to gage whether or not the staffing was appropriate. However, $11,000,000 versus $20,000,000 remains a good barometer as to appropriate levels of staffing. ECF 515, ¶39.

Defendants are correct that DWT partners Miner and McStay were the primary attorneys from DWT that worked on the case from February through May, 2024 – a time that was spent preparing for trial and ultimately settling the case. A close examination of the billing entries demonstrate that both attorneys were going to be meaningful participants at trial, and were conducting partner level tasks. Defendants have identified zero entries where Messrs. Miner and McStay were conducting activities like background legal research or reviewing documents – tasks more appropriate for an associate. Rather, Mr. McStay was prepping for expert depositions and cross examinations of Defendants' witnesses and Mr. Miner was one of the primary attorneys (along with Ms. Lowry from ABC) that worked toward resolution of the matter. Involving multiple attorneys at different levels (which can result in even more fees) only makes sense when the work being performed should be staffed differently. Here, DWT used experienced partners who were more efficient that ultimately helped achieve a fantastic result. DWT's requested fees are reasonable.

### 2.  A Better Childhood

*A Better Childhood's Billing Rates are Reasonable.* Defendants' assertion that ABC's rates are unreasonably high is confusing and unavailing. Defendants state on the very first page of their Objections that "the Court should apply the 75th percentile rates from the 2022 Oregon State Bar Economic Survey as the reasonable rate". ECF 531, at 10. As Defendants' own chart demonstrates, all but two of ABC's timekeepers do seek rates consistent with the 75th percentile rates from the 2022 Oregon State Bar Economic Survey. ECF 531, at 19. Defendants then spend pages attacking

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

ABC for "seek[ing] rates above the *mean* rates under the 2022 OSB Survey," and "well beyond the *average* in the OSB Survey." ECF 531, at 18, 20 (emphasis added). Given that ABC is seeking the same rates Defendants argue should be applied for the majority of timekeepers, their argument that "ABC cannot justify the rates it seeks" is frankly perplexing.

ABC has justified seeking higher rates for the remaining two timekeepers, Ms. Lowry and Ms. Post. The OSB survey range for Ms. Lowry is for attorneys with "over 30 years". Ms. Lowry has been litigating child welfare cases for approximately 54 years. ECF 518, ¶6. Accordingly, Ms. Lowry's request for rates near the 95th percentile of the OSB range are entirely justified given her years of experience and highly specialized knowledge and expertise. Ms. Post is an attorney with over 20 years of experience in child welfare, having represented over 2,500 children before joining ABC. ECF 518, ¶7. Accordingly, the rate she seeks is also justified. Further, Ms. Post seeks rates that are only $70 above the 75th percentile rates Defendants argue should be applied, which is hardly "…an exceptional departure from the OSB Survey," as Defendants claim. ECF 531, at 18.

Additionally, Defendants argue repeatedly that to determine reasonable rates, courts must look to the "prevailing market rates in the relevant community." *See e.g.* ECF 531, at 13. For this reason, Defendants argue that ABC should not be entitled to receive their higher New York rates. ECF 531, at 19. But, Defendants then argue that ABC's rates should be reduced based on lower rates they recently received in Mississippi and West Virginia. ECF 531, at 20-21. Defendants cannot at the same time argue that only Oregon's prevailing market rates are applicable, while also arguing that the Court should consider rates recently obtained in other states.

*The Hours Billed by ABC are Reasonable and Justified.* Defendants' allegation that ABC's hours are "unrealistically high" is misleading and baseless. Defense counsel's uninformed assumptions about how ABC staffs its cases, its attorneys' caseloads, and how many hours per day they work should not be entertained. Plaintiffs have submitted their time entries to the Court for

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

review.

