UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| WYATT B. and NOAH F. by their next friend Michelle McAllister; KYLIE R. and ALEC R. by their next friend Kathleen Megill Strek; UNIQUE L. by her next friend Annette Smith; SIMON S.; RUTH T.; BERNARD C.; NAOMI B; and NORMAN N., individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br> v.<br><br>TINA KOTEK, Governor of Oregon in her official capacity, FARIBORZ PAKSERESHT, Director, Oregon Department of Human Services in his official capacity; APRILLE FLINT-GERNER, Director, Child Welfare in her official capacity, and OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>         Defendants. | Case No. 6:19-cv-00556-AA<br><br>**JOINT MOTION FOR FINAL JUDGMENT AND ORDER GRANTING FINAL APPROVAL OF THE SETTLEMENT** |

**JOINT MOTION FOR FINAL JUDGMENT AND ORDER
GRANTING FINAL APPROVAL OF THE SETTLEMENT**

  Pursuant to Rule 23(e), the parties move to obtain an order granting final approval of their Settlement Agreement and entry of a final judgment in the form proposed and submitted simultaneously with this motion.

### INTRODUCTION

  This Court should grant the parties' motion for final judgment and grant final approval of the settlement. The parties have met the requirements of Rule 23 by negotiating in good faith at arm's length over the course of years to amicably resolve this dispute. The settlement, considered as a whole and in light of the costs, risks, and delays associated with trial and appellate processes, provides adequate relief, is fair to the class, and treats members of the class equally to one another.

The parties have appropriately notified members of the class of the settlement. The Court will conduct a fairness hearing on September 12, 2024, to ensure that any objecting member of the class who has written to the Court can be heard. If no such objections are heard at that hearing, or if the Court determines that, notwithstanding any such objections, the settlement meets the requirements of Rule 23, the Court can approve a final settlement in this matter and enter a final judgment.

## LEGAL STANDARD

"[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). Under Rule 23(e), a final settlement should be approved if a court is convinced that: 1) "class representatives and class counsel have adequately represented the class"; 2) the settlement was negotiated at arm's length; 3) the class relief is adequate, considering the inherent challenges of the matter and the nature of the settlement; and 4) the proposal treats class members equitably relative to one another. FRCP 23(e)(2). These factors are "by no means an exhaustive list of relevant considerations." *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of S. F.*, 688 F.2d 615, 625 (9th Cir. 1982). When reviewing a settlement under Rule 23(e), a court should "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." FRCP 23(e); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)(citation omitted).

When reviewing a class settlement, courts should carefully guard against the possibility of "fraud or overreaching by, or collusion between the negotiating parties," as well as the pursuit of self-interest at the expense of the class. *Id.* at 1027. The review of the settlement proposal should "protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1100 (9th Cir. 2008).

Concerns regarding the unfairness of class settlements are sharply reduced, however, where the class and any subclasses are certified pursuant to Rule 23(b)(2) and only injunctive or declaratory

relief are sought. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 360 (2011) (quotation marks and citation omitted); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (noting civil rights cases are "prime examples" of cases demonstrating the purpose of 23(b)(2) certification). A 23(b)(2) class action imposes "no requirement for individualized notice beyond that required by due process, and class members are not allowed to opt out." *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000). A 23(b)(2) class does not require specific enumeration of who is in the class, as defendants are legally obligated to comply with class-wide injunctions. *Doe #1 v. Trump*, 335 F.R.D. 416, 436 (D. Or. 2020). Uniform equitable relief to a Rule 23(b)(2) class, treating all members of the class equally, greatly simplifies the analysis of fairness.

## ARGUMENT

This Court should enter an order granting final approval over the parties' Settlement Agreement and a final judgment. The named plaintiffs, next friends, and plaintiffs' counsel have adequately represented the class through a long and vigorous litigation process. The settlement was negotiated at arm's length between the parties. The class relief is robust and appropriate and establishes a framework for the parties to work collaboratively toward the shared goals set forth in the settlement. The class relief is also completely uniform among the members of the class, favoring no subgroup over another. The parties' settlement in this matter was noticed to the class, and commentary from the class members has thus far has been largely favorable to the settlement. For all those reasons, the settlement meets the standard for approval under Rule 23.