Additionally, Defendants chart showing how many days ABC attorneys billed more than 8 hours over the course of five years lacks context. As Defendants know, many of these days were spent traveling to Oregon, which ABC billed at 8 hours, despite the trip often taking much longer. Lowry Suppl Decl. ¶2. Billing 8 or more hours per day is entirely reasonable in the context of a large, complex case like this, (*see* Second McDermott Decl. ¶6), and as the table below demonstrates, the vast majority of days where ABC attorneys billed more than 8 hours were either travel days, depositions or deposition preparations, or within the six months leading up to trial. Lowry Supp. Decl. ¶3. The chart below does not include days spent briefing major motions, which also account for long days.

| Timekeeper[6] | Title | Billed >8 | Billed >10 | Travel Days >8 | >8 Days including deposition and prep | >8 Days w/in 6 mos before trial |
|---|---|---|---|---|---|---|
| Anastasia Benedetto | Attorney | 141 | 59 | 20 | 27 | 58 |
| Dawn Post | Sr. Attorney | 101 | 22 | 35 | 31 | n/a |
| Marcia Lowry | Sr. Attorney | 70 | 27 | 48 | 11 | 18 |
| Aarti Iyer | Attorney | 57 | 14 | 0 | 20 | n/a |
| Lindsay Gus | Attorney | 26 | 6 | 2 | 1 | 21 |
| Jared Hirsch | Paralegal | 10 | 2 | 5 | 5 | n/a |

Defendants also criticize ABC for allegedly vague billing entries, block billed entries, and work performed by out-of-state-attorneys. For the reasons stated above, *see supra* § III.A--C. these claims fail upon closer examination.

*ABC Exercised Reasonable Billing Judgment.* Defendants repeatedly claim that ABC failed to exercise billing judgment in its application for attorneys' fees. However, Defendants also

---

[6] Plaintiffs' chart above excludes timekeepers who billed fewer than 10 days of more than 8 hours during this five-year litigation, as it is unremarkable.

acknowledge that ABC reduced its fee request by $458,763.67. While such a reduction may not be considered "meaningful[]" to Defendants, for a small non-profit organization like ABC, it is. Lowry Suppl. Decl. ¶4.

Further, in the exercise of billing judgment, ABC reduced all travel time to Oregon to 8 hours, despite that fact that the total travel time for the trip regularly takes 13+ hours, including travel to and from the airport and layovers between connecting flights. Lowry Suppl. Decl. ¶2. As the records submitted to this Court show, on many of these days, ABC attorneys would attend a deposition or meeting in the morning and then take a red-eye flight back to New York, accounting for long days. Lowry Suppl. Decl. ¶5.

Defendants complain repeatedly about the rate of turnover at ABC. However, ABC does not bill for the majority of attorney or paralegal time spent getting up to speed on a case. Lowry Suppl. Decl. ¶6.  Additionally, ABC already reduced its fee request to account for these inefficiencies. Lowry Suppl. Decl. ¶4. Defendants' assertion—which cites zero authorities—that ABC should write-off time billed on this case by experienced timekeepers who later move on from the organization is nonsensical. ECF 531, at 47.

### 3.  Disability Rights Oregon

*Fee rates*. Disability Rights Oregon submitted fee rates based on the unique and extensive expertise of its attorneys, Emily Cooper, Chris Shank, and Tom Stenson, in litigation related to civil rights, constitutional law, disability rights, children's rights, and class action. In preparing this unique case for filing, Plaintiffs were able to draw on roughly 60 years of experience from these three attorneys on the unique subject matter of this case. Few if any attorneys in Oregon have comparable experience in litigating complex, class action matters relating to rights under the Americans with Disabilities Act and Rehabilitation Act, or in matters addressing the rights of children in care. Three different fee experts opined that their requested rates were either reasonable

Page 20 – PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR
ATTORNEYS' FEES AND COSTS

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

or *below* the market rate.