    I.    **The Settlement Meets the Relevant Factors for Fairness and Adequacy.**

In granting approval for any class settlement, courts should consider whether the settlement will satisfy the requirements of Rule 23(e). When determining whether Rule 23(e) is satisfied,

courts should consider: 1) the strength of the plaintiffs' case; 2) risk, expense, complexity, and likely duration of further litigation; 3) risk of trial and appeal; 4) the amount offered in settlement; 5) the extent of discovery to date and procedural posture; 6) experience and views of counsel; 7) presence of a government participant; and 8) reactions of class members to the settlement. *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir.2004). These factors are examined below.

   1. *Strength of plaintiffs' case*

The Settlement Agreement meets the first factor. The Settlement Agreement appropriately reflects the strengths of each parties' case. Plaintiffs planned to present evidence at trial of individual experiences of the named plaintiffs and class members, as well as others involved in the child welfare system. The plaintiffs planned to present expert testimony as well as evidence of continuing issues regarding child safety, adequacy of care, continuing unmet needs of foster youth, and untimely and inadequate assessments. On the other hand, defendants planned to present evidence at trial that the State had made significant improvements to the Oregon child welfare system. For example, defendants planned to present evidence that Oregon Department of Human Services Child Welfare is currently meeting its caseload ratio standards, has developed and implemented a nationally-recognized Continuous Quality Improvement program, and recently was recognized for their family preservation program and their success reducing the number of children who enter foster care. (*See* Dkt. 386 at 10-11, 21 (Witness Statement of Lacey Andresen); *id*. at 231-44 (Witness Statement of Jennifer Ricks).)

   2. *Risk, expense, complexity, and likely duration of further litigation*

The Settlement Agreement also meets the second factor—the risk, expense, complexity, and likely duration of further litigation. This is a complex case that was set for a four-week trial. The parties acknowledge that trial and appeal entail some uncertainty in outcomes and a practical

certainty of delay and added costs. While comparatively few such cases proceed to trial, past experience indicates that appellate courts would be likely to stay the enforcement of any relief while the appeals proceed. *See*, *e.g.*, *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 247 (5th Cir. 2018) (after the court granted a judgment in favor of plaintiffs, Texas sought a stay from the district court, which was denied, then a stay pending appeal from the Fifth Circuit, which was granted). The settlement benefits the class because it ensures that implementation under the settlement will begin immediately, while implementation of an injunction following trial may have been delayed by an appeal. Accordingly, this factor weighs in favor of approval.

   3.   *Risk of trial and appeal*

For similar reasons, the third factor also weighs in favor of approval. Given the size and scope of the trial, the complexity of the case would likely lead to a wide variety of issues on substance, evidence, and procedure that could be appealed. Even if plaintiffs prevailed on all points at trial, defendants would likely appeal a judgment in plaintiffs' favor. Resolving those issues would entail a very lengthy and complex appeal. Even if plaintiffs succeeded ultimately on all those issues, the appellate process could delay remedies for the class for years to come.

   4.   *The amount offered in settlement*

The fourth factor also weighs in favor of approval. While the class sought injunctive, and not monetary, relief, the terms of the Settlement Agreement set forth comprehensive structural relief that requires defendants to hire a Neutral to oversee the State's progress toward critical foster care outcome areas. Child welfare is a complex policy area, and the use of a Neutral to measure progress, the inclusion of measures, and the capacity for court enforcement of obligations under the Settlement Agreement reflects a serious and substantial benefit to the class and subclasses.