Defendants' opposition does not even raise an argument for finding the rates sought by DRO attorneys to be unreasonable. ECF 531, at 16-21. Defendants did not produce an expert saying the rates sought were unreasonable. Defendants simply conclude that Plaintiffs' attorneys cannot or should not receive more than a 75th percentile rate. They do not impeach the Plaintiffs' fee experts except by: 1) mischaracterizing Mr. McDermott's opinion to say that any number between the median and 95th percentile is acceptable, and 2) pointing out that Ms. Payne once received a less than 75th percentile award for her fees. Mr. McDermott plainly cited to the extensive experience of Ms. Cooper, Ms. Shank, and Mr. Stenson in their unique area of expertise in justifying their request. ECF 515 at 7. Ms. Payne has received substantial fee awards in impact litigation, including receiving a 1.75 multiplier enhancement, resulting in a far more substantial award than even a 95th percentile rate with no multiplier. *VanValkenburg v. Oregon Dep't of Corr.*, No. 3:14-CV-00916-MO, 2017 WL 2495496, at *7 (D. Or. June 9, 2017). Defendants did not even mention or explain any objection to Ms. Walsh's opinion regarding the DRO fee rates. Considering the overwhelming evidence of the reasonability of DRO's fee rates and the inability of Defendants to articulate a counter argument or an expert to support it, the Court should award fees at the rates sought.

*Reasonable hours*. Defendants criticized DRO for allegedly vague billing entries and block billing entries. On examination, most of these claims fail. As with other time keepers, Defendants continue to insist that routine billing terms like "review discovery" are somehow vague. *See, e.g.*, ECF 531, at 43 (complaining DRO billed for reviewing discovery). They are not. *S.G.W.* v, 2017 WL 2365134, at *3; *Banas*, 47 F. Supp. 3d at 969. Elsewhere, Defendants deem reasonably clear entries "vague," such as an April 5, 2019 entry from Ms. Cooper states that she "worked on named plaintiff pleadings." ECF 532-1, at 1170 (entry 1114370.2). Considering that the complaint had not yet been filed at that date, it seems obvious that Ms. Cooper could only be working on the named

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

plaintiff-related portions of the complaint. In other cases, Defendants' manipulation of the Plaintiffs' records appears to *create* the vagueness complained of. Ms. Cooper submitted a single time entry indicating that she engaged in "review, edit letter to Defendants' stay proposal (1.3) and met with co-counsel to discuss." *Id.* (entry 1114670.1 and 11146720.2). The original entry was perfectly clear, but Defendants' edits to Plaintiffs' own filings separated out the phrase "met with co-counsel to discuss" from its antecedent. As filed, it was plain that Ms. Cooper "met with co-counsel to discuss" the "Defendants' stay proposal," but Defendants' own tinkering with Plaintiffs' records caused the apparent ambiguity as to what was discussed. Defendants' false assertions of vagueness, engendered by their own manipulation of data, do not merit reduction.

Other DRO time entries deemed "block billing" do not meet the legal standard for block billing. For instance, when an attorney is conducting two connected tasks that cannot be easily separated, such as writing a motion and searching for cases on Westlaw to support the motion, those two closely related tasks neither should be, nor need to be separated in order for a court to tell what is compensable. *See, e.g.,*, ECF 532-1, at 692 (entry 111967– entry for 1.90 hours for "drafting and research on (b)(2) claims, numerosity, ada subclass"). If drafting those claims is appropriate, then doing research to provide citations in support of those claims is reasonable as well. Similarly, no court is likely to decide that attending a deposition was reasonable but preparing for the same deposition was not. Defendants also routinely cite as "block-billing" entries that are less than three hours, including alleging "block billing" in a 0.2 hour segment. *See, e.g.*, ECF 532-1, at 682 (entry 11865, 0.2 hours, "reviewed proposed mediation statement, provided brief proposal). Plaintiffs have exactly one suggestion as to how the court could divide a 0.2 hour segment, should it decide that those two closely-related topics should be separated in the billing analysis. Defendants cited a total of 143 cases of alleged "block billing" by DRO attorneys where the billing was for less than 3 hours total.