   5.   *The extent of discovery and the procedural posture of the case*

The fifth factor weighs in favor of approval because extensive discovery has been conducted

in this matter prior to settlement, with hundreds of thousands of pages of discovery exchanged. In response to plaintiffs' nineteen requests for production, consisting of over 320 individual requests, defendants produced over 720,000 documents amounting to over six million pages. Defendants collected and produced over six years' worth of emails from more than 40 State custodians and produced customized data reports in response to over 100 of plaintiffs' requests. Dozens of depositions were taken. Additionally, the parties exchanged expert reports, exhibits, and filed witness statements and trial memoranda. Given the broad scope of discovery and the procedural posture of the case, each side was fully apprised of the risks and benefits of settlement, which weighs in favor of approval. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (explaining that "the parties had already consulted experts and exchanged significant discovery permitting an informed decision about settlement" which favored settlement approval); *see also Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates the parties carefully investigated the claims before reaching a resolution.")(citation omitted).

      6.     *The experience and views of counsel*

The experience and views of counsel also weigh in favor of approval. The settlement was negotiated over an extended period of time by experienced counsel on both sides and was mediated by a federal magistrate judge, weighing in favor of approval. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 946 (experience of counsel and mediation and approval by retired judge weighed in favor of approval of settlement). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision,* 559 F. Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). Among the class counsel are a nationwide child welfare litigation team, a major law firm familiar with complex litigation, a statewide disability advocacy group experienced in class-wide relief, and a law firm with a substantial practice in tort law related to claims of foster

children and young adults. The diverse experience of the litigation team tends to verify the utility of the relief, as counsel with such experience would not sign on to inappropriate, inadequate, or unfair relief. Further, counsel for defendants is also familiar with complex, high stakes litigation, particularly relating to foster children and young adults. Counsel for both parties have been involved in this case for over five years and are familiar with the facts and issues and approve of the Settlement Agreement.

7. *Presence of a government participant*

The presence of government defendants likewise weighs in favor of approval. *See*, *e.g.*, *Criswell v. Boudreaux*, No. 120CV01048DADSAB, 2021 WL 5811887, at *7 (E.D. Cal. Dec. 7, 2021) ("As Sheriff of Tulare County, defendant is a governmental participant, which weighs in favor of final approval of the settlement.") (citations omitted); *Garcia v. L.A. Cnty. Sheriff's Dep't*, No. CV 09-8943 MMM (SHX), 2015 WL 13646906, at *11 (C.D. Cal. Sept. 14, 2015) ("LACOE is a government participant. This factor therefore weighs in favor of settlement."); *Moreno v. S. F. Bay Area Rapid Transit Dist.*, No. 17-CV-02911-JSC, 2019 WL 343472, at *5 (N.D. Cal. Jan. 28, 2019) ("BART is a governmental agency, and as such, its participation and consent to the injunctive relief weighs in favor of approving the settlement.").

8. *Reactions of class members to the settlement*

Finally, the settlement should be approved because the commentary of class members following statewide notice of the settlement has been largely positive. While the parties do not know the content of any commentary received directly by the Court, the commentary submitted to the parties has largely indicated that the Settlement Agreement is approved of and appropriate. Exemplar statements from received testimony included that the settlement "would help people around the world," that the "state can do so much more," "I think it is great!!" and that another commenter is "glad someone was appointed as a neutral party." Some commenters expressed

concern about continued maltreatment within ODHS care, but these statements do not bear on the form or appropriateness of the Settlement Agreement. They underscore the urgency of its implementation.

Few comments expressed clear concern about the settlement. Two comments received by the parties indicated insufficient knowledge of the settlement or complained about a lack of clarity. One commenter stated that they "don't know anything about it [the settlement]," and another expressed concern about insufficient clarity regarding "specifics about how the system will be transformed," and expressed a desire for more training for caseworkers. Another commenter stated that they "don't know if it [the settlement]'s gonna change anything." One comment from a set of parents identified areas of concern but asked that the settlement not be approved until it included enforcement of the Prevention Services Act of 2018. These comments should not deter the Court from approval, particularly as the only comment urging the Court not to approve the settlement was not from a class member. Neither could a settlement agreement plausibly include provisions of a law that was not included in the claims stated in the complaint.

In short, the Settlement Agreement is fair to all participants and meets the factors articulated in *Hanlon*. Because the Settlement Agreement satisfies all factors, this Court should grant the parties' motion for approval.