Page 22 – PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR
ATTORNEYS' FEES AND COSTS

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

Cumulatively, Defendants' analysis demonstrates a hyper technical, nit-picking standard that does not resemble either announced legal standards or common practice in recording time. Of particular note, Mr. McDermott reviewed the time records of Plaintiffs' counsel and did reduce time where he thought Plaintiffs had not demonstrated good judgment or best practices. He left the remaining time entries intact, however, because those time entries were reasonable. DRO's time entries, taken as a whole, do not reflect bona fide problems of vagueness or block billing. Defendants' claims that DRO's billing should be arbitrarily cut by 20%, without ever documenting that 20% of their billing hours were unreasonable, represents pure speculation and does not merit consideration.

### 4. Rizzo Bosworth Eraut (RBE)

Defendants' briefing opens a broadside into questioning the competence, honesty, and diligence of Mr. Rizzo and Ms. Skjelset, but presents few bona fide issues grounded in evidence. RBE disputes the facts and assertions contained in the Objection and supporting declarations. *See Generally*, Rizzo Supp. Decl. and exhibits attached thereto. A prevailing attorney can recover for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." Moore v. James H. Matthews & Co., 682 F.2d 830, 839 (9th Cir. 1982).

*Fee Rates.* Defendants hew to the same arguments wielded elsewhere, that every single plaintiff attorney should get a 75th percentile rate, even though their own attorneys routinely seek and obtain far higher rates. They provide no evidence to contradict Plaintiffs' evidence that Mr. Rizzo and Ms. Skjelset are uniquely experienced, skilled, accomplished, and respected attorneys, nor do they produce an expert to contradict Mr. McDermott's opinion as to Ms. Skjelset or Mr. Rizzo's rates. Defendants point to a single fee award in a single case, from more than two years ago, in which Judge McShane awarded the full fees requested. That case was not a class action and not

as involved as the present matter. If it were comparable to the present matter, the 2022 Bar Survey had not been published at the time.

*Reasonable hours*. Defendants turn to criticism of various motions and some areas of focus of Mr. Rizzo and Ms. Skjelset. Defendants attempt to claim that certain motions should be disqualified from recovery because they were "distinctly different" from those in the Complaint. However, as Plaintiffs' noted in their original motion, courts do not penalize parties for bringing "alternative legal grounds," and "a court's rejection of for failure to reach certain grounds is not a sufficient reason for reducing a fee." ECF 514, at 12 quoting *Hensley*, 461 U.S. at 435. An unsuccessful claim separable from a successful whole is not a single motion or line of discovery. *O'Neal v. City of Seattle*, 66 F.3d 1064, 1069 (9th Cir. 1995). A party must fail on one of the core claims listed in the complaint in order to lose fees for not prevailing on that claim. *Natural Res. Def. Council v. Winter*, 543 F.3d 1152, 1163 (9th Cir. 2008). As stated in the motion, plaintiffs' four claims asserted in the complaint (Due Process, AACWA, ADA, and Section 504) remain intact today. ECF 514, at 18-19. Since Plaintiffs have not lost any of their core claims, they cannot be penalized by removal of fees, just as defense counsel presumably did not forgo fees for losing in large part or in their entirety the motion to dismiss, class certification motion, and various Daubert motions.

Defendants also complain that Mr. Rizzo and Ms. Skjelset spent too much time in digesting and opposing the Public Knowledge report. Their briefing ignores the elephant in the room: the $800,000 Public Knowledge report was 300 pages long, with a further rebuttal report to supplement it. Defendants did not address how much time other attorneys have used to address other expert reports that were 300 pages long, with voluminous supporting information, methodology, and other supplements. Defendants also did not disclose how much time their own team spent digesting, considering, or otherwise devoted to the Public Knowledge reports. Considering the extraordinary

length and complexity of the report, which defendants filed six months before trial, expending

substantial attorney time to review and respond to what appeared to be one of the central exhibits in

a four-week trial was not unreasonable. In the absence of any affirmative showing from Defendants

that would suggest a more reasonable time frame, the Court should uphold those hours as

reasonable.