## II. The Proposed Settlement is Even-Handed and the Product of a Reliable Mediated Negotiation Process.

The Court should approve the proposed settlement because the terms were reached following appropriate, arm's length negotiations before a qualified mediator and because the even-handed terms of the settlement do not advantage any subset of class members over another. As stated above, courts should offer provisional approval to settlements achieved in non-collusive mediation, with terms that do not benefit one subset of class members at the expense of others. *In re Tableware Antitrust Litigation*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). In the present case,

the Court can readily determine that the respective parties' counsel have been vigorous advocates of their own clients' causes for years. Mere days before the proposed settlement was offered to the Court, the parties had prepared hundreds of trial exhibits, dozens of fact witnesses, numerous experts and rebuttal experts, engaged in extensive motion practice, and were otherwise plainly prepared to litigate a trial on this matter. No part of the proceedings in this case indicates any hint of collusive behavior between plaintiffs and defendants.

The mediation proceedings in this case proceeded before able and experienced federal magistrate judges, Judge Acosta and Judge Beckerman, as well as retired Judge Pellegrini from Marion County Circuit Court, over the course of years. On multiple occasions, attempted settlement conferences adjourned at impasses. While the parties cannot divulge the substance of the mediation process, the Court can readily assume that neither Judge Acosta, Judge Pellegrini, nor Judge Beckerman would tolerate or embrace a collusive effort in mediation.

The nature of the equitable and non-monetary relief in this case indicates that the relief is fair to all class members. The broad relief authorized by the settlement directs its benefits at the class as a whole and does not particularly advantage any unique subgroup of foster children. Nor does it plausibly advantage the named plaintiffs at the expense of other foster children and young adults, as almost all named plaintiffs are no longer in the foster care system. Bernard will leave the foster care system in a short time, at the time of Bernard's 21st birthday. Finding any special benefit to the named plaintiffs would be virtually impossible. No plausible theory of special benefit to any particular subgroup of foster children at the expense of others in the class could be advanced.

Last, settlements sometimes fail a fairness assessment where the attorneys for the class have assented to less-than-robust relief in exchange for an exceptional attorneys' fee award. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 946 . As the Court knows, attorneys' fees for class counsel have been pursued by motion practice. The content of the settlement is not balanced

against any particular fee award. Since class counsel have not negotiated for any particular fee award, the settlement can hardly be unjust on that ground.

### III. The Class Members Received Notice of the Settlement.

In June 2024, the parties circulated a proposed notice to the Court, and the Court approved it. (Dkt. 492.) Although there is "no requirement for individualized notice" for members of a Rule 23(b)(2) class "beyond that required by due process," *Frank*, 216 F.3d at 851, that the parties underwent efforts to gather input from the class weighs in favor of approval in this case. The parties have engaged in extensive efforts to provide public notice to class members, through the media, through public presentations, and through targeted outreach. Considering that the class population lives in a variety of settings all over the state and includes children of a variety of ages, the parties' approach to class notice was reasonable.

The parties created extensive outreach materials and made them available through their own websites. Plaintiffs created a video—narrated in both English and Spanish—designed to explain the nature of the settlement to children of a variety of ages and levels of literacy and published it on the Disability Rights Oregon website.[1] This video had been viewed almost 300 times as of August 16, 2024. (Stenson Decl., Ex. 1.) Defendants likewise posted a press release about the settlement on ODHS's website, which has been viewed more than 60 times. (Stenson Decl., Ex. 3.)

The parties extensively published notice through social media, public websites, email outreach, and the news media, including being highlighted in the some of the most frequently read media in the state. On July 24, 2024, a news article headlined "Judge Seeks Input from 5,000 Oregon Foster Children as Lawsuit Presses State to Improve Care," was posted atop the

---

[1] Disability Rights Oregon, *Unpacking the Wyatt B. v. Kotek Settlement Agreement, at* https://www.droregon.org/litigation-resources/wyatt-settlement; *see also* Disability Rights Oregon, Wyatt B. Settlement Agreement Video in English *at* https://www.youtube.com/watch?v=NAvDZFXKDCE; Disability Rights Oregon, Wyatt B. Settlement Agreement Video in Spanish *at* https://www.youtube.com/watch?v=4wdCIua2bJY&t=74s .