Defendants also point to other unsuccessful efforts, including efforts to introduce evidence

from *J.M. v. Major* and to address the issue of in-home visits and other temporary placements.

The *J.M.* child maltreatment testimony and exhibits that Judge Nelson made available to Plaintiffs

to access in *J.M.* (over the manifold objections of DOJ and its Markowitz co-counsel, Ms. Blaesing)

was relevant to impeach the defendants' chief witness – DHS Deputy Director Lacey Andresen –

who testified in *J.M.* about her knowledge of child safety issues while this action was pending.

Andresen's testimony (and that of other DHS upper management witnesses in J.M.) was also

relevant to the cross examination of Public Knowledge. Moss, for example, referenced CIRT reports

and the DHS Child Welfare Data Books as evidence of DHS's "significant progress" in

"improving" the safety of foster children, and for that matter, the Public Knowledge report

referenced child specific certification, and DHS did not inform Moss about its circulation and use of

sensitive issue reports that pertain to incidents of abuse and neglect in DHS-certified foster homes.

"[A] lawyer who takes on only those battles he is certain of winning is probably not serving

his client vigorously enough; losing is part of winning." *Cabrales*, 935 F.3d at 1053. While

unsuccessful, these efforts were not unreasonable. Defendants, for instance, also sought to introduce

evidence and testimony related to a secondary piece of litigation, A.*R. v. Oregon Department of*

*Human Services* (the temporary lodging lawsuit). While the *J.M.* discovery likely would not have

been admitted, Defendant's own actions reveal that a reasonable attorney could believe that

evidence from a secondary piece of litigation could be admissible and helpful. Similarly, though

Page 25 – PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR
ATTORNEYS' FEES AND COSTS

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

Defendants won their motion *in limine* on in-home services, it was not unreasonable for Plaintiffs'

to pursue the issue. Plaintiffs cited a host of relevant cases where unsuccessful or unneeded

discovery practice or motion practice was reasonable. See ECF 514-22-24; *Pierce v. Cnty. of*

*Orange*, 905 F. Supp. 2d 1017, 1032-34 (C.D. Cal. 2012) (work on unsuccessful motions by

prevailing party was compensable, as was work on generating 440 declarations ultimately not

admitted at trial).

Considering the complexity of this matter, it would be surprising if Plaintiffs prevailed on

every single motion and discovery issue, though they prevailed on major issues far more than they

lost. A fees motion is not an opportunity to "second guess" a prevailing party's "litigation

strategies." *Steinke v. Washington Cnty.*, 903 F. Supp. 1403, 1407 (D. Or. 1995). The Court should

not penalize Plaintiffs' counsel for advancing difficult and important theories of the case.

**IV.    Reasonable Costs**

As discussed above, Plaintiffs have sought far less in costs than Defendants have expended.

The primary points of dispute are twofold: the expert costs and the travel costs. Plaintiffs address

them below.

**A.  Expert Costs Sought by Plaintiffs Are Compensable**

Defendants concede that expert fees are compensable costs under the ADA. "Litigation

expenses include items such as expert witness fees, travel expenses, etc." *Nondiscrimination on the*

*Basis of Disability in State and Local Government Services*, 56 FR 35694-01, at 35714-15 (Jul. 26,

1991). They are likewise compensable under Section 504. *I.H. ex rel. D.S. v. Cumberland Valley*

*Sch. Dist.*, 842 F. Supp. 2d 762, 777 (M.D. Pa. 2012) (finding expert fees compensable under

Section 504). However, Defendants state, without any clear argument or basis, that only Dr.