Oregonian's news page, describing the specific opportunity for class members to weigh in on the settlement.[2] The article stated that "current or former foster youth" could address comments to the Eugene Courthouse and provided the courthouse's mailing address. *Id.* The article also described two listening sessions scheduled for August 1 and August 3, 2024, to learn more about the settlement. *Id.* Similar articles came out on a total of 36 news media websites, including the Oregon Public Broadcasting website, numerous Pamplin Media publications, and other media sources around the state, with numerous reports going out simultaneously by radio. (*See* Stenson Decl., Ex. 1.) In addition to these specific articles discussing the fairness hearing and the opportunity for class members to comment on the settlement, the Court can also take notice that the settlement and related events have also been extensively covered in the news media since May 2024. (*See* Stenson Decl., Ex. 2.)

       The parties also published notices via mass emails to the entire listserv of juvenile law practitioners in Oregon, to the Oregon Foster Youth Connection, Youth Villages, New Avenues for Youth, the Citizen's Review Board, resource families, and other related entities for foster youth or their allies. (Stenson Decl., Ex. 1.) The parties have also used social media, including Twitter, Instagram, Facebook, LinkedIn, and similar services to disseminate information. (*Id.*) The outreach has been extremely successful in generating response. Disability Rights Oregon's homepage has been visited more than 5,000 times since May 2024, and DRO's Wyatt Settlement page has been visited 1,400 times. The ODHS settlement press release was viewed 63 times and linked to the DRO Wyatt Settlement page as well. About 2,900 people viewed the feedback form allowing them to submit commentary. Social media posts on Facebook, Instagram, and similar forums outlining the fairness hearing process and describing the settlement have reached about 7,000 views. DRO

---

[2] Ben Botkin, "Judge Seeks Input from 5,000 Oregon Foster Children as Lawsuit Presses State to Improve Care," The Oregonian/Oregon Capital Chronicle, July 24, 2024, *at* https://www.oregonlive.com/politics/2024/07/judge-seeks-input-from-5000-oregon-foster-children-as-lawsuit-presses-state-to-improve-care.html.

Page 11 – JOINT MOTION FOR FINAL JUDGMENT AND ORDER GRANTING
FINAL APPROVAL OF THE SETTLEMENT

has sent at least 2,500 emails with the notices. ODHS has sent three separate waves of emails with listening session information, information about feedback, and DRO's links. (Stenson Decl., Ex. 3.) Each email was sent to approximately 6,700 email addresses with the first email being opened over 6,000 times. (*Id.*) The following two emails were opened by about 4,000 individuals. (*Id.*) Parties have extensively used the news media, their own websites or counsel's websites, mass emails, and social media to widely disseminate information regarding the settlement.

The parties have also engaged in public meetings to ensure that class members understand the process. The parties organized statewide joint presentations on August 1 and August 3, 2024. Those presentations allowed foster children and their allies to find out about the details of the settlement and how to comment on it. In addition, a DRO attorney participated in an ODHS-organized meeting on August 7, 2024, for dozens of foster home providers of youth with intellectual and developmental disabilities, providing information about the settlement and notifying providers of the rights of the class members with whom they work to comment on the settlement. (Stenson Decl.) Counsel similarly presented to the System of Care Advisory Council on July 2, 2024, and to the Oregon Developmental Disabilities Case Management Conference on July 24, 2024. The parties ensured ample opportunity for members of the class and their supporters to find out about the settlement and provide commentary.