Farina's fees are compensable. Defendants state that Section 1988 does not cover expert fees for

cases brought under Section 1983. Plaintiffs' motion never claimed expert fees were compensable

Page 26 – PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR
ATTORNEYS' FEES AND COSTS
            DAVIS WRIGHT TREMAINE LLP
            560 SW 10th Avenue, Suite 700
            Portland, Oregon 97205
            (503) 241-2300 main · (503) 778-5299 fax

under Section 1988. Defendants' conclusory argument limiting recovery to Dr. Farina's fee is ill-taken, for two reasons.

First, the ADA fees and costs statute must be read carefully. The statute allows for costs (including expert fees) "[i]n any action or administrative proceeding commenced pursuant to this chapter. . . ." 42 U.S.C. § 12205. The fee statute does not restrict compensable fees only to experts *commenting on disability topics*. The fee statute makes clear that expert fees are compensable for costs associated with the *entire* "action . . .commenced pursuant to this chapter." *Id.* Plaintiffs initiated an action pursuant to the ADA in April 2019. The expert fees sought by Plaintiffs are part of an "action . . . commenced pursuant to [the ADA's] chapter" and are thus compensable. Several cases show that full expert fees were awarded, even in hybrid cases with both ADA and 1983 claims. *Armstrong v. Davis*, 318 F.3d 965, 974 (9th Cir. 2003) (in hybrid 1983-ADA case, rejecting state's request that "limit on expert fees of § 1988 should apply," holding that argument failed and affirming full award because "because the ADA and the RA have their own attorney's fees provision"); *Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp. 2d 981, 1002 (N.D. Cal. 2005); *Bell v. Williams*, No. 18-CV-01245-SI, 2023 WL 4850761, at *10 (N.D. Cal. July 28, 2023) (refusing to apportion expert fees by 50% in case brought under ADA and Section 1983 as ADA made fee "fully recoverable"); *Moralez v. Claim Jumper Acquisition Co. LLC*, No. 3:18-CV-01410-JD, 2019 WL 2437175, at *2 (N.D. Cal. June 11, 2019) (in case alleging ADA claims-which allow expert fees-and state law claims-which do not-court awarded full expert fees over Defendant's objections that state law did not permit it); *Clark v. Peco, Inc.*, No. 97-737-HU, 1999 WL 398012, at *12 (D. Or. Apr. 16, 1999) (same); *H.C. v. Bradshaw*, 426 F. Supp. 3d 1266, 1287 (S.D. Fla. 2019) (expert fees fully compensable even where ADA was only one of seven claims at issue); *Doe v. Massachusetts Dep't of Correction*, No. CV 17-12255-RGS, 2019 WL 2913969, at *3 (D. Mass. July 8, 2019) (expert fees were fully compensable in case brought under ADA and Section 1983,

Page 27 – PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR
ATTORNEYS' FEES AND COSTS

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

not barred by 1988's limitations). In a wide array of cases, federal courts have provided expert fees even where the ADA is only one of several claims brought, where the other claims do not provide for expert fees.

Second, even Defendants' preferred case does not assist them. Defendants point this court to a single case with a different holding. *Quesnoy v. Oregon* suggests a different test, but does not help the Defendants. No. 3:10-CV-01538-ST, 2012 WL 1155832, at *1 (D. Or. Apr. 6, 2012). *Quesnoy* does not suggest that only experts testifying specifically as ADA experts are compensable. Instead, *Quesnoy* examines whether the witness provided testimony "relevant to proving any element of the successful ADA claim" and denied expert fees where the expert testimony "related only" to the1983 claims or unsuccessful claims. *Id.* at *10. The bulk of Plaintiffs' expert witnesses provided extensive evidence that was at least relevant to the ADA claim, even if the expert was not explicitly identified as an ADA expert. Dr. Steib and Ms. Rideout conducted extensive analysis of clinical records and opined on the mental and behavioral health needs of the named plaintiffs, as well as those in the records review sample provided by Defendants. Dr. Puckett opined extensively on DHS's undercounting of youth with disabilities. Dr. Day expressed extensive opinions on the mental health and other disability related needs of adolescent youth. Since all of the expert witnesses for whom Plaintiffs seek reimbursement opined substantially on issues relevant to the ADA claims, as well as other claims advanced by the class, even relying on *Quesnoy*'s isolated holding would not change the outcome or limit recovery only to Dr. Farina's fee.