Considering the unique difficulties of reaching the members of the class, the varied, multi-media efforts of the parties to notify the class were reasonable and consistent with the processes deemed reasonable in other, similar proceedings. *See*, *e.g.*, *McReynolds v. Richards-Cantave*, 588 F.3d 790, 797 (2d Cir. 2009) (in proceeding to approve settlement relating to removal of children from their homes by New York City's children's services, notice involving publication in newspapers, posted in children's services office, and to the executive directors of each foster care agency were adequate); *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 160 (S.D.N.Y. 1999),

*aff'd sub nom. Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) (notice to foster care class achieved through public posting of notices in foster care offices, agencies, family courts, and hospitals was adequate).  Exclusive reliance on a mailed notice is increasingly disfavored, compared to the multi-pronged approach of the parties.  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1047 (9th Cir. 2019) (finding a single mailed notice was not reasonable method of notice, compared to emailed notices and alternative publicity, particularly where some class members were "transient").  In this case, many of the children in ODHS custody are so young that a dense, legalistic mailed notice would not be appropriate or tailored to their developmental needs or abilities.  Moreover, young people tend to prefer electronic media.  While written, mailed notice may be more common in complex class actions, the youth of the class members and their disparate (and often changing) placements makes mailed notices less effective and less reasonable than a concerted outreach through electronic media, online videos, and online meetings, as was done here.

      The content of the notice and supplemental materials like the videos, the public media statements, the presentations, the posting of the settlement document on public websites, and other supporting documentation was approved by the Court in advance.  They all plainly described the subject matter and nature of the settlement and informed interested parties of how and when to submit commentary.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).  The parties have received more than a dozen comments, mostly favorable, regarding the settlement.  The sources and locations of the individuals providing comment suggest that the parties' notice in fact traveled far and wide, adequately informing the class of the nature of the settlement and the opportunity to be heard.

## CONCLUSION

      Considering all these factors, the Court can appropriately make the determination that the proposed settlement meets the standards for final approval.  The class and subclasses remain

qualified under the provisions of Rule 23.  The proposed settlement meets the basic standards for assessment of fairness, as outlined by the Ninth Circuit.  Further, the settlement is both non-collusive and even-handed in its treatment of absent class members.  Under the federal rules, the proposed settlement is reasonable, fair, and appropriate and should be approved, following a fairness hearing.  This Court should grant the parties' joint motion, approve the settlement, and the enter the parties' proposed final judgment.

Dated: August 22, 2024

**DAVIS WRIGHT TREMAINE LLP**

By: *s/ P. Andrew McStay Jr.*
P. Andrew McStay Jr., OSB 033997
andymcstay@dwt.com
William D. Miner, OSB 043636
billminer@dwt.com
1300 SW Fifth Avenue, Ste, 2400
Portland, OR 97201
Tel: (503) 241-2300

**A BETTER CHILDHOOD**

Marcia Robinson Lowry (*pro hac vice*)
mlowry@abetterchildhood.org
Anastasia Benedetto (*pro hac vice*)
abenedetto@abetterchildhood.org
Lindsay Gus (*pro hac vice*)
lgus@abetterchildhood.org
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel: (646) 795-4456

**DISABILITY RIGHTS OREGON**

Emily Cooper, OSB 182254
ecooper@droregon.org
Thomas Stenson, OSB 152894
tstenson@droregon.org
511 SW 10th Avenue, Suite 200
Portland, OR 97205
Tel: (503) 243-2081

**RIZZO BOSWORTH ERAUT, PC**

Steven Rizzo, OSB 840853

srizzo@rizzopc.com
Mary D. Skjelset, OSB 075840
mskjelset@rizzopc.com
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819

*Attorneys for Plaintiffs*
ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON


/s/ Lauren Blaesing
David B. Markowitz, OSB #742046
DavidMarkowitz@MarkowitzHerbold.com
Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Lauren F. Blaesing, OSB #113305
LaurenBlaesing@MarkowitzHerbold.com
Vivek A. Kothari, OSB #182089
VivekKothari@MarkowitzHerbold.com
*Special Assistant Attorneys General for Defendants*

Adele J. Ridenour, OSB #061556
AdeleRidenour@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
David A. Fauria, OSB #170973
DavidFauria@MarkowitzHerbold.com
Kelsie G. Crippen, OSB #193454
KelsieCrippen@MarkowitzHerbold.com
*Of Attorneys for Defendants*

Carla A. Scott, OSB #054725
carla.a.scott@doj.state.or.us
Sheila H. Potter, OSB #993485
sheila.potter@doj.state.or.us
*Of Attorneys for Defendants*

2187711.3