## B. Plaintiffs' Claimed Travel Costs Are Compensable and Reasonable

Defendants' claim that Plaintiffs' travel-related costs are not taxable under FRCP 54(d)(1) and 28 U.S.C. § 1920 "absent plain evidence of congressional intent," (ECF 531, at 50) appears to intentionally ignore the plain evidence of congressional intent—the fee-shifting statutes that provide authorizations for prevailing parties in civil rights actions to seek reasonable costs beyond those

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

authorized under § 1920. Indeed, attorneys' fees in Section 1983 actions are governed by 42 U.S.C. § 1988, which allows the court to award "those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal citations omitted).

The taxable costs for federal civil litigation generally are governed by 28 U.S.C. § 1920, which delineates an exclusive list of reimbursable expenses. Section 1920 does not act as a limitation on Section 1988, which allows "court[s] discretion to award out-of-pocket expenses and other costs which are not recoverable as costs under 28 U.S.C. § 1920, but which are charged to a fee-paying client." *Jordan v. State Dep't of Human Servs.*, 2010 U.S. Dist. LEXIS 133024 at *14-15 (D. Or. Dec, 15, 2010). The Ninth Circuit has expressly held that under Section 1988, the travel costs of counsel, including lodging, are recoverable out-of-pocket expenses. *Davis v. City of S.F.*, 976 F2d 1536, 1556 (9th Cir. 1992) *as amended* 984 F.2d 345 (9th Cir. 1993) (travel costs); *Harris*, 24 F.3d at 19-20 (hotel bills and meals). Congress has made it clear that "travel expenses" are valid costs under the ADA. 56 FR 35694-01, at 35714-15. Plaintiffs non-refundable trial lodging costs are similarly recoverable under §1988, as these costs would normally be charged to a fee-paying client. Accordingly, Plaintiffs' request for travel costs, including trial lodging, should be granted in full.

Plaintiffs collectively seek $590,570.07 for five years of costs related to litigating a large, complex class action lawsuit through the eve of trial—including cross-country travel, expert costs, taking 29 depositions and defending 15, and nearly complete trial preparations. As previously stated, Defendants' spending on just the Public Knowledge expert report (*see supra* III*)* alone far exceeds the amount Plaintiffs seek for *all* costs.

Defendants complain about Plaintiffs' exercise of billing judgement related to their travel costs. Namely, that ABC attorneys were staying in five-star hotels and taking black car services. Ms. Lowry used car services to and from the airport as she often arrived in Portland late at night

when there were no taxis available, and often arrived home to NYC in the very early hours of the morning when the same was true. Lowry Suppl. Decl. ¶7. As Ms. Lowry lives over 1.5 hours from the airport, Defendants have not provided any documentation or evidence that a less expensive alternative existed for the same trip.

Defendants also argue that Plaintiffs' counsel should have billed within the standard per diem rates required of Oregon state employees and counsel. ECF 531, at 51. Plaintiffs' counsel is neither, and Defendants' do not cite to a single case that would require Plaintiffs to conform their travel costs to those contractually agreed to between the State and its contractors. Nonetheless, it is notable that Plaintiffs' lodging costs in Portland average $198.80 per night, plus tax. Lowry Suppl. Decl. ¶10. The Oregon per diem lodging rates for 2024 in Portland range from $152-$182 per night, plus tax.[7] The only occasion when Plaintiffs' nightly hotel cost exceeded $300 was in Ann Arbor, Michigan, for the deposition of Plaintiffs' expert witness Patricia Rideout. The hotel where the deposition took place was selected by Defendants. Lowry Suppl. Decl. ¶11.

ABC did discover several inadvertent errors related to travel costs in their initial fee petition, totaling $1,734.06. Those errors have been corrected and a revised version of ABC's incurred costs is attached as Exhibit 2 to the attached Supplemental Declaration of Marcia Lowry. Lowry Suppl. Decl. ¶12-13.

## CONCLUSION

Defendants supply largely invalid and evidence-free arguments in opposition to the request for fees. Only by distorting the law on block-billing, vagueness, out-of-state attorneys, *pro bono* status, internal communications, and unreasonable claims can Defendants make their claims. Only by ignoring numerous expert opinions and the fee rates that defense counsel themselves routinely seek and obtain can Defendants claim the fee rates are unreasonable. In the absence of evidence of

---

[7] https://www.oregon.gov/wcb/Documents/interpreter/travelrates24a.pdf.

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

the reasonable billing practices of defense counsel on each of the points they raise, Defendants'
arguments should be disregarded. Their 53-page filing and 1500 pages of documentation proposes
that billing practices are not a means to ensure that the Court can follow the "general subject matter"
of the expenditures, *Hensley*, 461 U.S. at 437 n.12 but an obstacle course designed to penalize
attorneys who fail to meet arbitrary standards declared after the fact.

The Court should not focus on the minutiae offered by Defendants, but on the remarkable
success of Plaintiffs and their counsel in obtaining an excellent result for the class by settlement, in
a matter of extraordinary complexity and difficulty. *Id.* at 434 (noting the "important factor of the
'results obtained'"). Defendants argue that, while their counsel may be entitled to $20 million or
more for losing the case, Plaintiffs' counsel may not reasonably obtain more than a small fraction of
the funds needed to unsuccessfully defend the state. This argument holds no water, and Defendants'
arguments to the contrary evaporate when closely examined. The fee statutes relied on by Plaintiffs
exist for two reasons: to encourage attorneys to take on such challenging, important cases and to
discourage actors like the state from depriving citizens, including foster children, of their rights.
*Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980). Denying a full and reasonable fee in this
case would discourage other attorneys from taking on similar cases of public importance and
encourage government defendants to engage in protracted litigation rather than correct their own
practices. Defendants should be awarded $10,920,301 in attorney fees and $590,580.07 in costs
through July 3, 2024.

DATED this 31st day of July 2024 in Portland, Oregon.

**DAVIS WRIGHT TREMAINE LLP**

By: _s/ William D. Miner_____
P. Andrew McStay Jr., OSB 033997
andymcstay@dwt.com
William D. Miner, OSB 043636
billminer@dwt.com

Page 31 – PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR
ATTORNEYS' FEES AND COSTS

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

560 SW 10th Avenue, Suite 700
Portland, OR 97205
Tel: (503) 241-2300

**A BETTER CHILDHOOD**
Marcia Robinson Lowry (*pro hac vice*)
mlowry@abetterchildhood.org
Anastasia Benedetto (*pro hac vice*)
abenedetto@abetterchildhood.org
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456

**DISABILITY RIGHTS OREGON**
Emily Cooper, OSB 182254
ecooper@droregon.org
Thomas Stenson, OSB 152894
tstenson@droregon.org
511 SW 10th Avenue, Suite 200
Portland, OR 97205
Tel: (503) 243-2081

**RIZZO BOSWORTH ERAUT, PC**
Steven Rizzo, OSB 840853
srizzo@rizzopc.com
Mary D. Skjelset, OSB 075840
mskjelset@rizzopc.com
1300 SW 6th Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819

*Attorneys for Plaintiffs*

Page 32 – PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR
ATTORNEYS' FEES AND COSTS
DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax